BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br><br>   Defendant. | Case No. 1:18-cr-00258-EJL<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER** |

The United States of America, by and through Bart M. Davis, United States Attorney for the District of Idaho, and Katherine Horwitz, the undersigned Assistant United States Attorney, hereby opposes the Defendant's Motion for Revocation of Detention Order (Dkt. 99) (the "Motion"). As the Government successfully argued at the Defendant's initial detention hearing, the nature of the offenses, the weight of the evidence, the history and characteristics of the Defendant, and the risk of flight all favor continued detention. The Court should deny the Defendant's Motion.

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—1**

**LEGAL STANDARD**

Pursuant to the Bail Reform Act, a judicial officer must detain a defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person." 18 U.S.C. § 3142(e).  Under the Act, the court has a duty to engage in a two step procedure to before ordering that a defendant be detained released:  first, the court must make a finding as to whether the defendant presents a serious risk of flight if not detained; if so, then the court must determine whether any set of conditions would sufficiently abate that risk.  In that second step, the court considers four factors outlined in § 3142(g)—of which this Court is well aware.  *See* 18 U.S.C. § 3142(g) (including the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the defendant, and the nature of the danger, if any, posed to the community upon release).  Of course, the Act mandates release under the least restrictive conditions, unless the government shows by a preponderance of the evidence that no such conditions can reasonably assure the appearance of the defendant.  *See* 18 U.S.C. § 3142(c).

When, as here, a defendant has been ordered detained by a Magistrate Judge, the detainee may file a motion for revocation of that detention order in a court with original jurisdiction over the offense—here, this Court.  18 U.S.C. § 3145(b); *see also* Fed. R. Crim. P. 59 (providing that a party has 14 days to object to a non-dispositive decision by a magistrate judge, such as a detention order).  While § 3145(b) mandates de novo review, this Court must nevertheless "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).  For the reasons discussed herein, Chief Magistrate Judge Bush's findings were correct.

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—2**

**FACTUAL BACKGROUND**

For the past decade, the defendants have operated a large-scale, sophisticated operation trafficking in counterfeit goods and labels out of two Boise, Idaho warehouses on Bridger Street. From approximately 2008 through 2018, Pavel Babichenko, Piotr Babichenko, Timofey Babichenko, Gennady Babitchenko, Natalya Babichenko, Kristina Babichenko, Artur Pupko, David Bibikov, Mikhail Iyerusalimets, and Anna Iyerusalimets, along with other conspirators, engaged in a scheme to purchase counterfeit electronic goods—primarily Apple iPhones and Samsung cellular products—from Chinese manufacturers, which they then resold as genuine and new through online platforms such as Amazon and eBay.

Over the course of this multiple-year investigation, Federal Bureau of Investigation ("FBI") and Homeland Security Investigation ("HSI") agents have identified over fifty U.S. Customs and Border Protection seizures of counterfeit electronic goods associated with this conspiracy. Additionally, FBI and HSI agents have made over fourteen undercover purchases of counterfeit electronic goods between November 2015 and December 2017 through Amazon and eBay. With the help of a Confidential Human Source ("CHS"), investigators also conducted three hand-to-hand, undercover purchases directly from Pavel Babichenko and David Bibikov at the two Boise, Idaho warehouses. Each undercover buy was a bulk purchase of counterfeit Apple and Samsung products, which the CHS represented he would then individually resell through Amazon or eBay.

The scope of this conspiracy is vast. The defendants operate over a hundred separate business entities to sell their counterfeit goods online to thousands of customers, shedding seller– entity names as online platforms caught on to their scheme. In addition to operating numerous business entities, the defendants have employed numerous members of their church—the

RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—3

Morning Star Church—in their warehouses to repackage goods for shipment and remove negative feedback from their online Amazon seller–accounts.

These employees were necessary to sustain the volume of goods sold. During this investigation, federal agents have kept a close watch on the volume of goods shipped from the Bridger Street warehouses through surveillance. One recent example speaks volumes: on Monday, August 21, 2018, and Tuesday, August 22, 2018, federal investigators surveilled and collected packages being shipped from the Bridger Street Warehouse. Over just this two-day period, approximately 2,500 packages were sent from the Bridger Street Warehouse destined to various individual consumers throughout the country. With such a high volume in sales, the defendants have profited by the millions with this criminal scheme.

For his part, Pavel Babichenko is the leader of this long-standing conspiracy. Of the conspirators, he has traveled most frequently to and transferred huge sums to Hong Kong and China. Likewise, he has transferred substantial sums to his brother, Gennady Babitchenko, who launders the criminal proceeds of this counterfeit trafficking scheme through various businesses, including European Denture Lab. Gennady Babitchenko then funnels these funds—over a million dollars from just one bank account—to accounts and assets in Brazil. Collectively, the Babichenko brothers—through two Brazilian construction companies they own—have also built eponymous condominiums with the proceeds of their counterfeit goods trafficking and posted them for individual sale. In addition to their substantial construction projects in Brazil, Pavel Babitchenko also has legal residency status in Brazil and frequently travels there. Over the past nine years, he has gone to Brazil at least nine times. In fact, he returned from Brazil only a month ago.

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—4**

**PROCEDURAL BACKGROUND**

Based on the above-described investigation, a federal grand jury indicted Pavel Babichenko on August 14, 2018, with charges of conspiracy to commit wire fraud, conspiracy to traffic in counterfeit goods, and money laundering conspiracy. (ECF 1.) The Indictment included forfeiture allegations totaling in millions of dollars of real property, bank accounts, and substitute assets. (ECF 1, at 18–28.) Citing risk of flight, the Government moved to detain only the four Babichenko brothers: Gennady, Pavel, Timofey, and Piotr. Chief Magistrate Judge Ronald E. Bush held detention hearings for the Defendant on August 31, 2018. (ECF 97.) The Government proceeded by proffer, which was based largely on the allegations in the Indictment. Additionally, the Government proffered, *inter alia*, the Defendant was the head of this large-scale criminal enterprise, specific financial transactions, details of undercover purchases from the Defendant, and the Defendant's substantial movement of assets to Brazil. The Government also admitted four exhibits evidencing the volume of goods discovered in the conspirators' Bridger Street Warehouses, as well as statements regarding assets in and relocating to Brazil.

In rebuttal, the Defendant proffered and called one witness, Ryan Wilson, an electrician who was willing to hire the Defendant. Aug. 31, 2018, Tr. Det. Hr'g, Attachment 1, at 31:17–32:25, 36:04–:13(hereinafter, "Attachment 1"). In his proffer, the Defendant described his involvement in the Morning Star Church and the importance of charitable giving. *Id.* at 38:10–40:17. This, the Defendant explained, was the impetus for the Brazilian properties: "working with the local government to provide relief to the poor." *Id.* at 40:18–:20. He further described the difficulty in obtaining Brazilian residency status and the efforts made to obtain the same. *See id.* at 42:03–:10. Finally, the Defendant admitted a short video montage of the Babichenko

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—5**

family walking among their Brazilian properties on an unknown date.  *See id.* 50:09–:25, 51:04–:23.

After an almost two-hour hearing, Chief Magistrate Judge Bush ordered that the Defendant be detained as a risk of flight, citing the weight of the evidence against the Defendant as strong, the period of incarceration if convicted, and the substantial ties outside the United States.  (ECF 97, at 2–3.); *see also* Attachment 1, at 68:19–74:07.  Additionally, Chief Magistrate Judge Bush also carefully noted as bases for his ruling:  (1) extensive transfers of money from the United States to Brazil from entities controlled by the Defendant and his coconspirators; (2) his legal residency status in Brazil, attempt to obtain Brazilian citizenship, and repeated pattern of travel there over a decade; (3) the Defendant's direct hand-to-hand sale of counterfeit goods to a confidential informant; and (4) the large volume of alleged counterfeit goods in the Defendant's possession and control.  (ECF 97, at 3.)

## ARGUMENT

The Court should not revoke the detention order entered for the Defendant.  Based on the Defendant's Motion, it is unclear whether new facts or circumstances have arisen that alter the calculus made by Chief Judge Bush.  While the Government is not certain what evidence the Defendant will present at the upcoming hearing, the bases for detention remain constant.  Namely, the substantial means, international connections, the nature of the offenses, the weight of the evidence, the history and characteristics of the Defendant, and the risk of flight all support detention.

Based on this defendant's management of this large-scale criminal enterprise, movement of assets and investments in Brazilian property, substantial means and planning, as well as his legal residency there, the defendant is a flight risk.  *See United States v. Townsend*, 897 F.2d

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—6**

989, 994–95 (9th Cir. 1990) (recognizing that the "accusations . . . of sophisticated criminal conduct, whose successful completion required the ability to travel internationally, to adapt easily to foreign countries, and to move assets and individuals quickly from one country to another" weighed in favor of detention, as did "their access to substantial sums of cash").

Simply, the crimes alleged required sophisticated planning, substantial capital, facility in deception, and significant international ties in China, Hong Kong, and Brazil. *See also United States v. Gentry*, 455 F. Supp. 2d 1018, 1033 (D. Ariz. Oct. 5, 2006) (detaining defendant charged with fraud for risk of flight based on, *inter alia*, substantial foreign connections, international travel experience, and his "remarkable ability to conceal assets both 'offshore' and within the United States"). Couple these traits with the Defendants' machinations to funnel money and assets internationally and the preponderance standard is more than met.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion after the scheduled hearing.

Respectfully submitted this 18th day of September, 2018.

        BART M. DAVIS
        United States Attorney
        By:


        */s/ Katherine Horwitz*
        Katherine Horwitz
        Assistant United States Attorney

**RESPONSE TO THE DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER—7**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2018, the foregoing RESPONSE TO THE DEFENDANT'S **MOTION FOR REVOCATION OF DETENTION** ORDER was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| JOHN DEFRANCO<br>1031 E. Park Blvd.<br>Boise, Idaho 83712<br>jcd@greyhawklaw.com<br>*Attorney for Pavel Babichenko* | ☐ United States Mail, postage prepaid<br>☐ fax<br>☒ ECF filing<br>☐ email |

                    */s/ Katherine Horwitz*
                    Assistant United States Attorney

**RESPONSE TO THE DEFENDANT'S MOTION FOR**
**REVOCATION OF DETENTION ORDER—8**