BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:18-cr-00258-BLW |
| vs. | |
| PAVEL BABICHENKO, GENNADY BABITCHENKO, | **GOVERNMENT'S MEMORANDUM ON DUE PROCESS** |
| Defendants. | |

The United States of America, by and through Bart M. Davis, United States Attorney for the District of Idaho, and Katherine Horwitz, the undersigned Assistant United States Attorney, hereby submits its Memorandum on Due Process pursuant to this Court's request for briefing. On July 8, the Court requested memoranda detailing the expected trial date and discussing any due process implications arising from the defendants' detention through the present as well as the expected detention through the trial date.  ECF 263 (citing *United States v. Salerno*, 481 U.S. 739 (1987)).

**MEMORANDUM ON DUE PROCESS—1**

As described below, the Ninth Circuit Court of Appeals held that the defendants' pretrial detention does not violate due process. This remains true today—four months later. And, under Ninth Circuit precedent, the defendants' continued detention in this matter through trial is constitutional given their risk of flight, the complexities of the case, and their request for a lengthy trial continuance.

## PROCEDURAL BACKGROUND

After the defendants' indictment for trafficking and money laundering in mid-August, the magistrate judge held a hearing on the government's motion for detention on August 28, 2018. ECF 88. The magistrate judge found that no set of conditions could reasonably assure the defendants' appearance at trial and detained them as a risk of flight under the Bail Reform Act, 18 U.S.C. § 3143(b). The defendants moved to reconsider/appealed the magistrate judge's detention ruling in the district court. ECF 98. The district court conducted a second hearing. That court, too, concluded that the defendants were a risk of flight under the Bail Reform Act. It issued its decision on September 25, 2018. ECF 124; 128. The defendants did not appeal.

On October 22, 2018, the government filed an unopposed motion for complex case designation pursuant to 18 U.S.C. § 3161(h)(7)(ii) and a trial continuance for one year. ECF 134. In that motion—based on the representations of all defense counsel—the government noted that all defense counsel had met, convened, and agreed to a one-year continuance of the trial. *Id.* at 4. Before that filing, defense counsel had collectively represented to the government that a one-year continuance was necessary to adequately prepare a defense in light of the complexities of the case. *Id.*

**MEMORANDUM ON DUE PROCESS—2**

After the government filed the unopposed motion, one of the ten defendants—Gennady Babitchenko—changed course, noticed his objection to a complex case designation, and sought a ninety-day continuance of the then impending trial date.  ECF 135 (Gennady Babitchenko).  To allow consideration of the pending motion to designate the case as complex, the district court granted Gennady Babitchenko's motion to continue the trial for ninety days, resetting the trial for January 22, 2019.  Order, ECF 136.

During the next sixteen days, eight of Gennady Babitchenko's fellow co-defendants followed suit:  each filed a two-sentence objection to both the complex-case designation under the Speedy Trial Act as well as a second trial continuance beyond January 22, 2019.  ECF 137–41, 143, 147, 148.  The government asked for a trial continuance to October 2019.  The district court granted the motion for complex-case designation under the Speedy Trial Act, "[g]iven the obvious complexity" of the case but denied the government's one-year trial continuance, ECF 157 at 5–6.  The trial date was scheduled for June 3, 2019.  Gennady Babitchenko thereafter requested a one-month trial continuance to July, 2019, ECF 159, which the district court granted, ECF 161.  The district court reset the trial date for July 29, 2019.  ECF 207.

On January 28, 2019, the defendants again moved for release, this time solely citing the due process clause.  ECF 164.  The district court denied this motion on January 30, 2019.  ECF 166.  The defendants then filed interlocutory appeals in the Ninth Circuit Court of Appeals.  NOA, 19-30024 (Jan. 31, 2019).  On appeal, the defendants argued that the anticipated length of their detention violates due process, warranting their immediate release from custody.  The Ninth Circuit disagreed.  *United States v. Babitchenko*, Case No. 19-30024, 2019 WL 2022662, at *1 (9th Cir. Mar. 22, 2019).  Specifically, the Ninth Circuit held that the defendants' "contentions

**MEMORANDUM ON DUE PROCESS—3**

that anticipated future delays will render their detention unconstitutional are not yet ripe, and we decline to address them." *Id.* The appellate court therefore affirmed the district court's denial of the defendants' due process claims.

During the June 6, 2019, status conference with the district court, the defendants asked for a trial continuance to October 2020, citing their need to investigate this massive conspiracy, which includes international evidence and witnesses, obtain defense experts, and cull through the huge amount of electronic discovery and physical evidence. *See* ECF 231. Notably, the district court has continued to stress the need to expeditiously proceed to trial. While the district court set trial for October 5, 2020, the district court also stressed that trial may well be reset before that date. *See* Minute Entry, July 19, 2019.

## LEGAL FRAMEWORK

Congress enacted the Bail Reform Act to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released" or pose a risk of flight, and thus governs a court's decision about whether to release an arrestee pending trial. *United States v. Salerno*, 481 U.S. 739, 742 (1987). The Speedy Trial Act accommodates delay caused by an unusually complex case by recognizing that an ends-of-justice delay may be appropriate when:

> the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

18 U.S.C. § 3161(h)(7)(ii). Interpreting this section, the Ninth Circuit has held a case is sufficiently complex when the matter involves multiple defendants, multiple counts of complex wire-fraud charges, voluminous discovery, and witnesses "from both within and outside of

**MEMORANDUM ON DUE PROCESS—4**

Idaho." *See United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993).  Sometimes, therefore, application of the complex-case timeframe under the Speedy Trial Act lengthens pretrial detention of a defendant.

While the length of pretrial detention raises a constitutional issue at some point, the Supreme Court has declined to define the point at which pretrial detention becomes excessively prolonged and, therefore, punitive.  *See id.* at 739.  So too has the Ninth Circuit refused to define a timeframe for determining whether pretrial detention is excessively prolonged.  *See United States v. Gelfuso*, 838 F.2d 358, 359–60 (9th Cir. 1988).  Instead, "the due process limit on the length of pretrial detention requires assessment on a case-by-case basis." *Id.* at 359.  Cases considering due process claims based on pretrial detention generally analyze those claims depending upon the length of pretrial detention.  *See generally United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996) (collecting authority).

Initially, a timeframe of six months to one year in pretrial custody is considered "relatively short," which courts recognize as unripe and not yet implicating due process.  *See id.* at 582–83.  Medium length detentions—a year to two years—are reviewed more closely by questioning the cause of the delay and the culpability of the defendant in delay.  *Id.*  Finally, when a defendant has been detained for a substantial period of time (more than two years), special circumstances must be "especially acute" and the government must not bear responsibility for the delay.  *See id.*  Courts rely on three factors in this analysis:  (1) the nonspeculative length of expected confinement; (2) the extent to which the government (the prosecution and/or the court system) bears responsibility for the pretrial delay; and (3) the strength of the evidence indicating a risk of flight.  *Id.* at 578.

**MEMORANDUM ON DUE PROCESS—5**

## ARGUMENT

The defendants have been detained eleven months on a serious conspiracy charge for which their term of imprisonment is close to the statutory maximum sentence of 20 years' imprisonment.  Accordingly, the defendants have yet to even fall within the first group:  their nonspeculative time in custody falls below the one-year marker recognized by the case law.  As the Ninth Circuit recently recognized, the defendants' due process claim is therefore not yet ripe.  What is more, the Ninth Circuit rejected the defendants' invitation to project the due process claim to future lengths of detention.  *See Babitchenko*, 2019 WL 2022662, at *1 (9th Cir. Mar. 22, 2019).  Specifically, the Ninth Circuit held that the defendants' "contentions that anticipated future delays will render their detention unconstitutional are not yet ripe, and we decline to address them." *Id.*  Regardless, even if so projected, due process is not violated.

### Nonspeculative Length of Pretrial Detention

The government was prepared to proceed to trial approximately one year after indictment, but the defendants sought a substantial continuance to October 2020.  Today, the trial date was reset as the defendants suggested.  Regardless, the actual trial date is uncertain.  Both the government and the district court aspire to conduct the trial before October 2020, but also recognize the defendants' important interest in effective preparation and representation.  Regardless, far lengthier detention has been found not to violate due process in complex cases.  *See United States v. Bundy*, Case No. 2:16-cr-00046-GMN-PAL, 2017 WL 3838032, at *9–13 (D. Nev. Sept. 1, 2017) (holding that defendants' 18–19 month pretrial detention did not violate due process when case had been deemed complex under the Speedy Trial Act); *United States v.*

**MEMORANDUM ON DUE PROCESS—6**

*El–Gabrowny*, 35 F.3d 63, 64–65 (2d Cir. 1994) (pretrial detention of 27 months before

conclusion of trial was constitutional because length "will rarely by itself offend due process").

**Responsibility for Delay**

What is more, the complexities of the case are due to the defendants' actions:  they

moved an incredible volume of counterfeit products, created hundreds of business entities to

evade detection, opened hundreds of bank accounts, conducted thousands of wire transfers to

obfuscate the source of the funds, and involved dozens of coconspirators—spread across three

continents.  *See, e.g.*, Ex. 1 (photos of warehouse); Ex. 22 at 11 (Pavel boasting that he would

like to move a minimum of 5,000 phones per month), 13–16 (instructing the manufacturer to use

multiple (defunct) business names, altered personal names, and different addresses to avoid

detection by customs officials); *see also* Ex. 9 (fraudulent invoices).  Their actions rendered this

case complex under the Speedy Trial Act.  And, "application of the complex-trial exception to

the Speedy Trial Act does not by itself change the regulatory nature of pretrial detention." *United

States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989).

Given the complexity of the conspiracies and the criminal conduct, the investigation has

been complex and lengthy, resulting in voluminous evidence.  That investigation was necessary.

Unlike obviously criminal conduct, such as a drug conspiracy, the criminal nature of an

intellectual-property conspiracy and money-laundering conspiracy is not always facially evident.

Accordingly, this multi-agency investigation has resulted in approximately 400,000 pages in

initial discovery, including 11,867 pages of investigative reports from Homeland Security

Investigations ("HSI"); 589 pages of investigative reports from the Federal Bureau of

Investigation ("FBI"); 325,365 pages of bank records; 12,626 e-mails; 199 pages of Trademark

**MEMORANDUM ON DUE PROCESS—7**

Certificates from the U.S. Patent and Trademark Office; and almost 1,000 pages of search and seizure warrants executed during this investigation. The second round of discovery contained approximately 500,000 e-mails. All of which was provided within two months of indictment.

The defendants' conspiracy resulted in a mountain of physical evidence as well. From the smaller warehouse, agents seized nine pallets of suspected counterfeit goods, which totaled to 13,416 separate items.[1] In the larger warehouse, agents seized fifty-one pallets, which totaled to 90,357 separate items. Illustrative of the nature of these seizures are the 8,399 empty Apple iPhone packages and 18,768 empty Samsung packages seized from the larger warehouse. Apart from the evidentiary value such items may have, the government had an independent duty to seize items bearing counterfeit trademarks as contraband—and ultimately destroy them. *See* 18 U.S.C. §§ 2320, 2323. Accordingly, the government could not simply abandon suspected contraband at the search site.

Like the physical evidence collected from the warehouses, the electronic evidence is vast. Agents seized approximately 96 computers—with a collective capacity of approximately 75 Terabytes—from the warehouses and residences. The forensic images of the hard drives

---

[1] Specifically, among others, the agents seized the following items:
- Apple charging cables, earbuds, iPhone packaging, iPad packaging, and USB power adapters;
- Motorola phone backing, phone batteries, charging cables, phone retail packaging, and Droid Turbo 2 Retail Packaging;
- Samsung USB adapters, batteries, Galaxy retail packaging, charging cables, earbuds, Galaxy Instruction Booklets (Quick Start Guide), Gear S2 Retail packaging, Galaxy Grand Retail packaging, Galaxy S3 Mini retail packaging, i405 Stratosphere cellular phone, Samsung Galaxy Ace cellular phone, Samsung Galaxy S4 Zoom cellular phone, Samsung Galaxy S4 cellular phone, Samsung Exhibit 2 cellular phone (Model T679), Samsung Galaxy Light cellular phone (Model T399), and used and broken cellular phones.

**MEMORANDUM ON DUE PROCESS—8**

from the 96 computers were placed on 42 destination hard drives, each with an approximate capacity of four to six Terabytes.  As of this filing, all electronic data has been copied and provided to the discovery coordinator.  The government is "doing all [it] reasonably can be expected to do to move the case along."  *United States v. Infelise*, 934 F.2d 103, 104–05 (7th Cir. 1991) (finding no due process violation by two-plus years of pretrial detention in complex case).  Like the complexity and scope of the conspiracy, the defendants are responsible for the October 2020 trial date.  They sought a lengthy continuance, not the government.

**Risk of Flight[2]**

This Court ordered that both the defendants be detained for good reason.  All those reasons remain and more have since been uncovered.  For example, in a recent June 2019 interview with federal agents, a cooperating witness (CW) disclosed that they were approached by Piotr Babichenko at the Morningstar Church and asked to work for the cell phone business as a "customer service representative."  Eventually, the CW was asked to open both a bank account and an Amazon account to sell counterfeit products, which Pavel and Piotr Babichenko would then operate.  The CW described their 6% cut, how they repackaged goods in the Babichenko's warehouse, and how they quickly discovered the products were not genuine based on the identical serial numbers on the phones.  The CW also stated that Igor Babichenko sold cell

---

[2]    The government has additional, new proffer supporting the defendants' continued risk of flight. For brevity's sake, each is not fully addressed herein.  Attached, however, are Government's Exhibits 1 through 26, which all support detention. By way of example, in Exhibit 25, Pavel Babichenko instructs a manufacturer to "make sure sticker says made by apple." Exhibit 22 includes WeChat excerpts between Pavel and a Chinese manufacturer wherein the two openly discuss "fake" goods and how to get around customs.  Ex. 22, 3–4, 6–7 (describing using different business names, addresses, and fake names).  And Exhibit 24 details the large amount of money—$5,580,045.20—*wired to* a Midstar LLC bank account controlled by Pavel and his wife *from* Hong Kong.

**MEMORANDUM ON DUE PROCESS—9**

phones for Midstar and that the Babichenkos were building property in Brazil for "spiritual" mission work, intending to relocate there. *See also* Ex. 13 (discussing Gennady, Paul, Tim, and Igor's Brazilian properties).

Recently, Pavel and Gennady Babichenko's brother, Igor Babichenko, has fled the country under alarming circumstances. On June 5, 2019, federal agents visited Igor Babichenko and his wife Natalya's home in Jacksonville, Florida. Natalya answered the door but refused to speak with the agents. Three days later, Igor, Natayla, and their three kids traveled to Brazil. They were to return to the United States on June 25, 2019, but did not.  Nor have they returned since. On July 17, 2019, federal agents visited their home in Jacksonville, Florida, and discovered a realtor's lock box on the door.

The defendants' financial activity likewise confirms their plan to relocate to Brazil.  At the time of indictment, August 2018, Pavel Babichenko had $184,680.85 in equity in his home in Meridian, Idaho, which is valued at $1,267,300.00.  He had an interest-only loan.  Rather than invest his property in Idaho, Pavel Babichenko transferred $1,410,852.41 to Brazil.  Gennady Babitchenko transferred at least $2,501,262.14.  In total, the Babichenkos have relocated at least $4,148,314.55 to Brazil.  The figure continues to increase.  And, contrary to the defendants' suggestion otherwise, Brazil would not extradite the defendants. *See* Ex. 26, 2–3 (excluding intellectual property and money laundering crimes), 4 (prohibiting extradition "[w]hen the person whose surrender is sought has already been or is at the time of the requested (sic) being prosecuted in the requested State for the crime or offense for which his extradition is requested.").   Additionally, the defendants face serious criminal liability.  Based on the government's investigation and calculations, the defendants face at least a U.S. Sentencing

**MEMORANDUM ON DUE PROCESS—10**

Guideline range of 235 to 293 months' imprisonment.  *See* U.S.S.G. §§ 2B1.1, 2B5.3(b)(6), 3B1.1(a).  The length of their pretrial detention is thus much shorter than their potential sentence.

Even if the Court projects detention to October 2020, longer periods of delay—three years in some circumstances—have been upheld by the Ninth Circuit as proper under due process.  *See United States v. Elmore*, Case No. 13-cr-00764-WHO-1, 2016 WL 6427911, at *2 (N.D. Cal. Oct. 31 2016) (citing *Ailemen*, 165 F.R.D. 571) (recognizing that up to three-year pretrial detention was likely given the pendency of the government's interlocutory appeals in the Ninth Circuit), *aff'd*, 2016 WL 10520758, at *1 (9th Cir. Dec. 16, 2016) (holding no due process violation).

## CONCLUSION

As of now, the defendants have been in custody eleven months.  This does not violate due process.  Even if this Court projected the length of detention to October 2020, due process is not violated for the above-stated reasons.  Simply, the defendants are a serious risk of flight, they requested the extended delay and created the complexities of which they complain.  Accordingly, their due process argument fails, as the Ninth Circuit recently found.

Respectfully submitted this 19th day of July, 2019.

BART M. DAVIS
United States Attorney
By:


*/s/ Katherine Horwitz*
Katherine Horwitz
Assistant United States Attorney


**MEMORANDUM ON DUE PROCESS—11**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 19, 2019, the foregoing **Memorandum on Due**

**Process** was electronically filed with the Clerk of the Court using the CM/ECF system, and that

a copy was served on the following parties or counsel by:

| | |
|---|---|
| JOHN DEFRANCO<br> 1031 E. Park Blvd.<br> Boise, Idaho 83712<br>jcd@greyhawklaw.com<br>*Attorney for Pavel Babichenko* | ☐ United States Mail, postage prepaid<br><br>☐ fax<br><br>☒ ECF filing<br><br>☐ email |
| JEFFREY BROWNSON<br>223 North 6th Street, Suite 215<br>Boise, ID 83702<br>jb@jeffreybrownsonlaw.com<br>*Attorney for Gennady Babitchenko* | ☐ United States Mail, postage prepaid<br><br>☐ fax<br><br>☒ ECF filing<br>☐ email |

*/s/ Katherine Horwitz*
Assistant United States Attorney

**MEMORANDUM ON DUE PROCESS—12**