JOHN C. DEFRANCO, ESQ. ISB 4953
ELLSWORTH, KALLAS & DEFRANCO, P.L.L.C.
1031 E. Park Blvd.
Boise, ID 83712
Phone: (208) 336-1843
Fax: (208) 345-8945
E-mail jcd@greyhawklaw.com

Attorney for Defendant – Pavel "Paul" Babichenko

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMENTS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>        Defendants. | Case No. CR-18-00258-BLW<br><br>MEMORANDUM REGARDING TRIAL DATE AND DUE PROCESS VIOLATION REFERENCE CONTINUED DETENTION |

Paul is a lifelong Idahoan. He graduated from Boise High School and Boise State University. He is hardworking. He is a business owner. He worships at a local church. He is happily married. He is a committed father of five. He has no criminal history.

His case has a lot of discovery. The investigation in support of it has gone on for years. The prosecution's preparation has not resulted in the disclosure of organized discovery. Defense counsel is using experts to organize material for a proper review. Trial

is scheduled for October 5, 2020. A presumptively innocent man will have been detained for twenty-six (26) months before the government's proof can be challenged.

## ARGUMENT

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" To be sure, pretrial detention of a presumptively innocent person can—"in the rare case"—be justified. United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). But "[l]iberty is"—always—"the norm," and there will come a point in time, even in a case where detention was initially justified, when continued pretrial detention violates due process. United States v. Salerno, 481 U.S. 739, 755 (1987).

Paul argues the issue is ripe. "Detention lasting fourteen (14) months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process." United States v. Gonzalez-Claudio, 806 F.2d 334, 341 (2d Cir. 1986). Indeed, "[i]n many, perhaps most, cases, sixteen (16) months would be found to exceed the due process limitations on the duration of pretrial confinement." "[T]wo years of pretrial detention is lengthy"— troublingly so. United States v. Taylor, 602 F. Appendix 713, 717 (10th Cir. 2015). A period of twenty-seven (27) months "is unquestionably a long duration." United States v. El-Gabrowny, 35 F.3d 63, 65 (2d Cir. 1994).

The above stated cases and all the others address detention by examining the number of months in pretrial detention. There is no uniform point where detention becomes excessively prolonged and thus punitive. The United States Supreme Court purposefully chose not to identify when in a particular case detention becomes unreasonable, irrespective of the government's regulatory interest in detention. U.S. v. Salerno, 481 U.S. at 747 n. 4,

107 S.Ct. at 2102 n. 4. (1987). Counsel believes the Court used care to protect a judge's discretion reference release. Most cases address detention in the context of disabling an arrestee's execution of a threat to commit new crimes or disrupt the legal process. Sole flight risk issues and lengthy pretrial confinement seem to be more likely to result in release. The analysis seems clinically cold. The human element is virtually ignored in the analysis. Paul's wife and kids are missing him terribly. His attorney is struggling to gauge the adequacy of his trial preparation. It's difficult with a client incarcerated.

A big number in pretrial detention months will trigger two inquiries. First, a court must examine whether "the total length of pretrial detention *by itself* offends due process." United States v. Rodriguez, 2012 WL 6690197, at *1 (W.D.N.Y. Dec. 21, 2012) (emphasis added). Second, if that total length of time does not, in itself require release, the court must also evaluate critical factors bearing on whether detention has become unconstitutionally excessive. In addition to the length of expected detention, the most salient factors are 1) who bears responsibility for the delay; 2) gravity of the charges; and 3) strength of the evidence underlying detention. See United States v. Omar, 157 F. Supp. 3d 707, 715 (M.D. Tenn. 2016) (citing United States v. Watson, 475 F. Appendix 598, 601 (6th Cir. 2012) and United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000)); see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (endorsing Second Circuit's general approach).

The court must consider the degree to which continued detention will undermine the accused's ability to effectively prepare for trial and otherwise infringe on the Sixth Amendment right to counsel. See Faretta v. California, 422 U.S. 806, 819 (1975) (Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused *personally* the right to make his defense" (emphasis added)); see also 18

U.S.C. § 3142(i) (codifying the due process requirement that a person be released if "such release [is] necessary for the preparation of the person's defense or for another compelling reason").

### A.  The Total Length of Paul's Pretrial Detention Violates Due Process

The First Circuit held in "many," if not "most," cases "sixteen (16) months would be found to exceed the due process limitations on the duration of pretrial confinement." Zannino, 798 F.2d at 548.  The twenty six (26) months Paul is presently slated to spend in custody blows past this threshold.  This case should not be one of very few cases where the Due Process Clause authorizes pretrial detention.

The initial decision to detain was a reasoned choice by an experienced judge.  The court decided release would create either an unreasonable risk of flight, or there were no conditions or sets of conditions that would ensure the defendant's presence for court.  The court opined it was a close call.  The government cited foreign real estate investments and proof of residency outside the U.S. as evidence creating an unreasonable risk of opportunity for flight.  The defense countered there is no inclination to flee.  There was a desire to leave the United States at an unspecified time in the future.  That desire predated criminal charges.

The detention decision produced strong feelings.  How could anyone feel unfairly singled out from behind bars?  I've never encountered a more respectful and stoic man reference the court's decision.  Paul's challenge is not an attempt to rehash detention from a position of dissatisfaction.  It's a request to examine the original decision in a new light.

The defense argues no court has upheld twenty-six (26) months of pretrial detention based on risk of flight alone.  In United States v. Gonzalez-Claudio, 806 F.2d 334 (2d Cir. 1986), the Second Circuit held that a fourteen (14) month period of pretrial detention for

defendants who had been found to pose solely a risk of flight was unconstitutional. Even where a defendant poses a danger to the community, courts have not hesitated to find that a period of pretrial detention comparable to Paul's offends due process. See United States v. Ojeda-Rios, 846 F.2d 167 (2d Cir. 1988) (after 32 months of pretrial detention, due process required release of bank robber charged with a "pattern of violent acts" who also posed a flight risk).

By contrast, lengthy pretrial detentions are constitutional only under extraordinary circumstances. Courts have upheld comparable periods of pretrial detention in cases involving dangerous international terrorists, United States v. El-Gabrowny, 35 F.3d 63 (2d Cir. 1994) (reluctantly authorizing a twenty seven (27) month period of pretrial detention for terrorist who helped bomb the World Trade Center, possessed fraudulent passports, had a document history of evidence tampering, and assaulted law enforcement when they came to arrest him), or incorrigibly violent criminals, United States v. Millan, 4 F.3d 1038, 1047-48 (2d Cir. 1993) (Thirty one (31) months of pretrial detention authorized for defendant who had a lengthy criminal history, including shooting his wife, and had continued committing crimes while on parole following that conviction).

The considerations for the court seem clear, but the analysis is unique and challenging. No one has a crystal ball and this case is so factually different. Is continued detention is justified? Only if "the threat to the government's regulatory interests that would [be] posed by release of the defendant [is] extraordinarily acute." United States v. Ailemen, 165 F.R.D. 571, 586 (N.D. Cal. 1996).

    **B.**    **Paul's Continued Detention Violates Due Process Given Unique Circumstances**

The defense argues the potential for twenty-seven (27) months of detention for a person 1) with no criminal history, 2) who concededly poses no danger, and for whom 3) the evidence of flight risk is a circumstantial opportunity for flight only, constitutes a per se violation of the due process clause, but you can't stop there. Paul argues an as applied due process challenge to detention. A court presented with a lengthy period of delay, but one not quite long enough to constitute a per se due process violation, must weigh three factors to decide whether continued detention is justified. Just like argued previously: 1) who bears responsibility for the delay; 2) the gravity of the charges; and 3) the strength of the evidence underlying detention. See Omar, 157 F. Supp. 3d at 715 (citing El-Hage, 213 F.3d at 80).

1. **Responsibility For The Delay**

This is a complicated case. The government's approach to prosecuting it has contributed to the length of time defense counsel needs to adequately prepare. The lack of organized discovery, by count, by defendant, or otherwise has contributed to the delay. Paul and his family were subjected to the obloquy of a public indictment contemporaneous with the service of search warrants. This information could have been seized, digested and organized before making arrests.

There could been some separating out of "Finding Nemo" and other irrelevancies from the evidence the government believes to be probative of Paul's guilt.[1] It could have

---

[1] "Finding Nemo" comes from the government's comment at the most recent detention hearing, and it illustrates a deeper problem: The government's representations to this Court have seemingly shifted—arguably strategically—over time. This is true beyond the misrepresentation regarding discovery in the initial detention hearing (*see* ECF No. 218). It extends, also, to its representations about discovery. When the government first asked the Court to declare this case complex—over defendants' objection—the government emphasized how massive the discovery is, describing a case involving over 75 terabytes of information. At the most recent detention hearing, however, where the concern is whether this case's complexity argues for release, the

planned, in advance, for the lengthy privilege review that it has had to belatedly undertake after charging this case (*see* ECF No. 185 (describing privilege review and issues related to the same)).[2]

Instead of attempting to cogently organize its evidence, the government simply "bur[ied] [Paul] in paper," providing him piecemeal with an amount of data that represents millions of pages of discovery. See United States v. Turkish, 458 F. Supp. 864, 882 (S.D.N.Y. 1978) (criticizing government for "burying the defendant in paper"). The discovery is electronically stored information (ESI). It's difficult to open, scan, browse and assimilate. The government has chosen to shift the responsibility (and costs) for even basic discovery organization onto the judiciary, requiring CJA counsel and the discovery attorney to wade through volumes of material using slow and unwieldy technology.

In other jurisdictions this practice has been criticized. See United States v. Bortnovsky, 820 F.2d 572, 573 (2d Cir. 1987) (government does not fulfill discovery obligations "merely by providing mountains of documents to defense counsel"); United States v. Barret, 824 F. Supp. 2d 419 (E.D.N.Y. 2011) (a voluminous discovery dump will "unfairly overwhelm[]" a defendant); Turkish, 458 F. Supp. at 882; see also United States v. Salyer, 271 F.R.D. 148, 153 (E.D. Cal. 2010) (placing initial burden of organizing discovery on "AUSAs and investigators.)

---

government downplayed the amount of discovery involved—representing to the Court that a lot of it could be "Finding Nemo" and other irrelevancies. This certainly could appear to be gamesmanship ultimately supporting an argument in favor of Paul's release. See United States v. Vastola, 652 F. Supp. 1446, 1448 (D.N.J. 1987) (Where "the strategy of one side or the other has needlessly added to the complexity" of a case, that fact favors pretrial release.)

[2] Due to the discovery of potentially privileged material, Paul and defense counsel have no access to an email account from the primary company linked to Paul—Midstar—and will not have access until the filter team review, which is barely in the initial stages, is complete. This account contains critical and potentially exculpatory information.

## 2. Gravity Of The Charges

Paul is charged with an economic offense. It's serious, but compared to detention for other defendants subjected to lengthy pretrial detentions it seems less serious. Paul is an accused gentleman and not just in comparison to other defendants. He's the real deal.

Paul's alleged fraud case is different in kind from many serious fraud cases. Even if every one of the government's allegations were true, Paul did not steal like Bernie Madoff. Cf. U.S. v. Madoff, ECF No. 22, No. 1:09-cr-213 (S.D.N.Y.) (release on conditions). He's not like Marc Dreier. Cf. U.S. v. Dreier, ECF No. 17, No. 1:09-cr-85 (S.D.N.Y.) (release on conditions). He is dissimilar to David H. Brooks (also released on conditions).[3] The bulk of the accusations against Paul are alleged crimes for the wholesale distribution of counterfeit cellphones to individual sellers who sell on-line at discount prices. He was a motivated businessman whose connection to the phone industry predates the I-phone. Apple and Samsung must have it out for him. He must have evoked the ire of gigantic corporations, but he has inflicted no personal economic misery on any human being. This factor should militate in favor of release.

## 3. The Strength Of The Evidence Underlying Detention

The last factor that bears on whether lengthy pretrial detention contravenes due process is the strength of the evidence supporting detention. As argued within and as considered against the backdrop of the Due Process Clause reference the trial setting, the

---

[3] To be sure, the conditions imposed on each of these astronomically wealthy defendants—charged with astronomical crimes—included conditions that Paul simply cannot afford to purchase. The point is not that these conditions are necessary in Paul's case—they are not. Rather, the point is that Paul is *nowhere near* these defendants in terms of culpability or means of flight, yet he is in jail and they were able to remain free, assisting their attorneys, throughout their cases. From a due process perspective, this is highly troubling.

evidence is not compelling. The gentleman defendant is a worthy of release. The absence of a criminal history, the peaceful nature of his existence, the inclination to stand tall against the allegations, the lack of evidence showing an inclination towards flight, and his anchoring ties to Idaho including his community, his family (school age children, who are devastated by the absence of their father) suggest he will answer the call to be present in court.

The government's circumstantial case for flight flows from 1) Paul's missionary ties to Brazil, 2) conflicting evidence of his intent to eventually relocate to Brazil, 3) an unsubstantiated and speculative allegation that Paul has access to large sums of cash, 4) A brother who has allegedly fled and 4) rolling allegations in this criminal case.[4] Criminal charges, standing alone, are not sufficient to prove an irremediable risk of flight. See, e.g., United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). The same is true for mere evidence of foreign ties, which, absent evidence of concrete planning or preparations to flee, is not enough to establish a serious risk of flight warranting the nuclear remedy of pretrial detention. See, e.g., United States v. Himler, 797 F.2d 156, 162 (3d Cir. 1986) (declining to detain defendant with significant foreign ties where "there is no ***direct evidence*** to suggest [the defendant] would flee from prosecution in the future"); United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985) (ordering defendant's release—even though he was an alleged Iranian spy—due to his extensive ties to the United States); United States v. Giordano, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) (detention of person with foreign ties justified only based on "[e]vidence of a ***serious intent*** to flee the country in response to an indictment"); United States v. Cruz, 363 F. Supp. 2d 40, 47 (D.P.R. 2005) (requiring

---

[4] The "least important" factor favoring detention. Motamedi, 767 F.2d at 1408.

"concrete evidence" of intent to flee to justify detention of businessman with extensive foreign contacts).[5]

### C. Sixth Amendment Concerns

The Sixth Amendment concerns in this case are real. See Faretta, 422 U.S. at 819. Paul's incarceration will result in defense counsel being vastly less prepared for trial than if he were released. The location of incarceration is certainly inconvenient for visitation, but the real issue is the incarceration itself. The difficulty is in the nature of the discovery. Case preparation in a complex fraud case requires active input and guidance from the client. The jail visit dynamic frustrates my ability to effectively communicate. This is in no way a criticism of the detention facilities or their staff. It's simply the subject matter. Dropping off stacks of reports or disks at the jail and then visiting for discussion doesn't work here. This case is high volume electronic discovery. Both client and counsel need to be able to search various databases in each other's presence and actively discuss what they are viewing.

Identifying relevant evidence is rarely immediately apparent to my paralegal or myself. My incarcerated client does not have access to litigation technology such as Casepoint. The client's understanding of the configuration of his business and underlying transaction history is critical to the identification of key documents as relevant discovery. His release is necessary for adequate preparation. (See Dkt. 282-1, Declaration of J. Brownson).

### CONCLUSION

---

[5] See also United States v. Sabhnani, 493 F.3d 63 (2d Cir. 2007) (reversing order of detention of defendants, who were natives of Indonesia, and ordering release despite defendant's "strong motive to flee," "ample means to finance flight," and "strong . . . ties to their native countries"); United States v. Hanson, 613 F. Supp. 2d 85 (D.D.C. 2009) (ordering release of defendant with "strong ties to China" charged with "serious" crimes and facing "strong evidence" including their "own statements" because conditions including GPS monitoring sufficed to ameliorate flight risk).

-11-

The added information of a lack of equity in his home and his brother going to Brazil are last-ditch efforts to influence the court in the wrong direction. When Paul purchased his house he was upside down after the mortgage crisis created by the economic downturn. His mortgage was not a good investment for a long time. Furthermore, the residency requirements for Brazil require personal travel by all cardholders every two years. Paul is praying for an opportunity to turn over his passport and family residency cards to the pretrial release officer next week.

DATED this 19th day of July 2019.

_____/s/_____
John C. DeFranco
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of July, 2019, I filed the foregoing document electronically through the CM/ECF system.

Katherine L. Horwitz
U.S. Attorney's Office
Washington Group Plaza, IV
800 East Park Blvd., Suite 600
Boise, ID  83712
katehorowitz@usdoj.gov

Christian S. Nafzger
U.S. Attorney's Office
Washington Group Plaza, IV
800 East Park Blvd., Suite 600
Boise, ID  83712
Christian.nafzger@usdoj.gov

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com
*Attorney for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com
*Attorney for Timofey Babichenko*

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Robyn A. Fyffe
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

S. Richard Rubin
Melissa Winberg
702 W. Idaho Street, Ste. 1000
Boise, ID 83702

-13-

dick_rubin@fd.org
melissa_winberg@fd.org
*Attorney for Anna Iyerusalimets*

Ellen Nichole Smith
P.O. Box 140857
Garden City, ID 83714
Ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

Gabriel McCarthy
802 W. Bannock Street, Suite 201
Boise, ID 83702
gabe@gabrielmccarthy.com
*Attorney for Artur Pupko*

                                                /s/
                                    John C. DeFranco