UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>GENNDAY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Mikhail Iyerusalimets's Motion to Suppress Post-Arrest Statements. Dkt. 462. The Court conducted an evidentiary hearing on July 17, 2020.  After considering the evidence and argument presented by the parties, the Court will deny the motion for the reasons explained below.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Mikhail Iyerusaliments and his wife, Anna Iyerusalimets, were arrested on the morning of August 22, 2018. Dkt. 464-1. At the time, Mikhail claims to have been suffering from a cold and high fever. Dkt. 464 at 2. After eight hours of detention at the Ada County jail, Agent Culbertson and Agent Denning interviewed Mikhail. Dkt. 464 at 3-4. The agents provided Mikhail with a Statement of Rights, which stated:

> You have the right to remain silent. Anything you say can be used against you in a court, or other proceedings. You have the right to consult an attorney before making any statement or answering any questions. You have the right to have an attorney present with your during questioning. If you cannot afford an attorney, one will be appointed for you before any questioning if you wish. If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney. Dkt. 464-3.

Mikhail signed the Statement of Rights, under text that read "I have had the above statement of my rights read an explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise or reward or immunity." *Id.*

Agents Denning and Culbertson also verbally read Mikhail his Miranda rights, and explained the waiver as follows:

DENNING:        So get started off. Go ahead and read through this.

MIKHAIL:        Okay.

DENNING:        You have the right to remain silent. Anything you say can be used against you in court or other proceedings.

DENNING:        You have the right to consult to an attorney before making any statement or answering any questions. You have the right to have an attorney present with you during questioning. If you cannot afford an attorney, one will be appointed for you before any questions if you wish. If you decide to answer questions now, you still have the right to stop the questioning at any time or to stop the questioning for the purpose of consulting an attorney.

MIKHAIL:        Uh-huh.

CULBERTSON:     And we ask that – this says that you waive your rights. You don't necessarily waive your rights. But like she said, you can stop your questioning at any time you want.

MIKHAIL:        Okay.

CULBERSTON:     We just ask that you would print and sign your name so that we can –

MKHAIL:         Okay.

**MEMORANDUM DECISION AND ORDER - 3**

CULBERSTON:    -- show we read you this. All right?

MIKHAIL:         Yes.

Dkt. 464-2 at 2.

The evidence before the Court shows that throughout the interview, Mikhail did not attempt to invoke his right to have an attorney present or his right to remain silent. Dkt. 464-2.  Mikhail now brings this Motion to Suppress (Dkt. 462) the statements he made in this interview on the grounds that he did not properly waive his Miranda rights.

## LEGAL STANDARD

In *Miranda*, the United States Supreme Court established the rule that a law enforcement officer must inform an individual in custody of his right to silence and his right have the assistance of an attorney before officers may interrogate him. *Miranda v. Arizona*, 384 U.S. 436, 475-78 (1966). An individual can waive his Miranda rights, so long as the waiver is done "voluntarily, knowingly, and intelligently." *Id.* at 444. Absent a proper waiver, any statement taken during custodial interrogation must be excluded from evidence. *Id.* at 476.

A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 474 U.S. 412, 421 (1986). A waiver is made knowingly and intelligently when the suspect is fully

aware of the nature of his right and the consequences of abandoning it. *Moran*, 474 U.S. at 421. A waiver is involuntary when the defendant's "will was overbourne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The coercive nature of the police's questioning is central to an analysis of the voluntariness of a defendant's waiver. *Cox v. Del Papa*, 542 F.3d 669, 675 (9th Cir. 2008).

The government bears the heavy burden of proving the defendant knowingly, voluntarily, and intelligently waived his Miranda rights. *North Carolina v. Butler*, 441 U.S. 369, 374 (1979). Waiver is proper "only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *Moran*, 474 U.S. at 421. Relevant factors include the background, experience, and conduct of the accused. *Butler*, 441 U.S. at 374. Though not required, an express written or verbal waiver of one's Miranda rights is strong evidence of the waiver's validity. *Id.* at 373.

## ANALYSIS

Defendant Mikhail Iyerusalimets argues he did not properly waive his Miranda rights because (1) he did not fully understand his rights as a result of the agents' contradictory statements, and (2) he did not voluntarily waive his rights because he was sick, distraught, and subject to coercion by the agents questioning him. Both arguments are inconsistent with the record before the court.

## A.      Contradictory Statements by Law Enforcement

Mikhail argues he did not fully understand that his signature on the

Statement of Rights constituted a waiver because Agent Culbertson said "[y]ou

don't necessarily waive your rights" and "[w]e just ask that you would print and

sign your name so we can show that we read you this." Dkt. 464-2 at 2. The

Supreme Court in *Miranda* did not create a precise formulation of the required

warnings, nor a "talismanic incantation" to satisfy the rule. *California v. Prysock*,

453 U.S. 355, 359 (1981). In determining the adequacy of a police officer's

Miranda warnings, reviewing courts are not required to examine the warnings "as

if construing a will or defining the terms of an easement," but simply by

considering whether the warning reasonably conveyed the suspect's rights as

required by *Miranda*. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (holding a

police officer's recitation of Miranda warnings was sufficient despite minor

conflicting statements because the warnings in their totality satisfied *Miranda*). If

an inconsistent warning is given, the burden is on the government to clarify the

suspect's rights. *United States v. San Juan-Cruz*, 314 F.3d 394, 388-89 (9th Cir.

2002).

The validity of a defendant's Miranda waiver is determined by the totality of

the circumstances, including the background, experience, and conduct of the

accused. *North Carolina v. Butler*, 441 U.S. 369, 374 (1979). *See also United States v. Bernard S.*, 795 F.2d 749, 752-53 (9th Cir. 1986) (finding proper Miranda waiver despite the defendant's age and alleged difficulty understanding English because he was read his rights, signed a written waiver, did not ask any questions regarding his rights, and did not indicate he was too upset to understand the waiver); *United States v. Doe*, 787 F.2d 1290, 1293 (9th Cir. 1985) (finding proper Miranda waiver where the defendant was told his Miranda rights, signed a written waiver, showed no signs of distress, and conversed coherently with the agent).

Here, the context of the conversation clarifies Culbertson's contradictory statements. Culbertson said, in full, "[y]ou don't necessarily waive your rights. But like she said, you can stop your questioning at any time you want." Dkt. 464-2 at 2. Culbertson's statement was not confusing.  It was clearly his attempt to avoid any suggestion that by signing the document he irrevocably waived his right to remain silent and his right to counsel.

Further, the Statement of Rights explained the significance of signing the waiver directly above Mikhail's signature. Dkt. 464-3. Mikhail's background (as a 30-year-old English-speaker who ran several businesses) further demonstrates his ability to understand his rights and any waiver thereof. Mikhail asked the agents no questions about the waiver, other than whether he needed to input the time and

date. Dkt. 464-2 at 2. Throughout the interview, Mikhail never asked to speak to his attorney or invoked his right to remain silent.

### B.   Mikhail's Mental State and Alleged Coercion by the Agents

Mikhail also argues his waiver was not voluntary because he was suffering from a fever, headache, and concerns about his wife and children's safety. Dkt. 464 at 13-14. Mikhail argues that these factors, coupled with the coercive nature of the agents' questioning, rendered his waiver involuntary. *Id.* Neither Mikhail's purported physical and mental conditions, nor the agents' questioning, is sufficient to suggest his waiver was involuntary.

Factors relevant to considering whether the police's conduct was coercive include the defendant's age, education, knowledge of his rights, the nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226. The accused's mental state, though not determinative, is a factor in considering whether the police's conduct was coercive. *United States v. Preston*, 751 F.3d 1008, 1020 (9th Cir. 2014). As stated above, courts find valid waiver where the defendant appears coherent, understands both his rights and the police's questioning, and does not show signs of distress. *See Bernard*, 795 F.2d at 752-53; *Doe*, 787 F.2d at 1293. *Cf. United States v. Tingle*, 658 F.2d 1334 (9th Cir. 1981) (finding the defendant's statements were involuntary

as a result of the police's coercive conduct, noting the defendant was crying and visibly shaking during the interrogation).

Mikhail claims he was suffering from a cold, high fever, and headache during the interrogation. Dkt. 464 at 2. However, during his booking process, he was asked a series of questions by Deputy Hodges about his medical condition, and his responses were recorded on a Questionnaire Report admitted as Plaintiff's Exhibit No. 3. His responses do not suggest any medical conditions or concerns. Indeed, in response to Question H24, Mikhail answered "No" to the question: "Is there any additional information regarding past or current health conditions health services needs to be aware of?" Special Agent Denning also testified that during the agents' interview of Mikhail he never complained of any medical problems and never acted in a way that suggested he was sick.

The only evidence that Mikhail was suffering from any type of illness was (1) the testimony of his next-door neighbor that he didn't look well the night before his arrest; (2) his uncorroborated affidavit testimony in which he suggests that on three occasions before the interview he complained of being feverish and asked for medication; and (3) the jail records showing that he did receive Tylenol the day after the interview. The Court has no reason to doubt that Mikhail did not feel well the night before his arrest and that he received an over-the-counter

medication the day after the interview.  However, his statements that he repeatedly asked for medication on the day of his arrest and interview is inconsistent with the record before the Court.  Such a request was not noted during the medical intake interview conducted by Deputy Hodges, no such request was made during the recorded interview and Special Agent Denning testified that he did not look ill and made no such request before or after the recorded interview.

Importantly, the Court has reviewed both the transcript and the recording of the interview.  Mikhail never suggested in any way that he was not feeling well. Moreover, Mikhail appeared to clearly understand the questions throughout the lengthy interrogation, and he did not show any difficulty in providing responsive answers. His answers to questions were coherent and appropriate.   Nothing in the record supports a finding that his waiver was coerced or involuntary because of his medical condition.

Mikhail further argues his waiver was involuntary because of the agents' coercive manipulation of his concerns for his wife and children. Dkt. 463 at 14-16. Courts commonly find police coercion where the officers make threats or promises relating to the defendant's children. *See Brown v. Horell*, 644 F.3d 969 (9th Cir. 2011). In *Lynumn v. Illinois*, the Supreme Court held the police's conduct was coercive because the defendant confessed only after the police told her that her

state financial aid would be cut off and her children taken from her if she did not

cooperate. 372 U.S. 528, 534 (1963). In *Brown v. Horell*, the court held the officer

coerced the defendant "by conditioning his ability to be with his child on his

decision to cooperate with the police." 644 F.3d 969, 980 (2011).

Here, there was no such coercion. Mikhail initiated the conversation at issue

by asking Culbertson what would happen to his wife and children during the

criminal proceeding. Dkt. 464-2 at 21-22. Though Culbertson told Mikhail that

cooperation would be considered favorably by the prosecution, he repeatedly stated

he did not have the authority to make any decisions in that regard and encouraged

Mikhail to consult with his attorney. *Id.* In response to Mikhail's request to take

the fault on himself rather than his wife, Culbertson said "I can't say that, but the

attorneys might be willing to do something like, if that makes sense." *Id.* at 21.

Culbertson further stated "…what I would just say to you, because I mean we

really can't give you any real advice, just talk with your attorney. He will tell you

everything we're telling you now. And he will – and he will help you." *Id.* at 22.

Mikhail never showed signs of distress during this exchange or throughout the

interview. Further, the agents never threatened or physically touched Mikhail.

There is no evidence the agents deprived Mikhail of sleep or withheld food from

him. The record undercuts Mikhail's argument that his waiver was involuntary.

**MEMORANDUM DECISION AND ORDER - 11**

For the foregoing reasons, the Court will deny Defendant Mikhail

Iyerusalimets's Motion to Suppress Post-Arrest Statements. Dkt. 462.

## ORDER

**IT IS ORDERED that:**

1.     Defendant's Motion to Suppress (Dkt. 462) is **DENIED**.

DATED: July 17, 2020

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 12**