BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
ASSISTANT UNITED STATES ATTORNEYS
TIMOTHY FLOWERS, TENNESSEE STATE BAR NO. 030151
UNITED STATES DEPARTMENT OF JUSTICE TRIAL ATTORNEY
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALIE BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS,<br>MIKHAIL IYERUSALIMETS,<br><br>　　　　　Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO EXCLUDE EXPERT TESTIMONY (ECF 645, 646, 647, 648, 649, 651, 652, 653)** |

The Court should deny seven of the Defendants' motions to exclude expert

testimony (ECF 645, 646, 647, 648, 649, 651, and 653) without a pretrial *Daubert* hearing

because the Government has more than satisfied its burden by a preponderance that the

noticed experts are qualified, their opinions are reliable, and their testimony will be helpful

to the jury.  The remaining motion (ECF 652) is moot.

# BACKGROUND

Over the course of this investigation into the Defendants' counterfeit trademark goods trafficking and money laundering, law enforcement has consulted numerous experts. The largest category of experts is comprised of representatives working for the trademark holders.  For example, between 2016 and 2018, the trademark-holder experts examined dozens of cellphone products purchased by undercover agents from the Defendants.  When federal agents executed a search warrant at 12586 and 12554 Bridger Street Warehouses and recovered 60 pallets of counterfeit products, trademark-holder representatives examined items recovered from the warehouse to determine authenticity.  Trademark holder representatives likewise examined thousands of products collected during the execution of a separate search warrant for the outbound 2,451 packages shipped from the 12586 Bridger Street Warehouse on August 21 and 22, 2018. Consequently, by the end of this investigation, the trademark holders had examined thousands of the Defendants' products to determine the authenticity of each.  To record those evaluations, the Government produced:

- five declarations from Apple representatives detailing the reasons for their conclusions that the products reviewed in the case were counterfeit, *see, e.g.*, Exhibit One;

- over 2000 pages of photographs and excel spreadsheets created during Apple's review of the Defendants' products, *see, e.g.*, Exhibit Two;

- twenty-one reports from Samsung representatives detailing the reasons for their conclusions that the products reviewed in the case were counterfeit, *see, e.g.*, Exhibit Four (filed under seal);

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—2

- over 1,200 pages of photographs and excel spreadsheets created during Samsung's review of the Defendants' products;

- a white paper and the underlying data supporting the research of the certification mark holder's research.

On January 2, 2020, the Government filed notices of intent to call representatives from trademark and certification mark holders Apple Inc., Samsung Inc., Qualcomm Inc., and UL LLC as experts. *See* ECF 340.

In addition, the Government designated other kinds of experts as well. These include: representatives from Customs and Border Protection (CBP), ECF 341; financial experts, ECF 342; and computer forensic experts, ECF 343. Additionally, the Government noticed an expert in Eurasian money laundering practices as a potential rebuttal witness. *See* ECF 517.

The Defendants recently filed eight motions to exclude the expert testimony of the trademark and certification mark holders (ECF 646, 647, 649, 653), CBP officials (ECF 648), Amazon.com and eBay.com representatives (ECF 651), Internal Revenue Service (IRS) Special Agent Josh Culbertson (ECF 645), and the Eurasian money laundering investigator (ECF 652). The last motion is moot: the Government has already agreed it will not call this potential rebuttal witness. *See* ECF 612. The remaining motions are addressed in this consolidated response. All rest on misunderstandings of the underlying record or the law and should be denied without a pretrial *Daubert* hearing.

## LEGAL FRAMEWORK

Under Federal Rule of Evidence 702, expert testimony is admissible only when the
expert is qualified and the opinion is both relevant and reliable.  Fed. R. Evid. 702; *Daubert
v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  As "gatekeepers," district courts must
be satisfied that:  (1) that the expert is qualified to render the proffered opinion; (2) the
opinion is reliable; and (3) the testimony assists the jury in its function as fact finder.  *Id.*
The proponent of expert testimony bears the burden of establishing its admissibility.  *See*
Fed. R. Evid. 702 advisory committee's note (2000) ("[T]he admissibility of all expert
testimony is governed by the principles of Rule 104(a).  Under that Rule, the proponent has
the burden of establishing that the pertinent admissibility requirements are met by a
preponderance of the evidence.").

An expert may be qualified to render an opinion by knowledge, skill, experience,
training, or education.  *See* Fed. R. Evid. 702.  Under well-established Supreme Court and
Ninth Circuit precedent, an expert's testimony may rely solely on experience.  *Kuhmo Tire
Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th
Cir. 2000) ("[T]he gatekeeping function is not limited to 'scientific' expert testimony, but
applies to all expert testimony.").  When an expert relies on experience rather than scientific
bases for an opinion, however, "the witness must explain how that experience leads to the
conclusion reached, why that experience is a sufficient basis for the opinion, and how that
experience is reliably applied to the facts."  Fed. R. Evid. 702 advisory committee's note
(2000).

To be reliable, the expert's opinion must be based on facts that enable the expert to
express a reasonably accurate conclusion as opposed to conjecture or speculation—absolute

certainty is not necessary.  *See United States v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993) (noting parenthetically that "certainty of expert's opinion goes to weight of testimony, not admissibility").  While "great latitude" is given to district courts regarding reliability determinations, a district court must make some kind of reliability determination to fulfill its gatekeeping function.  *See Kuhmo Tire*, 526 U.S. at 141.  The wide latitude afforded district courts extends not just to the question of whether to admit expert testimony, but also the question of how to test an expert's reliability.  *See id.*  When, as here, an expert's opinion is based on experience rather than scientific theory, "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" because the "reliability depends on the knowledge and experience of the expert, rather than the methodology or theory behind it."  *Hankey*, 203 F.3d at 1169.  If the district court finds the expert sufficiently qualified to render the proffered testimony and the opinion sufficiently reliable, it must then ensure that such testimony would aid the jury.  If helpful, the testimony is admissible under Rule 702.

## ARGUMENT

### I.  The expert testimony satisfies the demands of Federal Rule of Evidence 702 and, therefore, is admissible.

The government has more than satisfied its burden under a preponderance standard that the noticed experts are qualified, their opinions are reliable, and their testimony will be helpful to the jury.  Given the similarities of the arguments raised in the Defendants' eight motions to preclude expert testimony, the Government has consolidated its discussion on the admissibility of the following experts:  first, the trademark-holder experts (Apple, Samsung, and Qualcomm) and certification mark holder expert (UL); second, the CBP and third-party platforms (Amazon and eBay); and, finally the IRS Special Agent.

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—5

### A.   Trademark Holders (ECF 646, 647, 649, 653, 654)

All trademark holder experts have extensive experience with their company's products, with counterfeit knockoffs of their company's products, and with their company's use of the genuine mark.  In numerous reports, these experts have identified observable components and traits of the Defendants' products that support their conclusion that these products bear a counterfeit trademark.

### 1.   The trademark holder representatives are qualified as experts in the authenticity of their company's products based on their extensive experience.

The noticed trademark holder representatives are qualified to render the proffered opinions and to testify regarding the noticed topics.

Under Rule 702, a witness may be qualified as an expert based on their "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *see Thomas v. Newton Intern. Enter.*, 42 F.3d 1266, 1269–70 (9th Cir. 1994) ("[T]he advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert.").  Here, each noticed expert has years of first-hand experience evaluating the counterfeit products of their respective companies.  *See* ECF 340-1; 340-2; 340-3. Through this experience, they have gained expertise on the noticed topics sufficient to satisfy the demands of Rule 702, which itself explicitly recognizes that expertise goes beyond scientific training.  *See* Fed. R. Evid. 702 (discussing "scientific, technical, or other specialized knowledge").  Each is in fact one of the leading experts in their respective trademarked goods.

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—6

**2.    In dozens of reports provided to the defense, the trademark holders documented their conclusions that products were counterfeit based on tangible qualities of the reviewed items.**

To be reliable, an expert's opinion must be based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation.

**Trademark Holders (Apple, Samsung)**

The Government has more than satisfied its burden of showing the noticed experts' opinions are reliable under a preponderance standard: each trademark holder cited tangible observations of the products reviewed as the basis of the counterfeit determination.  For example, many products bore incorrect serial numbers and labels—meaning that characteristics associated with the serial number were not represented on the product on which the serial number was affixed.  *See* Gov. Ex. 1.  On many products, the poor quality of the trademark print was also frequently identified.  *See id.*  The trademark expert could see that the printing of the ink was below the standard adhered to by the trademark holder or that the counterfeit mark did not visually match the genuine mark.  Still others were missing markers of genuine products, such as the manufacturer and country of origin.  The experts documented and explained their observations in dozens of detailed reports that have been provided to the defense.  *See, e.g.*, Gov. Ex. 2 (photograph of poor-quality printing).

Nevertheless, the defense claims the explanations are unreliable because they do not provide a "method of independently recreating or assessing [the] opinion."  *See* ECF 646, at 5.  But the trademark holders' expertise stems from their experience with the products, not from a scientific theory with methodology that can be retested in a lab.  When, as here, an expert's opinion is based on experience rather than scientific theory, "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" because the

"reliability depends on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169.  The trademark holders' conclusions are based on objective characteristics of the products that are concrete and identifiable (such as the poor-quality printing) but that a casual observer would have difficult noticing on their own.  *See* Gov. Ex. 2 (photograph taken by Apple Inc. of an example of poor-quality printing of the Apple trademark).  Such objective characteristics may be confirmed and verified.  They provide a reliable basis for expert testimony under Rule 702. *See City of Pomona v. SQM N. Amer. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014) ("The question is whether an expert's methodology can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." (quotation omitted)).

The defense appears to base their motions, in part, on the mistaken belief that the reports from the trademark holders were not provided at all.  *See* ECF 649; ECF 654, at 2. Ignoring numerous reports, the defense instead cites e-mail communications between the trademark holders and agents as the basis for asking this Court to conclude their opinions are unreliable under Rule 702.  *See* ECF 654, at 2 (citing Exhibit A, an e-mail between Samsung representative and agents).  These less formal e-mail communications were provided in response to a defense discovery request, not as a basis for any counterfeit determination.

The defense similarly cites a Homeland Security Investigation (HSI) agent's report documenting the trademark holders' participation during the August 22, 2018 search.  *See* ECF 654, at 2 (citing Exhibit B, HSI report).  Again, this HSI report was not intended to supply the underlying analysis by the trademark holders.  The trademark holders' reports do

that.  As reflected in the trademark holders' reports, the experts' counterfeit determinations are based on identifiable, tangible components of the products they reviewed—not on conjecture or speculation.  The ability to readily identify the qualities of the products that evidence counterfeiting depends upon the experts' skill developed over years of experience with their products, which is exactly why the jury will be assisted by this testimony.

**Certification Mark Holder (UL)**

Like the motions to exclude the trademark experts' testimony, the motion to exclude testimony from the certification mark holder fails to discuss the data underlying the proffered opinion.  The Government produced the white paper and underlying data by making it available for inspection to defense counsel at the United States Attorney's Office. The defense seems to have overlooked this.  *Compare* ECF 653, at 6 ("No documents were produced between Bates Nos. UL-00017-00086."), *with* Gov. Ex. 3 (e-mail instructing counsel that discovery production included proprietary information available for inspection at the United States Attorney's Office).  Accordingly, their argument ignores the basis for the opinion and should be denied.

**3.     Helpful to the Jury**

Trademark and certification mark holders' testimony will assist the jury in its determination of whether the Defendants were knowingly trafficking in counterfeit goods. 18 U.S.C. § 2320(a), (b)(1).  Because trademarks are property interests appurtenant to a business, not rights in gross, the Government must show that the Defendants knowingly used a counterfeit mark on or in connection with goods for which the genuine mark is registered.  *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918). Accordingly, to establish the use of a counterfeit mark, the Government must prove:

- the counterfeit mark is identical to or substantially indistinguishable from genuine mark;

- the genuine mark was registered on the principal register in the U.S. Patent and Trademark Office;

- the genuine mark was in use by the mark holder during the time of the criminal use of the counterfeit mark;

- the counterfeit mark was used on or in connection with Defendants' goods and on the type of goods for which the genuine mark was registered; and

- the counterfeit mark was used in a manner likely to cause confusion, to cause mistake, or to deceive.

The noticed expert testimony from the trademark-holder (and victims) in this case bears on these topics. While the inauthenticity of the Defendants' products is sometimes more obvious—such as misspelling of the trademark itself, "Appie" and "Quallcomm"—the majority of the counterfeit traits identified by the trademark holders are outside the common juror's knowledge. Likewise, the genuine mark holders' registration of the genuine marks and current use of registered trademarks is beyond the common jurors' knowledge. Accordingly, this testimony satisfies Rule 702's command that it help the jury. As does testimony from the certification mark holder, UL.

UL is expected to testify that counterfeit chargers catch fire more frequently than genuine ones. Testimony related to exploding and burned counterfeit cellphone charges will also help the jury. During its case in chief, the Government will offer into evidence a video of an undercover purchase of bulk counterfeit products from David Bibikov at the 12554 Bridger Street Warehouse. In that video, Mikhail Iyerusalimets mentions to the confidential informant that his products have caught on fire. Witnesses who have purchased goods from the Defendants will also testify about how the products caught on fire upon first use. The flammable quality of these products evidences the Defendants' knowledge that their

products were counterfeit and, therefore, helps the jury.

### B.    CBP and Third-Party Platforms (ECF 648, 651)

In addition to the trademark and certification mark experts, the Government also noticed its intent to offer the expert testimony of CBP agents and third-party platform (Amazon.com and eBay.com) employees regarding the procedures of their employers. Because these procedures are not readily known to the common juror, testimony on the general processes will be helpful background information.[1]  *See Bausch & Lomb, Inc. v. Alcon Labs.*, 79 F. Supp. 2d 252, 255–56 (W.D.N.Y. Jan. 5, 2000) (admitting under Rule 702 expert testimony regarding "the general procedures involved in the patent application process").  None of the CBP or third-party platform witnesses will testify about the facts of the present case or render an opinion on any topic.  Their testimony will solely provide background information based on their experience with the procedures of each institution.

The Defendants' objection to these witnesses stems from a fundamental misunderstanding of Rule 702 and this Court's gatekeeping function thereunder.  An expert need not render an opinion to testify under Rule 702.  *See United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993) (noting that "the admission of expert testimony . . . and the admission of a specific expert opinion are separate determinations," and that both are admissible under Rule 702).  Here, the notice need not—and could not—include an opinion drawn or the data, methodology, or principles behind such an opinion because there is none.  Nevertheless, the defense cites the absence of an opinion and underlying

---

[1]    In lieu of an additional Amazon witness, the Government sought to introduce this information via stipulation through publicly-available documents created by Amazon that describe the processes of becoming a seller.  Defense counsel refused to stipulate to the admission.

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—11

methodology for their motions to exclude.  *See* ECF 648, at 4 ("The government thus has

not shown such 'expert' opinions are based on sufficient facts or data, the product of reliable

principles and methods, or that they have reliably applied the principles and methods to the

facts of the case."); ECF 651, at 4 ("The government thus has not shown a representative of

Amazon or eBay's expert opinions are based on sufficient facts or data, the product of

reliable principles and methods, or that the witness has reliably applied the principles and

methods to the facts of the case.").  The Defendants' motions to exclude rest on a

misunderstanding of the nature of the testimony proffered and, therefore, should be denied.

### C.    IRS Agent Culbertson as Expert and Fact Witness (ECF 645)

The Defendants also moved to preclude Special Agent Joshua Culbertson from

testifying as both a fact and expert witness.  Witnesses frequently, and properly, testify in

both capacities so long as the Court takes appropriate measures to ensure the two roles are

not blurred.

During its case in chief, the Government anticipates calling Linda Czemerys as an

expert financial investigator and IRS Special Agent Joshua Culbertson as a fact witness.

Out of an abundance of caution, however, the Government also noticed Agent Culbertson

as an expert witness.  *See* ECF 342.  Because Agent Culbertson's expert testimony would be

redundant to that of Ms. Czemerys, however, his testimony will likely be limited to facts

developed during the investigation.  Should Agent Culbertson's expert testimony be

required, however, it would be admissible—even if he also testified as a fact witness.

When a witness testifies as both a fact and expert witness, the Court must take

appropriate steps to ensure the lines between these two roles are not blurred.  *See United*

*States v. Anchrum*, 590 F.3d 795, 803 (9th Cir. 2009) (discussing *United States v. Freeman*, 498

F.3d 893 (9th Cir. 2007), and recognizing that when jurors are aware of "dual roles" a witness may testify as both fact and expert).  Such steps could include instructing the jury as to the nature of the testimony proffered and calling the witness twice to separate the fact and expert witness testimony.  If Agent Culbertson's expert testimony is required at trial because Ms. Czemerys is unable to testify, then the Government will ask the Court to adopt measures to ensure the jury is clear as to the nature of the testimony provided.  With such measures in place, the dual roles will be clearly delineated and Agent Culbertson's testimony admissible.

> **D.      The record shows that the experts are qualified, that their conclusions are reliable, and that their testimony will aid the jury; accordingly, a pretrial *Daubert* hearing is unnecessary.**

Based on the record before it, the Court may determine that the proffered experts are qualified and their testimony is reliable and helpful to the jury without a hearing.  If the Court is unsatisfied as to the reliability of these conclusions based on the record before it, however, it can allow for additional testimony to lay the foundation as to experience and knowledge of the products when the witness testifies at trial.  *See United States v. Pacheco*, No. 19-10014, 2020 WL 5910103, at *2 (9th Cir. Oct. 6, 2020) (affirming such a procedure to determine reliability of expert in criminal trial).  Given the complexities of scheduling a separate pretrial hearing—and the lateness of the motions—the Court should deny the Defendants' requests for a pretrial *Daubert* hearing.

**II.      The Government has complied with the requirements of Federal Rule of Criminal Procedure 16; even if it had not, however, exclusion of the experts' testimony would be an inappropriate remedy under Rule 16.**

In all its notices, the Government complied with Rule 16's command to provide the Defendants with summaries of the intended expert testimony.

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—13

Under Rule 16(a)(1)(G), the government must provide—upon a defendant's request—a "written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial" that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). This summary is intended to provide sufficient notice of the expert's testimony to allow the opponent "'a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *United States v. Mendoza-Paz*, 286 F.3d 1104, 1111–12 (9th Cir. 2002) (quoting Fed. R. Crim. 16, Advisory Committee's Notes to 1993 Amendment); Fed. R. Crim. P. 16, Advisory Committee's Notes to 1993 Amendment (noting that Rule 16's expert disclosure requirements are also "intended to minimize surprise that often results from unexpected expert testimony [and] reduce the need for continuances").

The reports and notices provided to the Defendants outline the bases for the conclusions drawn by the trademark holders that their products are counterfeit. *See United States v. Lipscomb*, 539 F.3d 32, 37 (1st Cir. 2008) (finding that a notice satisfied Rule 16 because "there [was] no dispute that [the defendant] was on notice with respect to the particular conclusions drawn by the witnesses"). In their motions, the Defendants cite a Seventh Circuit case as support for their assertion that the notices are insufficient under Rule 16. *See* ECF 646, at 4; ECF 647, at 3 (citing *United States v. Duvall*, 272 F.3d 825, 828–29 (7th Cir. 2001)). The facts of that case are meaningfully different than the situation here. In *Duvall*, the notice did not provide the expert's opinion. *Duvall*, 272 F.3d at 829 (recognizing that the notice failed to "identif[y] the expert's actual opinion"). Here, there is no doubt regarding the opinions drawn from those experts who are offering opinions (as opposed to

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—14

those who are providing purely background testimony, such as the CBP and third-party platform witnesses). What is more, the notices satisfied the goal of Rule 16: the Defendants have hired numerous experts to evaluate the opinions rendered by the trademark holders. They are thus on notice of, and are already preparing to meet, the Government's evidence.

The Defendants want something more than Rule 16 requires. Under their interpretation, Rule 16 would mandate a recitation of the expected testimony—an interpretation that the courts have repeatedly rejected. *See United States v. Slough*, 51 F. Supp. 3d 1, 8 (D.D.C. June 16, 2014) (rejecting interpretation that "require[d] the [offering party] provide a detailed explanation of the full reasoning that led to every single expert opinion" as "an unreasonable procedural hurdle"); *see also United States v. Cerna*, No. 08-CR-730, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010) ("Rule 16(a)(1)(G) does not require recitation of the chapter and verse of the experts' opinions, bases and reasons. No rule, statute, or decision necessitates such comprehensive disclosure."). Nevertheless, had defense counsel requested further descriptions from the Government on these topics, the Government would have engaged in a good-faith effort to respond to reasonable requests. Instead, each filed a motion asking this Court to exclude these witnesses from testifying at trial. Such an extreme remedy would legally baseless and unjust.[2]

---

[2]  Even if the Court were to find the notices and reports insufficient to afford the defense a "fair opportunity" to prepare for cross examination, the just remedy would not be exclusion of all the experts as the Defendants request. *See* 2 Federal Practice & Procedure § 260, at 196–201 (3d ed. 2000) ("If a sanction is thought necessary [under Rule 16], it is for the court to decide whether to order a continuance, or to prohibit the party from introducing in evidence the material not disclosed, or to make whatever other order it deems just under the circumstances."). The Ninth Circuit has explicitly recognized that exclusion of expert testimony is an extreme remedy *even when* Rule 16 has been violated. *See Mendoza-Paz*, 286 F.3d at 1111–12.

Exclusion would be an especially unjust remedy here. As detailed in the motion to strike, months ago, the Government solicited whether defense counsel objected to the

## CONCLUSION

For the reasons discussed herein, the Government respectfully requests that the Court deny the Defendant's motions to exclude the Government's experts (ECF 645–49, 651, and 653).  The Government has satisfied the requirements of Rule 702 by providing the experts' qualifications and appropriately detailing their testimony.  No *Daubert* hearing is necessary because the record supports the witnesses' expertise, as well as the reliability and relevancy of this testimony.  Further, the Court should deny as moot the remaining motion (ECF 652).

Respectfully submitted this 29th day of October, 2020.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

 */s/ Katherine L. Horwitz*
KATHERINE L. HORWITZ
Assistant United States Attorney

---

noticed expert testimony. *See* ECF 662.  Defense counsel did not respond. In light of the Government's unrequited efforts to work with defense counsel, the Government should be afforded an opportunity to supplement its notice if the Court finds it violated Rule 16. *Cf. Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1317 (9th Cir. 1985) (recognizing that summary judgment is inappropriate without first affording the plaintiff an opportunity to supplement information under Rule 705).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 29, 2020, the foregoing

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE**

**EXPERT TESTIMONY** was electronically filed with the Clerk of the Court using the

CM/ECF system, and that a copy was served on the following parties or counsel by:

| |
|---|
| JOHN DEFRANCO<br>1031 E. Park Blvd.<br>Boise, ID 83712<br>jcd@greyhawklaw.com<br>*Attorney for Pavel Babichenko* |
| JEFFREY BROWNSON<br>223 North 6th Street, Suite 215<br>Boise, Idaho 83702<br>*Attorney for Gennady Babitchenko* |
| PAUL E. RIGGINS<br>380 South 4th Street, Ste. 104<br>Boise, ID 83702<br>rigginslaw@gmail.com<br>*Attorney for Piotr Babichenko* |
| ROB S. LEWIS<br>913 W. River Street, Ste. 430<br>Boise, ID 83702<br>office@roblewislaw.com<br>*Attorney for Timofey Babichenko* |
| GREG S. SILVEY<br>P.O. Box 5501<br>Boise, ID 83705<br>greg@idahoappeals.com<br>*Attorney for Kristina Babichenko* |

J.D. MERRIS
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

ROBYN A. FYFFE
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

MELISSA WINBERG
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
*Attorney for Anna Iyerusalimets*

ELLEN NICHOLE SMITH
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

/s/ *Katherine Horwitz*
Assistant United States Attorney

GOVERNMENT'S RESPONSE TO
MOTIONS TO EXCLUDE EXPERT TESTIMONY—18