UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>Defendants. | Case No. 1:18-CR-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss the Superseding Indictment for Ethnically Selective Prosecution and Enforcement. Dkt. 364. The Court held a hearing on the motion on July 28, 2020. For the reasons explained below, the Court will deny the motion.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

The Defendants in this case are members of an extended family group. Their shared family history, which includes immigration to the United States, is naturally a significant part of their identities. The present motion argues that the Government selectively investigated, and prosecuted, Ms. Iyerusalimets and her codefendant due to their Russian heritage. Ms. Iyerusalimets focuses on four primary grounds for her motion: 1) the code names given to the investigation and informant by the FBI, 2) statements by the U.S. Attorney's Office and investigators at a press conference held after her arrest, 3) statements made to the grand jury, and 4) other allegedly counterfeit cellphones and accessories which are available online, and which the Government has ignored.

On August 15, 2018, the Government filed a 34-count indictment alleging the Defendants variously committed wire fraud, money laundering, and trafficked in counterfeit goods. Dkt. 1. On May 15, 2019 the Government filed a superseding indictment adding multiple counts. Dkt. 210. One defendant has pled guilty, the remaining nine defendants are scheduled for trial on February 1, 2021.

The Defendants charged in this case all self-identify as being of Russian heritage. *See* Dkt. 364; 429-2; 429-3. Of the nine defendants, seven were born in Ukraine and Georgia before the collapse of the Soviet Union and have since

become United States citizens. Two were born in the United States.

This case began when investigators with Homeland Security Investigations received a tip that an individual was importing counterfeit goods from China to his business in Boise. Eventually the individual was arrested for drug trafficking and became a confidential informant (CI) for the FBI. The CI conducted undercover purchases of both drugs and counterfeit cellphones. Eventually the investigation led to the arrest of twenty-two defendants charged in thirteen separate cases. The drug trafficking defendants have since pled guilty. The only remaining defendants are those in the instant case. The drug trafficking defendants and counterfeit goods defendants are unrelated, except that the CI conducted undercover purchases from both groups and the U.S. Attorney announced the investigation of both groups at the same time.

The FBI named the investigation "Operation Russian Ruble." Dkt. 364-1. At the hearing the Government stated that the name was chosen because of the overarching investigation related to the CI, and because it required Russian translation. The CI's code name was "Putin." According to the Government, the CI's code name was chosen with input from the CI and not unilaterally assigned by the FBI.

During the investigation the CI purchased counterfeit iPhones and other

**MEMORANDUM DECISION AND ORDER - 3**

counterfeit products directly from Pavel Babichenko and David Bibikov at their warehouses in Boise. Between 2015 and 2017 law enforcement conducted online purchases of counterfeit products from seven of the defendants. Law enforcement then obtained search warrants for the defendants' email accounts, uncovering statements regarding the inauthenticity of the products, fraudulent invoices, and fraudulent "Authorized Reseller" letters. To avoid detection Defendants created approximately 157 different business entities, using different addresses, bank accounts, and internet hotspots.

Investigators also learned that Customs and Border Protection had seized over 50 international shipments of counterfeit cellphones and accessories destined for the defendants' businesses. The defendants are believed to have been importing between 20,000 and 50,000 cellphones from China per year, worth between $20,000,000 and $50,000,000. One of the businesses, associated with Timofey and Kristina Babichenko, was the fourth largest customer of Fujisan International LD in Honk Kong, which is a known manufacturer of counterfeit Apple and Samsung products. In August 2018 law enforcement served search warrants on the defendants' warehouses, recovering 60 pallets of counterfeit products. At the same time law enforcement arrested the defendants in this case.

During the grand jury proceeding on August 14, 2018, Agent Sheehan

**MEMORANDUM DECISION AND ORDER - 4**

opened his testimony by stating:

> So what we are going to be talking about today is mainly an organized – I guess we would say – family business. This is a group of individuals who came over from the Ukraine area to start – I guess you could say – a cell phone business, where they would be selling counterfeit cell phones and cell phone accessories on different platforms, such as Amazon and eBay.

Dkt. 365-1 at 1.

Further, when Agent Culbertson was testifying, the following exchange occurred:

| | |
|---|---|
| GRAND JUROR: | They are all U.S. citizens with Social Security numbers? |
| MS. HOROWITZ: | Can you speak to that? |
| THE WITNESS: | They all have Social Security numbers, yes. |
| MS. HOROWITZ: | They are all from the Ukraine and Russia; correct? |
| THE WITNESS: | Correct. |
| A GRAND JUROR: | Are they citizens? |
| THE WITNESS: | I believe so. I think they came over when they were little. |
| MS. HOROWITZ: | I didn't call the HSI agent, but the HSI people have the A-File. |

Dkt. 365-2 at 6.

On August 23, 2018 the United States Attorney held a press conference to

**MEMORANDUM DECISION AND ORDER - 5**

announce the investigation and indictment of the 10 defendants in this case and 6 defendants in the drug trafficking conspiracy. *Def.'s Ex. C*, Dkt. 364-3. At the press conference the U.S. Attorney repeatedly made clear the only connection between the two groups of defendants was that the investigations were being announced at the same time. *Id.* At the press conference, FBI Assistant Special Agent in Charge, Earl Camp, stated:

> Combatting transnational organized crime remains a priority nationally for the FBI, these groups represent a threat to our national and economic security. Whether they sit in New York City, Los Angeles, or Boise, Idaho, have no doubt this case has national implications. What started as a traditional drug investigation identified a much more complex scheme to defraud the American people and American companies with counterfeit electronics.

*Id*. One reporter asked what the full range of nationalities of the defendants in the investigations were. The U.S. Attorney responded that all but about four are U.S. citizens, and added that some of the defendants are naturalized citizens. *Id.* Reporters also asked how long the defendants had lived in the area, if they were connected to other criminal rings around the country or the world, and if there were international coconspirators. The U.S. Attorney generally declined to comment on these questions.

    Ms. Iyerusalimets presented an exhibit of the allegedly counterfeit cellphones for sale on ebay.com sold by defendants. Under the listing there are

**MEMORANDUM DECISION AND ORDER - 6**

other similar listings for "new" phones offered at a similar price. Ms. Iyerusalimets suggests these similar listings are also counterfeit phones, and the Government has failed to investigate or prosecute those vendors. However, there is no indication of the location of the vendors of these similar phones nor their nationalities.

## LEGAL STANDARD

The requirements for a selective-prosecution claim draw on "ordinary equal protection standards." *Wayte v. United States*, 470 U.S. 598, 608 (1985). A "presumption of regularity" supports federal prosecutors' decisions. *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)) "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Id.* at 465. To succeed on a defense of selective prosecution, the defendant "must demonstrate that the federal [prosecution] 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte*, 470 U.S. at 608). Both prongs must be demonstrated for the defense to succeed.

To establish a discriminatory effect, with regard to ethnicity, the defendant must show that similarly situated individuals of a different ethnicity were not

**MEMORANDUM DECISION AND ORDER - 7**

prosecuted. *Armstrong*, 571 U.S. at 465; *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003). The determination of which individuals are similarly situated requires consideration of all relevant factors, *Armstrong*, 571 U.S. at 466, and should "isolate the factor allegedly subject to impermissible discrimination." *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989).

To demonstrate discriminatory purpose, the defendant must show "that the government undertook a particular course of action 'at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group.'" *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997) (quoting *Wayte*, 470 U.S. at 608.). "'[A]wareness of consequences' is not the same as intent to discriminate." *Id.*

To obtain discovery on a selective prosecution a defendant must present "some evidence tending to show the existence" of both discriminatory effect and discriminatory purpose. *Armstrong*, 571 U.S. at 468-69. In the selective prosecution context this is a "rigorous" standard, only slightly lower than for proving the claim itself. *Id.*; *United States v. Sellers*, 906 F.3d 848, 854 (9th Cir. 2018).

In the selective enforcement context, the presumption of prosecutorial regularity does not apply, and discovery may be had on a lower showing. *Sellers*,

**MEMORANDUM DECISION AND ORDER - 8**

906 F.3d at 856. To obtain discovery the defendants must have something more than speculation, "what that something looks like will vary from case to case." *Id.* at 855. The district court retains discretion to allow, and manage, discovery based on the reliability and strength of the defendant's showing. *Id.*

## ANALYSIS

### A.   Selective Prosecution

Ms. Iyerusalimets argues that the grand jury testimony and the Government's failure to prosecute other sellers of counterfeit cellphones and accessories demonstrates selective prosecution.

Regarding discriminatory effect, Ms. Iyerusalimets relies on the similar cellphone listings on ebay.com to show that the Government has not prosecuted similarly situated sellers of counterfeit cellphones. Ms. Iyerusalimets also lists 15 Chinese companies involved in distributing counterfeit Apple products, which the Government is allegedly aware of, but has not prosecuted.

Ms. Iyerusalimets has not shown that the Government has refused to prosecute similarly situated individuals of different ethnic heritage. Ms. Iyerusalimets has put forward no evidence as to whether the similar cellphones listed on ebay are actually counterfeit, nor the ethnicity of the vendors. Further, she has offered no evidence that those vendors are operating within the District of

Idaho. Likewise, Ms. Iyerusalimets lists 15 Chinese companies distributing counterfeit iPhones, however she has put forward no evidence that these companies have a physical presence in the United States, let alone the District of Idaho. Further, she has offered no evidence that the other ebay vendors or Chinese companies are operating at the scale of Ms. Iyerusalimets and her codefendants. Simply put, the only evidence of discriminatory effect Ms. Iyerusalimets has offered is that, somewhere out there, people are selling counterfeit phones, accompanied by a naked allegation that the Government has refused to prosecute them. This is not sufficient. *Compare United States v. Mumphrey*, 193 F.Supp.3d 1040, 1061 (N.D. Cal. 2016).

With regard to discriminatory purpose, Ms. Iyerusalimets points to the Grand Jury testimony and statements made at the press conference.[1] The Grand Jury statements she highlights were made by Agent Sheehan as he generally described the case and in response to a juror's question. Ms. Iyerusalimets points to no statements by the Assistant United States Attorney which show any indication of discriminatory purpose. Further, while Agent Sheehan's statement describing

---

[1] Ms. Iyerusalimets also relies on a Pew Research Center survey published in 2019 showing anti-Russian sentiment in America. However, this study was published after the defendants were indicted and arrested. There is no showing that the general anti-Russian sentiment cited in the study existed during, or spilled over into, the investigation.

**MEMORANDUM DECISION AND ORDER - 10**

the family's origins was incorrect, this statement and his answer to the Juror's questions do not show discriminatory purpose, especially when considered in the context of the entire testimony.

The U.S. Attorney's statements at the press conference also do not show any discriminatory intent. First, the U.S. Attorney took pains to make clear that the drug investigation and counterfeiting investigation were unrelated. Second, the defendants' ethnic heritage was never disclosed at the press conference. When asked about the defendants' nationalities, the U.S. Attorney stated simply that all but about four (of all the defendants indicted across the separate cases) were U.S. citizens. He then accurately stated that some of them were naturalized citizens. This was an accurate statement. There is nothing in these statements even hinting at discriminatory intent.

### B.    Selective Enforcement

As previously discussed, Ms. Iyerusalimets has not offered evidence of similarly situated individuals who were not investigated by the federal government. Therefore, she cannot show discriminatory effect on behalf of the federal law enforcement agencies.

To show discriminatory intent, Ms. Iyerusalimets relies on the name of the investigation (Russian Rubles), the code name of the informant (Putin), the FBI

agent's statements at the press conference, and the FBI agent's testimony before the Grand Jury.

First, the name of the investigation and code name of the informant do not evidence discriminatory intent. The informant was involved in choosing their code name and is of Ukrainian ethnicity. Russian Ruble was the name given to the overarching OCDETF investigation of the drug trafficking and counterfeit goods trafficking. Both groups had members of Russian heritage who often spoke in Russian – requiring translation for law enforcement. Ruble is the unit of currency in Russia.

Second, at the Press Conference Agent Camp described the investigation as involving "transnational organized crime" that presented a threat to "our national and economic security." He described the case as having "national implications" involving a "scheme to defraud the American people and American companies." Defendants are alleged to have imported counterfeit cellphones and accessories from China and Hong Kong and then repackaged those items in Idaho, reselling them online. Agent Camp's statements relate to the evidence in this case and do not indicate any discriminatory intent.

Third, Agent Sheehan's testimony before the Grand Jury, while factually inaccurate, does not show discriminatory intent. He was wrong that defendants

**MEMORANDUM DECISION AND ORDER - 12**

came over from Ukraine to start a cellphone business. But this statement alone does not show that law enforcement somehow intentionally targeted the defendants. Further, his answers to the questions posed by the juror and Assistant U.S. Attorney were responsive and do not indicate any discriminatory intent. Reviewing the Grand Jury testimony in its entirety shows no discriminatory intent.

Even under the lower standard for obtaining discovery for selective enforcement claims, described in *Sellers*, Ms. Iyerusalimets' evidence does not warrant discovery on the selective enforcement claim. At most Ms. Iyerusalimets has provided speculation that the agents may have been motivated by her ethnic heritage. This is not sufficient.

### C.  Conclusion

Simply put, Ms. Iyerusalimets has shown no more than the consequences of the investigation of an elaborate counterfeit goods trafficking conspiracy, not that she or her codefendants were targeted because of their Russian heritage. "That such a [conspiracy] should be targeted is a neutral, nonracial law enforcement decision." *United States v. Turner*, 104 F.3d 1180, 1185 (9th Cir. 1997).

Ms. Iyerusalimets has presented no evidence of similarly situated individuals, but of different ethnic heritage, who were involved in an expansive counterfeit goods trafficking conspiracy and who the Government has not

investigated or prosecuted. Further, none of the evidence raises an inference of discriminatory motivation on the part of the prosecutors or law enforcement agents. Because neither showing has been made, no discovery may be had on the claims.

## ORDER

**IT IS ORDERED** that Defendant's Motion to Dismiss Superseding Indictment for Ethnically Selective Prosecution and Enforcement (Dkt. 364) is **DENIED**.

DATED: November 3, 2020

B. Lynn Winmill
U.S. District Court Judge