UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00258-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PAVEL BABICHENKO, *et al.* | |
| Defendants. | |

## INTRODUCTION

We are amidst a global pandemic. Nationwide, courts are tasked with preserving constitutional rights while protecting public health and safety. This is no easy task. Before the Court are nine defendants awaiting a logistically challenging, lengthy, and complex trial.[1] In response to the Court's Pretrial Order, Dkt. 666, defendants filed objections to various aspects of the court's trial plan. Among other things, defendants raise concerns about their right to a public trial. Defendants also object to the Court's plan to livestream trial proceedings based on Federal Rule of Criminal Procedure 53, which prohibits "broadcasting of judicial

---

[1] The Court previously designated this case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) and anticipates a 10-week trial.

**MEMORANDUM DECISION AND ORDER - 1**

proceedings from the courtroom."

The Court will conduct a hearing on this aspect of its order and will invite amicus briefing from the press.[2] That hearing will be scheduled by separate notice. In the meantime, however, and to guide the briefing and the issues to be considered at the hearing, the Court will enter the order set forth below. In a nutshell, the order makes the following changes to Pretrial Order No. 1 (Dkt. 666):

1) The Court will not livestream proceedings on YouTube (or a similar platform) as previously planned.

2) Instead, the Court will livestream proceedings to a viewing room within the courthouse where the public and press may watch the proceedings unfold in real time.

3) Cameras will be set up in the courthouse viewing room such that a video of that room – and specifically, members of the press and public – will be displayed (also in real time) in the courtroom. The purpose of displaying this video of the public within the courtroom is remind those in the courtroom that the proceedings are indeed public and that members of the public are watching the proceedings.

---

[2] The Court will issue a second memorandum decision addressing other objections.

MEMORANDUM DECISION AND ORDER – 2

4) Additionally, for those who are unable to travel, or are uncomfortable with traveling, to the courthouse because of the pandemic, the Court will authorize a limited number of people to access the trial remotely upon a showing of a particularized need.

## BACKGROUND

On October 30, 2020, the Court issued Pretrial Order No. 1, which outlined intended trial procedures. *See* Dkt. 666. Of relevance here, the Court determined that it will conduct trial in Courtroom 3 of the United States Courthouse in Boise, Idaho with a live video feed of the proceedings available to the parties, press, and public. All individuals entering the courthouse will be required to comply with COVID-19 protocols, including wearing masks and social distancing. The Court will remodel Courtroom 3 for the trial, including removing benches in the gallery seating area to make room for defense tables. Jurors will be seated both in the jury box and the well. Defendants and their attorneys will be seated in the gallery and at the table in front of the gallery. These measures are in pursuit of providing space for nine defendants, the attorneys, jurors, and courtroom staff. As such, the Court made the difficult decision to utilize its limited courtroom space for these participants, leaving no room for the press or public in Courtroom 3.

Idaho is currently under its Stage 2 Order, which prohibits gatherings of

more than ten people. *See Nov. 18, 2020 General Order No. 376.*[3] The past few weeks have seen a dramatic increase in the number of confirmed and probable COVID-19 cases in Idaho, and, specifically, in Ada County. *See* coronavirus.idaho.gov (last visited Dec. 21, 2020). Accordingly, this Court recently granted a continuance and trial is now scheduled to begin on June 8, 2021. *See* Dkt. 716. As noted, in response to Pretrial Order No. 1, defendants have raised concerns about their public trial rights. The issue before the court is how to preserve those rights while safeguarding public health and safety.

## LEGAL STANDARD

### A.    Right to a Public Trial

The First Amendment and the Sixth Amendment guarantee the right to an open, public trial. *Waller v. Ga*., 467 U.S. 39, 45-46 (1984). However, this right is not absolute, and "must give way in some cases to other interests essential to the fair administration of justice." *United States v. Sherlock*, 962 F.2d 1349, 1356 (9th Cir. 1992). The presumption of openness may be overcome by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of Cal*.,

---

[3] This order is available here: https://www.id.uscourts.gov/Content_Fetcher/index.cfml/Court_Operations_In_Response_to_Stay_Healthy_Order_3584.pdf?Content_ID=3584 (last visited Dec. 21, 2020).

464 U.S. 501, 510 (1984).

The Supreme Court's decision in *Waller* sets the standard governing courtroom closures. To overcome the presumption of openness, 1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, 2) the closure must be no broader than necessary to protect that interest, 3) the trial court must consider reasonable alternatives to closing the proceeding, and 4) it must make findings adequate to support the closure. *Waller*, 467 U.S. at 48.

The Supreme Court has never differentiated between total and partial closures, but nearly all circuit courts have, including the Ninth Circuit. *Sherlock*, 962 F.2d at 1357. "In cases 'where only a partial closure is involved, a court must look to the particular circumstances to see if the defendant still received the safeguards of the public trial guarantee.'" *Id*. These safeguards include 1) ensuring a fair trial, 2) reminding the prosecutor and judge of their responsibility to the accused and the importance of their function, 3) encouraging witnesses to come forward, and 4) discouraging perjury. *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003).

## B.  Federal Rule of Criminal Procedure 53

Federal Rule of Criminal Procedure 53 states, "Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the

courtroom during judicial proceedings or the broadcasting of judicial proceedings
from the courtroom."

## ANALYSIS

### A.    Public Trial Rights

The defendants contend that the procedures set forth in the Court's Pretrial
Order violate their public trial rights. Specifically, the defendants are concerned
with the public's physical exclusion from Courtroom 3 and community
participation.

### 1.    Partial Closure

The Court does not view the Pretrial Order procedures as total closure. In
cases where the Supreme Court found that a court closure had occurred, the public
and the press were not only excluded from the courtroom but also had no
alternative way to observe the proceedings. *See Waller*, 467 U.S. at 42
(suppression hearing closed to public); *Presley v. Georgia*, 558 U.S. 209, 210
(2010) (public excluded during jury selection); *Weaver v. Massachusetts*, 137 S.
Ct. 1899, 1906 (2017) (due to space restrictions during jury selection, court
excluded from courtroom any person who was not a potential juror). The Pretrial
Order procedures are not analogous to those cases.

Instead, the Court views the anticipated trial proceedings as partial closure.
The Court will have available a separate viewing room to allow members of the

public and the press to observe the proceeding via live video and audio feed. For those unable or uncomfortable with traveling to the courthouse to access the viewing room, and upon a showing of a particularized need, the Court will also grant authorization to a limited number of people to access the trial. *See United States v. Donziger*, 2020 U.S. Dist. LEXIS 148029, *11 (S.D.N.Y. 2020) (COVID-19 safety protocols, like measures such as ID checks imposed after 9/11, may "chill" attendance and constitute partial closure). Additionally, Courtroom 3 will contain a separate, live video feed of the viewing room. Accordingly, the trial will not proceed in secret, and those interested will have an opportunity to observe – and be observed by – those participating in the trial.

This determination is consistent with other district court responses to the pandemic and before. Courts have viewed proceedings conducted over virtual platforms like Zoom as partial closures. *Gomes v. United States Dep't of Homeland Sec.*, 2020 U.S. Dist. LEXIS 91834, *2 (D.N.H. 2020). Other courts have also deemed spectator limitations and separate viewing rooms as justifiable partial closure. *United States v. Trimarco*, 2020 U.S. 159180, *11-12 (E.D.N.Y. 2020); *United States v. Richards*, 2020 U.S. Dist. LEXIS 158887, *4 (D. Ala. 2020); *United States v. Fortson*, 2020 U.S. Dist. LEXIS 142500, *4 (D. Ala. 2020); *United States v. Gutierrez-Calderon*, 2019 WL 3859753, *11 (D.V.I. 2019); *Rollness v. United States*, 2013 U.S. Dist. LEXIS 118952, *51-52 (W.D. Wash.

2013); *United States v. Moussaoui*, 205 F.E.D. 183, 185 (E.D. Va. 2002).

Compelled not only by the extraordinary circumstances presented by the pandemic, but also by the sheer number of critical trial participants in this nine-defendant trial, the court finds partial closure necessary.

### 2.    Findings in Support of Partial Closure

Understanding that circumstances surrounding the pandemic are constantly in flux, the Court acknowledges that one of its enduring priorities is upholding constitutional rights. The Court intends to be flexible in its approach to trial procedures as time unfolds, as it is impossible to know what the state of the world will be in June 2021. With that said, "[p]rotecting the public from unnecessarily spreading a potentially fatal virus is not only a purpose the government *may* pursue; it is one it has an obligation to." Stephen E. Smith, *The Right to a Public Trial in the Time of COVID-19*, 77 WASH. & LEE L. REV. ONLINE 1, 6 (2020). Therefore, the Court finds that it has advanced an overriding interest in preserving the health and safety of trial participants and the public. This interest would be prejudiced without closure because an increased risk of disease spread will likely result in the trial participants' inability to fulfill their roles.

Currently, social distancing requirements greatly limit courtroom presence. The Court had previously consulted an epidemiologist, who advised the Court to minimize the number of people in any given room. Of special concern to the court

is the safety of the jury, who will, despite an ongoing pandemic, appear in court every scheduled day during this lengthy trial to fulfill their sacred civic obligation. Therefore, the Court finds that each additional person permitted in the courtroom poses an unjustifiable safety risk. Operating under anticipated conditions, the Pretrial Order procedures are necessary to reduce the risk of coronavirus spread and provide the nine defendants a fair trial.

The Court also finds that the restrictions represented by the viewing room and two-way video procedures are no broader than necessary to protect those safety interests and constitute reasonable alternatives to total closure. Although the Court considered conducting trial in a satellite location, the Court finds that the trial can be adequately conducted in Courtroom 3. Simply put, a satellite location would not guarantee that constitutional requirements would be met more effectively. First, due to social distancing requirements, the public gallery in any satellite location would be far removed from the witness and trial participants making in-person viewing difficult and less than optimal. Second, each additional person permitted in the physical trial space is an additional person who may have COVID-19 and increases the risk of infection to jurors and trial participants. Third, Courtroom 3 has an advanced air-filtration and ventilation system, which reduce the risk of airborne transmission of COVID-19. Furthermore, the Court places great value on the integrity and sanctity of a courtroom. *Deck v. Missouri*, 544 U.S.

622, 631 (2005) ("The courtroom's formal dignity . . . reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve."). While space limitations alone are not necessarily overriding interests, *Gibbons v. Savage*, 555 F.3d 112, 117-19 (2d Cir. 2009), the pandemic presents a unique problem. Required social distancing in turn impacts spatial economy no matter where the trial is conducted. The public here will, at minimum, be able to observe the proceedings in real time in a viewing room. The video feed of the proceedings will give the public a much better view of the witness testimony, exhibits, and examination, than they would have at a satellite location.

The Pretrial Order procedures also preserve the core values of the public trial right. *Ivester*, 316 F.3d at 960. The two-way video feed honors the special importance community and family participation have in our judicial system. *United States v. Rivera*, 682 F.3d 1223, 1232 (9th Cir. 2012). The prosecution, jury, and judge will be reminded of their responsibility, and witnesses will be discouraged to perjure. Additionally, a separate viewing room located in the same courthouse where trial will be conducted will encourage witnesses to come forward. Defendants contend that live video feed will not allow viewers to observe every reaction and experience that a physical presence offers. While a viewing room may never capture the same experience, the Court finds real-time video and audio

MEMORANDUM DECISION AND ORDER - 10

sufficient, especially in light of overriding safety considerations.[4]

Again, the Court intends to be flexible. If safe and responsible to do so, the Court will consider allowing a limited number of spectators into Courtroom 3 to observe trial. Unfortunately, it is impossible to foretell the circumstances in June without a crystal ball.

## B.     Federal Rule of Criminal Procedure 53

To reiterate, the Court's priorities are complying with constitutional rights while preserving public health and safety. The Court originally intended to livestream the trial online in a manner widely available for public viewing to fulfill the defendants' and the public's public trial rights. Unfortunately, Federal Rule of Criminal Procedure 53 explicitly prohibits the Court from publicly broadcasting the trial. The Court is unable to locate a statute or rule that allows it to avoid or ignore this prohibition as it pertains to broadcasting trial proceedings.[5]

Rule 53 has been upheld as constitutional by several circuits. *Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988). While criminal trials are mandated to be open to the public, "no court has ruled that videotaping or cameras

---

[4] Accordingly, these findings also support total closure.

[5] While the CARES Act has authorized the broadcasting of some criminal proceedings virtually, it is the Court's understanding the Act has not authorized livestreaming the trial in the manner the Court originally intended.

are required to satisfy this right of access. Instead, courts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access." *Rice v. Kempker*, 374 F.3d 675, 678-79 (8th Cir. 2004). However, the Court is now faced with the difficult challenge of preserving public trial rights in the midst of a pandemic while complying with Rule 53.

To best comply with the Constitution and Rule 53, the Court will reserve a separate viewing room in the courthouse for the public and the press to watch a closed-circuit, live video and audio feed of the trial. In accordance with Rule 53, the Court will prohibit any recording of the video or audio feed. *United States v. Bonds*, 2011 U.S. Dist. LEXIS 155885, *5-6 (N.D. Cal. 2011).

The Court further intends to issue a limited number of authorizations to access the trial remotely. Those wishing to attend trial remotely may apply in advance. The Court will issue notices to the public as the trial date approaches. At this point, the Court anticipates notifying the public that they may listen to, or watch, the proceedings (as appropriate) by calling a particular telephone number, or joining a particular video conference. These participants will be reminded of and required to agree to the general prohibitions against photographing, recording, or broadcasting court proceedings. This procedure is intended to increase access to the trial proceedings, reduce costs, and alleviate the barriers inherent in requiring people to travel to the courthouse to access the viewing room during the pandemic.

MEMORANDUM DECISION AND ORDER - 12

*Trimarco*, 2020 U.S. Dist. LEXIS, at *8. The Court finds the limited number of remote authorizations consistent with Rule 53, which at its core is a rule intended to ensure fair criminal proceedings. *See Video Broadcasting from the Federal Courts: Issues for Congress*, CONG. RES. SERV., at 7 (2019). Indeed, Federal Rule of Criminal Procedure 2 counsels, "[the Federal Rules of Criminal Procedure] are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."

## CONCLUSION

Open criminal proceedings are critical to democracy and the fair administration of justice. The Court does not take the decision to partially close defendants' trial proceedings lightly. The Court appreciates the difficult circumstances presented by the ongoing pandemic and acknowledges that those circumstances may change come trial in June. However, "[i]t is by now a truism that 'while the Constitution protects against invasions of individual rights, it is not a suicide pact.'" *Smith*, at 15 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 160 (1963)). Accordingly, the Court finds partial closure necessary to preserve public health and safety.

MEMORANDUM DECISION AND ORDER - 13

## ORDER

**IT IS ORDERED THAT:**

1.     The Court will conduct a hearing on the Defendants' right to a public

       trial. That hearing will be set by separate notice.

2.     The Clerk is directed to email this Order, as well as the forthcoming

       Notice of Hearing referenced in the preceding paragraph to the Idaho

       Press Club at email@idahopressclub.org. The Court requests that the

       Idaho Press Club distribute a copy of this order to its members.

3.     The parties may submit supplemental briefing regarding the Court's

       planned trial proceedings by no later than 10 days before the hearing.

4.     Members of the press also may submit amicus briefing, not to exceed

       20 pages per brief, 10 days before the hearing.

DATED: December 21, 2020

B. Lynn Winmill
U.S. District Court Judge