UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO, *et al.*<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On October 30, 2020, this Court issued Pretrial Order No. 1. Dkt. 666. Defendants object to various aspects of the order. The Court conducted a hearing on January 26, 2021 regarding defendants' objections related to their public-trial rights. *See* Dkts. 724, 725. Otherwise, the Court will resolve the remaining objections in this decision. For the reasons explained below, the Court will overrule the majority of the objections.

## BACKGROUND

Pretrial Order No. 1 details the planned trial procedures for this nine-defendant, 10-week trial, which is scheduled to begin on June 8, 2021. *See* Dkt. 666. Specific trial procedures are spelled out in that order, and all of those

**MEMORANDUM DECISION AND ORDER - 1**

procedures will not be repeated here. Briefly, though, for ease of reference, the trial plan includes the following elements:

1. **Courtroom Remodel:** The Court will remove the benches in the gallery of Courtroom 3 to make room for nine defense tables. Jurors will be seated in the jury box and in the well. The Government will be seated at the tables on the north wall of the courtroom.

2. **Government Seating:** The Court will allow the Government to have three individuals seated at counsel table, and, if space allows, the Court will permit the Government case agent to remain in the courtroom. <u>The government should be aware, however, that at this point, the anticipated seating arrangement does not allow room for a fourth person. The government should therefore plan on having a total of three people in the courtroom during the trial.</u>

3. **Defense Seating:** To accommodate social distancing and to comply with anticipated limits on the size of gatherings permitted during the ongoing COVID-19 pandemic, each defendant will be accompanied by only one attorney in the courtroom. Defense co-counsel, investigators, and other staff will be able to watch the trial by live video and view a RealTime transcript in a separate viewing room. Additionally, the Court will

MEMORANDUM DECISION AND ORDER - 2

randomly assign seating at the defense tables in the courtroom. The seating assignments will change every week, so the jury does not focus on a particular defendant because of where he or she is seated. All defendants and counsel in the courtroom will also have access to the video livestream of the proceedings so that they are not disadvantaged by the position of their table within the courtroom.

4. **Defense Messaging:** The Court will provide each defendant with a laptop equipped with an instant messaging platform. Defendants will be able to instantly communicate with their attorneys. Likewise, counsel will use this same platform to communicate with co-counsel, staff, and investigators who are not physically present in Courtroom 3.

5. **Support Staff and Resources**: The Court will allow the Government to have one individual in the courtroom to operate the evidence presentation system. Similarly, the Court will allow defendants, collectively, to have one individual in the courtroom to operate the evidence presentation system.

6. **Courthouse Office Space for Defense Counsel:** The Court will provide office space at the Courthouse for defense counsel to use during trial. Although it may not be possible to provide nine separate offices, the

MEMORANDUM DECISION AND ORDER - 3

Court will provide a suite of office space to be shared by defendants. A live video feed and RealTime transcript of the trial will be available in the office space. The Court will also make rooms available for meeting with and preparing defense witnesses.

## ANALYSIS

Defendants object to various aspects of this Pretrial Order No. 1. Among other things, various defendants have argued that the anticipated trial procedures violate their due-process rights, their right to assistance of counsel, and their rights related to voir dire.

### A.   Due Process

Defendants claim the Pretrial Order's one-attorney-per-defendant mandate leaves them with inadequate resources and deprives them of due process of law. They also claim that the disparity in the number of persons permitted in the courtroom and courtroom setup violates due process because it has the appearance of bias towards the Government. Defendants further claim that the Pretrial Order unfairly mandates they share space and resources with each other. The Court disagrees and finds that the Pretrial Order procedures will not deprive defendants of due process.

### 1.   Legal Standard

Criminal defendants are entitled to due process of law. U.S. CONST. amend.

V. In meeting this constitutional standard, a district court enjoys "the broadest latitude in presiding over the cases before [it]." *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987). However, the court "may not adopt procedures that impair a defendant's right to due process or his other rights guaranteed by the constitution," which includes "the right to be personally present and to be represented by counsel at critical stages during the course of the prosecution." *Id*. The court is also prohibited from adopting procedures that significantly favor one party over another. *Id*. Thus, the Supreme Court and Ninth Circuit have deemed certain procedures that have unduly burdened defendants and resulted in an improper disparity in treatment between defendants and the Government a violation of due process. *See Wardius v. Oregon*, 412 U.S. 470, 475-476 (1973) ("Notice-of-alibi" statute that required defendant to disclose alibi in advance unconstitutionally required the defendant "to divulge the details of his own case" when the State had no reciprocal requirement to divulge their evidence to rebut the alibi); *United States v. Bahamonde*, 445 F.3d 1225, 1228-1229 (9th Cir. 2006) (discovery provision unconstitutional as it did not mandate reciprocal discovery by state).

Still, a disparity in treatment and resources provided does not always result in a due process violation. The Supreme Court has recognized that the

Government's "task of finding and assembling admissible evidence that will carry its burden of proving guilt beyond a reasonable doubt is entirely different from the defendant's task in preparing to deny or rebut a criminal charge." *United States v. Cronic*, 466 U.S. 648, 663 (1984). Absolute parity with the government is not required; rather, a defendant's due process right is violated when a rule or procedure, as applied, results in fundamental unfairness. *Wardius*, 412 U.S. at 476. This determination turns on the specific circumstances of each individual case. *See Mason v. Arizona*, 504 F.2d 1345, 1352 (9th Cir. 1974) (Due Process Clause requirements "depend[] upon the need as revealed by the facts and circumstances of each case.").

### 2. One Attorney per Defendant in the Courtroom

The defendants claim that the one-attorney-per-defendant mandate denies them adequate legal assistance and grants the Government more resources than any one defendant.[1] The Court finds that defendants are still afforded adequate legal assistance.

---

[1] To be clear, three of the nine defendants have two attorneys; the others have one. The defendants who have two attorneys will have the assistance of both attorneys during trial; it's just that only one of those attorneys will be allowed in the courtroom because of space limitations in light of the COVID-19 pandemic. During the trial, the attorneys who are not in the courtroom will have access to a live feed of the trial, along with the ability to instant message their clients.

**MEMORANDUM DECISION AND ORDER - 6**

The Court will provide each defendant with a laptop equipped with an instant messaging platform. This will allow the defendants to contemporaneously communicate with not only counsel in the courtroom with them, but also with co-counsel, investigators, expert witnesses, and staff outside of the courtroom, who will be viewing the trial in a separate viewing room. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). That the other attorneys, investigators, and staff will not be physically present in the courtroom does not in turn mean that defendants are deprived of their assistance. The Court finds any inconvenience in communication slight and outweighed by serous considerations of protecting health and safety of participants, as the Court elaborated on in its previous Order. *See* Dkt. 724.

The Pretrial Order permits the Government three individuals at counsel table, *see* Dkt. 666 at 7, which the Court anticipates will include two attorneys and one case agent. Defendants claim that the disparity in the number of individuals allowed is unfair. But the conclusions in *Wardius* and *Bahamonde*, which pertained to specific discovery rules, were not drawn from comparing the degree of disparity between the defendant and the Government. Rather, the courts evaluated the impact the disparity had on the defendant's due process rights. *Wardius*, 412 U.S. at 476; *Bahamonde*, 445 F.3d at 1229. Indeed, courts recognize that the Government's burden is different in kind, not degree, from the defendants. *Cronic*,

**MEMORANDUM DECISION AND ORDER - 7**

466 U.S. at 663. Here, the Court finds that the proposed procedures do not deprive the defendants of due process of law. Again, defendants will have unfettered electronic access to their counsel and defense teams. Furthermore, the Government will not receive the undue benefit of a discovery or substantive rule like that in *Wardius* or *Bahamonde*.

This is also not a case where defendants are deprived of necessary resources. In support of their claim, defendants cite to *Ake v. Oklahoma*, 470 U.S. 68 (1985). In *Ake*, the Supreme Court found that an appointed psychiatrist was necessary as a matter of due process because the defendant's mental sanity was a "substantial factor in his defense." *Id*. at 86. Although this case is complex in fact and voluminous in the amount of discovery, no defendant has asserted a unique need comparable to *Ake* such that their investigators and staff are required to be in the courtroom as a matter of due process. Plus, as already noted, defense counsel would have the ability to instantly communicate with investigators and other staff because these individuals will be able to watch the trial proceedings in real time.

### 3. Sharing Space and Resources

Defendants object to sharing an office space in the Courthouse that the Court has undertaken to provide for them. Additionally, Gennady Babichenko objects to the requirement that defendants choose one individual to operate the evidence

presentation system. The Court is aware that defendants may have conflicting defenses. But this does not mean it is prejudicial for them to share space and an evidence operator. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held to a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985). However, a government's interference with confidential relationships between defendants and counsel may implicate Sixth Amendment rights when the interference substantially prejudices the defendant. *Id*. Here, the defendants are not required to share privileged documents, strategies, or records with each other. The Court expects every attorney to act professionally, ethically, and responsibly while sharing the designated office space. At this time, any conceivable issue with sharing an office space is speculative and no substantial prejudice has been shown. Furthermore, the evidence operator will strictly perform a supportive function. If any defendant has a concern with the presentation of specific evidence, they may bring it to the Court's attention before the evidence is expected to be presented.

### 4. Appearance of Bias

Defendants claim that the proposed courtroom setup improperly gives the impression that the Court is biased in favor of the Government, therefore depriving them of a fair trial. Specifically, Mikhail Iyerusalimets objects to the rotating

**MEMORANDUM DECISION AND ORDER - 9**

defense seating arrangement and suggests that the Government rotate as well. Additionally, Piotr Babichenko and Mikhail Iyerusalimets are concerned with jury bias as a result of seeing a multi-person Government team compared to only one attorney accompanying each defendant.

A judge's actual bias or appearance of bias may deprive the defendant of a fair trial. *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001) (citing *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986)). The Constitution also prohibits courtroom arrangements that favor one party or undermine the defendant's presumption of innocence. *Thompson*, 827 F.2d at 1258; *Deck v. Missouri,* 544 U.S. 622, 630 (9th Cir. 2005). The Court does not find that the Pretrial Order procedures suggest the appearance of bias, let alone actual bias.

Turning first to the rotating seating assignments, the Court finds it unnecessary for the Government to rotate along with the defendants. The point of rotating seating assignments is to make sure the jury will have an equal opportunity to observe each defendant and vice versa. *Bustamante v. Eyman*, 456 F.2d 269, 274 (9th Cir. 1972). Plus, the Court wishes to ensure that the jury does not unduly focus on any one defendant by virtue of where a defendant is seated in the courtroom. Requiring the government to rotate along with the defendants would not advance these goals, and the Court is not persuaded by the argument that, in

fairness, the government must rotate along with the defendants. Furthermore, the Court will instruct the jury that it is randomly choosing and changing seating assignments and that they should not attach any significance to where a defendant is seated. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). As part of that instruction, the Court will also clarify that the jury should not attach any significance to the fact that the government is not rotating.

Next, the Court does not find the disparity in the number of attorneys present to suggest bias or that the Court favors the Government over the defense. As explained, the Government's burden varies in kind, not degree, from the defendants.' *Cronic*, 466 U.S. at 663. This is a complex case, and the Government must prove each defendant guilty beyond a reasonable doubt. The Court finds nothing inherently prejudicial in the optics. One attorney per defendant does not undermine the defendants' presumption of innocence or cast the defendants with the "unmistakable mark of guilt." *Estelle v. Williams*, 425 U.S. 501, 518 (1976). The jury will be well informed that the measures the Court will take are in pursuit of protecting the health and safety of the participants while ensuring the defendants a fair trial.

Also, as this pandemic wears on, and as the vaccines roll out, the Court will

be amenable to allowing additional defense team members into the courtroom. Defense counsel are therefore free to restate their objections to this aspect of the pretrial order during trial. As we've learned during the past year or so, the situation regarding the pandemic is fluid. So long as the Court is able to keep the trial participants safe from a public health standpoint, the Court would be willing to allow additional participants into the courtroom.

### B.     Assistance of Counsel

Defendants claim that the Pretrial Order procedures will result in inadequate communication, therefore depriving them of effective assistance of counsel. The Court finds that the permissible communication methods are adequate and will not deprive the defendants of assistance of counsel.

#### 1.  Legal Standard

"The Sixth Amendment guarantees a defendant the right to confer with counsel during trial." *United States v. Miguel*, 111 F.3d 666, 672 (9th Cir. 1997). The touchstone of this right is that the defendant can contemporaneously communicate with their counsel during trial. *Id*. For example, courts have consistently upheld arrangements where defendants were seated several feet away from their counsel. *See United States v. Levenite*, 277 F.3d 454, 465-466 (4th Cir. 2002) (no error where defendants seated six feet behind counsel could still confer

during trial); *United States v. Balsam*, 203 F.2d 72, 82 (1st Cir. 2000) (no error where defendants seated "four to five feet" from defense table could consult with counsel during trial); *United States v. Jones*, 766 F.2d 994, 1004 (6th Cir. 1985) (no error where defendants seated two rows behind counsel table were permitted to pass notes and confer with counsel during trial). As such, defendants enjoy the "right to unrestricted access to their lawyer for advice on a variety of trial-related matters," except when the defendant is testifying or during a brief recess between defendant's testimony. *Perry v. Leeke*, 488 U.S. 272, 284 (1989). *Cf. Geders v. United States*, 425 U.S. 80, 91 (1976) (order that prohibited defendant from consulting his counsel during overnight recess between his direct and cross examination violated assistance of counsel right).

### 2. Communication with Counsel

The Court will ensure that defendants are able to contemporaneously communicate with counsel during trial. As explained, each defendant will be equipped with a laptop suitable for instant messaging counsel. The Court will also permit defendants to pass notes to counsel in the courtroom, provided they do so in a safe manner. Furthermore, defendants and counsel will have the ability to communicate with co-counsel, investigators, and staff located outside the courtroom. Indeed, this unfettered electronic communication is more permissive

than cases where leaning over or passing notes was deemed sufficient communication. *Balsam*, 203 F.2d at 82; *Jones*, 766 F.2d at 1004.

Defendants claim that instant messaging is too slow and could result in counsel missing something crucial. Defendants may alert the Court if there are Internet issues resulting in lag. Similarly, if counsel has difficulty consulting with defendants during trial, they may notify the Court and request an opportunity to consult with their clients.[2] Furthermore, the Court finds the risk of missing something while instant messaging no greater than if counsel and defendants were audibly conferring during the proceedings. As such, the Court finds that the Pretrial Order procedures will not impair the defendants' rights to assistance of counsel.

### C. Jury Selection

Defendants claim that the Pretrial Order's jury selection procedures do not allow them to adequately participate in voir dire. Additionally, Anna Iyerusalimets objects to the Court's decision to allow defendants only two additional peremptory

---

[2] Pavel Babichenko is concerned that the Court will reprimand defendants about failing to perfectly follow COVID-19 protocols in front of the jury. Of course, defendants and their attorneys are expected to abide by the protocols. However, the instant messaging platforms provided should mitigate this issue. If defendants and counsel have trouble communicating with each other during trial, they may bring the problem to the Court's attention.

challenges; she says each defendant should be entitled to more challenges in light of their conflicting interests.

### 1.  Participation in Voir Dire

The defendants' concerns as to the Court's anticipated voir dire procedures appear to stem from a misunderstanding of the Court's Pretrial Order. The Court intends to work with the parties to develop a questionnaire which will be sent to, and completed by, every prospective juror. The questionnaire is not meant to supplant the Court's normal voir dire practice. Rather, the questionnaire is intended to augment the Court's normal practice in soliciting from parties voir dire questions before trial. Accordingly, defense counsel will have ample opportunity to supply their input as to what questions they would like to ask prospective jurors. Ideally, the Court will work with the parties to determine which questions are appropriate for the written questionnaire, and which are more appropriate to ask prospective jurors in-person. *United States v. Holley*, 493 F.2d 581, 584 (9th Cir. 1974) (scope of voir dire examination is a matter within the sound discretion of the trial judge). This strategy is intended to curtail question redundancy at the time of voir dire and promote expeditious jury selection.

### 2.  Additional Peremptory Challenges

Anna Iyerusalimets objects to the Court's decision to award the defendants

**MEMORANDUM DECISION AND ORDER - 15**

two additional peremptory challenges and claims that each defendant should be entitled to more challenges in light of their conflicting interests. However, the Court's decision to award additionally peremptory challenges under Federal Rule of Criminal Procedure 24(b) is permissive, not mandatory. *United States v. McClendon*, 782 F.2d 785, 787 (9th Cir. 1986). This is so even when defendants cannot agree on how to exercise their permitted challenges. *Id*. at 788. Furthermore, the need for expeditious proceedings is a valid consideration for the Court in deciding whether to permit additional challenges. *Id*. Accordingly, the request for additional peremptory challenges will be denied.

### D. Miscellaneous Objections

Defendants also object to certain logistical aspects of the Court's Pretrial Order. The Court responds to these objections as follows:

#### 1. Transcripts

Defendants object to the Court's RealTime Transcript payment policy. However, their objection appears to stem from a misunderstanding. Defendants will not be required to pay for transcripts. Instead, CJA and the Government will split the cost of transcripts, including daily certified transcripts.

#### 2. Trial Schedule; Breaks

Defendants object to the Pretrial Order's 9:00 a.m. to 4:00 p.m. trial schedule and would prefer trial from 8:30 a.m. to 2:30 p.m. to allow time to work

**MEMORANDUM DECISION AND ORDER - 16**

on other matters. As the Court indicated in its recent Order on the Motion to Continue, trial will be conducted from 9:00 a.m. to 3:00 p.m., with two twenty-minute breaks. *See* Dkt. 716. Although this is not a typical trial schedule for the Court, it's close, and it should allow time for counsel to work on matters after in the late afternoon hours. Additionally, during the twenty-minute breaks, Anna Iyerusalimets may access the Court's lactation room if necessary.

### 3. Internet

The Court understands and appreciates counsel's concern regarding the need for hardwired Internet. However, after consultation with the Court's IT personnel, the Court is confident that its WiFi connection will be sufficiently robust to address these concerns.

### 4. Jury Questionnaire

Defendants would prefer to receive the jury questionnaires ten days in advance of jury selection. The Court, in its discretion, has determined that providing the jury questionnaires seven days in advance is sufficient.

### 5. Daily COVID-19 Screening

Some defendants have requested daily COVID-19 screening. Thus far, the Court has not been able to obtain funding for such testing. If that changes, the Court will advise counsel.

For all these reasons, and with the limited exceptions noted above, the Court

will overrule the defendants' objections to Pretrial Order No. 1. To the extent an objection is not specifically mentioned here, the Court has considered the objection and has determined that it should be overruled. As noted, however, the Court is amenable to changing trial procedures midstream if it's appropriate as the pandemic continues to unfold. For that reason, Defendants should not hesitate to restate objections during the trial. For now, though, the Court is planning to proceed as outlined in Pretrial No. 1, with the modifications noted here.

## ORDER

**IT IS ORDERED that** Defendants' objections to Pretrial Order No. 1 (Dkt. 666) are **OVERRULED in part and SUSTAINED in part,** as explained above.

DATED: January 27, 2021

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 18**