UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Trial in this matter is set for June 8, 2021. Defendants have filed a series of

motions asking the Court to exclude or limit testimony from twelve government

witnesses. *See* Dkts. 645-49, 651-53. For the reasons explained below, the Court

will deny the motions to exclude witnesses from testifying at trial based on the

government's Rule 16 notices. The Court will, however, order the government to

supplement the notices for certain witnesses within 14 days of this order. The

Court will also grant defendants' motion to conduct a pretrial *Daubert* hearing for

the following witnesses: Leah Caras; Joshua Warner, James Hogg, Christopher Pyryt, and Robert Pollock. Otherwise, at this time, the Court does not intend to conduct pretrial *Daubert* hearings for any other witnesses. The Court anticipates performing its gatekeeping function for any remaining expert testimony during trial.

## BACKGROUND

On January 2, 2020, the government filed notices of intent to call various experts at trial, including: (1) representatives from trademark holders Apple Inc., Samsung, Inc., and Qualcomm Inc., (2) a representative from certification mark holder UL LLC, (3) representatives from Customs and Border Protection (CBP); (4) financial experts; and (5) computer forensic experts. *See* Dkts. 340-43. And in May 2020, the government filed a notice of intent to introduce expert testimony from Amazon and eBay. *See* Dkt. 515. Defendants had 14 days within which to notify the Court if they intended to object to or challenge any scientific methodology or other specialized knowledge. *See D. Idaho General Order 377,* ¶ 10, at 5. They did not do so. Instead, in October 2020 – roughly 10 months after the January notices were served – defendants filed a series of motions asking the Court to exclude various witnesses from testifying during the government's case-in-chief based on allegedly deficient Rule 16 notices. Alternatively, the defendants ask the Court to conduct *Daubert* hearings for many of these witnesses. In

response, the government asks the Court to strike the late-filed motions. Otherwise, the government says that (1) the Rule 16 notices are sufficient and (2) a *Daubert* hearing is unnecessary because the record shows that the challenged experts are qualified, that their conclusions are reliable, and that their testimony will aid the jury.

## THE MOTION TO STRIKE

The Court will deny the government's motion to strike defendant's late-filed motions. The government correctly points out that, despite repeated prompting, the defendants did not follow up on the government's request to iron out any issues regarding government experts. The government is also justifiably upset at defendants' delay because in a complex case such as this, pretrial deadlines do indeed matter – even when those deadlines are months before trial. *See Mtn. Mem.*, Dkt. 662, at 4. The Court is also not persuaded by defendants' proffered excuse – that they were waiting to see what discovery would reveal before filing motions. They easily could have raised the issues regarding the allegedly deficient Rule 16 notices before October, when they finally filed their motions.

Nevertheless, at the time defendants filed their motions, trial was set for February 1, 2021. The trial has now been continued to June 8, 2021. So in that respect, the defendants are the beneficiary of a pandemic-related continuance. In December 2020 (shortly after the defense motions ripened), the Court continued

the trial to its current setting, recognizing that it likely would be impossible to conduct a 10-week, 9-defendant trial in a complex case in the middle of an Idaho winter during a pandemic. *Dec. 4, 2020 Order,* Dkt. 716, at 2. Given that continuance, the Court will exercise its discretion to consider the merits of defendants' motions regarding the sufficiency of the Rule 16 notices. Plus, even putting the continuance aside, the Court has an independent gatekeeping function under Federal Rule of Evidence 702 and *Daubert.* So even if defendants hadn't requested *Daubert* hearings at all, the Court would have raised the issue regarding experts' qualifications and the reliability and relevance of their testimony *sua sponte*. Resolving these questions before trial should help the trial proceed more efficiently. Accordingly, the Court will address the late-filed motions.

## THE GOVERNING LEGAL STANDARDS

Defendants advance two key arguments in the majority of their pending motions. First, they argue that the government's expert notices were insufficient under Federal Rule of Criminal Procedure 16(a). Based on these alleged deficiencies, the defendants ask the Court to exclude all of the witnesses from testifying at trial. Alternatively, defendants ask the Court to conduct *Daubert* hearing on the majority of these witnesses. The Court will address each witness in turn. First, though, the Court will lay out the governing legal frameworks for Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702.

1.  **Rule 16**

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to provide defendants with a "written summary of any testimony" of an expert witness the government intends to introduce in its case-in-chief during trial under Federal Rules of Evidence 702, 703, or 705. The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). As other courts have noted, the Advisory Committee Note to the 1993 Amendment of Rule 16 indicate "that the bases and reasons must be sufficient to allow counsel to frame a Daubert motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, 2010 WL 2347406, at *1 (N.D. Cal. 2010) (quotation marks omitted). The Ninth Circuit has observed that "minimal notice" is required under Rule 16. *United States v. Jimenez*, 525 Fed. App'x 565, 567 (9th Cir. 2013). The goals of Rule 16(a)(1)(G) are "to minimize surprise from unexpected expert testimony and to provide Defendant with a fair opportunity to test the merits of the expert's testimony through focused cross-examination." *United States v. Baras,* No. CR 11-00523-YGR, 2014 WL 129606, at *3 (N.D. Cal. Jan. 14, 2014) (*quoting* Fed. R. Crim. P. 16 1993 amend. advisory committee's note). Still, though, "[a]lthough the summary required by Rule 16 provides the defense with

some notice, the requirement of setting forth 'the bases and reasons for' the witnesses' opinion does not track the methodological factors set forth by the *Daubert* Court." Margaret A. Berger, *Procedural Paradigms for Applying the Daubert Test*, 78 Minn. L. Rev. 1345, 1360 (1994).

If the government fails to comply with Rule 16(a)(1)(g), "the district court may order disclosure, grant a continuance, prohibit the government from offering the evidence at trial, or grant whatever relief the district court deems just under the circumstances." *United States v. Mendoza*, 244 F.3d 1037, 1046 (9th Cir. 2001). But the "court should not impose a sanction harsher than necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983).

## 2.  The Court's Gatekeeping Function

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court's role in applying Rule 702 is to be a gatekeeper. *Daubert*, 509 U.S. at 589. In that role, the court considers both relevance and reliability of the proffered evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation marks and citation omitted).

*Daubert* discussed several reliability factors, including testing, peer review and publication, known or potential rate of error, and general acceptance in the relevant scientific community. 509 U.S. at 592-94. In later decisions, the Supreme Court clarified that the gatekeeping function described in *Daubert* applies not only to testimony based on scientific knowledge, but also to testimony based on technical or specialized knowledge. *Kumho Tire*, 526 U.S at 141. But the "reliability inquiry is a 'flexible one,'" and the district court has "broad latitude to determine" what factors in *Daubert*, if any, are relevant to the reliability determination. *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (*quoting Kumho Tire*, 526 U.S. at 153).

The Court's analysis focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Court's "task . . . is to analyze not what the experts say, but what basis they have for saying it." *Wendell v. GlaxoSmithKlein LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citation omitted).

Evaluating the admissibility of expert witness testimony for relevance and reliability is distinct from challenges to the testimony made by impeachment or cross-examination. *See City of Pomona v. SQMN. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (The court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Wells*, 879 F.3d 900, 933 (9th Cir. 2018) (*quoting Daubert*, 509 U.S. at 596). Challenges going to the weight of the evidence and credibility determinations are reserved for the finder of fact. *City of Pomona*, 750 F.3d at 1044.

Finally, the district court "has broad latitude in determining the appropriate form of the inquiry." *Id.* (*citing United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000)). Courts often hold pretrial *Daubert* hearings to determine the admissibility of expert opinion testimony. But a separate, pretrial hearing is not

required so long as the court performs its gatekeeping function, creates a record of the inquiry, and articulates a basis for admitting or excluding the testimony. *See United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) ("trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function"). Further, some courts have determined that it is permissible to conduct *Daubert* hearings via remote video conferencing. *See United States v. Nelson*, No. 17-cr-5330EMC-1, 202 WL 3791588, at *1 (N.D. Cal. July  7, 2020) (overruling objections to conducting remote *Daubert* hearing "because neither Rule 43 nor the Constitution mandates a defendant to be physically present" at that hearing); *see generally United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) ("*Daubert* makes the district court a gatekeeper, not a fact finder."). This Court concurs and therefore intends to conduct the *Daubert* hearings in this case via remote videoconferencing.

## ANALYSIS

## 1.  Apple, QualComm, and Samsung (Caras; Warner; Hogg; Pyryt)

The government identified four trademark experts in its Rule 16 notice: (1) Leah Caras for Apple Inc.; (2) Joshua Warner for Qualcomm Inc.; and (3) James Hogg and Christopher Pyryt for Samsung Electronics America, Inc. *See* Dkts. 340; 516.

## A. The Rule 16 Challenge

Defendants argue that each of these individual's opinion testimony should be excluded because the government's Rule 16 notice was insufficient. Defendants say the government failed to specify the opinions these witnesses will offer, opting instead to provide only a generalized list of subject matters. *See, e.g.,* Dkts. 646 & 647, at 4. For three of the four witnesses – Caras, Hogg, and Warner[1] – this assertion is incorrect. The notices for these witnesses explicitly state that the witness will testify that the parts and accessories he or she examined were not authentic "because, among other reasons, the manufacturing specifications of the counterfeit merchandise were inferior and the counterfeit products lacked crucial indicia of legitimate . . . products." *See Dkt*. 340, at 2-4; Dkt. 516, at 2. That's an opinion. Accordingly, defendants' reliance on the Seventh Circuit's decision in *United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) is misplaced. In *Duvall*, the Rule 16 notice failed to identify what opinion the government expert would offer at

---

[1] Regarding Joshua Warner, the government's initial notice indicated that it would call a witness from Qualcomm. In May 2020, the government identified an individual – Joshua Warner – who would testify regarding Qualcomm products. Specifically, the notice states, "The United States anticipates that Mr. Warner will testify that he examined the mobile-device parts and accessories bearing the various Qualcomm trademarks at issue in this case and that these parts and accessories were not authorized Qualcomm-certified products, because, among other reasons, the products did not pass Qualcomm's certification and testing process or meet manufacturing specifications to pass the Qualcomm certification process, and the counterfeit products lacked crucial indicia of legitimate Qualcomm-certified products." Dkt. 516, at 2.

trial.

The notice for the fourth trademark-holder expert, Chris Pyryt, is slightly different. Unlike the notice for the other witnesses, the notice for Mr. Pyryt does not say he will opine that parts and accessories at issue in this case are counterfeit items. Rather, the notice speaks more generally about how Samsung protects its intellectual property and how counterfeiters attempt to replicate Samsung products. The notice states:

> The United States may also call Christopher J. Pyryt as an expert in Samsung Inc. brand security and anti-counterfeiting initiatives. Since 2013, Mr. Pyryt has been the Senior Manager for Samsung Electronics America, where he is responsible for investigating counterfeit products and maintaining Samsung's brand-protection program. *See* Ex. 1.C [Pyryt resume]. The United States anticipates that Mr. Pyryt will explain the process by which Samsung Inc. protects its intellectual property, as well as how counterfeiters unsuccessfully attempt to replicate legitimate Samsung products. Mr. Pyryt is further expected to explain the process by which Samsung selects the parts used in its products and the safety risks associated with using counterfeit parts to repair Samsung products. The United States further anticipates that Mr. Pyryt will testify regarding Samsung's registration and use of its trademarks with the U.S. Patent and Trademark Office, as well as the pricing and distribution of legitimate Samsung products.

Dkt. 340, at 4-5. In context, it seems logical that – as with the other trademark experts – Mr. Pyryt may testify that he examined parts and accessories at issue in this litigation and that these parts and accessories were not authentic Samsung products. Indeed, defense counsel apparently drew this conclusion after reviewing

the disclosures the government provided regarding Mr. Pyryt.[2]

On this record, the Court will give the government two choices: (1) it can either restrict Mr. Pyryt to providing background expertise – rather than rendering specific opinions regarding the products at issue in this litigation; or (2) it can revise its Rule 16 notice to clarify what opinions Mr. Pyryt will offer at trial and the bases and reasons supporting that opinion. The Court will deny defendants' request to exclude Mr. Pyryt from testifying at trial.

Aside from arguing that the Rule16 notices did not alert defendants as to the opinions each trademark-holder expert will offer at trial, defendants also argue that the bases and reasons for the witnesses' anticipated opinions are insufficient. The Court is not persuaded regarding the notices for Caras, Hogg, and Warner. The notices for these witnesses say essentially the same thing, tracking the language shown here for Ms. Caras:

> Ms. Caras is expected to testify that, in her opinion, these parts and accessories were not authentic Apple products, *because, among other reasons, the manufacturing specifications of the counterfeit merchandise were inferior and the counterfeit products lacked crucial indicia of legitimate Apple Inc. products.*

Dkt. 340, at 2 (emphasis added); *see id.* at 3 (language for Qualcomm witness); *id.*

---

[2] In an addendum, defense counsel indicated that the government supplied "a few reports and summaries" regarding Mr. Hogg and Mr. Pyryt. *See Addendum*, Dkt. 654, at 2. Defense counsel reports that the "disclosures related to both Mr. Hogg and Mr. Pyryt consist of conclusory statements that the items in question were counterfeit." *Id.*

at 4 (language for Hogg); *see also* Dkt. 516 at 2 (Warner). For each of these witnesses, the notice goes on to state that the witness will explain: (1) the process by which counterfeiters unsuccessfully attempt to replicate legitimate products; (2) the process by which the relevant company selects parts used in their products and (3) the safety risks associated with using counterfeit parts to repair legitimate products. *Id.* at 3-5. Additionally, Caras and Hogg are both expected to testify regarding registration and use of the relevant trademarks; pricing and distribution of legitimate product; and characteristics of Apple and Samsung trademarks (as applicable). They are also expected to compare "spurious and legitimate versions" of the relevant trademarks. *Id.* at 3.

This information is sufficient for a Rule 16 notice for Caras, Hogg, and Warner. Rule 16(a)(1)(G) does not require a chapter-and-verse recitation of the expert's opinion, bases, and reasons. And the bases and reasons provided for these witnesses' opinions were sufficient to allow defense counsel to frame a *Daubert* motion or other motion in limine, to prepare for a possible counter expert, and to meet the case-in-chief testimony. Accordingly, the Court will deny the defendants' Rule 16 challenge to exclude Ms. Caras, Mr. Hogg, and Mr. Warner based on the allegedly deficient Rule 16 notice. As noted, the Court will allow the government to file a supplemental notice for Mr. Pyryt.

## B.  The Request for a *Daubert* Hearing

The next question is whether the Court should conduct at pretrial *Daubert*

hearing, outside the presence of the jury, to assess the qualifications of Caras,

Warner, Hogg, and Pyryt.[3] The government argues that the record shows that these

experts are qualified, that their conclusions are reliable, and that their testimony

will aid the jury. Dkt. 663, at 13. The Court is not persuaded that, based solely on

the record before it, the Court can adequately perform its gatekeeping function.

Rather, a pretrial *Daubert* hearing will be necessary. The Court will schedule that

hearing by separate notice.

In the meantime, though, counsel may benefit from the Court's preliminary

thoughts regarding these witnesses.

First, regarding qualifications, based on a review of the trademark holder's

resumes, it appears that they will be qualified by virtue of their knowledge and

experiences. Still, though, the government will be required to lay that foundation,

for each areas of expertise, at the hearing. And regarding the reliability of their

opinions, the Court does not have enough information to assess whether these

experts' methods of assessing product authenticity is reliable and based on

---

[3] The Court will conduct a *Daubert* hearing for Mr. Pyryt regardless of whether he will offer opinion or non-opinion testimony.

observable facts. For the most part, these experts have said simply that the counterfeit products have "inferior manufacturing specifications" and "lack crucial indicia" of the genuine articles. It's hard to tell precisely what the witnesses are talking about. What, precisely, are their methods? What specific things do they examine? In other words, how can they tell if a particular item is a counterfeit or genuine? The information provided isn't specific or detailed enough to allow the Court to conclude that the methodology is based on observable facts.

In this regard, the Court finds other decisions involving cell phone experts instructive. In *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963-CPS-SMG, 2009 WL 962809 (E.D.N.Y. Apr. 8, 2009), for example, the court was able to point, specifically, to the expert's "method of assessing product authenticity," which included "comparing counterfeit products with genuine products and analyzing differences between [1] the materials used to manufacture the products, [2] the affixation of trademarks to and [3] the appearance of words and images on the products, and [4] the products' packaging, . . . ." *Id.* at *6. Given this level of detail, the court was able to conclude that the expert's methodology was "reliable and based on observable facts." *Id.*

Here, although the notice provides the basics, the Court, not having had the benefit of reviewing any of the discovery in this case, has to guess at the precise methodology these experts use. The Court can guess, for example, that the quality

of cellophane packaging might matter, based on previous motion practice in this case. And when the experts refer to "inferior manufacturing specifications," the Court can guess that the accessories themselves are inferior in some way but it's not enough to just say that the phones are "inferior" – the Court needs a more thorough explanation as what the specifications are, and how those inferior specifications manifest themselves in counterfeit phones. The same is true regarding the statements about how the accessories "lack crucial indicia" of genuine products. Given the lack of specificity, the Court will conduct a *Daubert* hearing to determine if these experts' methodologies are reliable and based on observable facts.

After the hearing, and with a fuller record, the Court will be in a better position to assess the experts' qualifications as to each area of anticipated testimony, the relevance and reliability of their testimony, and defendants' arguments that the government is planning duplicative testimony. *See e.g.,* Dkt. 649, at 5 (arguing that Hogg's and Pyryt's anticipated testimony will be redundant); Dkt. 647, at 6 (arguing that Warner's testimony will be irrelevant because none of the charged devices in this case are Qualcomm products). The Court will note at this point, however, that it is not persuaded by defendants' general assertion that a counterfeiting experts' testimony would invade the province of the jury. *See* Dkt. 647, at 6. *See, e.g., United States v. Edwards,* No.

16-20070-01/02-CM, 2019 WL 5196614, at *11 (D. Kan. Oct. 15, 2019) (rejecting a similar argument; concluding that expert "testimony that certain marks examined are "counterfeit" . . . is properly admissible under Rules 403, 702, and 704.").

## 2.  UL (Pollock)

The government has notified that defense that it may call Robert Pollock to testify as an expert regarding the dangers posed by counterfeit cellphone adapters.

### A. The Rule 16 Challenge

The government's Rule 16 notice regarding Mr. Pollock is sufficient. In relevant part, the notice provides that: (1) Mr. Pollock may be called "as an expert in UL LLC brand security and safety certification processes." Dkt. 340, at 5.  Mr. Pollock's job includes "investigating safety concerns and implementing corrective action if necessary. . . . [He] ensures that products in the marketplace that bear UL Certification Marks are in compliance with the applicable safety requirements." *Id.* At trial, he will be "expected to testify that counterfeit cellphone adapters pose a danger to the public due to a lack of basic safety testing, which creates fire and shock hazards as well as risk of lethal electrocution." *Id.* at 6.

Defendants argue that the "conclusory statements in the notice and the UL promotional article fail to provide the Defendants with sufficient information to challenge Mr. Pollock's conclusion." *Motion,* Dkt. 653, at 4. The Court disagrees. The government's notice did its job of informing counsel of the opinions Mr.

Pollock intends to offer at trial, as well as the bases and reasons for those opinions. With the notice in hand, defendants had sufficient information "to frame a *Daubert* motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *Cerna*, 2010 WL 2347406, at *1.

The defendants say they have been unable to fully evaluate Mr. Pollock's opinions because the government produced information related to this expert (a white paper and underlying data) only by making those documents available for inspection to defense counsel *at the United States Attorney's Office*. Gvt. Response, Dkt. 663, at 9 (emphasis added). Defense counsel argues that "[s]uch an offer (especially during a pandemic) fails to provide the defense with any meaningful ability to have their own expert review the underlying data in advance of a physical inspection of the evidence." *Reply*, Dkt. 688, at 3. Defendants thus ask the Court to order the government to produce "all facts and data relied upon by Mr. Pollock . . . ." *Id.* at 2.

Based on the briefing, the Court is not persuaded that the government's method of production was insufficient. The Court will, however, order the parties to meet and confer on this issue. If the parties are unable to resolve their dispute, defendants may file a motion to compel a different or additional production related to Mr. Pollock. The Court will not, however, exclude Mr. Pollock from testifying

at trial based on the allegedly insufficient Rule 16 notice.

### B. Request for a Pretrial *Daubert* Hearing

The Court will grant defendants' alternative request to conduct a pretrial *Daubert* hearing regarding Mr. Pollock's qualifications, and the relevance, reliability, and fit of his anticipated testimony. Based on the resume supplied, it appears Pollock will easily qualify as an expert. But, still, the Court will expect the government to lay the requisite foundation at the *Daubert* hearing, and the Court will also want to probe more deeply into the reliability of his methodology and the relevance of his anticipated testimony.

The Court will make two preliminary observations, however, to help the parties prepare for the hearing and for trial: First, the Court is not persuaded that Mr. Pollock must have tested the specific adapters in this case before he can testify, more generally, regarding the safety concerns that arise with non-UL-certified adapters. *Cf. DaSilva v. Am. Brands, Inc.*, 845 F.2d 346 (1st Cir. 1988) (trial court did not abuse its discretion in permitting mechanical engineer to give opinion as to safety of design of machine even though witness had no design experience with machine). Second, at this point, it appears that testimony regarding the risks presented by counterfeit cellphone adapters will indeed be relevant at trial based on the government's stated intent to introduce evidence that defendant Mikhail Iyerusalimets told a confidential informant that his products have caught

on fire. Additionally, the governments says people who purchased goods from the defendants will testify that the products caught fire upon first use. *See* Dkt. 663, at 10.  Granted, the Court may change its mind depending on the testimony elicited during the *Daubert* hearing. But at this point, the Court is not persuaded by the defendants' arguments that Mr. Pollock's anticipated testimony would "inflame the jury's passions and prejudice with evidence that – at best – has marginal relevance." *Motion,* Dkt. 653, at 6. The defense may renew this objection during the context of the trial, but, based on the record before it, the Court is not persuaded that Mr. Pollock's anticipated testimony should be excluded under Federal Rule of Evidence 403.[4]

### 3.  Customs & Border Protection (Aprea, Matho, and Giese)

The government also notified the defendants that it intends to call three witnesses regarding Customs and Border Protection (CBP): Alan Aprea, Eugene J. Matho, Jr., and Brian Giese.

### A. The Sufficiency of the Rule 16 Notices

Defendants say the Rule 16 notice for these witnesses fails to describe their opinions or the bases and reasons for those opinions. Dkt. 651 at 2; Dkt. 648 at 3.

---

[4] The Court is aware that defendants have indicated they may file a separate motion in limine. They are of course free to do so and they may also raise the objection during trial.

The government explains that the witnesses will not be called upon to offer any opinions and that they will not testify about the facts of this case; instead, they will be called only for the purpose of explaining background information relating to the practices and procedures of Customs and Border Protection. *See Gov. Resp.*, Dkt. 663, at 11. This type of generalized testimony is perfectly acceptable under Federal Rule of Evidence 702, which states: "A witness who is qualified as an expert . . . may testify in the form of an opinion *or otherwise* . . . ." Fed. R. Evid. 702 (emphasis added).

But even though these experts will not offer opinion testimony at trial, the government still cannot simply just list topics in the Rule 16 notice. Instead, it "must summarize what the expert will actually say about these topics." *United States v. Williams,* 900 F.3d 486, 489 (7th Cir. 2018) ("Neither the rule nor our interpretation of it suggests that the 'written summary' means something different for non-opinion experts.").

The Rule 16 notices for the CBP witnesses fall short – even accepting the fact that these experts will not offer opinions at trial and will instead provide background information regarding CBP. As an example, the notice regarding Mr. Aprea says that he will "generally explain the following processes: when and why goods are targeted and presented for inspection; when and why goods are detained; notices to importers, rights holders, and brokers; the inventory, appraisal, and

seizure of the goods; and, finally, transference and storage of seized property."
Dkt. 341, at 2. Also, the notice indicates that Mr. Aprea will "explain how CBP
identifies shipments of counterfeit electronic products at its port of entries, when
such contraband is seized, and why such contraband is seized." *Id.* The notice for
Mr. Matho, Jr. contains similar statements. *Id.* at 3. These descriptions are well on
the way to being enough, but the government needs to provide more detail
regarding what the witnesses will actually say about the noted topics. For example:
How does CBP identify shipments of counterfeit electronic products at its port of
entries? When and why is contraband seized? The notice raises these types of
question but doesn't supply answers. A supplement is thus in order.

 The notice regarding the third CBP expert, Brian Giese, likewise needs to be
fleshed out. The government intends to call Mr. Giese as an expert in "CBP fines
and forfeiture processes." At trial, this witness

> is expected to describe the general process of an FPF [Fines,
> Penalties, and Forfeiture] dispute, including participation by the rights
> holder and the general procedures used for the dispute. Additionally,
> Mr. Giese will explain the outcome of FPF disputes, including the
> seizure and forfeiture of goods, as well as any fines or penalties
> assessed against the violator. Finally, he will explain the final
> disposition of infringing property, such as destruction."

Dkt. 341, at 3.

 As with the other CBP experts, this disclosure needs to provide more detail,
including, for example, more information regarding the procedures utilized in a

FPF dispute. As already noted, the defendants are not entitled to a chapter-and-verse recitation of Mr. Giese's anticipated testimony. But the government does need to let the defendants know more about what these witnesses will say at trial rather than just a list of topics with some generalized information.

For all these reasons, the Court concludes that the Rule 16 notice for the CBP experts is inadequate, though not by a significant margin. And the defendants' requested remedy – precluding these witnesses from testifying – would be far too extreme under the circumstances, where the government timely provided the notices, did not act in bad faith, and the defense then sat on the notices for months and did not raise the issue with the government, despite repeated prompting from the Court and the government. *See generally United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) ("Exclusion is an appropriate remedy for a discovery rule violation only where 'the *omission* was willful and motivated by a desire to obtain a tactical advantage.'") (citation omitted). The Court will therefore order the government to supplement its notice, within 14 days of this Order, to provide additional information regarding what each CBP witness will actually say at trial.

## B. The Request for a Pretrial *Daubert* Hearing

The next question is whether the Court should conduct a pretrial *Daubert* hearing regarding these witnesses. As with the other witnesses, the Court

will decline the government's invitation to determine, based solely on the record before it, that these experts are qualified, that their testimony would be reliable, and that their testimony will aid the jury. The Court will instead allow the government to lay the requisite foundation at trial, and the defendants will have an opportunity to voir dire the witnesses, potentially outside the presence of the jury. *See generally Alatorre*, 222 F.3d at 1102 (although *Daubert* requires preliminary inquiry into relevance and reliability, "this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury.").

The Court will also note that there appears to be the possibility of redundant, duplicative testimony if both Mr. Aprea and Mr. Matho, Jr. testify. Federal Rule of Evidence 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The disclosures regarding Mr. Aprea and Mr. Mathos are substantially similar.

The government disclosed that Mr. Aprea would testify to the following:

Mr. Aprea is expected to explain how CBP identifies shipments of counterfeit electronic products at its port of entries, when such contraband is seized, and why such contraband is seized. Mr. Aprea is likewise expected to testify to his participation in the Enforcement Division, which supports civil and criminal investigations of intellectual property right infringement, including strategies to prevent smuggling of counterfeit goods. He will also generally explain the following processes: when and why goods are targeted and presented

for inspection; when and why goods are detained; notices to importers, rights holders, and brokers; the inventory, appraisal, and seizure of the goods; and, finally, transference and storage of seized property.

*Gov. Notice*, Dkt. 341 at 2.

And it said Mr. Matho Jr. would testify to the following:

> Mr. Matho is expected to explain how CBP identifies international shipments of counterfeit products at its port of entries and when such contraband is seized. He will also generally explain the following processes: when and why goods are targeted and presented for inspection; when and why goods are detained; notices to importers, rights holders, and brokers; the inventory, appraisal, and seizure of the goods; and, finally, transference and storage of seized property.

*Id.* at 3.

Because the two disclosures are so similar, the value of having both witnesses testify is unclear. The government did not offer any response to the defendants' arguments on this point. *See Gov. Resp.*, Dkt. 663 at 11. Accordingly, at this point, the Court will caution the government that it will not allow unnecessarily duplicative, redundant testimony. The Court will not, however, make a call at this time as to who can and cannot testify. The Court will make that call during trial, as the evidence develops.

Finally, defendants expressed concern about Brian Giese testifying as both an expert witness and a fact witness. As noted above, however, the government intends to call Mr. Giese, along with the other Customs and Border Protection agents, to explain background information relating to the practices and processes

of Customs and Border Protection. *See Gov. Resp.*, Dkt. 663 at 11. Presumably, Mr. Giese will not testify to any facts of the present case. *Id.* But, even if he does, there is no statute or rule which categorically precludes a percipient witness from also offering opinion testimony in an area which is relevant to the case and within the witness's area of expertise. As discussed below, any prejudice can be addressed through the Court's exercise of its gatekeeping function, and by giving appropriate and timely instructions cautioning the jury not to give unwarranted additional weight to the witness's testimony.

### 4. Amazon & eBay

The government notified defendants that it intends to call expert witnesses from Amazon and eBay. The government anticipates that these witnesses will testify regarding, among other things: (1) how the platforms detect counterfeit products being sold on the platform; and (2) how the platforms identify and revoke a seller's privilege to use the platform. *Gvt. Notice,* Dkt. 515, at 2-3.

The Rule 16 notice for the Amazon and eBay experts does not specify any opinions that these witnesses will offer. As with the CBP experts, however, the government says these witnesses will provide background information only; they will not be called upon to offer any specific opinions, nor will they testify regarding the facts of this case. *Response,* Dkt. 663, at 11. So the fact that the notices do not include opinions is to be expected; it's not a deficiency, as the

defendants have argued. The Court will nevertheless order the government to supplement this notice however, because it does not even identify witnesses by name. As such, it's impossible to tell if the witnesses have the requisite expertise to offer testimony regarding the platforms. *Cf. United States v. Baker*, No. 14-cr-356-ENV, 2016 WL 7176588, at *1 (E.D.N.Y. Dec. 8, 2016).

Also, the Court will order the government to provide more information regarding what these witnesses will say about the two topics singled out above: (1) the processes for detecting counterfeit product being sold in the platforms; and (2) the processes for identifying and revoking seller's privileges. Even though these witnesses will not offer opinions, the government should inform the defendants what the experts will actually say about those two topics, rather than just generally referencing the topics. *See, e.g. Williams,* 900 F.3d at 489.

The Court will deny defendants' request to exclude these witnesses from testifying at trial, however. First, the defendants sat on their hands for several months after receiving the notices. Second, exclusion is far too extreme a remedy. A supplemental filing is sufficient and appropriate.

As for defendants' alternative request for a pretrial *Daubert* hearing, the Court will deny that request without prejudice. Defendants may renew their motion if they deem it necessary upon receipt of the supplemental filing. The defendants should be aware, though, that for these witnesses – who will not offer any opinions

at trial – the Court anticipates performing its gatekeeping function during trial.

**5.    Agent Culbertson**

Next, defendants seek to prevent the government's proposed expert, IRS Special Agent Joshua Culbertson, from testifying as both an expert witness and a fact witness. Dkt. 645-1. The Court will deny this motion.

Here, the Court is guided by Federal Rules of Evidence 401 and 403. The Court must evaluate whether the proposed evidence is relevant – that is, whether the evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the evidence is relevant, the Court may exclude it if "its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

The Court is mindful of the potential for prejudice when a witness testifies as both a fact witness and an expert witness. *See Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (noting that "the opinion of a purported 'expert'" is "likely to carry special weight with the jury"). However, "the use of case agents as both expert and lay witnesses is not so inherently suspect that it should be categorically prohibited." *United States v. Freeman*, 498 F.3d 893, 904

(9th Cir. 2007). The Ninth Circuit has noted that this kind of testimony does not necessarily result in jury confusion, as long as the Court is vigilant in its gatekeeping role. *Id.* "If jurors are aware of the witness's dual roles, the risk of error in these types of trials is reduced." *Id.*

The government asserts that it anticipates calling Agent Culbertson only as a fact witness, acknowledging that his testimony would be redundant to that of the government's other financial witness, Linda Czemerys. *Gov. Resp.*, Dkt. 663 at 12. The government states that Agent Culbertson's expert testimony will only be required if Ms. Czemerys is unable to testify at trial. In light of ongoing concerns relating to the COVID-19 pandemic, the government's approach of reserving the right to call Agent Culbertson as an expert witness in case of unforeseen issues with Ms. Czemerys seems very reasonable. If Agent Culbertson's expert testimony ends up being required at trial, the Court is confident that it can properly instruct the jury on the witness's dual roles and take any other precautionary measures that may be necessary to avoid prejudice to defendants. Based on the record before it, the Court cannot conclude that probative value of Agent Culbertson's testimony is substantially outweighed by the dangers of unfair prejudice or misleading the jury. Accordingly, the Court will deny Defendants' motion to exclude Joshua Culbertson's testimony. As with any motion in limine, however, the defendants may again renew their motion to limit Agent Culbertson's testimony during trial.

## 6.  Agent Hanratty

The final motion concerns FBI Supervisory Special Agent Robert J. Hanratty. In its May 2020 notice of rebuttal experts, the government indicated that it may call Agent Hanratty, as an expert in Eurasian crime. Dkt. 517 at 2. Defendant Kristina Babichenko objected, arguing that the government should be precluded from introducing testimony related to Eurasian criminal enterprise. The Court overruled the objection as premature, observing that the government had represented it would not use testimony related to Eurasian criminal money laundering schemes in its case-in-chief. *See* Dkt. 612.

Later, in August 2020, the government said it does not even intend to offer the expert *rebuttal* testimony of Agent Hanratty. *See Aug. 21, 2020 email,* Dkt. 662-2. Despite this representation, defendants continue to ask for an order excluding Agent Hanratty from testifying at trial (based on an allegedly deficient Rule 16 notice). Alternatively, defendants ask the Court to conduct a pretrial *Daubert* hearing to assess Agent Hanratty's qualifications and the reliability of his opinions. Dkt. 652, at 4-5; *see also* Dkt. 690, at 4. The Court will deny all requests related to Agent Hanratty. There is no expected testimony from Agent Hanratty, so the motion is moot.

# ORDER

**IT IS ORDERED that:**

1.     The Defendant's First Motion in Limine Regarding Case Agent Joshua Culbertson (Dkt. 645) is **DENIED.**

2.     Defendants' Joint Motion to Exclude government's Expert Leah Caras (Dkt. 646) is **GRANTED in part and DENIED in part** as explained above.

3.     Defendants' Joint Motion to Exclude government's Expert Warner (Dkt. 647) is **GRANTED in part and DENIED in part** as explained above.

4.     Defendants' Joint Motion to Exclude Expert Testimony from Customs and Border Protection witnesses (Dkt. 648) is **GRANTED in part and DENIED in part** as explained above.

5.     Defendants' Joint Motion to Exclude government's Expert James Hogg and Christopher Pyryt (Dkt. 649) is **GRANTED in part and DENIED in part** as explained above.

6.     Defendant's Joint Motion to Address government's Unnamed Expert Witnesses or Motion for a Daubert Hearing (Dkt. 651) is **GRANTED in part and DENIED in part** as explained above.

7.     Defendants' Joint Motion to Exclude government Witness Richard J. Hanratty (Dkt. 652) is **DEEMED MOOT.**

8.     Defendants' Joint Motion to Exclude government's Expert Pollock or

Motion for Daubert Hearing (Dkt. 653) is **GRANTED in part and DENIED in part** as explained above.

9.      The government's Motion to Strike (Dkt. 662) is **DENIED.**

10.      Defendant Piotr Babichenko's unopposed Motion for Leave to File Overlength Reply Brief (Dkt. 691) is **GRANTED.**

11.      **IT IS FURTHER ORDERED that** the government shall supplement the Rule 16 notices for Amazon, eBay, and the CBP witnesses within 14 days of this Order. As for Mr. Pyryt, within 14 days of this Order, the government shall either supplement its Rule 16 notice or, alternatively, notify the Court and the defendants that Mr. Pyryt will not offer opinion testimony at trial.

DATED: March 1, 2021

B. Lynn Winmill
U.S. District Court Judge