Ellen Smith, ISB. 5992
**SMITH HORRAS, P.A.**
5561 N. Glenwood St. Suite B
Boise, ID  83714
Telephone:  (208) 697-5555
Facsimile:  (800) 881-6219
ellen@smithhorras.com

Attorneys for Defendant,
MIKHAIL IYERUSALIMETS

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br>         **Plaintiff** <br>   **vs** <br><br> **PAVEL    BABICHENKO,    GENNADY BABITCHENKO,    PIOTR    BABICHENKO, TIMOFEY    BABICHENKO,    KRISTINA BABICHENKO, NATALYA BABICHENKO, DAVID BIBIKOV, ANNA IYERUSALIMETS, MIKHAIL IYERUSALIMETS, and ARTUR PUPKO,** <br><br>        **Defendant.** | **Case No.: CR18-258-S-EJL** <br><br> **DEFENDANT MIKHAIL IYERUSALIMETS' JOINT MOTION IN LIMINE TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS** |

COMES NOW, Defendant Mikhail Iyerusalimets, by and through his attorney of a record,

Ellen Smith and hereby files this joint[1] Motion in Limine asking the Court to exclude evidence of,

and preclude the Government from making arguments about, any alleged safety issues relating to

products at issue in this case.

---

[1] This joint motion is on behalf of Pavel Babichenko, Gennady Babitchenko, Piotr Babichenko, Timofey Babichenko, Kristina Babichenko, Natalie Babichenko, David Bibikov, Anna Iyerusalimets, and Mikhail Iyerusalimets.

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

1

## I.      INTRODUCTION

The Government has indicted the defendants on fifty-one charges related to the sale of allegedly counterfeit electronic devices.  Dkt. 210.  Included in the Government's draft exhibit list in this case are customer complaints alleging that some of the devices sold by the defendants caused some sort of harm, such as by overheating, melting, or catching fire.  Importantly, it appears that only one of those complaints is regarding a device that was listed in the superseding indictment.  See Dkt. 210 at 16 (Count 34 against Piotr Babichenko).  The Government has also disclosed a handful of the complaining customers on its draft witness list.

All evidence of those safety-related complaints is inadmissible at trial.  First, that evidence does not make any fact of consequence to the charges more or less probable, including the allegation that the products are "counterfeit," and thus it is irrelevant.  Second, the customer complaints are out of court statements subject to the hearsay rule, and to which no exception to the general prohibition of hearsay applies.  Third, evidence of the products causing harm or creating safety issues will unfairly prejudice the defendants, waste the court's time, and mislead the jury.  Accordingly, the Court should exclude all evidence and preclude all argument about alleged harm or safety issues presented by the products sold by the defendants.

## II.     ARGUMENT

**A.      Because Evidence of Safety Issues Does Not Go to Prove the Crimes Charged in the Superseding Indictment, that Evidence is Irrelevant and Inadmissible.**

The Federal Rules of Evidence prohibit the admission of irrelevant evidence.  FRE 402.  Evidence is considered to be relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action to be more probable or less probable than it would be without the evidence."  FRE 401.  To be "relevant," evidence need not be conclusive proof of a fact sought to be proven; all that is required is a "tendency" to establish the fact at issue.

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY
ISSUES AND ALLEGED HARM TO CONSUMERS

2

United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007).   "Relevancy is not an inherent

characteristic of any item of evidence but exists only as a relation between an item of evidence and

a matter properly provable in the case."  FRE 401, Advisory Committee Notes.

Here, evidence that the products sold by the defendants allegedly caused harm or presented

safety risks has no tendency to establish any fact of consequence in this case, including that the

charged products are "counterfeit."  As such, the Court should exclude all evidence, and preclude

all argument, about alleged harm or safety issues presented by the products.

The Government charged Fifty-One (51) counts in the Superseding Indictment, including

Wire Fraud, Mail Fraud, Trafficking in Counterfeit Goods, Money Laundering, and conspiracy to

commit each of those offenses.  Dkt. 210 (charging Conspiracy to Commit Wire Fraud (18 U.S.C.

§§ 1349, 1343), Wire Fraud (18 U.S.C. § 1343), Mail Fraud (18 U.S.C. § 1341), Conspiracy to

Traffic in Counterfeit Goods (18 U.S.C. § 2320(a), (b)(1), (f)(1)), Trafficking in Counterfeit Goods

(18 U.S.C. § 2320(a), (b)(1)), Conspiracy to Launder Money (18 U.S.C. §§ 1956(a)(1)(B)(i), 2),

and Money Laundering (18 U.S.C. §§ 1956(a)(1)(B)(i), 2)).  None of those offenses require the

Government to prove as an element that the alleged counterfeit goods caused harm or presented

safety issues, nor does evidence of harm or safety issues have any tendency to establish any fact

of consequence to those charges.  See id.; FRE 401.  That evidence is, therefore, irrelevant and

inadmissible.  See FRE 402.

To be sure, the Government must prove beyond a reasonable doubt that the products

charged in the conspiracy, smuggling, and trafficking offenses were "counterfeit."  See Dkt. 210.

However, any alleged harm or safety issues posed by the products has no bearing whatsoever on

whether they were counterfeit.  18 U.S. Code § 2320 (a)(1) states (in pertinent part): "Whoever

intentionally traffics in goods or services and knowingly uses a counterfeit mark on or in

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY
ISSUES AND ALLEGED HARM TO CONSUMERS

3

connection with such goods or services, or attempts or conspires to violate any of paragraphs (1)

through (4) shall be punished as provided in subsection (b)."

18 U.S. Code § 2320(f)(1) further denotes that the term "counterfeit mark" means:

> **(A)**   a spurious mark--
> **(i)**   that is used in connection with trafficking in any goods, services, labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature;
> **(ii)**   that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;
> **(iii)**   that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office, or is applied to or consists of a label, patch, sticker, wrapper, badge, emblem, medallion, charm, box, container, can, case, hangtag, documentation, or packaging of any type or nature that is designed, marketed, or otherwise intended to be used on or in connection with the goods or services for which the mark is registered in the United States Patent and Trademark Office;  and
> **(iv)**   the use of which is likely to cause confusion, to cause mistake, or to deceive.

Although the "counterfeit" definition lays out four specific and distinct factors, there is

nothing in the aforementioned definition that even suggests a "harm" requirement.  In particular,

there are no factors requiring that the charged products caused harm to consumers, or that the

products were even at risk for causing harm.  That is hardly surprising, as it is common knowledge

that, just as allegedly "counterfeit" products may be defective or cause harm to consumers, so too,

can genuine or authentic products.  For example, Samsung recently recalled 1.9 million Note7

phones after receiving 96 reports that the batteries overheated, 13 reports of burns, and 47 reports

of property damage.[2]   Tens of millions of cars with defective Takata airbags were recalled starting

---

[2] See <u>Samsung Expands Recall of Galaxy Note7 Smartphones Based on Additional Incidents with Replacement Phones; Serious Fire and Burn Hazards</u>, United States Consumer Product Safety

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

4

in 2014 after the airbags were found to explode on deployment, injuring or killing those inside.[3]

These are just two examples, but the examples are quite literally countless.  In fact, there is an entire body of law that addresses non-counterfeit products that have manufacturing errors causing harm—products liability.  Thus, claims that an allegedly counterfeit product may have caused harm to a consumer is not relevant to a determination of whether the product is, in fact, counterfeit.

What is relevant, however, is whether the defendants knowingly smuggled and/or intentionally trafficked in a product that contained a spurious mark "that is identical with, or substantially indistinguishable from, a mark registered on the principal register of the United States Patent and Trademark Office (hereinafter "USPTO").  18 U.S.C. § 2320(f)(1)(A)(ii).

In its recent Motion to Exclude Expert Testimony, the Government spent thirteen (13) pages arguing "The functionality of a product bearing a counterfeit mark is wholly irrelevant to the infringement of the mark."  See Dkt. No 787 p. 8.  The Government goes on to say "(The) Defendants are solely charged with trafficking in items bearing a counterfeit trademark" and "the functionality of the 'devices' and the underlying operating systems is irrelevant."  See Dkt. No. 787, p. 10.  It even quotes a 4th Circuit case using italics to emphasize the point:  "*For this purpose the actual quality of the goods is irrelevant*…." See Dkt. No 787 quoting United States v. Farmer, 370 F.3d, 435, 441 (4th Cir. 2004).

If the functionality of a device is irrelevant and the only thing that matters is the actual "spurious mark," then the alleged "safety" issues are equally as irrelevant.  It is the other side of the same coin.  Whether or not the product(s) sold by the defendants caused or could have caused

---

Commission, available at https://www.cpsc.gov/Recalls/2016/samsung-expands-recall-of-galaxy-note7-smartphones-based-on-additional-incidents-with (last visited Oct. 29, 2020).

[3] See Takata Recall Spotlight, United States Department of Transportation, National Highway Traffic Safety Administration, available at https://www.nhtsa.gov/equipment/takata-recall-spotlight (last visited Oct. 29, 2020).

Defendant Mikhail Iyerusalimets' Motion To Exclude Witnesses And Evidence Relating to Safety Issues And Alleged Harm to Consumers

5

harm to the consumer has absolutely no bearing whatsoever on whether the product used an

identical or substantially indistinguishable mark from a mark registered with the USPTO.  The

same logic applies with equal force to the other factors listed in 18 U.S.C. § 2320(f)(1)(A)(ii).

Thus, evidence of alleged harm or safety issues posed by the products has no tendency to

establish any fact of consequence in this case, including that the products are "counterfeit."

Because that evidence is irrelevant, the Court must exclude it.

**B.      Customer Complaints of Alleged Safety Issues Are Hearsay to which No Exception Applies, and Are Therefore Inadmissible.**

Hearsay is "a statement other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted."  FRE 801(c).  Hearsay is

generally inadmissible at trial.  FRE 802.  If the Government offers the customer complaints to

prove that the products the defendants sold to consumers presented risks of overheating, melting,

or catching fire, the evidence would be (1) hearsay under FRE 801(c), and (2) inadmissible at trial

because no exception to the general hearsay rule applies.  The Court must exclude evidence of,

and preclude argument about, customer complaints of alleged safety issues.

**1.      The Customer Complaints Are Inadmissible Hearsay.**

To begin, customer complaints are out of court statements which, to the extent the

Government offers them to prove the truth of the complaints, are hearsay.  See FRE 801(c).  In

other words, if the Government offers the complaints to prove that the products the defendants

sold were unsafe or caused harm to consumers because the products overheated, melted, or caught

fire, the complaints would be inadmissible hearsay.  See Vucinich v. Paine, Webber, Jackson &

Curtis, Inc., 803 F.2d 454, 461 (9th Cir. 1986) (summarily concluding that evidence "related to

another customer's complaint" was hearsay, and thus "[t]he trial court did not abuse its discretion

in excluding it."); Shields v. Sturm, Ruger & Co., 864 F.2d 379, 381 (5th Cir. 1989) (finding reports

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY
ISSUES AND ALLEGED HARM TO CONSUMERS

6

of product failures to defendant gun manufacturer by consumers were not admissible to prove the truth of the matter asserted in the reports); <u>Olson v. Ford Motor Co.</u>, 410 F. Supp. D 855, 861 (D.N.D. 2006). ("The Court finds that customer complaints… constitute hearsay [because] there is no question that the customer complaints are out-of-court statements"); <u>Nissan Motor Co., v. Armstrong</u>, 145 S.W. 3d131, 140 (Tex. 2004).  This is because such complaints are "out of court statements" made to prove the truth of the assertions—that the incidents complained of occurred as reported.

Notably, complaints, although sometimes true, may also be accusatory and self-serving. Such complaints are rarely made under oath and never subject to cross-examination.  Thus, they fall squarely within the rationale underpinning the rule against hearsay:  "Hearsay statements are usually excluded because the declarant is unsworn and unavailable for cross-examination and because the jury cannot evaluate his demeanor.  Consistently with these rationales, exceptions to the hearsay rule in Rules 803 and 804 are made because the circumstances of the declaration indicate that the declarant's perception, memory, narration, or sincerity concerning the matter asserted in the statement is trustworthy."  <u>United States v. Satterfield</u>, 572 F.2d 687, 691 (9th Cir. 1978) (internal citations omitted).

Next, should the Government seek to introduce the customer complaints not to prove their truth, but instead to prove the defendants were on notice that consumers complained about the quality of the products, the customer complaints would still be inadmissible for two main reasons. First, there is very little evidence that the defendants knew about said customer complaints. As such, customer complaints cannot be used to show the defendants' knowledge of the alleged safety issues.

Second, even if the defendants had known that a small percentage of products *may* have presented potential safety issues, that does not go to show they were on notice that the products

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

7

were counterfeit.   As discussed above, that a product malfunctions does not indicate it is counterfeit; companies often recall authentic products because they present safety issues. Therefore, even if the defendants were aware of complaints related to safety issues, the complaints are not relevant to show that the defendants were on notice that the products were counterfeit.

> **2.      No Hearsay Exception Applies to the Customer Complaints.**

Otherwise inadmissible hearsay may be admitted at trial if it falls within an exception to the hearsay rule.   See FRE 803.   Under the "business records exception," hearsay statements are admissible if:

> **(A)** the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> **(C)** making the record was a regular practice of that activity;
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FRE 803(6); see also United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990).   The business record exception is premised on the reliability of records that an employee has a business duty to keep, and thus "it does not permit introduction of statements made by customers unless an employee was responsible for verifying the statements."   United States v. Arteaga, 117 F.3d 388, 395 (9th Cir. 1997); see also United States v. Ordonez, 737 F.2d 793, 805 (9th Cir. 1984) (a document is not admissible as a business record if the source of information indicates a lack of trustworthiness); United States v. Fuchs, 218 F.3d 957, 965 (9th Cir. 2000) ("The district court has wide discretion to determine whether a business record meets the trustworthiness standard of the business records exception to the rule against hearsay.") (citing United States v. Scholl, 166 F.3d 964, 978 (9th Cir. 1999)); FRE 803, Advisory Committee Notes to Paragraph 6 ("If … the supplier of the information does not act in the regular course [of business], an essential link is broken' the

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

8

assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.").

The customer complaints themselves "do not qualify as business records" because the business records exception applies "only if the <u>person</u> who makes the statement is himself acting in the regular course of business." <u>United States v. Ismoila</u>, 100 F.3d 380, 392 (5th Cir. 1996) (internal citations omitted); see also <u>United States v. Gurr</u>, 471 F.3d 144, 151–52 (D.C. Cir. 2006) (Double hearsay within business records "is excepted from the hearsay rule provided 'both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business.'

Because the regularity of making the record is evidence of its accuracy, statements by 'outsiders' are not admissible for their truth under Fed. R. Evid. 803(6), in the absence of a showing that the outsider had a duty to report the information, or that it was standard practice for the preparer to verify information from outside sources.") (internal citations omitted); <u>Grogg v. Missouri Pac. R. Co.</u>, 841 F.2d 210, 213–14 (8th Cir. 1988) ("If the source of the information [in the business record] was an outsider to the chain producing Missouri Pacific's business record, rule 803(6) by itself does not permit admission of the information provided by the outsider.  In this instance, '[t]he outsider's statement must fall within another hearsay exception to be admissible.'") (quoting  <u>United States v. Baker</u>, 693 F.2d 183, 188 (D.C. Cir. 1982)).   Here, the complaining customers were not acting in the "regular course of defendant's business" when they complained about the defendant's products.  The customer complaints are thus not admissible under the business records exception.

Accordingly, the Court should preclude the Government from introducing customer complaints of any alleged safety issues related to the products sold by the defendants because those

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

9

complaints are hearsay to which no exception applies, are not relevant to prove anything other than the truth of the matter asserted, and are inherently untrustworthy.

**C.      Whatever Slight Probative Value Evidence of Safety Issues Could Possibly Have is Heavily Outweighed By The Risk of Unfair Prejudice, Wasting Time, and Misleading the Jury.**

A district court has the discretion to exclude otherwise admissible evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.  Rule 403 calls on the court to balance the probative value of, and need for, the evidence against the harm likely to result from its admission.  FRE 403, Advisory Committee Notes to the 1973 Proposed Rules.  In this case, any evidence about alleged safety issues, such as customer complaints that products overheated, melted, or were at risk of catching fire, (1) is of no probative value because it has no bearing on the merits of the case, (2) will unfairly prejudice the defendants, and (3) will waste the Court's limited time and mislead the jury.  On balance, whatever slight probative value the evidence could possibly have is substantially outweighed by the risk of unfair prejudice, wasting time, and misleading the jury.  See FRE 403.  The Court must therefore exclude all evidence, and preclude all argument, relating to alleged safety issues presented by the products sold by the defendants.

**1.      Evidence of Alleged Safety Issues or Harm to Consumers is of No Probative Value.**

As discussed at length above, evidence of any alleged safety issues related to the products sold by the defendants does not have a "tendency" to establish a fact in issue nor establish an element of the charges brought in the Superseding Indictment.  See supra, II(A).  That evidence is thus of no probative value in this case.

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

10

An analogous situation arose in <u>United States v. Gonzales-Flores</u>, 418 F.3d 1093 (9th Cir. 2005), in which the government charged the defendant with knowingly smuggling non-citizens into the United States at a location other than a recognized port of entry. <u>Id.</u> at 1098. The Government introduced evidence at trial that two women suffered heat stroke while being transported by the defendant. <u>Id.</u> On appeal, the Court found this evidence to be "irrelevant and unduly prejudicial," and held that the evidence of injury was not admissible because it did not affect the probability that the defendant had committed any element of the crime. <u>Id.</u> The Court concluded that the injuries do "not go to any of the elements of the crime" and thus, its probative value [is] low." <u>Id.</u> Here, as in <u>Gonzales-Flores</u>, evidence of safety issues related to the products sold by the defendants is irrelevant to the charges, and is thus of no probative value.

**2.      The Risk of Unfair Prejudice Heavily Outweighs Whatever Slight Probative Value Evidence of the Safety Issues Could Possibly Have.**

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilty of a different ground from proof specific to the offense charged." <u>United States v. Curtin</u>, 489 F.3d 935, 963 (9th Cir. 2007) (citing <u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997). Evidence is unduly prejudicial if it creates "a genuine risk that the emotions of the jury will be excited to irrational behavior … [and] this risk is disproportionate to the probative value of the offered evidence." <u>Id.</u> "Unfair prejudice results from an aspect of the evidence . . . which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attituded toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." <u>United States v. Bailleaux</u>, 685 F.2d 1105, 1111 (9th Cir. 1982). "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

11

likelihood of unfair prejudice or a small risk of misleading the jury." United States v. Hitt, 981 F.2d 422, 424 (9th Cir. 1992).

Just as above, Gonzalez-Flores is dispositive and requires the same conclusion here: This kind of emotional evidence of harm risks causing substantial unfair prejudice while having little or no probative value, and is thus inadmissible. See 418 F.3d at 1099.

Evidence of safety issues or alleged harm to consumers, such as customer complaints that products overheated, melted, or caught fire, is precisely the type of evidence that "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence." United States v. Yazzie, 59 F.3d 807, 811 (9th Cir. 1995) (citation and internal quotation marks omitted); see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 803 F.2d 454, 461 (9th Cir. 1986) (concluding that evidence related to customer's complaint "about short sales made by another broker . . . might well have been confusing to the jury and prejudicial to the defendants," and the district court did not abuse its discretion in excluding it). That evidence, though irrelevant and unsubstantiated by any hospital reports or product testing reports, would "lure the factfinder into declaring guilt" not because the defendants were guilty of trafficking in counterfeit goods, but because they allegedly caused or put consumers at risk of harm. Curtin, 489 F.3d at 963. In line with Gonzales-Flores, there is, at the very least, a "modest likelihood" that the defendants will be unfairly prejudiced by the admission of the evidence. Hitt, 981 F.2d at 424. That risk of unfair prejudice outweighs whatever slight probative value the evidence could possibly have, and so the Court should exclude it.[4]

---

[4] Relatedly, the Government has attempted to bring up alleged "harm" of the products sold by defendants in nearly every hearing to taint the Court with such irrelevant evidence. This conduct needs to cease immediately so that the defendants can get a fair trial on the items that have actually been charged in the Superseding Indictment.

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

**3.      Any Probative Value of Evidence of Safety Issues or Harm to Consumers is Substantially Outweighed By Its Potential to Waste Time and Mislead the Jury.**

This Court has the discretion to exclude even probative evidence if admitting that evidence would be a waste of time or mislead the jury.  FRE 403; <u>Tennison v. Circus Circus Enterprises, Inc.</u>, 244 F.3d 684, 690 (9th Cir. 2001) (evidence excluded because its admission would have resulted in a "mini trial," which would have been an "inefficient allocation of trial time").  That is precisely the case here.  Evidence of alleged safety issues is of no probative value, but will create the need for a mini-trial, waste the Court's time and mislead the jury.  Thus, the Court should exclude it.

The Ninth Circuit's reasoning in <u>United States v. Bussell</u>, 414 F.3d 1048 (9th Cir. 2005), is instructive.  There, Bussell and her lawyers were charged with omitting assets and making false statements related to her petition for bankruptcy relief.  <u>Id.</u> at 1051.  At trial, Bussell argued that she had acted in good faith and simply relied on the advice of her attorneys.  <u>Id.</u> at 1052.  Consistent with that argument, she sought to introduce evidence that her attorneys had provided similar advice to other bankruptcy clients, and also led those clients to believe the fraudulent schemes created by the attorneys were legitimate.  <u>Id.</u> at 1058-59.  The Ninth Circuit affirmed the district court's decision to exclude that evidence under Rule 403 because "its probative value was substantially outweighed by the dangers of confusing the issues and delaying the trial." <u>Id.</u> at 1059.  It explained that, "the [excluded] testimony would indicate the alleged pattern only if [the attorney's] other clients were in fact 'innocent dupes.' Yet determining the clients' innocence would require a potentially confusing and time-consuming 'trial within a trial.'" <u>Id.</u>

In this case, just as in <u>Bussell</u>, allowing the Government to introduce evidence of alleged safety issues with the products would result in a trial within a trial, risk confusing the jury, and would waste a significant amount of time in an already-lengthy trial.  See <u>id.</u> at 1058-59.  To

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

13

adjudicate this "safety" issue properly, both parties would need to introduce evidence relating to the legitimacy of any individual complaint, which may have been the result of the consumer's misuse of the product, a pretext for a customer who had a change of heart and needed an ostensible reason to get a refund, or even a "clever" competitor who simply wanted to shut down the defendants' business(es) to stop the competition in their industry.

The parties would also need to introduce evidence of whether specific products sold by defendants were in fact unsafe for use or did actually cause consumers harm beyond those complaints. This would require the Government to identify and call consumers of defendant's products that allegedly suffered harm as witnesses, as well as additional expert witnesses to test the products specifically for the purpose of developing an opinion about the risks of the products overheating, melting, or catching fire. In response, the defendants would vigorously contest the Government's characterization of the quality of the products, the harm the products caused, and the defendants' awareness of the safety issues.

This, in turn, would require the defense to, among other things, identify and engage product experts directly related to testing the products for safety issues, run surveys among consumers of the products to determine the actual incidence of harm, and call witnesses to testify as to the defendants' knowledge and involvement in procuring the products and ensuring they were safe for use. All of this extraneous evidence and testimony would prolong the already dauntingly-lengthy proceedings in this case and be a waste of the Court's time. Further, the evidence would mislead the jury into believing that safety issues are somehow relevant to the charged offenses, requiring the defense to waste a significant amount of time addressing that misconception. Whatever slight probative value the evidence of safety issues related to the products sold by the defendants could possibly have, it is heavily outweighed by the waste of time and risk of misleading the jury.

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

14

In sum, given the minimal probative value of the evidence, balanced against its risk of causing the defendants unfair prejudice, wasting the Court's time, and misleading the jury, the Court should exclude evidence of, and preclude argument about, any alleged safety issues related to the products sold by the defendants.

### III.    CONCLUSION

For the foregoing reasons, defendant Mikhail Iyerusalimets respectfully asks the Court to exclude all evidence, and preclude all argument, about any purported safety issues presented by the products sold by defendants and any harm those products allegedly caused consumers.

Dated: April 5, 2020.

Respectfully Submitted,
SMITH HORRAS, P.A.
Ellen N. Smith


By__/s/_____
Ellen N. Smith
Attorney for Defendant
MIKHAIL IYERUSALIMETS

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
Assistant United States Attorney
Office of the United States Attorney
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Kate.Horwitz@usdoj.gov

Christian S. Nafzger
Assistant United States Attorney
Office of the United States Attorney
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Christian.Nafzger@usdoj.gov

Tim Flowers
U.S. Department of Justice
1301 New York Ave. NW, Suite 600
Washington, D.C. 20530
Timothy.Flowers2@usdoj.gov

John DeFranco 1031
E. Park Blvd.
Boise, ID 83712
jcd@greyhawklaw.com
*Attorney for Pavel Babichenko*

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com
*Attorney for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com *Attorney for Timofey Babichenko*

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS

16

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Robyn A. Fyffe
P.O. Box 5681 Boise,
ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

Melissa Winberg
Federal Defender
Services of Idaho
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
dick_rubin@fd.org
melissa_winberg@fd.org
*Attorneys for Anna Iyerusalimets*

Jeffrey Brownson
223 North 6th Street, Suite 215
Boise, Idaho 83702
jb@jeffreybrownsonlaw.com
*Attorney for Gennady Babitchenko*

Thomas B. Dominick 500
W. Bannock Street Boise,
Idaho 83702
tom@dominicklawoffices.com
*Attorney for Artur Pupko*

/s/ Ellen Smith

DEFENDANT MIKHAIL IYERUSALIMETS' MOTION TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY
ISSUES AND ALLEGED HARM TO CONSUMERS

17