UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PIOTR BABICHENKO, *et al*.<br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant Gennady Babichenko's Motion to Allow Video Testimony of Foreign Defense Witnesses. Dkt. 795. Defendant Pavel Babichenko has joined the Motion. *See* Dkt. 838. The Motion is fully briefed and at issue. For the reasons explained below, the Court will grant the Motion.

# BACKGROUND

Defendants Gennady Babichenko and Pavel Babichenko, along with seven Codefendants, are charged in a multi-count Indictment alleging multiple conspiracies, wire fraud, mail fraud, laundering money, and trafficking in counterfeit goods. *See* Dkt 210. Trial is expected to commence June 8, 2021. Among the charges are allegations of substantive money laundering where

**MEMORANDUM DECISION AND ORDER - 1**

Defendants are alleged to have laundered illegal proceeds. *Id*. at 18. As alleged, the Government asserts that Defendants have built "eponymous multiplex condominiums" in Brazil with the proceeds from their counterfeit goods trafficking. *See* Dkt. 573 at 4.

As such, defense counsel traveled to Brazil to interview witnesses about these alleged laundering activities. Defense counsel interviewed seven witnesses: Cyro Vasilli, Paulo Peixoto, Marco Azevedo, Keith Moura, John Medcraft, Elizabeth Medcraft, and Marcelo Ribeiro. All seven witnesses live in Brazil. *See* Dkt. 795-1 at 2. Defendants assert that these witnesses are all willing to testify and will provide exculpatory testimony that is material to their defense. According to Defendants, the money transferred to Brazil was not in furtherance of concealing alleged trafficking proceeds, but instead was transferred for lawful purposes. Defendants seek to allow live videoconference testimony from these witnesses during trial to present their defense.

## ANALYSIS

The Federal Rules of Criminal Procedure do not explicitly permit trial testimony by videoconference. Rule 26 provides, "[i]n every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute or by

rules adopted under 28 U.S.C. §§ 2072-2077."[1] Fed. R. Crim. P. 26. Still, the Ninth Circuit has permitted videoconference testimony under the standard delineated in *Maryland v. Craig*, 497 U.S. 836 (1990), which pertained to defendant rights under the Confrontation Clause of the Constitution. *Id*. at 844. *See United States v. Carter*, 907 F.3d 1199, 1206-08 (9th Cir. 2018). Under *Craig*, courts will uphold the use of live videoconference testimony when it "is necessary to further an important policy" and "where the reliability of the testimony is otherwise assured." *Carter*, 907 F.3d. at 1208 (citing *Craig*, 497 U.S. at 850, 857). Reliability is based on several safeguards inherent in open court testimony: (1) the testimony is given under oath; (2) there is opportunity for live cross-examination; and (3) the fact-finder is able to observe the witness's demeanor. *See Craig*, 497 U.S. at 845-46. While there may be no Confrontation Clause implications here, as the proposed witnesses are favorable to Defendants,[2] the principles in *Craig* bear on the integrity of the court proceedings and should be evaluated in considering whether the

---

[1] In 2002, the Supreme Court of the United States rejected a proposed revision to Rule 26 that would have permitted two-way videoconferencing trial testimony, expressing concerns under the Confrontation Clause of the Sixth Amendment. *See* Advisory Committee on Criminal Rules 31-42 (Sept. 26-27, 2002), https://www.uscourts.gov/sites/default/files/fr_import/CR2002-09.pdf. Congress has not acted independently to override the Court's decision.

[2] Defense counsel notes that Codefendants have either no objection to or no position on the Motion. *See* Dkt. 795 at 2.

proposed videoconference testimony has a similar indicia of reliability. *See United States v. Banki*, 2010 U.S. Dist. LEXIS 27116, *6 (S.D.N.Y. 2010).

Here, the Court finds that permitting live videoconference testimony of the defense witnesses promotes both the interest of justice and provides the indicia of reliability sufficient to satisfy *Craig*. The proffered testimony is relevant and material to the Defendant's case, as at issue is the purpose behind the money transferred to Brazil. *See United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013) (the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense which includes the right to present the defendant's version of the facts). The testimony is crucial to refute the Government's substantive money laundering claim that Defendants used illegal funds to build a condominium empire in Brazil. Importantly, there are no Confrontation Clause concerns here because the prospective witnesses' testimony is favorable to and not against the Defendants. *See United States v. Fox*, 2018 U.S. Dist. LEXIS 52172, *3 (W.D. Wash. 2018). Although in-court testimony is preferable, and while vaccination opportunities continue to alleviate the pandemic in United States, this is simply not the case in Brazil. The President of the United States has implemented travel restrictions against persons who have been physically present in the Federative Republic of Brazil 14 days prior to attempted entry in the United

States. *See* Proclamation on the Suspension of Entry as Immigrants and Non-Immigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus Disease, The White House (Jan. 25, 2021). The Court finds relocating the witnesses to testify in-person both an unnecessary safety risk and infeasible in light of these restrictions.[3] As such, there are no realistic and better alternatives. *Cf. Carter*, 907 F.3d at 1208-09 (exploring alternatives to two-way video procedure and concluding that *Craig*'s necessity-based exception was not implicated).

To be sure, the Federal Rules of Criminal Procedure do contemplate alternatives to live videoconference trial testimony and such live video testimony is not "considered a commonplace substitute for in-court testimony by a witness." *See United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999). Rule 15 provides an avenue for non-live testimony. Under Rule 15(a)(1), a "party may move that a prospective witness be deposed in order to preserve testimony for trial. The Court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). However, the Court finds that the interests of justice here are better served with live videoconference testimony given under oath, where the Government can engage in live cross-examination and the jury can

---

[3] The Court further acknowledges that live videoconference testimony is also more cost-effective, although this fact is not critical to the Court's decision.

observe the demeanor of the witnesses. *See Craig*, 497 U.S. at 845-46. Furthermore, the ongoing pandemic constitutes exceptional circumstances, as the Court has elaborated on in several previous orders.

This is not to say the Government's concerns are unfounded. Typically, testimony not subject to perjury charges is deemed unreliable, and foreign witnesses that cannot be extradited are outside a federal court's subpoena power. *See, e.g.*, *United States v. Buck*, 271 F.Supp.3d 619, 624 (S.D.N.Y. 2017). The Government notes that cases supporting live videoconference testimony either did not involve foreign witnesses or offered no indication that the witness was foreign. *See, e.g.*, *Gigante*, 166 F.3d at 79; *Fox*, 2018 U.S. Dist. LEXIS at *2. The Government suggests letters rogatory, which typically accompany Rule 15 motions for foreign witness depositions. 28 U.S.C. § 1781. While letters rogatory would help facilitate taking depositions, as explained, the Court finds the that indicia of reliability are sufficiently met with live videoconference testimony. Courts that have not permitted foreign witness live videoconference testimony have emphasized the lacking diplomatic relations with the countries where the witnesses were located. *See, e.g.*, *Buck*, 271 F.Supp.3d at 623-24 (mutual assistance agreement disclaimed assistance in matters concerning tax law); *Banki*, 2010 U.S. Dist. LEXIS at *6 (noting that the United States has no diplomatic relations with

Iran and no means to extradite persons). Here, the United States and Brazil have robust diplomatic relations, particularly with respect to mutual legal assistance in criminal matters. *See* Treaty on Mutual Legal Assistance in Criminal Matters, Brazil-U.S., at 3, Feb. 21, 2001, T.I.A.S. No. 12889. Moreover, the witnesses here will still be placed under oath[4] and the jury will be able to determine credibility based on their live testimony. Simply, "it is unjust to deprive a defendant of what may be crucial exculpatory evidence." *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998). Accordingly, the Motion will be granted.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Allow Video Testimony of Foreign Defense Witnesses (Dkt. 795) is **GRANTED**.

DATED: May 4, 2021

B. Lynn Winmill
U.S. District Court Judge

---

[4] In civil matters where a witness testifies by video from a remote location, the Court routinely asks a witness, at the outset of their testimony, to confirm their understanding that although they are not physically present in the courtroom they are under oath and subject to penalties of perjury if they do not testify truthfully. The Court will do the same here and, since the witnesses will be testifying from Brazil, will also ask the witness to confirm their understanding that perjury is an extraditable offense under the extradition treaty between Brazil and the United States.