John C. DeFranco, ISB 4953
Ellsworth, Kallas, DeFranco, PLLC
1031 E. Park Blvd., Boise, ID 83712
(208) 336-1843
(208) 345-8945 (fax)
jcd@greyhawklaw.com

Barry L. Flegenheimer
WA State Bar No. 11024
Bell Flegenheimer
119 First Avenue South, Suite 500
Seattle, WA 98104
(206) 621-8777
(206) 621-1256 (fax)
barrylfp@gmail.com

Attorneys for Defendant
PAVEL "PAUL" BABICHENKO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
(HONORABLE B. LYNN WINMILL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS,<br>MIKHAIL IYERUSALIMETS,<br>ARTUR PUPKO,<br><br>Defendants. | CASE NO. CR-18-258-BLW<br><br>DEFENSE OBJECTIONS TO GOVERNMENT'S PROPOSED JURY INSTRUCTIONS |

DEFENSE OBJECTIONS TO GOVERNMENT'S JURY INSTRUCTIONS                    1

## I.        Introduction

The Defendants[1] object to the Government's proposed jury instructions and verdict forms, Dkts. 857, 858, because they are misleading, do not correctly state the law, and do not adequately cover the issues presented. In turn, they will undermine the Defendants' Fifth and Sixth Amendment rights and the validity of the jury's verdict. Because the Defendants' instructions and verdict form are clear, faithful to the law, and cover all of the relevant issues in this case, the Court should instruct the jury accordingly. *See* Dkts. 859, 860.

## II.       Legal Standards

This Court "has substantial latitude in formulating jury instructions," *Guam v. McGravey*, 14 F.3d 1344, 1346 (9th Cir. 1994), so long as the instructions fairly and adequately cover the issues presented, correctly state the law, and are not misleading, *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051 (9th Cir. 1998). This is true even with respect to the Ninth Circuit's Model Instructions:[2] "They are not mandatory, and must be reviewed carefully before use in a particular case. They are not a substitute for the individual research and drafting that may be required in a particular case, nor are they intended to discourage judges from using their own forms and techniques for instructing juries." Model Instructions at iii–iv; *see, e.g.*, *United States v. Paul*, 37 F.3d 496, 500 (9th Cir. 1994) (holding that it was plain error for the district court to give a Model Instruction).

## III.      Argument

---

[1] This memorandum is filed on behalf of Pavel Babichenko, Gennady Babitchenko, Piotr Babichenko, Timofey Babichenko, Kristina Babichenko, Natalya Babichenko, David Bibikov, Anna Iyerusalimets, and Mikhail Iyerusalimets (collectively the "Defendants").

[2] Unless otherwise noted, references to the "Model Instructions" refer to the Ninth Circuit Model Criminal Jury Instructions.

## A.   General Objections

The Defendants object to the Government's jury instructions and verdict forms to the extent they differ from the Defendants' proposed instructions and verdict form. Those objections include, but are not limited to, the following:

- Any instructions and verdict forms that fail to account for and require specific unanimity. *See, e.g.*, Dkt. 857 at 49–54 (with respect to trafficking in counterfeit goods, failing to require the jury to unanimously agree as to the good trafficked and trademark violated); Dkt. 858 at 3–21 (same); *see United States v. Gonzalez*, 786 F.3d 714, 717 (9th Cir. 2015) (a specific unanimity instruction is required "if it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts."); Model Instruction 7.9 & cmt. (recommending a specific unanimity instruction to avoid juror confusion if (1) the evidence is factually complex, [or] (2) the indictment is broad or ambiguous").

- Relatedly, any instructions that fail to make clear that the jury must find all of the elements with respect to each defendant separately. *See, e.g.*, Dkt. 857 at 59 ("In order for the *defendants* to be found guilty of those charges, the government must prove each of the following elements beyond a reasonable doubt."),[3] at 44 (instructing that the jury can find that *the defendants* [plural] acted knowingly if you find beyond a reasonable doubt that *the defendant* [singular] . . . .") (emphasis added).

- Any instructions that combine multiple, distinct counts into one instruction, *see e.g.*, Dkt. 857 at 59–60 (combining all three conspiracy charges into one instruction).

- Any instructions or modifications which do not apply to the facts of this case. *See, e.g.*, Dkt. 857 at 61 (conspiracy—knowledge of and association with other conspirators).

- Any instructions based on outdated versions of the Model Instructions. *See, e.g.*, Dkt. 857 at 3, 12, 24 (omitting portions of the instructions related to unconscious bias from Model Instructions 1.1, 1.7, and 3.1, without indicating the Model Instruction had been modified, presumably because the Government inadvertently used an outdated version of the Model Instructions).

## B.   Trafficking in Counterfeit Goods

---

[3] The Court should include language within the elements instructions that clarifies that the jury must make an independent determination of guilt as to each defendant, for example: "the government must prove each of the following elements beyond a reasonable doubt *as to that defendant*."

1.      **The Court should not instruct the jury on conspiracy to traffic in counterfeit labels and packaging.**

The Government's trafficking in counterfeit goods instruction discusses an alleged conspiracy to traffic in counterfeit labels and packaging under 18 U.S.C. § 2320(a)(2), a charge for which the Defendants were never indicted. The superseding indictment alleges that the Defendants,

> [D]id intentionally conspire and agree with one another . . . to traffic in counterfeit *goods*, to wit: by importing and offering for sale counterfeit [Apple and Samsung cell phones, [Apple and Samsung cell phones and accessories], *labels, and packaging* for the same, and thereby knowingly using counterfeit marks . . . on or in connection with *such goods* . . . .

Dkt. 210 at 10–11 (emphasis added). Section 2320(a) makes it a crime to,

> (1) traffic[] in *goods or services* and knowingly use[] a counterfeit mark *on or in connection with* such goods or services, [or]

> (2) traffic[] in *labels . . . or packaging* of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive . . . .

(Emphasis added). According to the plain language of the § 2320(a), goods are separate from labels and packaging. In other words, labels and packaging are not themselves goods. *United States v. Giles*, 213 F.3d 1247, 1251-53 (10th Cir. 2000). The legislative history reflects this fact. The language about labels and packaging, currently contained in § 2320(a)(2), was added to the statute in 2006 to close the loophole in § 2320 that allowed for trafficking in labels or packaging unattached to any goods. *See* Pub.L. 109-181, §§ 1(b), 2(b), Mar. 16, 2006; 152 Cong. Rec. H593-01, *H594, 2006 WL 544047. Section 2320 thus distinguishes between the use of a counterfeit mark on or in connection with *goods* in § 2320(a)(1), versus *labels and packaging* unattached to any good in § 2320(a)(2).

DEFENSE OBJECTIONS TO GOVERNMENT'S JURY INSTRUCTIONS          4

The superseding indictment thus charges the Defendants with using a counterfeit mark on or in connection with goods, including on the labels and packaging that were "in connection with" those goods, but it does not charge the Defendants with trafficking in counterfeit labels and packaging *independent from any goods*. *See* Dkt. 210 at 10–11. Therefore, the Government's instruction would constructively amend the superseding indictment, deprive the Defendants of their Fifth Amendment right to stand trial only on the charges found by the grand jury, and amount to reversible error. *See United States v. Adamson*, 291 F.3d 606, 614–15 (9th Cir. 2002). This Court should not instruct the jury regarding a purported conspiracy to traffic in counterfeit labels and packaging.

### 2. The Court should reject the Government's formulation of the elements of trafficking in counterfeit goods.

There is no Model Instruction for trafficking in counterfeit goods, but the elements are well-settled: "the defendant: (1) trafficked in goods or services; (2) intentionally; (3) used a "counterfeit mark" on or in connection with these goods or services; and (4) knew the mark was counterfeit." *Wang v. Rodriguez*, 830 F.3d 958, 961 (9th Cir. 2016); *see also* Pattern Crim. Jury Instr. 5th Cir. 2.91A (2019) (same). The Defendants have requested that the Court instruct the jury consistently with this precedent, *see* Dkt. 859 at 9, while the Government asks the Court to adopt an instruction that is both confusing and incorrect.[4]

First, the Government combines what should be two separate elements—that the defendant used a counterfeit mark on or in connection with trafficked goods, and the defendant knew that the mark so used was counterfeit—into its third element. That is inconsistent with the Ninth Circuit's

---

[4] Consistent with the specific objections raised with respect to the elements of each offense, the Defendants also object to the Government's summary of those elements in its version of Model Instruction 1.2. *See* Dkt. 857 at 4-7.

recitation of the elements in *Wang*, and invites the jury to convict without finding all elements of the offense beyond a reasonable doubt.

Second, the Government imports one part of the definition of "counterfeit mark" into the elements of the offense: "Fourth, that the use of the counterfeit marks was likely to cause confusion . . . ." Dkt. 857 at 49. But the likelihood of confusion is not itself an element of the offense according to § 2320(a)(1), which criminalizes trafficking "in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services." Instead, the likelihood of confusion is an element of the definition of "counterfeit mark." § 2320(f)(1)(A)(iv). The Government's own jury instruction recognizes as much. *See* Dkt. 857 at 52 (including in the definition of counterfeit mark, "Four, *and this is the Fourth element of the offense,* the marks . . . were likely to cause confusion . . . ."). To avoid confusing the jury and correctly state the law, the Court should not include the likelihood of confusion as an element of the offense itself, but as an element of the definition of "counterfeit mark." *See* Dkt. 859 at 9.

### 3. The Court must instruct the jury that it is not a crime to repackage genuine goods not intended to confuse.

The Government's proposed instructions also failed to incorporate § 2320(g). *See* Dkt. 857 at 49–54. Subsection 2320(g), which was enacted alongside § 2320(a)(2) to ensure that legitimate parallel markets were not stifled, provides: "Nothing in this section shall entitle the United States to bring a criminal cause of action under this section for the repackaging of genuine goods or services not intended to deceive or confuse." *See* 152 Cong. Rec. H593-01, H595, 2006 WL 544047. Thus, § 2320(g) recognizes that the use of what would otherwise be a counterfeit mark in repackaging genuine goods is not a crime, so long as the defendant did not intend to deceive or confuse. Section 2320(g) therefore bears directly on the issues in this case and implicates the Defendants' rights to a fair trial and to present a complete defense, *see* U.S. CONST. amends. V,

VI; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), and Court must instruct the jury accordingly. *See* Dkt. 859 at 10.

### 4. The Court should provide the jury with the complete definition of "counterfeit mark."

Conspicuously absent from the Government's instruction is one part of the definition of "counterfeit mark." *See* Dkt. 857 at 531–52. After defining what a "counterfeit mark" *is*, § 2320(f)(1) defines what a counterfeit mark *is not*:

> but such term does not include any mark or designation used in connection with goods or services, . . . or packaging of any type or nature used in connection with such goods or services, of which the manufacturer or producer was, at the time of the manufacture or production in question, authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

This part of the definition of "counterfeit mark" is necessary to correctly and completely state the law, and to adequately cover the issues in this case. Without it, the jury could mistakenly conclude that selling refurbished phones, for example, amounts to trafficking in counterfeit goods.

*United States v. Cone*, 714 F.3d 197, 210 (4th Cir. 2013), which held that "criminal liability under § 2320 cannot be based on the alteration of a product to which a genuine mark was affixed and the mark itself has not been altered," illustrates this point. The *Cone* court reached that holding based on the plain language of § 2320(a), which it held could not be read to mean a mark that was genuine when affixed to a genuine good becomes "spurious" if *only* the good is altered. *Id.* at 207. Section 2320(f)(1), the "so-called 'authorized use' exception," buttressed this conclusion by "mak[ing] clear that Congress did not intend to criminalize . . . the use of genuine and unaltered marks on goods that were manufactured by or for the mark holder." *Id.* The defendants had "obtained a genuine Cisco product bearing a genuine mark; modified the product, but not the mark;

then sold the modified product bearing the genuine mark," and so the convictions were untenable under the plain language of § 2320. *Id.*[5]

Section 2320(f)(1) thus strikes at the heart of this case and the Defendants' constitutional right to a fair trial and to present a complete defense. *See* U.S. CONST. amends. V, VI; *Crane*, 476 U.S. at 690. The Court must provide the complete definition of "counterfeit mark" to the jury. *See* Dkt. 859 at 9.

### 5.    The Court should not import presumptions from the Lanham Act into this criminal case.

The Government suggests that this Court adopt the standard applicable to the validity of a registered mark under the Lanham Act, 15 U.S.C. § 1057, into this criminal case. *See* Dkt. 857 at 52 ("A certificate of registration from the United States Patent and Trademark Office is . . . sufficient proof of the existence of a valid registered mark unless outweighed by other evidence in the case. . . ."). That instruction is not supported by § 2320, which tellingly creates no such presumption. More importantly, applying that civil presumption in this criminal case would violate the Defendants' due process right to the presumption of innocence until the Government proves every element of trafficking in counterfeit goods beyond a reasonable doubt. *See* U.S. CONST. amend. V; *In re Winship*, 397 U.S. 358, 364 (1970). That includes proving that the mark at issue

---

[5] The Ninth Circuit's decision in *United States v. Petrosian*, 126 F.3d 1232 (9th Cir. 1997), is not inconsistent with *Cone*. The *Petrosian* court upheld Petrosian's conviction under § 2320, explaining that "[w]hen a genuine trademark is *affixed to a counterfeit product*, it becomes a spurious mark." *Id.* at 1234 (emphasis added). Petrosian "purchased genuine Coca-Cola bottles, filled them with a cola-like carbonated beverage that was not Coca-Cola, and told purchasers the beverage was Coca-Cola." *Id.* at 1233. Thus, unlike in *Cone*, an authorized manufacturer did not place the genuine mark on the fake Coca-Cola; Petrosian did. And Petrosian placed the mark on an entirely fake good—his imitation Coca-Cola. *Petrosian* thus addressed a different scenario than *Cone* and § 2320(f)(1)'s authorized use exception.

was "registered on the principal register in the United States Patent and Trademark Office." §

2320(f)(a)(A)(ii). The Court should not import that civil standard into this criminal case.

## C.   Money Laundering[6]

### 1.   The Court should define the term "designed" consistently with the U.S. Supreme Court's decision in *Cuellar*.

The U.S. Supreme Court in *Regalado Cuellar v. United States*, 553 U.S. 550 (2008),

vacated the defendant's conviction for transportation money laundering under 18 U.S.C.

§ 1956(a)(2)(B)(i)[7] after concluding the Government had not presented evidence that Cuellar

"designed" the transportation to conceal or disguise a listed attribute of the funds. 553 U.S. at 568.

The evidence showed only *how* Cuellar had hidden illicit funds in a secret compartment in his

vehicle while *en route* to Mexico; it did not show *why* he did so. *Id.* at 554. The Court explained:

> In this context, "design" means purpose or plan; *i.e.*, the intended aim of the transportation. *See* AM. HERT. 491 ("[t]o formulate a plan for; devise"; "[t]o create or contrive for a particular purpose or effect"); BLACK'S 478 ("[a] plan or scheme"; "[p]urpose or intention combined with a plan"); *see also* Brief for United States 14

---

[6] The Government's proposed money laundering instructions are taken nearly verbatim from the Model Instructions 8.147 and 8.149, plus a handful of definitions from § 1956. *See* Dkt. 857 at 55–58. All of the deficiencies in Model Instruction 8.149, which addresses § 1956(a)(2)(B)(i), are also found in Model Instruction 8.147. And all but one deficiency in the Government's proposed instructions is found in Model Instruction 8.147. For brevity's sake, the bulk of the Defendants' arguments below refer to Model Instruction 8.147 and § 1956(a)(1)(B)(i), but those arguments apply to Model Instruction 8.149, § 1956(a)(2)(B)(i), and the Government's proposed money laundering instructions.

[7] The relevant language in both subsections—§ 1956(a)(2)(B)(i) in *Cuellar* and the conspiracy charge in this case, and § 1956(a)(1)(B)(i) in both the conspiracy and substantive money laundering charges in this case—is identical. *Cuellar* thus controls the definition of "designed" in both subsections and the corresponding jury instructions. *See United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) ("All of [*Cuellar*'s] reasoning, in our view, applies to the meaning of "designed" as used in § 1956(a)(1)(B)(i)."); *United States v. Brown*, 553 F.3d 768, 786–87 (5th Cir. 2008) (applying *Cuellar* to § 1956(a)(1)(B)(i)); William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit Cmt. to § 1956(a)(1)(B)(i) ("In light of *Cuellar* . . . the word "designed" in § 1956(a)(1)(b)(i) likely also means that the purpose or intent of the transaction must be to conceal or disguise one of the listed attributes.").

> ("'to conceive and plan out in the mind'" (quoting WEBSTER'S THIRD NEW
> INTERNATIONAL DICTIONARY 611 (1993))). Congress wrote "knowing that such
> transportation is designed . . . to conceal or disguise" a listed attribute of the funds,
> § 1956(a)(2)(B)(i), and when an act is "designed to" do something, the most natural
> reading is that it has that something as its purpose.

553 U.S. at 563–64. By contrast, the Court faulted the court below for using,

> "design" to refer not to the purpose of the transportation but to the manner in which
> it was carried out, its use of the term in this context was consistent with the alternate
> meaning of "design" as structure or arrangement. *See* AM. HERT. 491, 492 ("[t]o
> plan out in systematic, usually graphic form"; "[t]he purposeful or inventive
> arrangement of parts or details"); BLACK'S 478 ("[t]he pattern or configuration of
> elements in something, such as a work of art").

*Id.* at 564. Because the Government had not presented sufficient evidence of the correct type of

"design," the Court reversed the lower court's decision upholding the conviction. *Id.* at 568.

Importantly for our purposes, *Cuellar* acknowledged the term "designed" in the money

laundering statute is subject to two plausible interpretations, but only one *correct* interpretation.

*Id.* at 563–68. To ensure the jury finds the correct type of design, this Court should define that

term:

> The term "designed" means purpose or plan; *i.e.*, the intended aim of the transaction
> or transactions. The term "designed" does not mean structure or arrangement, *i.e.*,
> the manner in which the transaction was or transactions were carried out. In other
> words, how one conducts a financial transaction is distinct from why one conducts
> the financial transaction. Evidence of the former, standing alone, is not sufficient
> to prove the latter. Further, concealment—even deliberate concealment—as mere
> facilitation of some other purpose, is not enough to convict. The government must
> prove that the animating purpose—not merely effect—of the financial transaction
> was to conceal or disguise a listed attribute.

*See* Dkt. 859 at 11–14.[8]

---

[8] This proposed definition is taken primarily from *Cuellar*. *See Cuellar*, 553 U.S. at
563 ("In this context, "design" means purpose or plan; *i.e.,* the intended aim of the
transportation."), 564 ("the Fifth Circuit used 'design' to refer to the manner in which
it was carried out, . . . consistent with the alternate meaning of 'design' as structure
or arrangement"), 566 ("how one moves the money is distinct from why one moves the
money. Evidence of the former, standing alone, is not sufficient to prove the latter."),
567 ("a conviction under this provision requires proof that the purpose—not merely

2.      **The Court should list each element of money laundering separately.**

The first element of Instruction 8.147 provides, "the defendant [conducted] [intended[9] to conduct] a financial transaction involving property that represented the proceeds of [specify prior, separate criminal activity]." (footnote added). This element plainly contains two separate elements: First, the defendant conducted or intended to conduct a financial transaction. Second, the financial transaction involved property that represented the proceeds of a prior, separate criminal activity. *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit 4.18.1956(a)(1)(B)(i); Third Circuit Model Criminal Jury Instruction 6.18.1956A; Fifth Circuit Pattern Jury Instruction (Criminal Cases) 2.76A; William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit 18 U.S.C. § 1956(a)(1)(B)(i); Tenth Circuit Criminal Pattern Jury Instruction 2.73.1.

The third element of Instruction 8.147 provides, "the defendant knew that the transaction was designed in whole or in part [to conceal or disguise]" a listed attribute of the proceeds. This element also contains two separate elements and—crucially—*two separate mental states* that may belong to *two separate people*. First, someone—either the defendant or a third person—must have designed the transaction to conceal or disguise the nature, location, source, ownership, or control of the proceeds, *i.e.*, the designer had *the specific intent* to conceal or disguise. *See* §

———————————

effect—of the transportation was to conceal or disguise a listed attribute.") (citations omitted); *United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) ("Concealment—even deliberate concealment—as mere facilitation of some *other* purpose, is not enough to convict. . . . What is required, rather, is that *concealment be an animating purpose* of the transaction.") (interpreting *Cuellar* as applied to § 1956(a)(1)(B)(i)) (second emphasis added).

[9] Consistent with the plain language of § 1956(a)(1) and (a)(2), and to prevent confusion regarding the various mental states at issue in the crime and attempt versus the completed crime, the term "intended" in the first element of both Model Instructions 8.147 and 8.149 should be replaced by "attempted."

1956(a)(1)(B)(i) ("the transaction is designed in whole or in part . . . to conceal or disguise"); *Cuellar*, 553 U.S. at 565 ("It seems far more likely that Congress intended courts to apply the familiar criminal law concepts of *purpose and intent* than to focus exclusively on how a defendant 'structured' the transportation."); *United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008) (interpreting "designed" as requiring "proof of intent to conceal."); *United States v. Esterman*, 324 F.3d 565, 573 (7th Cir. 2003) ("[A] conviction for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) is valid only where there is concrete evidence of intent to disguise or conceal transactions."); *United States v. Gilliam*, 975 F.2d 1050, 1056 (4th Cir. 1992) ("[T]he Government must prove a specific intent to structure a transaction so as to conceal the true nature of the proceeds."); *United States v. Sanders*, 928 F.2d 940, 946 (10th Cir. 1991) ("[T]he purpose of the money laundering statute is to reach commercial transactions intended . . . to disguise . . . .") (emphasis added throughout). Second, the defendant must have *known* of that design. § 1956(a)(1)(B)(i) ("knowing that the transaction is designed in whole or in part"); *see, e.g.*, *United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992) ("The Government need not prove that the defendant had the purpose of concealing the proceeds of illegal activity. Instead, as the plain language of the statute suggests, the Government must only show that the defendant possessed the knowledge that the transaction was designed to conceal illegal proceeds.").

To prevent confusing the jury and allowing it to find the defendants guilty without finding all of the elements of the offense, including all of the required mental states, the Court should list each element separately.

### 3.    The Court should apply the "knowingly" mental state to the first element.

The U.S. Supreme Court generally "appl[ies] the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text," because "[s]cienter

requirements advance this basic principle of criminal law by helping to separate those who understand the wrongful nature of their act from those who do not *Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019). Section 1956(a)(1)(B)(i) specifies two mental states applicable to the defendant, § 1956(a)(1)(B)(i) ("[w]hoever, *knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" and "*knowing* that the transaction is designed in whole or in part . . . to conceal or disguise"), and one mental state applicable to either the defendant or another § 1956(a)(1)(B)(i) ("the transaction *is designed* in whole or in part . . . to conceal or disguise") (emphases added). It does not, however, specify a mental state applicable to the commission of the act itself. § 1956(a)(1) ("[w]hoever . . . conducts or attempts to conduct such a financial transaction."). Consistent with the U.S. Supreme Court's guidance in *Rehaif*, this Court should interpret the statute as requiring that the defendant "knowingly" conducted the transaction at issue. *See* 139 S. Ct. at 2195–96; Fifth Circuit Pattern Jury Instruction (Criminal Cases) 2.76A; William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit 18 U.S.C. § 1956(a)(1)(B)(i).

### 4. The Court should not instruct the jury that the Government does not have to prove that the Defendants knew their "money-laundering acts" were illegal.

The Government asks the Court to deviate from Instruction 8.147 by instructing that, "[t]he Government does not have to prove that the defendant knew her money-laundering acts were illegal." Dkt. 857 at 56. The Court should decline to give that part of the Government's instruction because it is not necessary to correctly state the law and runs the substantial risk of confusing the jury.

Pursuant to § 1956(a)(1)(B)(i), and included as the second element in the Government's proposed instruction, the Government must prove that the Defendants knew that the financial transaction involved property that represented the proceeds of some form of unlawful activity. The

Government is not, however, "required to prove [the Defendants] knew money laundering was itself illegal." *United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997), *abrogated on other grounds by Henderson v. United States*, 568 U.S. 266 (2013). But instructing the jury that the Government does not have to prove the Defendants knew their "money-laundering acts were illegal" is confusing because it appears to negate the second element of the offense. *See* Model Instructions 5.7 & cmt., 8.147 & cmt. ("Because it is a specific intent crime, it is reversible error to give Instruction 5.7 (Knowingly–Defined) in a money laundering case."); *United States v. Stein*, 37 F.3d 1407, 1420 (9th Cir. 1994). Although the Government has attempted to tailor the instruction to correctly state the law, it nevertheless runs the substantial risk that the jury will convict without finding all of the elements of the offense. And because the Court can correctly and adequately state the law by informing the jury of what the Government *does* need to prove, the instruction is not necessary. The Court should reject it.

## D.     Deliberate Ignorance

The Government has incorporated a modified version of Model Instruction 5.8, deliberate indifference, within the instructions for aiding and abetting, wire fraud, mail fraud, and trafficking in counterfeit goods. *See* Dkt. 857 at 40, 44, 47, 51. The Court should not provide those instructions to the jury. First, a deliberate ignorance instruction is inappropriate because, if the jury rejects the Government's evidence of actual knowledge, it could not rationally find willful ignorance. *See United States v. Heredia*, 483 F.3d 913, 923–24 (9th Cir. 2007). Second, the Government has tailored the deliberate ignorance instruction in a way that is confusing and misstates the law.

To prove mail and wire fraud, the Government must show that the Defendants knowingly participated in or devised a scheme or plan to defraud or to obtain money by means of false or fraudulent pretenses, representations, or promises. *See* Dkt. 857 at 43, 46; Model Instructions

8.121, 8.124. The Government claims the jury can find that a Defendant acted knowingly if he or she "was aware of a high probability that the goods bore a counterfeit mark or were not new" and deliberately avoided learning the truth. Dkt. 857 at 44, 47. But being deliberately ignorant that the goods *bore a counterfeit mark or were not new* does not, without more, amount to deliberate ignorance of a *scheme to defraud*.

The Government's deliberate ignorance instruction for trafficking in counterfeit goods suffers from similar flaws. The Government must prove the Defendants knew the mark used was counterfeit, *see* Dkt. 857 at 49; Dkt. 859 at 9, and it again claims it can meet that burden by showing a Defendant "was aware of a high probability that the goods bore a counterfeit mark *or were not new*," and deliberately avoided learning the truth. Dkt. 857 at 51 (emphasis added). Obviously, whether goods are new or not is irrelevant to the charge of trafficking in *counterfeit* goods. *See* § 2320(a)(1). The Court should not instruct on deliberate ignorance.

## E.    Fungible Property Forfeiture

The Government proposes the following jury instruction, purportedly from 18 U.S.C. § 984:

> Title 18, United States Code, Section 984 provides for forfeiture of any subject property that is cash, monetary instruments in bearer [form, funds deposited in an[10]] account in a financial institution (such as, depository institution, credit union, home loan bank, small business investment company, depository institution holding company, federal reserve bank, foreign bank, mortgage lending business) or precious metals from any proceeds the said defendants obtained directly or indirectly as a result of the scheme to defraud of which the defendants are convicted.

> The defendants have been found guilty of at least one or more of such violations. Your task is to determine whether or not the properties named in the Special Verdict Form were involved in or used in the commission of such violation.

---

[10] The Government appears to have inadvertently omitted part of the definition of fungible property, as indicated by the alteration.

Dkt. 857 at 77. The Court should reject that instruction. To begin, it misstates the law. Section 984 merely allows the Government to forfeit fungible property even if the property is not the exact same fungible property that was involved in the offense that is the basis of forfeiture.[11] It says nothing about proceeds that the Defendants "obtained directly or indirectly" as a result of the offense, or about the jury needing to determine "whether or not the properties named in the Special Verdict Form were involved in or used in the commission of such violation." Dkt. 857 at 77. The recitation of what amounts to fungible property will only confuse the jury. And because the forfeiture instruction specific to each offense adequately covers the law, the instruction is wholly unnecessary.

## F.    Forfeiture Verdict Form

The Government's forfeiture verdict form is deficient because it does not require the jury to reach a unanimous verdict in two ways. First, it does not require the jury to find whether a nexus exists between the property to be forfeited and the offense giving rise to forfeiture *as to each Defendant*; it merely identifies the property and the count. *See* Dkt. 858; Fed. R. Crim. P. 32.2(b)(5)(B). It therefore fails to require a unanimous verdict with respect to each Defendants' commission of a given count, and in turn fails to identify who will or will not be a third party

---

[11] The superseding indictment purports to seek forfeiture of fungible property pursuant to § 984. Dkt. 210 at 33. By its plain language, § 984 applies only to civil *in rem* forfeitures and is subject to a one-year statute of limitations. *See* § 984(a)(1), (b); *United States v. Jennings*, 487 F.3d 564, 586 (8th Cir. 2007) (explaining that "§ 984(b) sets forth a one-year statute of limitations for actions "pursuant to this section." Section 984 provides for *in rem* proceedings against fungible property in civil forfeiture actions when the government cannot specifically identify the proceeds directly traceable to the offense and instead must resort to substitute assets. The government's forfeiture claim is not a civil forfeiture claim; as such, § 984(b) has no application to the criminal forfeiture ordered against Jennings *in personam* pursuant to 28 U.S.C. § 2461(c).") (internal citations omitted). Thus, § 984 does not apply to this criminal, *in personam* forfeiture in the first place.

during the later ancillary proceeding to determine who has an interest in the property. *See* Fed. R. Crim. P. 32.2(c). Second, the verdict form does not require the jury to unanimously agree on the theory of forfeiture it finds as to each count. *See* Stefan D. Cassella, Asset Forfeiture Law in the United States, 559–60 (JurisNet 2007).

Take the following example: a husband and wife are convicted of trafficking in counterfeit goods as charged in Count 1. In the forfeiture proceeding, the Government argues that (1) the husband and/or wife used a Honda Accord to facilitate Count 1, *see* § 2323(a)(1)(C), and/or (2) the husband and/or wife bought the Honda Accord with proceeds obtained directly or indirectly from Count 1, *see* § 2323(a)(1)(C). Using a verdict form that merely identifies Count 1 and the Honda Accord, the jury checks "yes"—meaning it found the Honda Accord had the requisite nexus to Count 1. Part of the jury could have found that *just* the husband used the Honda Accord to facilitate Count 1, with the other part of the jury finding that *just* the wife used the Honda Accord to facilitate Count 1. In that case, it did not reach a unanimous verdict and did not find the requisite nexus. And, even if the jury unanimously agreed that just the husband used the Honda Accord to facilitate Count 1, the Government's verdict form would not reveal that the Honda Accord is *not* subject to forfeiture as to the wife's commission of Count 1. Similarly, the jury could have concluded the Honda Accord has the requisite nexus to trafficking in counterfeit goods as charged in Count 1, with part of the jury finding the Honda Accord was used to commit Count 1, but was not derived from proceeds of Count 1, and the other part of the jury finding the exact opposite. In that scenario, it did not reach a unanimous verdict as to the theory of forfeiture, and so the property was not properly subject to forfeiture.

To ensure that the jury reaches a unanimous verdict as to the theory of forfeiture establishing a nexus between the forfeited property and the offense giving rise to forfeiture as to

each defendant, and to ensure the Court and parties know who is in fact a third party during the ancillary forfeiture proceedings, the Court must use a forfeiture verdict form that divides the property by Defendant and theory of forfeiture.

### IV.    Conclusion

The Defendants respectfully request that the Court provide the jury with instructions and verdict forms as set forth in the Defendant's proposed instructions and verdict form, and as detailed in this memorandum.

DATED this 10th day of May 2021.

 s/ John DeFranco
 s/ Barry Flegenheimer
Attorneys for Paul Babichenko

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of May 2021, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
Christian S. Nafzger
Assistant United States Attorneys
Office of the United States Attorney
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Kate.Horwitz@usdoj.gov
Christian.Nafzger@usdoj.gov

Tim Flowers
U.S. Department of Justice
Criminal Division
1301 New York Ave. NW, Suite 600
Washington, D.C. 20530
Timothy.Flowers2@usdoj.gov

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com
Andrew Masser
2399 S. Orchard St., Suite 204
Boise, ID 83705
andrew@baldaufmasser.com
*Attorneys for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com
*Attorney for Timofey Babichenko*

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

DEFENSE OBJECTIONS TO GOVERNMENT'S JURY INSTRUCTIONS          19

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

Robyn A. Fyffe
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

Melissa Winberg
Nicole Owens
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
nicole_owens@fd.org
*Attorneys for Anna Iyerusalimets*

Ellen Nichole Smith
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

/s/ John C. DeFranco