Ellen Smith, ISB. 5992
**SMITH HORRAS, P.A.**
5561 N. Glenwood St. Suite B
Boise, ID  83714
Telephone:  (208) 697-5555
Facsimile:   (800) 881-6219
ellen@smithhorras.com

Attorneys for Defendant,
MIKHAIL IYERUSALIMETS

# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>      Plaintiff,<br>  vs.<br><br>**MIKHAIL IYERUSALIMETS, et. al,**<br><br>      Defendant. | Case No.: CR18-258-S-EJL<br><br>**DEFENDANT MIKHAIL IYERUSALIMETS' CONSOLIDATED REPLY TO GOVERNMENT'S CONSOLIDATED RESPONSE TO HIS MOTIONS IN LIMINE (ECF 799, 807, 808, 812, 815, 847, 849)** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, Defendant Mikhail Iyerusalimets hereby replies to the Government's "consolidated" response to all the motions in limine filed in this case.  Mr. Iyerusalimets is only addressing the motions he filed in the Reply.  The "omnibus" response from the Government is confusing, out of order, and entirely unorganized.  It is difficult to decipher which motion in limine the Government is addressing.  Accordingly, for ease of review and to be more clear, concise and organized, Mr. Iyerusalimets will address the motions in limine filed by him in date and number order.

    **1.**    **JOINT MOTION IN LIMINE TO EXCLUDE WITNESSES AND EVIDENCE RELATING TO SAFETY ISSUES AND ALLEGED HARM TO CONSUMERS (ECF No. 799)**

Rather than squarely address the merits of the Defendants' motion in limine (filed at Dkt. No. 799), the Government's response largely focuses on a straw man argument about "poor quality" goods and a red herring about the policies underlying § 2320. Those distractions aside, the Government has done little to even attempt show that evidence of "safety and harm" is admissible and has failed to meet its burden of proving as much. Evidence of safety issues with, or harm caused by, products sold by the Defendants is not relevant, is more prejudicial than probative, and this Court must exclude it.

The Government primarily aims its response at a straw man—whether the *quality of goods* is relevant to a charge of trafficking in counterfeit goods. Dkt. 865 at 9–12. That was not the Defendants' argument. The Defendants' motion in limine was not nearly so broad—it moved to exclude evidence of "safety issues and alleged harm." Dkt. 799 at 1. This is an important distinction. The Court should not oblige the Government's attempt to reframe the issue to its favor.

The Government accuses the Defendants of "a fundamental misunderstanding of trademark-counterfeiting law," before spending most of its argument discussing the *policies* underlying § 2320, and not even addressing the actual elements related to the statute. Dkt. 865 at 9. Section 2320 does not include safety concerns as an element of the offense nor are those concerns relevant to any fact of consequence to proving a defendant trafficked in counterfeit goods under § 2320. *See* Fed. R. Evid 401. In fact, § 2320 criminalizes the trafficking in goods bearing a counterfeit mark *regardless* of their purported dangerousness. Thus, the Court should recognize the Government's policy-related arguments for what they are—red herrings—and ignore them. This reply will focus on the motion actually made by Defendants in ECF No. 799.

The Government argues that *evidence of poor quality is relevant* "because mark holders determine whether contraband lives up to their own standards." Dkt. 865 at 9–10 (citing *United*

*States v. Farmer*, 370 F.3d 435, 441 (4th Cir. 2004)). This is both wrong and irrelevant. To state the obvious, in a trial, mark holders do not determine whether alleged "contraband" lives up to their own standards under § 2320.[1] Instead, it is *the jury* that will decide whether the allegedly counterfeit goods are in fact *counterfeit*. The definition of "counterfeit mark"—a spurious mark that is used in connection with trafficking in goods, is identical with a mark that is registered and in use, is used in connection with the same goods for which the mark is registered, and the use of which is likely to confuse—plainly has nothing to do with whether the goods are allegedly "dangerous." § 2320(f)(1). Counterfeit goods—whether superior, equal, inferior, or dangerous—are equally criminalized under § 2320 because they are all *counterfeit*.

*Farmer* itself held as much. Farmer argued that the district court should have dismissed the indictment against him because "he affixed trademarked logos (like Nike's swoosh and Tommy Hilfiger's flag) only to shirts that had been manufactured for the respective trademark holders." 370 F.3d at 440. The court explained that, "[o]ne of the rights that a trademark confers upon its owner is the *right to control* the quality of the goods manufactured and sold under that trademark." *Id.* at 441 (emphasis added). Plainly put, the trademark holder has the right to control the placement of its mark. *See* § 2320. *Farmer* thus stands for the exact opposite proposition than that claimed by the Government, and supports the Defendants' motion to exclude evidence of safety issues or harm.

The Government next argues that, "when considered against a defendant, product quality is probative of numerous legitimate issues at trial," including knowledge that goods were counterfeit, state of mind, and the existence of a counterfeit scheme. Dkt. 865 at 10. The

---

[1] Nor do they "enjoy an exclusive right to prohibit others from trafficking in the spurious versions of goods and services bearing their marks." *See* Dkt. 865 at 9 (citing *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017); § 2320). That is true of a civil case, but not this criminal case.

DEFENDANT MIKHAIL IYERUSALIMETS' CONSOLIDATED REPLY TO GOVERNMENT'S
CONSOLIDATED RESPONSE TO HIS MOTIONS IN LIMINE (ECF 799, 807, 808, 812, 815, 847, 849)

Government is wrong for two reasons. First, to admit the evidence for those purposes, the Government would need to show that each Defendant was aware of the particular complaint that purportedly goes to show his or her knowledge, state of mind, or a scheme to defraud. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (holding that the proponent of hearsay must prove an exception or exemption by preponderance of the evidence). The Government has not even attempted to make that showing, presumably because it cannot. Second, evidence of a small number of complaints related to safety issues and harm is not relevant to show knowledge that the products were counterfeit, a guilty state of mind, or a scheme to defraud. All those complaints show is that the product at issue may have malfunctioned for unknown reasons, which could include user error, a faulty power source, or manufacturing defects in the genuine good(s).

Finally, the Government asserts that evidence of "the potential for harm" is relevant to establishing a likelihood of confusion, mistake, or deception. Dkt. 865 at 10. The Government misconstrues the relevant showing under § 2320(f)(1)(A)(iv), and, once again, the exact opposite is true.

According to § 2320(a)(1), the Government must prove the mark was counterfeit. A "counterfeit mark" is, among other things, a spurious mark "the use of which is likely to cause confusion, to cause mistake, or to deceive." § 2320(f)(1)(A)(iv). In other words, the question is whether the mark is fake and would mislead others into believing that the product to which it was attached was manufactured by or for the mark holder.

Rather than actually arguing as much, however, the Government meanders through various arguments before accusing the Defendants of "weaponizing" the Rules of Evidence. Dkt. 10–12. The Government makes *no argument* to support its claim that the "potential for harm" has any bearing on the question of whether *the use of the mark is likely to confuse or deceive others into*

*believing a counterfeit good is genuine*. Nor could it. Evidence of "potential for harm" or complaints related to safety issues or harm is irrelevant as to whether the use of a mark was likely to confuse or deceive others into believing the good bearing the mark was genuine. Evidence of safety issues with, or harm caused by, products sold by the Defendants is not relevant, and this Court must exclude it.

### 2. MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO CBP SEIZURE (ECF No. 807)

In its Response, the Government admits the specific CBP seizure discussed by Mr. Iyerusalimets in ECF No. 807 is highly problematic. Specifically, HSI received an alleged CBP seizure dated September 14, 2017 related to Mr. Iyerusalimets that had been tampered with (evidenced by 16 missing phones). Thereafter, the Government stated that because "Agent Denning reported to the proper internal affairs personnel the discrepancy," the seizure should still be admissible. See ECF No. 865, p. 28-29. Oddly, it appears the Government is arguing that even though 16 out of 30 phones are literally missing, "[the items] have not been changed in any important respects." See ECF no. 865 p. 29. This argument falls flat as more than half of the allegedly "seized" phones are actually *missing, unaccounted for and their absence is unexlpained*. The Government does not dispute that this evidence has been specifically tampered with. Accordingly, there is more than a "reasonable probability" that this evidence has been changed in a significant way. It must be excluded.

Moreover, the Government does not contest the relief requested in ECF No. 807, but rather, says it is "moot" because it is not "planning" on admitting the physical evidence. See ECF No. 865, p.37. The Government quite literally cannot admit the physical evidence of this alleged seizure because *it is missing and does not exist*. Nevertheless, the Government still improperly is attempting to include this alleged seizure (including the 16 missing phones) in its summary

DEFENDANT MIKHAIL IYERUSALIMETS' CONSOLIDATED REPLY TO GOVERNMENT'S CONSOLIDATED RESPONSE TO HIS MOTIONS IN LIMINE (ECF 799, 807, 808, 812, 815, 847, 849)

5

exhibits, number of phones "seized" and amount of loss. Accordingly, Mr. Iyerusalimets' motion is not moot. As the Government does not have an issue with the relief requested, there should be no problem with the Court granting Mr. Iyerusalimets' Motion (ECF No. 807) in order to properly protect his rights. It should therefore be ordered that "any evidence related to (Mr. Iyerusalimets') CBP seizure on or about September 14, 2017 (including any references thereto)" must be excluded. See relief requested by ECF No. 807, p. 4.

### 3. MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY CONCERNING MIKHAIL IYERUSALIMETS' STATE OF MIND (ECF No. 808)

In its response, the Government agrees that a lay witness may not testify based on speculation. ECF 865, p. 31. However, the Government then suggests it can "lay foundation" for their witnesses to testify to Mr. Iyerusalimets' state of mind. It cannot. It is impossible because there is no proper foundation that can be laid for any witness to speculate about what Mr. Iyerusalimets' "knew" or "intended."

It is unclear why, even knowing it is improper under the Rules, that the Government will not simply agree to this simple, straight-forward request. Rather, it appears the Government is still going to try to solicit this prohibited testimony from its case agents or other witnesses in front of the jury, forcing Mr. Iyerusalimets to object. This will be highly prejudicial because the jury will not understand why Mr. Iyerusalimets is objecting (especially in light of the extremely limited words permitted for objections). Instead, it is likely to appear that Mr. Iyerusalimets is simply trying to prevent the case agents/other witnesses from testifying about his state of mind because he is "guilty."

There is absolutely no reason why a specific ruling cannot be made now to prevent the harmful prejudice that will result if the Government intentionally solicits this inflammatory and

improper testimony. Accordingly, to prevent such irreparable harm to Mr. Iyerusalimets, he would respectfully request that the Government be precluded from presenting testimonial opinion evidence regarding Mr. Iyerusalimets' state of mind. Further, the Government should be ordered to instruct its witnesses prior to their testimony that they are precluded by Court order from offering such testimony.

### 4. MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM PRESENTING CERTAIN EVIDENCE AND ARGUMENTS (ECF No. 812)

This Motion has been fully briefed by Mr. Iyerusalimets and supported by the Declaration of Kharan Khachturov. Notably, the Government agrees it will follow "normal procedures" in its opening statement. As such, because no foundation has been laid, the Court should order the Government be prohibited from stating that any defendants "laugh about exploding chargers" and "know" their products are "dangerous to the community" in its opening statement. It is more prejudicial than probative and it is highly questionable that after the evidence is presented such foundation will be even able to be laid by the Government.

Mr. Iyerusalimets does not wish to waste the Court's time by regurgitating the facts ignored by the Government in its Response. However, a few points must be quickly mentioned. The Government again tries to bias the Court by making multiple self-serving statements that mischaracterize the alleged "evidence" of the undercover sting. There are so many inaccurate depictions by the Government in ECF 865, p. 3-5 and 17-20, it is difficult to know where to start.

For just one example: "He (Mr. Iyerusalimets) offers this ("Mr. Khachturov's statement) as some form of justification for laughing during a clandestine hand-to-hand purchase of items that were later deemed to be counterfeit." See ECF 865, p. 19. There is no evidence established that the items discussed are "counterfeit," contrary to the repeated inflammatory statements of the

Government.  Whether these items are counterfeit is something only the jury has the right to decide.  It is not up to the Government to improperly impose its own misplaced belief in this regard, especially without any foundation laid.

Further, Mr. Iyerusalimets' explanation of the alleged "exploding battery" is not a justification—it is just the truth of what actually happened.  Again, Mr. Iyerusalimets' derogatory statements in the sting video about the problematic phones, chargers and batteries refer to what he has found in the testing process—not what he "sold."  This is an inconvenient fact for the Government because it wants to paint Mr. Iyerusalimets as some sort of monster whose sole purpose was to locate dangerous products and then sell them to unsuspecting consumers.  This is absolutely untrue and not supported by the evidence.  To permit the Government to make these statements, especially in its opening statement, would result in an unfair trial.

Finally, if the Court opts not to exclude the sting video (or portions thereof), Agent Sheehan should not be permitted to editorialize the sting video by offering his highly biased and incorrect "opinion" of what was being discussed.  If, (as the Government contends), the sting video truly "reveals the existence of a counterfeiting scheme and the means by which he and his co-defendants perpetrated it" the jury should be able to easily extract this same opinion.  The jury does not need Agent Sheehan's prejudicial "help."  The jury can make its own determination.  The jury must be able to do its job and weigh/interpret the evidence without being force-fed mischaracterizations by a person of "authority."  Accordingly, the Court must direct the Government to not solicit such testimony from its case agents or other witnesses at trial.

### 5. JOINT MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT'S USE OF CERTAIN TERMS AND TITLES (ECF No. 815)

In its response, the Government has agreed to identify and refer to the people charged as individuals and not use the terms "Babichenkos," "defendants" or "co-conspirators."  Notably,

although agreeing not to use these terms in trial, the Government used these inflammatory terms freely and often throughout their Responses to the Motions in Limine.  See ECF 865.  This is presumably because the Government is attempting to inflame the Court to influence its decision on these Motions.

With regard to the term "victim," the Government stated it would use "alleged victim" instead.  This does not go far enough to alleviate the concerns addressed by Mr. Iyerusalimets because it suggests the Government "believes" Samsung, Apple and any number of random consumers are victims.  This is improper as every entity and/or consumer has a proper name and can be easily identified by their names.  It is up to the jury to decide who, if anyone, were "victims" or even "alleged victims."

Notably, the Government did not address Defendants' arguments about the terms counterfeit and money laundering. Dkt. 865. This Court should prohibit the Government and its witnesses from using the terms "counterfeit" and "money laundering" for the same reasons that they should not use the term traffickers (or other forms of "traffic" like "trafficking"), as explained in Defendants' motion. Dkt. 815, pp. 7-10.  *Whether* devices are counterfeit and *whether* a Defendant's conduct constitutes money laundering are questions for the jury alone.

Defendants also ask the Court to exclude synonyms of the terms they moved to exclude. Synonyms are inadmissible for the same reasons as the terms expressly identified by the Defendants. Defendants, and the Court, cannot anticipate every synonym that the Government or its witness's may attempt to use at trial. They thus ask this Court's leave to raise objections as they learn of terms that should be excluded from trial.

To cite just one example of a synonym that should be excluded, the Government and its witnesses should be prohibited from referring to the Defendants as "smugglers" or to their conduct

as "smuggling" for the same reason that they should be prohibited from referring to the Defendants as "traffickers." Smuggle means to illegally import something, and it is a synonym of "traffic." It thus should be excluded from trial for the same reasons that traffic should be excluded. *See* Dkt. 11-12 (making argument). Witness testimony that a Defendant "smuggled" a device is irrelevant under Rule 402, substantially more unfairly prejudicial than probative under Rule 403, violates the Defendants' presumption of innocence, and constitutes impermissible vouching.

For the reasons set out in his motion and in this reply, Defendant Mikhail Iyerusalimnets respectfully asks the Court to grant his Joint Motion In Limine To Preclude The Government's Use Of Certain Terms and Titles (Dkt. 815).

**6.   DEFENDANTS' MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S PROPOSED EXHIBIT RELATED TO CBP (ECF No. 847)**

As stated in the original Motion to Exclude CBP Summary, the Government's CBP summary exhibit must be excluded because it is: 1) untimely; 2) irrelevant and more prejudicial than probative; 3) based upon inadmissible hearsay; and 4) violates the 6th Amendment of the U.S. Constitution.

**A. Government's Untimely Proposed Summary Exhibit**

The Government does not contest that its proposed CBP Summary Exhibit was untimely. As a summary of "thousands" of pages of exhibits the Government has had for years, the proposed CBP summary should be prohibited solely on that basis. It easily could have been provided **on time** or even at an earlier time if the interest was making certain the Defendants had a fair trial. However, the Government is frequently rewarded by its "trial by ambush" strategy and does not think it is even necessary to address this issue.

Just recently, the Government has refused to provide an actual copy of its tens of thousands

of pages of new trial exhibits (nearly twice the amount it told the Court it was presenting at the hearing regarding reducing the enormous amount of exhibits).  Defendants will now again suffer prejudice because they complied with the rules and the Government did not.

The refusal to hold the Government to its ordered deadlines results in Mr. Iyerusalimets' due process rights being repeatedly violated and Government receiving improper advantages. This precedent should not be continued to be honored.  Accordingly, the untimely proposed CBP Summary Exhibit must be excluded.  However, even if the Court sees fit to accommodate the Government's tardiness, the proposed CBP Summary Exhibit must still be excluded as it is inconsistent with Fed. R. of Evid. 1006.

**B.  Federal Rule of Evidence 1006 Prohibits Admission of the Government's Proposed CBP Summary Exhibit.**

In its omnibus response, the Government confuses Mr. Iyerusalimets' Motion to Exclude the Governments' Proposed Summary Exhibit Related to CBP (ECF No. 847) (hereinafter "Motion to Exclude CBP Summary") with two other somewhat related motions. In doing so, the Government hopes the Court will ignore the standards set forth in Fed. R. Evid. 1006 with regard the proposed CBP Summary Exhibit.  However, the Government's CBP Summary Exhibit must be carefully scrutinized as it is inconsistent with Fed. Rule of Evid. 1006 and violates the Defendants' 6th Amendment rights.

The Government's proposed CBP Summary Exhibit is a pedagogical device at best.  It is telling that in its Motion, the Government fails to even mention the applicable rule at all (except in a minor footnote). What is similarly absent is why the Governments' demonstrative exhibit summarizing thousands of pages of law enforcement reports should not only be presented to the jury but also actually *entered into evidence* pursuant to Fed. R. 1006.

The Government insists the allegedly supportive CBP/FP&F documents are admissible law

enforcement reports that are not prohibited by Fed. R. of Evid. 803(8)(A). Instead, the Government claims these CBP/FP&F ("Fines Penalties & Forfeitures") law enforcement reports were "required of the agency and not for the purpose of establishing or proving a fact at trial." ECF 865 p. 25. Not so. As discussed thoroughly in Mr. Iyerusalimets' original motion, "ministerial tasks" and "routine non-adversarial law enforcement reports" do not generally accuse people of being "violators." Clearly, these records are adversarial and specifically created to establish a fact at trial or other adversarial process. Without question, the CBP/FP&F "supporting documentation" is, in fact, law enforcement reports that the Government is sneakily seeking to be admitted into evidence without foundation or cross-examination. This cannot be permitted while simultaneously providing a fair trial to Defendants.

Most importantly, the Government's proposed CBP summary exhibit violates the Defendants' Sixth Amendment right to confront their accusers. The CBP "seizure" process is random, inconsistent from port to port, and highly flawed. A CBP seizure is not representative of anything except on one particular day, one particular CBP officer suspected something was "not right." This could be for a myriad of reasons ranging from the item "came from China" to a strong "hunch". A seizure of an item does not mean it is counterfeit. Moreover, attempting to get even legitimate goods back after a CBP seizure is so arduous and expensive, much of the time it is a better business decision to just let the items be destroyed.

There is a reason that the Government does not have any CBP witnesses listed to testify at trial. The Government's concern that a CBP officer's testimony about seizures will not stand up to cross examination is well-founded. Nevertheless, the Defendants are guaranteed the right to confront their accusers. Permitting this inflammatory information be introduced into evidence through a summary exhibit is improper and must not be allowed.

7. **SUPPLEMENTAL MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S PROPOSED SUMMARY EXHIBITS REFERENCING MIKHAIL IYERUSALIMETS (ECF No. 849)**

The Government did not contest Mr. Iyerusalimets' Motion requesting the Court exclude any and all proposed "summary exhibits" that reference him in any way. See the entire Docket. As such, as there was no objection to the Motion, Mr. Iyerusalimets' Motion timely filed at ECF No. 849 must be granted.

## Conclusion

For the reasons set forth above, Mr. Iyerusalimets respectfully requests that all of the Motions in Limine filed by him in Docket Nos. ECF 799, 807, 808, 812, 815, 847, and 849 be granted.

Dated: May 13, 2021.

By:__/s_____
Ellen N. Smith
Attorney for Defendant
MIKHAIL IYERUSALIMETS

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
Assistant United States Attorney Office of the
United States Attorney 1290 West Myrtle
Street, Suite 500
Boise, ID 83702
Kate.Horwitz@usdoj.gov

Christian S. Nafzger
Assistant United States Attorney Office of the United States Attorney 1290 West Myrtle Street, Suite 500
Boise, ID 83702
Christian.Nafzger@usdoj.gov

Tim Flowers
U.S. Department of Justice
1301 New York Ave. NW, Suite 600
Washington, D.C. 20530
Timothy.Flowers2@usdoj.gov

John DeFranco

1031 E. Park Blvd.
Boise, ID 83712 jcd@greyhawklaw.com
*Attorney for Pavel Babichenko*

Barry L. Flegenheimer
119 First Avenue South, Suite 500
Seattle, WA 98104
barrylfp@gmail.com

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702 rigginslaw@gmail.com
*Attorney for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702 office@roblewislaw.com
*Attorney for Timofey Babichenko*

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
*Attorney for Kristina Babichenko*

J.D. Merris
913 W. River Street, Ste. 420
Boise, ID 83702
jmerris@earthlink.net
*Attorney for Natalya Babichenko*

DEFENDANT MIKHAIL IYERUSALIMETS' CONSOLIDATED REPLY TO GOVERNMENT'S CONSOLIDATED RESPONSE TO HIS MOTIONS IN LIMINE (ECF 799, 807, 808, 812, 815, 847, 849)

Robyn A. Fyffe
P.O. Box 5681 Boise, ID
83705 robyn@fyffelaw.com
*Attorney for David Bibikov*

Charles Peterson
Melissa Winberg
Federal Defender Services of Idaho
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
*Attorneys for Anna Iyerusalimets*

Jeffrey Brownson
223 North 6th Street, Suite 215
Boise, Idaho 83702
jb@jeffreybrownsonlaw.com
*Attorney for Gennady Babitchenko*

Thomas B. Dominick 500 W.
Bannock Street Boise, Idaho 83702
tom@dominicklawoffices.com
*Attorney for Artur Pupko*

/s/ Ellen Smith

DEFENDANT MIKHAIL IYERUSALIMETS' CONSOLIDATED REPLY TO GOVERNMENT'S
CONSOLIDATED RESPONSE TO HIS MOTIONS IN LIMINE (ECF 799, 807, 808, 812, 815, 847, 849)
15