UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION &<br>ORDER RE DEFENSE EXPERTS<br>LEVITAN AND ELLINGTON** |

# INTRODUCTION

Before the Court is the Government's Motion to Exclude Expert Testimony Regarding Digital Forensic Experts (Dkt. 787). This motion relates to defense experts Ben Levitan and Derek Ellington. The Court conducted a *Daubert* hearing on May 14, 2021 and will now issue its decision. For the reasons explained below, the Court will deny the motion.

**BACKGROUND**

The government alleges that for over 10 years – between January 2008 and August 2018 – defendants purchased counterfeit electronic devices, including Apple and Samsung cellphones, and then resold them to consumers as "genuine and new" on online platforms such as Amazon and eBay. Defendants are charged with conspiring to (1) commit wire fraud, (2) traffic in counterfeit goods, and (3) launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering.

Defendants intend to call Ben Levitan and Derek Ellington to testify at trial as expert witnesses. Both are slated to offer testimony regarding the functionality of the Apple and Samsung cellphones at issue in this case.

**1.    Mr. Levitan**

Mr. Levitan has expertise in cellular network and security. *See Updated Notice,* Dkt. 732, at 2. He has opined that "it is almost impossible that the cellular phones sold in this case – thousands between 2012 and 2018 – were not genuine (whether new or used and repaired)." *Levitan Dec.*, Dkt. 875-1. But when Mr. Levitan uses the word "genuine," he is not saying that the phones are in the same condition as if the rights-holder had distributed them. That is why he says the phones are "genuine" but then very quickly modifies that by saying "genuine"

phones include "new or used and repaired" phones. *See id.* In fact, his more specific opinion is that the phones in this case "are likely rebuilt phones." *Levitan Dec.,* Dkt. 875, at 2. So when the word "genuine" is modified in that fashion, and when the remainder of Mr. Levitan's testimony is considered, it becomes clear that Mr. Levitan is defining a "genuine" phone to be nothing more than a phone that isn't a cloned phone.

Cloning, as Mr. Levitan explains it, is the practice of "stealing someone's serial number and phone number and programming it into a new phone." *Levitan Dec.,* Dkt. 875-1, ¶ 32; *see also United States v. Clayton*, 108 F.3d 1114, 1115 (9th Cir. 1997) ("'Cloning' is the practice of stealing the identification numbers of legitimate cellular phones and programming them into other cellular phones."). Mr. Levitan explains that since around 2010, it has become "essentially impossible" to clone a phone. Dkt. 875-1, ¶ 36. He says cloned phones no longer work on the cellular network because of the many security features built into the network. *See, e.g., id.* ¶¶ 36-45.

## 2. Mr. Ellington

Mr. Ellington is a "Certified Forensic Examiner and Certified E-Discovery Specialist with over 24 years of information technology experience . . ." *Ellington Dec.*, Dkt. 874, ¶ 1; *see also Notice,* Dkt. 768, at 2. He has been extracting data

from cell phones since the late 1990s. The nature of that work requires him to analyze and repair cell phones, and, therefore he "must be aware of subtle differences of every phone." *Ellington Dec.,* Dkt. 874, ¶ 3.

Mr. Ellington was tasked with physically examining the cell phones in this case, including documenting serial and IMEI[1] numbers and examining the phones' condition. *Id.* ¶ 12. He says that because of his extensive experience repairing Apple and Samsung smart phones, he not only has "first-hand knowledge" of these phones' internal components, but he would also be able to tell if a third party had modified the circuit boards of "genuine" iPhone and Samsung devices. *Id.* ¶ 10. Additionally, he explains that "any replication or modification [of the circuit boards] would require such an incredible level of sophistication to integrate with the Apple or Samsung components, that creating replicas would neither be practical nor economical." *Id.* He then goes on to opine, "with a high degree of certainty that none of the devices [he] examined were replicated or cloned Apple or Samsung devices." *Ellington Dec.,* Dkt. 874, ¶ 12.

---

[1] IMEI is an acronym for International Mobile Equipment Identifier. Mr. Levitan explained that the serial number assigned to a phone *is* the IMEI. *See Levitan Dec.,* Dkt. 875-1, ¶ 21.

# DISCUSSION

The government says Mr. Levitan's and Mr. Ellington's testimony is so unreliable and irrelevant that the Court would jeopardize the integrity of the trial if they are allowed to testify. The Court is not persuaded. As explained below, while the Court agrees that these experts' testimony does not seem particularly relevant to whether the phones in this case were "genuine" within the meaning of 18 U.S.C. § 2320(g), their testimony is nevertheless relevant to a determination of defendants' mental state – particularly whether they had the intent to deceive and cheat when they advertised and sold Apple and Samsung phones as "new and genuine." *See Second Superseding Indictment,* ¶ 14 (alleging conspiracy to commit wire fraud).

1.  **The Governing Legal Standard**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court's role in applying Rule 702 is to be a gatekeeper. *Daubert*, 509 U.S. at 589. In that role, the court considers both relevance and reliability of the proffered evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation marks and citation omitted).

**2.      Relevance – Trademark Claims**

Based on the record in this case, including testimony offered at the *Daubert* hearing, the Court is persuaded that Mr. Levitan and Mr. Ellington are qualified and that their opinions are reliable. *See generally Hearing Tr.*, Dkt. 915, at 93:8-21. The key question is whether their testimony is relevant.

The Court is not convinced that these witnesses have much to offer with respect to the trademark claims. Both witnesses freely admit that they are not

trademark experts. At the *Daubert* hearing, Mr. Levitan said, "I'm here as a technical expert, not as a trademark expert." *Hearing Tr.,* Dkt. 915, at 27:9-10. He testified that he didn't examine logos on any of the devices, and that as far as "quality" is concerned, "that's not really . . . [his] area of expertise . . . ." *Id.* at 37:16-18. Similarly, Mr. Ellington testified that he has never rendered an expert opinion on any trademark. *Id.* at 68:17-24. He explained that, from his viewpoint, the term "counterfeit" . . . focus[es] on the actual technology and not the trademarking and packaging." *Id.* at 58:20-24. In other words, and as already mentioned, both experts are focusing on whether the phones are functioning, non-cloned phones.

But based on the slivers of evidence the Court has seen thus far, this isn't a case about cloned phones. Rather, defendants are advancing a theory that the rebuilt, non-cloned phones in the case are "genuine." And, from there, they argue that they did nothing more than repackage "genuine goods" within the meaning of 18 U.S.C. § 2320(g). Section 2320(g) provides that a person cannot be criminally liable "for the repackaging of *genuine* goods or services not intended to deceive or confuse." (emphasis added). But refurbished or rebuilt phones aren't "genuine" phones within the meaning of § 2320(g). Defendants have not cited any authorities that would support such an expansive reading of § 2320(g), and the cases they do

cite are easily distinguishable.

In *United States v. Hanafy*, 302 F.3d 485 (5th Cir. 2002), for example, defendants purchased individual cans of baby formula from various convenience stores and other sources and repackaged the cans into trays for resale. *Id.* at 486. Although the cans had not been packaged by the original manufacturers for resale in this form, the defendants' goods were genuine and sold within the "sell by" date. *Id*. The court concluded that the unauthorized use of a reproduction of a mark in connection with genuine goods (that is, what the mark represents the goods to be) does not violate § 2320. *Id*. at 487-88.

Significantly, though – and unlike the phones in this case – the baby formula in *Hanafy* was not altered in any way. As the district court put it, "[t]he product itself, that is, the actual contents of any of the cans, was not changed . . . *Defendants repacked the cans, not the product.*" United States v. Hanafy, 124 F. Supp. 2d 1016, 1022 (N.D. Tex. 2000), *aff'd* 302 F.3d 485 (5th Cir. 2002) (emphasis added). And one of the fundamental rights conferred by a trademark "is the 'right to control the quality of the goods manufactured and sold' under that trademark. *United States v. Farmer,* 370 F.3d 435, 441 (4th Cir. 2004) (citation omitted).

Here, the government is not alleging that the defendants repackaged

*unmodified* Apple and Samsung cellphones. Rather, the government says the counterfeit marks were placed directly on, or even built into, the phones. *See, e.g., Supp. Br.*, Dkt. 924, at 5 ("At a minimum, each cellphone deemed counterfeit includes a rear housing unit, screen, battery, and/or other component part(s) that were not manufactured by the trademark holder and bear a spurious mark on the non-genuine component part."). The government describes it this way: "Defendants sold these counterfeit 'Frankenphones' as 'brand new' Apple and Samsung cellphones, sealed in counterfeit packaging, and containing the corresponding counterfeit accessories." *Supp. Br.,* Dkt. 924, at 6. Assuming the government proves these facts at trial, a repackaging defense under § 2320(g) would not be available to the defense.

3. **Relevance – Mental State**

Defendants argue that expert testimony regarding the functionality of the phones is relevant to their mental state on the majority of the charges in this case. As defendants correctly point out, the government's allegation that they knowingly sold counterfeit cell phones is woven into the majority of the 51 charges contained in the indictment. Just as one example, conspiracy to commit wire fraud and mail fraud both require the government to prove that the defendants acted with intent to deceive and cheat by selling counterfeit goods as new and genuine. Defendants say

expert testimony that the phones were functional would tend to show that they did not have the requisite mental state for these charges. Put differently, Mr. Levitan's and Mr. Ellington's testimony regarding the functionality of the phones may support a theory that the defendants unknowingly sold "really good counterfeits." *Supp. Br.,* Dkt. 923, at 10. The Court agrees that expert testimony from Mr. Levitan and Mr. Ellington is relevant to this issue and will therefore allow these experts to testify at trial.

## ORDER

**IT IS ORDERED that** the Government's Motion to Exclude Expert Testimony Regarding Digital Forensic Experts (Dkt. 787) is **DENIED**.

DATED: May 29, 2021

B. Lynn Winmill
U.S. District Court Judge