UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00258-BLW |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION & ORDER RE EXPERT DISCOVERY** |
| PAVEL BABICHENKO, GENNADY BABITCHENKO, PIOTR BABICHENKO, TIMOFEY BABICHENKO, KRISTINA BABICHENKO, NATALYA BABICHENKO, DAVID BIBIKOV, ANNA IYERUSALIMETS, and MIKHAIL IYERUSALIMETS, | |
| Defendants. | |

# INTRODUCTION

Before the Court is Defendant Piotr Babichenko's Motion to Compel Expert Discovery. (Dkt. 817). This motion relates to the anticipated testimony of the government's expert witness James Hogg.[1] Mr. Babichenko asks for an order compelling the government to produce documents related to the "bases and

---

[1] The motion repeatedly refers to Christopher Pyryt, of Samsung, but the government no longer intends to call Mr. Pyryt. Rather, Mr. Hogg will be the only expert from Samsung. Accordingly, the motion is logically aimed at Mr. Hogg, and the Court will construe it as such.

MEMORANDUM DECISION & ORDER - 1

reasons" for Mr. Hogg's opinions. *See* Fed. R. Crim. P. 16(a)(1)(G). For the reasons explained below, the Court will: (1) deny defendant's motion to compel production of the vast swath of technical documents enumerated below; (2) reserve ruling on the manuals and guides Mr. Hogg discussed during the recent *Daubert* hearing; and (3) order the government to supplement its Rule 16(a)(1)(G) expert disclosures as outlined below.

## BACKGROUND

Defendants are charged with conspiring to (1) commit wire fraud, (2) traffic in counterfeit goods, and (3) launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering.

In January 2020, the government notified defendants that it intends to call James Hogg to testify as "an expert in Samsung Inc. brand security and anti-counterfeiting initiatives." *See Jan. 2, 2020 Rule 16 Notice,* Dkt. 340, at 4. The Government's Rule 16 notice provides this summary of Mr. Hogg's anticipated testimony:

> The United States anticipates that Mr. Hogg will testify that he examined the mobile-device parts and accessories bearing the various Samsung trademarks at issue in this case. Mr. Hogg is expected to testify that, in his opinion, these parts and accessories were not authentic Samsung products because, among other reasons, the manufacturing specifications of the counterfeit merchandise were inferior to the counterfeit products and lacked crucial indica of legitimate Samsung products. Mr. Hogg will testify as to the process

by which counterfeiters unsuccessfully attempt to replicate legitimate
Samsung products. Mr. Hogg is expected to explain the process by
which Samsung selects the parts used in its products and the safety
risks associated with using counterfeit parts to repair Samsung
products. The United States further anticipates that Mr. Hogg will
discuss the characteristics of Samsung trademarks and compare
spurious and legitimate versions of Samsung trademarks.

*Id.* at 4. After the government served this notice, Defendant Piotr Babichenko asked the government to produce the following categories of documents relating to Samsung products – and these are the same categories of documents that are the subject of this motion to compel:

1. Engineering drawings, design drawings, design requirements, technical specifications with tolerances, mechanical drawings, electrical schematics, research papers, and all applicable codes and standards utilized or the functional equivalent thereof regarding the [Samsung] products . . . [with "products" being defined to include "any model or variant identified in any Samsung Product Analysis Report produced to (or requested by) the Government to date in this case . . . [to] include all Samsung travel adapter USB chargers, including but not limited to model number EP-TA20JWE"].

2. Manufacturing drawings, assembly-line instructions, manufacturing processes/procedures and all test plans, test procedures, and test data sheets with detailed test set-ups and documented measured product results; and

3. Quality Assurance production tolerances, variances, error rates, failure rates, reliability, availability, plus product performance and any research papers or the functional equivalent thereof regarding the same, regarding the [defined] products . . . .

*See emails, Exs. A & B to Motion,* Dkts. 817-1 & 817-2; *see generally Motion Mem.,* Dkt. 817, at 2.

The government refused to produce those documents over a year ago, when defense counsel first requested them. The government's position was – and presumably still is – that the requested materials are irrelevant and involve Samsung's proprietary information. *See* Dkt. 817-2. The government also says it does not have these documents and has no obligation to obtain them.[2] *See* Dkt. 865, at 34. Defense counsel says he cannot effectively cross-examine Mr. Hogg – or otherwise prepare for trial and render effective assistance of counsel – without these documents.

## DISCUSSION

**1. The Governing Legal Standards**

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to give defendants a written summary of any expert witness testimony it plans to use during its case-in-chief. The summary "must describe the witness's opinions, *the bases and reasons for those opinions*, and the witness's qualifications." Fed. R. Crim P. 16(a)(1)(G) (emphasis added). The Advisory Committee Note to the 1993 Amendment says the summary of the bases relied upon by the expert "should cover

---

[2] Defendants sought to obtain these documents directly from Samsung, by way of a Rule 17 subpoena. The Court granted Samsung's motion to quash the subpoena, however, because the subpoena was overbroad and failed to identify specific documents. *See Nov. 20, 2020 Minute Entry*, Dkt. 699.

not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." The Ninth Circuit has held that a district court may order expert disclosures from the government that are "complete, comprehensive, accurate, and tailored to the issues on which the expert is expected to testify." *United States v. W.R. Grace*, 526 F.3d 499, 503 (9th Cir. 2008). Additionally, a district court can exercise its discretion to direct the government to "identify the documents or information that the expert reviewed in preparing his or her report . . . ." *Id.* at (concluding that such an order was "well within the bounds" of the district court's authority under Rule 16).

Rule 16(a)(1)(G) contemplates a written summary only; it does not require a document production. Rule 16(a)(1)(E), however, requires the government to produce documents and items "material to preparing the defense." In *United States v. Diakhoumpa*, 171 F. Supp. 3d 148, 151 (S.D.N.Y. 2016), a district court concluded that information relied upon by government experts was "material to" the defense, and thus ordered the government to produce such information, provided that defendant's requests were "sufficiently specific and the information produced is not subject to privilege or work product doctrine." *Id.*

The defendant in *Diakhoumpa* was charged with trafficking in counterfeit goods. The government intended to call import specialists with Customs and

Border Protection (CBP) to testify regarding the authenticity of the goods at issue. Before trial, the defendant sought to obtain information the trademark holders had supplied to CBP for purposes of training its specialists. Over the government's objection, the court ordered production of this information, reasoning that "the information relied on by the Government's expert witnesses to determine the authenticity of the goods in question is material to Diakhoumpa's defense and meaningful to Diakhoumpa's cross-examination because it concerns Diakhoumpa's requisite knowledge that the items were counterfeit." *Id.*

### 2. Manuals and Guides

The Court agrees that, in this case, the government should identify and produce the documents Mr. Hogg relied upon in forming his opinions. During the recent *Daubert* hearing, when Mr. Hogg was asked if he referred to any manuals when he examined the items at issue in this case, he said that "we referred to many different guides and knowledge that we had . . . ." *Apr. 21, 2021 Hearing Tr.,* Dkt. 871, at 140:11-12. When pressed about which particular guides, Mr. Hogg identified a manual dealing with batteries, plus "a general guide that helps determine . . . that was created by our IP firm that was used by Customs and Border Protection that has – has things to look for." *Id.* at 145:1-7.

Because Mr. Hogg has indicated that he relied on these materials, the Court is inclined to order the government to specifically identify and produce them to the

defense, subject to a suitable protective order. The problem, however, is that the pending motion does not ask for these materials. The motion focuses on the broad categories of technical documents enumerated above. Given the overbreadth of these categories, it is not even clear if the definitions capture the materials Mr. Hogg referenced at the *Daubert* hearing. Further, during the *Daubert* hearing, when the Court suggested that the defense surely had a right to these materials (the guides and the manual), government counsel said it would need a chance to brief the issues. Accordingly, the Court will not order production of these documents at this time. Instead, the Court will allow the parties an opportunity to provide supplemental briefing on this point. Upon receipt of that briefing, the Court will determine whether to order production of the materials.

Alternatively, the parties may of course meet and confer regarding this issue; perhaps they will be able to reach a stipulation. At this point, the Court will simply note that, based on the information before it, the Court is very much inclined to order production of these materials, and to do so immediately, so that trial of this complex case can proceed efficiently and without unnecessary delay. *See generally* Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.") The Court is cognizant of the need to protect Samsung's proprietary information but

anticipates that any such concerns could be adequately addressed in a protective order. The Court therefore encourages the parties to agree upon the terms of a production.

3. **Technical Documents**

Returning the focus to the technical documents that are the subject of this motion – the wide-ranging categories of documents enumerated above – the Court will deny defendant's motion to compel the government to produce these documents. Mr. Babichenko says he needs these categories of technical documents because he believes Mr. Hogg must have referenced or relied upon such documents in forming his opinions. In advancing this theory, Mr. Babichenko focuses on this language in the government's Rule 16 notice:

> "Mr. Hogg is expected to testify that in his opinion, certain parts and accessories were not authentic Samsung products because, among other reasons, the *manufacturing specifications* of the counterfeit merchandise were inferior to the counterfeit products . . . ."

Dkt. 340, at 4 (emphasis added). Keying off the reference to "manufacturing specifications," defendant says Mr. Hogg must have "references for distinguishing inferior manufacturing specifications from those which are sufficient." *Motion,* Dkt. 817, at 3.

But Mr. Hogg is not an engineer or a manufacturing specialist; he's a retired police officer who now works at Samsung. Mr. Hogg says he does not rely on

engineers or people in the manufacturing area to advise him on whether any given Samsung product is authentic. Rather, he is familiar with Samsung products, and in deciding whether a product is genuine or counterfeit, he mainly relies on visual observation. For example, he says he has seen "hundreds, if not thousands" of authentic Samsung cables and products. *Hearing Tr.*, Dkt. 871, at 159:8-9. He also said, more generally, that he's looking for "sloppy manufacturing." *Id.* at 155:19-20. The examples he provided included looking for finished edges, tight seals, and labels that tear easily or are not the correct color. *Id.* at 155:21 to 156: 6. These sorts of observations do not require him to refer to the sorts of detailed, technical documents defendants seek to obtain. Accordingly, the Court will not order production of these documents.

Granted, the defense may wish to criticize Mr. Hogg's level and depth of expertise on cross – that is, for not having the expertise an engineer might have regarding technical manufacturing specifications. But that is fodder for cross-examination; it's not a basis for ordering production of the wide-ranging categories of technical documents described above.

### 4. Additional Disclosures

Finally, the Court will take up Mr. Babichenko's request that the government should be required to specifically delineate each and every opinion and sub-opinion Mr. Hogg will render at trial, and to identify the basis or reason

for each such opinion. *See Motion,* Dkt. 817, at 15. The government did not respond to this aspect of the Mr. Babichenko's motion.

The Court will grant the request. At this point – with trial just around the corner – the government should have a very clear idea of each opinion Mr. Hogg is expected to render at trial. And, as illustrated by this motion, the parties have been talking past each other to a certain extent (about "manufacturing specifications" as one example). Accordingly, the government should specifically detail each opinion Mr. Hogg will offer at trial, the exhibits that will be used during Mr. Hogg's testimony, and the basis and reasons for each such opinion. That disclosure should be made within 14 days of this Order.

## ORDER

IT IS ORDERED that:

1. Defendant Piotr Babichenko's Motion to Compel Expert Discovery (Dkt. 817) is **GRANTED IN PART and DENIED IN PART** as explained above.

2. The government is ordered to supplement its Rule 16 Notice as to Mr. Hogg, as outlined above, within 14 days of this Order.

DATED: May 29, 2021

B. Lynn Winmill
U.S. District Court Judge