## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BABICHENKO,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE: GOVERNMENT'S MOTION TO ADMIT VOLUMINOUS RECORDS UNDER FEDERAL RULE OF EVIDENCE 1006** |

## INTRODUCTION

Before the Court is the Government's Motion in Limine to admit voluminous records under Federal Rule of Evidence 1006. Dkt. 816. Defendants' have filed numerous objections, which the Court will address below. *See* Dkts. 833, 844, 847, 849. However, the Court will grant the Motion, subject to the modifications described below.

## BACKGROUND

Defendants are charged with three conspiracies: (1) conspiracy to commit wire fraud, (2) conspiracy to traffic in counterfeit goods, and (3) conspiracy to launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering. As alleged, Defendants operated a ten-year complex and evasive scheme in which they sold counterfeit goods imported from outside the United States. As part of the Government's lengthy investigation, it collected financial and bank records detailing the financial transactions between the Defendants, their multiple business, and their employees. The Government also collected records detailing seizures of the alleged counterfeit products by the United States Customs and Border Patrol (CBP).

The Government's investigation yielded a voluminous record. Because of the number of documents produced, the Government seeks to admit exhibits summarizing the financial records and CBP seizures under Federal Rule of Evidence 1006.

## THE GOVERNING LEGAL STANDARDS

### 1. Motions in Limine

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v.*

*Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, though, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

### 2.  Federal Rule of Evidence 1006

Under Federal Rule of Evidence 1006, "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The original or duplicate documents must be available for examination or copying by other parties at a reasonable time and place. *Id*. The purpose of the rule is to

allow the use of summaries to aid the jury where the underlying documents would be unmanageable to present at trial. *See United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011). The "proponent of summary evidence must establish that the underlying materials upon which the summary is based (1) are admissible in evidence [although the materials need not be admitted into evidence] and (2) were made available to the opposing party for inspection." *Id*.

Courts enjoy wide discretion in determining whether to admit summary exhibits into evidence. *See United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (no error where court admitted chart, which was initially employed as a testimonial aid, into evidence where defense had a full opportunity to challenge the underlying documents, and the chart "contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence."). Summary exhibits must be reasonably accurate and correct in their characterizations of the underlying materials. *See United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984); *see also* 5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 584 (2d ed. 1994) (*hereinafter* Mueller & Kirkpatrick). Furthermore, summary exhibits are distinct from pedagogical devices, which are helpful testimonial aids and typically are not admitted into evidence. *See United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991). *But see Gardner*, 611 F.2d at 776 (admitting summary chart into evidence that was initially

employed as a testimonial aid).

## DISCUSSION

The Government seeks to admit into evidence two sets of summary exhibits: 1) financial transactions between Defendants, their businesses, and their employees, and 2) CBP seizures of Defendants' products. The Government reasons the underlying documents are too voluminous to admit into evidence piecemeal and doing so will waste time. Defendants make numerous objections that the Court will address below. However, the Court finds that the materials underlying the proposed summary exhibits are the kind of voluminous materials contemplated by Rule 1006. As such, the Court will grant the Motion, subject to the modifications explained below.

## A. Late-Provided Summary Exhibits

Defendants seek to exclude the Government's late-provided summary exhibits. *See* Dkts. 833, 847, 849. The Government responds that, while some summaries were inadvertently provided late, exclusion would be inappropriate where the Government provided privileged work product to save the Defendants' time in analyzing the documents.

Pursuant to the parties' stipulation and this Court's order, the Government was required to provide all discovery and summary exhibits by April 1, 2021. *See* Dkt. 777. The Government provided 169 summary exhibits on April 1, but did not

provide additional summary exhibits until April 6, five days after the stipulated deadline.[1] Defendant Gennady Babichenko reports that most of the late-disclosed summary exhibits pertain to financial transactions associated with him, as well as incoming and outgoing wire transfers associated with all Defendants. *See* Dkt. 833 at 2.

The Court has inherent authority to enforce its specific discovery orders. *See United states v. Grace*, 526 F.3d 499, 516 (9th Cir. 2008). Federal Rule of Criminal Procedure 16(d)(2) provides that if a party fails to comply with the rule, including a court order, the court may "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." The appropriate sanction, if any, lies in the district court's sound discretion. *United States v. Gee*, 695 F.2d 1165, 1168 (9th Cir. 1983). Excluding untimely evidence is "generally appropriate only in cases involving 'willful and blatant' violations." *United States v. DiRoberto*, 686 Fed. Appx. 458, 462 (9th Cir. 2017) (citation omitted).

---

[1] The Government reports that they provided to Defendants the CBP summary exhibit on April 1, and that Defendants had the underlying documents since February 2019. *See* Dkt. 887 at 2.

In that light, the Court will not exclude the late summary exhibits. Importantly, the Court does not find the Government's conduct to be "willful and blatant." To the contrary, as an expression of good faith, the Government provided privileged work product to compensate for the brief delay. Further, the Court does not wish to waste trial time by forcing the Government to present the underlying materials piece-by-piece.

Ordinarily, a continuance would be the appropriate sanction for a discovery delay to alleviate any prejudice. *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998). However, since the filing of the present motions, the Court has granted a two-week trial continuance due to an unrelated issue, and trial is now expected to commence June 21, 2021. *See* Dkt. 903. As such, the Court finds that the late-disclosed summary exhibits resulted in minimum prejudice, if any, to Defendants, as the trial has now been continued for a longer period than the five-day delay. Defendants were already in possession of the underlying materials and are now equipped with the Government's work product to analyze the summary exhibits expeditiously. While the Court is not inclined to entertain further late discovery, the Court understands that the Government's oversight is perhaps indicative of the sheer amount of discovery in this case.

## B. Financial Record Summaries

Defendants object to the Government's financial summary exhibits on the

following grounds:[2] 1) they are more akin to demonstrative devices and therefore are improper under Rule 1006, 2) the underlying materials are not authenticated, 3) the summary exhibits improperly combine married Defendants together, 4) the summary exhibits improperly include misleading and argumentative terms, 5) some summary exhibits lack supporting material, 6) the wire summary exhibits are irrelevant or overly prejudicial, 7) the summary exhibits are unreliable because they include misspellings. The Court will address these objections in turn.

### 1. Rule 1006 and Demonstratives

Defendants object to the Government's use of arrows to indicate the flow of money between Defendants' business entities. They claim that the arrows are argumentative and render the exhibits demonstratives or pedagogical devices rather than summaries appropriate for Rule 1006.

While demonstrative aids are permissible when based on facts already in evidence, and are typically not admitted into evidence themselves, *see Wood*, 943 F.2d at 1053, Rule 1006 clearly also contemplates and even encourages demonstratives. This is evident by the express use of "chart" among the enumerated modes of presenting voluminous material. Fed. R. Evid. 1006; *see*

---

[2] The Government has agreed to remove from their financial summary exhibits Linda Czemerys' analysis of the differences between the Defendant's taxable income and personal deposits, as well as her commentary (Dkt. 887 at 8). Accordingly, those issues are moot.

*United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988) (flow charts showing organization of alleged drug conspiracy properly admitted over defendant's objection that they were argumentative); *see also* Mueller & Kirkpatrick § 584 ("[c]ertainly charts, graphs, schematic diagrams, and other aids suitable for viewing [] by the trier of fact [] during trial are appropriate [under Rule 1006]"). Defendants do not claim that the arrows are an inaccurate representation of the underlying material (other than some misspellings, which will be addressed below);[3] they simply claim that they are argumentative, inference-based, and more akin to a pedagogical device. The Court disagrees and finds the arrows a reasonable method of presenting the evidence. *See Gardner*, 611 F.2d at 776.

### 2. Authentication of Mr. Sloan Documents

Defendants claim that the business records of their mutual accountant, Troy Sloan, cannot be authenticated under Rule 902(11) and thus are inadmissible. Fed. R. Evid. 902(11). However, the Government properly noticed their intent to admit these records in compliance with Rule 902(11). *See* Dkt. 776. Mr. Sloan submitted a certificate indicating the records were maintained and created in the ordinary course of business. *See* Dkt. 887-3. Defendants failed to raise a timely objection to

---

[3] While Mikhail claims that the exhibit name "Mikhail & Anna Entities" is misleading because some of the entities were only owned by one spouse, the title could be read as entities belonging to one or both spouses and therefore is not inherently prejudicial.

the authenticity of the records. *See* General Order No. 377 ("After receiving notice under Fed. R. Evid. 902(11). . .a party has fourteen (14) days to make a specific objection to the authenticity of any record [under Rule 902(11)]. Otherwise, the Court will deem the requirement of authenticity for the record at trial waived, unless failure to comply is excused by the Court."). As such, their objection is waived.

### 3. Married Defendants

Defendants claim that the summaries combining married Defendants are misleading because, for some exhibits, the underlying material does not implicate one spouse with a particular business transaction. Furthermore, they claim that Secretary of State Certificates of Organization records do not support some representations that married couples were co-owners of some of the business entities. Dkt. 849 at 8. The Government responds that the summaries are based on bank records and the signatories on the accounts, not Secretary of State documents. The Government has offered to include a separate tab to inform the jury as to the signatories on the accounts. Due to the nature of the charges and the fact that some entities were co-owned by the married Defendants, the Court finds that the summary exhibits combining married Defendants is an overall reasonable means of presenting the underlying material. *See Gardner*, 611 F.2d at 776. However, the Government is instructed to create the signatory tab to alleviate any potential

prejudice to Defendants.

### 4. Misleading Terms

Defendants claim that the Government's use of the terms "major" and "main" to refer to the depositors in the accounts is misleading, prejudicial, and inaccurate because the terms do not appear in the underlying materials. Furthermore, Timofey Babichenko requests that the summary exhibits be modified to use "Tim" instead of "Timofey." The Government responds that the terms are simply used to indicate the summary does not include every deposit made into an account.

The Court finds that, in this context, "major" and "main" are used as neutral terms. Perhaps quite literally there is a lack of a better word to concisely indicate that the summarized material is not an inclusive, but rather selective, list of transactions. Given that the touchstone of Rule 1006 is convenience, the jury need not concern itself with depositors or payees that the Government does not rely in their case. On the other hand, the jury should be informed that the exhibit does not include every transaction. Thus, the Court will permit the use of the terms "major" and "main" in this narrow context. The Court will not require the Government to update its exhibits with "Tim," especially where "Timofey" was the name on the underlying bank accounts.

### 5. Lack of Underlying Material

Defendants claim that some of the Government's summary exhibits lack any underlying material and therefore are impermissible under Rule 1006. Specifically, some of the entities in "Mikhail & Anna's Entities" are listed as having "no bank records." Because there is no underlying material to summarize, Defendants claim the summaries should be excluded. However, summaries may include statements as to what the underlying material does *not* contain. *See, e.g., United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979) ("[i]t is true that in such an instance the content of the records is negative, but that does not render the fact of omission any less an accurate summary of the content of the records."). Accordingly, the Defendants' request is denied.

### 6. Wire Summaries

Defendants object to the Government's wire summary exhibits detailing the Defendants' alleged domestic and foreign wire transfers. They claim they are charged with only six specific wire transfers and therefore evidence of further wire transactions is irrelevant. They further claim that the Government's list of all wires made by the Defendants isn't a "summary" as envisioned by Rule 1006. The Court disagrees with both claims.

The Defendants' alleged wire activities are clearly relevant to the case. Defendants are charged with six substantive counts of illicit wire transfers. *See* Dkt. 210 at 19-21. Similar, uncharged conduct is not irrelevant simply by virtue of

its uncharged status. *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("[P]olicies underlying [Federal Rule of Evidence 404(b)] are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant is indicted for less than all his actions."). While a single wire may appear innocuous in a vacuum, the Government has repeatedly stressed the breadth of the alleged scheme and is entitled to present a comprehensive picture in its case-in-chief. *See United States v. Daley*, 974 F.2d 1215, 1217 (9th Cir. 1992). Moreover, these are exactly the kind of transactions that are best presented to the jury as Rule 1006 summaries, as it would be a waste of time to present the underlying wire materials piece-by-piece. As such, Defendants' request is denied.

### 7. Misspellings

Finally, Defendants claim that several typographical errors such as misspellings render the summary exhibits inaccurate and unreliable. While perfection is a worthy endeavor, the Court finds the indicated errors (such as the Government's misspelling "STAR-KS LLC" as "Star KS LLC") to be minor. Defendants may cross-examine the summaries' creators on these errors; however, the Court will not exclude the summary exhibits on this basis. *See Thomas v. Baca*, 514 F. Supp. 2d 1201, 1209 (C.D. Cal. 2007) (overruling defendant's objection that the summary of [prisoners required to sleep on the floor of jail facilities]

contained misspelled names and inaccurate booking numbers, finding they were "minor errors that do not impact the overall accuracy of the material.").

## C. CBP Record Summaries

Defendants object to the Government's proposed CBP summary exhibit on the following grounds: 1) The exhibit presents more like an argument than a summary appropriate for Rule 1006, 2) The underlying CBP materials constitute inadmissible hearsay, 3) the CBP seizures are irrelevant and, even if relevant, they are more prejudicial than probative, 4) the summary exhibit violates the Defendants' confrontation rights.

### 1) Rule 1006

Like their objection to the proposed financial record summary exhibits, Defendants claim that the CBP summary exhibit is more akin to a demonstrative exhibit and is therefore improper under Rule 1006. They claim the exhibit contains inflammatory terms like "VIOLATOR" and improperly includes the resolutions to petitions challenging the CBP-seized products ("RELIEF DENIED (RD), RELIEF GRANTED (RG)"). Further, Defendants object to the Government highlighting the approximate total number of products allegedly seized and their values.

While Rule 1006 is commonly invoked in the financial or business material context, the Rule is not limited to those genres. 4 Wigmore, Evidence § 1230 (Chadbourn rev. 1972). Here, the Court finds the CBP summary exhibit is an

appropriate, helpful, and time-saving way of presenting the CBP seizure documents to the jury. However, some of the Defendants' concerns are well-taken. The Court agrees that the term "VIOLATOR" (in the heading "VIOLATOR/CONSIGNEE/ADDRESSEE NAME") adds unnecessary prejudice where the more neutral terms "consignee" and "addressee name" suffice. Accordingly, the Government shall remove the term "VIOLATOR" from the heading. Furthermore, the Government shall remove the highlight to the approximate totals. While the highlight may help draw the jury's attention, and is not necessarily argumentative, the jury will be informed of the totals regardless and removing the highlight will mute undue attention.

The Court will overrule the objection to the petitions and their resolutions as such evidence is admissible as notice to Defendants. By virtue of challenging the seizures, Defendants were therefore aware of the seizures, which is important in establishing notice under Federal Rule of Evidence 104(b). Moreover, a denial of relief is relevant to the Defendants' state of mind. Importantly, the exhibit does not invade the jury's function in determining whether products were counterfeit and the Defendants' knowledge as to counterfeit status of the products. *See United States v. Johnson* 319 US 503, 519 (1943) (government's expert summarizing defendant's income and expenditures did not mislead jury into thinking they must accept the expert's calculations or were bound by them). Rather, the Court will

instruct the jury on the exhibit's limited, non-hearsay purposes.  *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000) (a jury is presumed to follow its instructions).

### 2)  Underlying CBP Materials

Defendants claim that the underlying CBP materials documenting the seizures of the alleged counterfeit products are inadmissible hearsay not subject to the public records exception under Federal Rule of Evidence 803(8)(A)(ii). Of course, for a summary exhibit to be proper under Rule 1006, the underlying materials must be admissible into evidence, even if they are not so admitted. *Rizk*, 660 F.3d. at 1130.

Hearsay is a statement, other than one made by the declarant "while testifying at the current trial or hearing," that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is deemed inadmissible unless it is defined as non-hearsay or falls within a hearsay exception. *See Orr v. Bank of Am.*, 285 F.3d 764, 778 (9th Cir. 2002). Under Rule 803(8)(A)(ii), a record of a public office is excluded from the hearsay rule if it sets out "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(ii).

The Government intends to offer the CBP summary exhibit as evidence of notice and state of mind as to Defendants, as well as context of the alleged scheme.

As such, the underlying materials are not offered for their truth, and thus are not hearsay. *See United States v. Lane*, 2013 U.S. Dist. LEXIS 98318, * 7 (D. Ariz. 2013) (concluding CBP letters were admissible to show notice to defendant and evidence of the defendant's state of mind). Like the financial summary exhibits, the jury will be instructed as to the CBP summary exhibit's limited purposes. *Weeks*, 528 U.S. at 234.

### 3) Relevancy

Nevertheless, Defendants claim that the CBP seizures are irrelevant, and even if they are relevant, they are more prejudicial than probative. In support, Defendants note the standard for CBP product detention is lower than the statutory counterfeit standard and that a person may choose not to challenge the seizure, even if a product was genuine, because of the required time, energy, and expense.

As explained, the CBP seizures are relevant to establishing notice and state of mind of Defendants, as well as providing context to the case. As the Government indicated, some of the actions taken by Defendants were as a result of sellers withdrawing from the alleged scheme based on the seizures. *See* Dkt. 887 at 3. Furthermore, the jury need not be left speculating as to how Defendants' products were detected by law enforcement and how the Defendants allegedly attempted to avoid customs seizure of imported goods. *See Daley*, 974 F.2d at 1217. The Court disagrees with the Defendants' assertion that the CBP seizures are

"mildly relevant;" to the contrary, they are very relevant and are not substantially outweighed by the prejudice to the Defendants. Fed. R. Evid. 403.

## 4) Confrontation Clause

Defendants claim that, because the Government does not intend to call a CBP representative witness, that the CBP summary exhibit and the underlying materials violate their confrontation rights.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." The Confrontation Clause applies to testimonial statements, or statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)). A business or public record is not "testimonial" due to 'the mere possibility' that it could be used in a later criminal prosecution; rather, the it must be made in anticipation of litigation. *See United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010).

*United States v. Morales*, 720 F.3d 1194 (9th Cir. 2013), is instructive. There, the Ninth Circuit determined that the Field 826 immigration forms were nontestimonial because they were created pursuant to the administration of the

Border Patrol's affairs and not for the purpose of establishing or proving a fact at trial. *Id*. at 1200. Importantly, the forms were "completed whether or not the government decide[d] to prosecute the aliens or anyone else criminally." *Id*. Here, the CBP seizure documents were created regardless whether an alleged violator will be prosecuted. As such, they are not testimonial, and the exclusion of a CBP representative witness does not run afoul of the Defendants' confrontation rights.

The Defendants further claim that, without the opportunity to cross-examine a CBP representative witness, they cannot obtain crucial testimony demonstrating that the CBP seizure process is "random, inconsistent from port to port, and highly flawed." Dkt. 883 at 12. However, Defendants are free to subpoena a CBP representative witness if they choose. *See* Fed. R. Crim. P. 17.

## ORDER

**IT IS ORDERED THAT** the Government's Motion in Limine to Admit Voluminous Records under Federal Rule of Evidence 1006 (Dkt. 816) is **GRANTED**, subject to the following modifications:

1) The Government shall create a separate tab indicating the signatories on the Defendants' bank accounts;

2) The Government shall remove Linda Czemerys' analysis of the differences between the Defendants' taxable incomes and deposits, as

well as her comments and notes;

3) The Government shall remove the term "VIOLATOR" and the

highlighted portion of the CBP summary exhibit.

**IT IS FURTHER ORDERED THAT** Defendants' Motions to Exclude the

Government's Late-Disclosed Summary Exhibits (Dkt. 833) and Exclude

Summary Exhibits (Dkts. 844, 847, 849) are **DENIED**.

DATED: June 9, 2021

B. Lynn Winmill
U.S. District Court Judge