UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BABICHENKO,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE CONFIDENTIAL HUMAN SOURCE** |

## INTRODUCTION

Before the Court is Defendants' Motion in Limine Regarding Confidential Human Source (Dkt. 810). The Court will deny this motion as it prefers to address defendants' various objections to this anticipated testimony during trial.

## BACKGROUND

Defendants are charged with three conspiracies: (1) conspiracy to commit wire fraud, (2) conspiracy to traffic in counterfeit goods, and (3) conspiracy to

launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering. At trial, the government intends to call a Confidential Human Source (CHS). The defense reports that the CHS met with law enforcement in April 2016 and made various statements, including these:

(1) He sold counterfeit phones for Paul Babichenko at a warehouse on Bridger Street in Boise.

(2) Defendant Artur Pupko sold phones online for Paul Babichenko and others.

(3) Employees sold phones in their own names to hide profits associated with Babichenko's name and the Bridger Street address.

(4) The Babichenkos, David Bibikov and Artur Pupko "tend to fraudulently claim a very small profit margin and write off the remaining money as a business expense for tax evasion/fraud purposes."

(5) He believed the Babichenkos and Bibikov used Angelica Pupko's bank account to funnel money through other accounts to avoid paying taxes, and, further, that after the money was transferred through different accounts, it was transferred to a nonprofit – the Morningstar Church – to avoid paying taxes.

Defendants say the CHS should not be allowed to testify that any of the products they sold were "counterfeit," or that defendants' conduct constituted "money laundering" or "tax evasion." They also seek an order "limiting" the CHS from speculating about the Defendants' or their employees' motives. Dkt. 810, at 2.

MEMORANDUM DECISION & ORDER - 2

## THE GOVERNING LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, though, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## DISCUSSION

The Court will deny the motion to exclude certain aspects of the CHS's

MEMORANDUM DECISION & ORDER - 3

anticipated testimony. The Court will rule on these objections as they arise during trial, but will offer some preliminary analysis here, so that the parties are generally aware of how the Court intends to approach these issues at trial.[1]

### 1. Anticipated CHS Opinion Testimony About Sales of Counterfeit Goods, Tax Evasion, and Money Laundering

Defendants argue that the CHS should not be permitted to testify that their conduct constituted "money laundering" or "tax evasion" or that any of the goods sold were "counterfeit." They say such testimony is: (1) irrelevant under Rule 401 and 402; (2) substantially more prejudicial than probative under Rule 403; (3) improper opinion testimony under Rule 701(c); and (4) impermissible vouching. Defendants' central concern is that the CHS will offer up improper *opinion* testimony. *See* Dkt. 810, at 5. The logical starting point is thus Federal Rule of Evidence 701.

Under Rule 701, a lay witness may offer opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

---

[1] In this decision, the Court focuses mainly on Rule 701. The Court will address the objections based on relevance, prejudice, and vouching at trial.

MEMORANDUM DECISION & ORDER - 4

Fed. R. Evid. 701. "Rule 701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). The general idea is that a lay witness may offer opinion testimony *if* that testimony "results from a process of reasoning familiar in everyday life" as opposed to "a process of reasoning which can be mastered only by specialists in the field."" Fed. R. Evid. 701, advisory committee's note to 2000 amend. (*quoting State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). In particular, Rule 701(c), which prohibits testimony from a lay witness that is "based on scientific, technical, or other specialized knowledge," is intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note to 2000 amend; *United States v. Rigas,* 490 F.3d at 208 (2d Cir. 2007) (citations omitted).

     Here, without the context of a trial record, the Court agrees with defendants' position that opinion testimony about the counterfeit goods, money laundering, and tax evasion should be left to the experts. Still, though, at this stage, the Court is not willing to issue a blanket prohibition against opinion testimony from the CHS. The Court has not yet heard the CHS's testimony and is thus unaware of the full extent of the CHS's knowledge and experiences. *See generally Rigas,* 490 F.3d at 224 (concluding that the district court did not err by allowing a lay witness with personal knowledge of a company's books and records to offer opinion testimony

regarding the effect of a debt reclassification).

## 2. Motives and Mental State

Defendants ask the Court to preclude the CHS from testifying about the motives or mental state of any defendant, witness, or employee. This matter is more appropriately dealt with as it comes up in trial. The defendants' motion will therefore be denied. Still, though, here is the general rule that will guide the Court during trial: While expert witnesses are prohibited from testifying as to the mental state of a criminal defendant, "there is no theoretical prohibition against allowing *lay* witnesses to give opinions as to the mental states of others." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (emphasis added). However, "the purpose of the foundation requirements of the federal rules governing opinion evidence is to ensure that such testimony does not so usurp the fact-finding function of the jury." *United States v. Garcia*, 413 F.3d at 211-12 (2d Cir. 2005). The Court is somewhat skeptical as to how a lay opinion as to a Defendant's state of mind can be offered without invading the jury's province to determine such issues in a criminal proceeding. Therefore, the Government should avoid inviting the witnesses to instruct the jury regarding their conclusion as to the Defendants' state of mind.

In accordance with the legal principles discussed above, the Government may seek to introduce such lay opinion testimony on a witness-by-witness and

conversation-by-conversation basis during trial, at which point the Court, sufficiently informed, will be in a position to assess whether the Government has satisfied the foundational requirements of Federal Rule of Evidence 701.

## ORDER

**IT IS ORDERED THAT** Defendants' Motion in Limine Regarding Confidential Human Source (Dkt. 810) is **DENIED.**

DATED: June 9, 2021

B. Lynn Winmill
U.S. District Court Judge