UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>　　　　Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE JURY NULLIFICATION (DKT. 820)** |

## INTRODUCTION

Before the Court is the government's Motion in Limine to Exclude Evidence or Argument Related to Jury Nullification (Dkt. 820). For the reasons explained below, the Court will deny the motion as premature and will instead exclude any irrelevant evidence or argument designed to achieve jury nullification as such may arise at trial. Accordingly, the Court will not specifically address many of the issues raised in the briefing. The Court will, however, offer its preliminary

thoughts regarding two specific types of evidence defendants say they intend to offer at trial: (1) evidence of defendants' subjective beliefs regarding a "right to repair" devices; and (2) evidence of defendants' transfers of money to Brazil. Additionally, the Court will briefly comment on the dispute over whether the word "victim" may be used during the trial.

## BACKGROUND

Defendants are charged with three conspiracies: (1) conspiracy to commit wire fraud, (2) conspiracy to traffic in counterfeit goods, and (3) conspiracy to launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering.

The government is concerned that defendants "will raise multiple inflammatory arguments" at trial and therefore seeks a broad order "prohibiting the Defendants from eliciting evidence that is irrelevant, unfairly prejudicial, and/or designed to encourage jury nullification." Dkt. 820, at 3. The government identifies these lines of inquiry, among others:

1) "unfounded allegations of improper financial motivations by Apple and Samsung";

2) "the alleged power and influence that Apple and Samsung have over the United States government";

3) "baseless representations that the Government selectively prosecuted (or persecuted) the Defendants because of ethnicity or religion";

4) "the high-stakes consequences of the jury returning a guilty verdict"; and

5) "Defendants' allegedly charitable acts taken in connection with their business or religious activities."

Dkt. 820, at 3-4. The governments is also concerned that the defendants will attempt to vilify Apple and Samsung based, in part, on some of the defendant's activity early in this case, including social media posts and Defendant Piotr Babichenko's billboard advertisements regarding Apple and Samsung. *See* Dkt. 820, at 7-8.

In response, defendants argue that although they are entitled "to ask the jury to rein in Government overreach in this case by returning not guilty verdicts even if the Government has established the elements of the offenses beyond a reasonable doubt," *Response,* Dkt. 851, at 13, they do not actually intend to argue for jury nullification. *Id.* at 2. They do, however, say that some of the evidence the government has identified in its motion is relevant and admissible. *Id*. Most significantly, from the Court's perspective, the defendants focus on evidence related to (1) the "lawful purpose for why the Defendants sent funds to Brazil . . . ." and (2) defendants' subjective belief that they had "the right to repair a device." *Id.*

## THE GOVERNING LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, though, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## DISCUSSION

As already noted, the Court will deny as premature the government's request

for a broad order excluding evidence related to jury nullification. But, to provide some guidance to the parties, the Court will offer the following observations regarding the "right to repair," financial transfers; and the use of the word "victim" at trial.

**1. Defendants' Subjective Belief Regarding a "Right to Repair" Devices**

Regarding the "right to repair," the government asks the Court to "enter an order prohibiting the Defendants from claiming an illusory 'right to repair,' or anything analogous, as a justification for their actions." *Mtn*, Dkt. 820, at 11. Although the government is free to raise objections on this point at trial, the Court will be inclined to deny them.

To convict defendants of either wire fraud or mail fraud, the government must prove an intent to deceive and cheat. *See* 18 U.S.C. §§ 1341, 1343; *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (holding that "wire fraud requires the intent to deceive and cheat – in other words, to deprive the victim of money or property by means of deception"). Defendants' subjective beliefs – including whether they believed they had a right to repair used devices – are relevant to the question of intent. To be sure, there is an obvious weakness in defendants' theory. They are charged with selling devices as "new and genuine." By definition, a "repaired" item is not "new." Nevertheless, defendants' subjective beliefs as to their "right to repair" a device bears on the question of whether they

intended to deceive and cheat their customers. And, more generally, with specific-intent crimes such as wire and mail fraud, defendants are entitled to introduce evidence of good faith or an absence of an intent to defraud. Accordingly, the Court likely will deny objections to such evidence during trial.

## 2.    The Purpose of Financial Transactions and Transfers

Likewise, the Court will not be inclined to exclude evidence relating to defendants' transfers of money to charitable, business, or religious entities. The government says evidence of such transfers – and, in particular, transfers to charity – is irrelevant to the determination of *mens rea* and intended simply to tug at jurors' heartstrings. *See Reply,* Dkt. 886, at 7.  Defendants argue that this evidence is relevant to the money laundering charges.

The federal money laundering statute prohibits specified transfers of money derived from unlawful activities. *See* 18 U.S.C. § 1956(a)(1), (2). Here, defendants are charged with two types of "concealment" money laundering: (1) engaging in certain prohibited financial transactions under 18 U.S.C. § 1956(a)(1); and (2) conspiring to engage in prohibited international transfers of money under 18 U.S.C. § 1956(a)(2). The elements of these crimes – shown below – are similar:

**Elements of Money Laundering under Subsection (a)(1)**

    (1)   the defendant conducted a financial transaction involving proceeds of unlawful activity;

(2) the defendant knew that the money represented proceeds of unlawful activity; and

(3) the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

18 U.S.C. § 1956(a)(1).

**Elements of International Money Laundering under Subsection (a)(2)**

(1) the defendant transferred money from a place in the United States to or through a place outside the United States or vice versa;

(2) the defendant knew that the money represented the proceeds of unlawful activity; and

(3) the defendant knew the transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

18 U.S.C. § 1956(a)(2)(B)(i).

The government alleges that defendants engaged in a complicated series of financial transactions and then transported money to Brazil. At trial, Defendant Gennady Babitchenko intends to call witnesses located in Brazil to testify regarding, among other things, . . . "how Mr. Babitchenko's Brazilian company was funded, including but not limited to whether there were any efforts to conceal the source of funds for the company or the company's dealings in general; . . . ."

*Mtn.*, Dkt. 795-1, at 14.

At this point, the Court is not persuaded that defendants' intended evidence would be irrelevant and aimed only at jury nullification. In *Cuellar v. United States*, 553 U.S. 550 (2008), the Supreme Court explained that the "designed-to-conceal" element of the money laundering statute requires the government to prove that a defendant's subjective purpose in conducting a transaction was to conceal an attribute of the funds. *Id.* at 566-67. In other words, the government must establish "why" a defendant moved the money. *Id*. at 566.

In *Cuellar*, the defendant had been convicted of international money laundering under 18 U.S.C. § 1956(a)(2)(B)(i) after police officers found $81,000 in narcotics proceeds during a search of his car. The Supreme Court concluded that the *reason* (or, using the statutory term, the "*design*") – for the international transportation of money was itself relevant because the defendant must know that the transport is designed to conceal the source of funds.

Here, the government intends to introduce evidence – apparently a complex crisscross of financial transactions – from which the jury could infer that the relevant financial transactions were themselves designed to conceal, and that defendants knew this to be the case. Defendants will of course be allowed to counter this evidence with their own proof showing either that (1) the purpose of the financial transaction or transfer at issue was not intended to conceal or (2) that

the defendant did not know that the purpose – or "design" – of the relevant transaction or transfer was to conceal. *See Cuellar,* 550 U.S. at 570 (Alito, J., concurring). Accordingly, the Court will be inclined to deny the government's objections.

3.  **Use of the Word "Victim"**

Finally, the Court will not issue an advance order prohibiting either side from using the word "victim" during trial proceedings. Either side may raise appropriate objections to specific questions or arguments during trial, but the Court does not see any reason to issue such a granular order at this stage of the proceedings.

## ORDER

**IT IS ORDERED THAT** the Government's Motion in Limine to Exclude Evidence or Argument Related to Jury Nullification (Dkt. 820) is **DENIED AS PREMATURE.**

DATED: June 9, 2021

B. Lynn Winmill
U.S. District Court Judge