UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>GENNADY BABITCHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>NATALYA BABICHENKO,<br>DAVID BABICHENKO,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE MOTIONS IN LIMINE AT DKTS. 799, 807, 808, 812, 813, 814, 815, 818, 819, 821, 822, 823, 893** |

## INTRODUCTION

Before the Court are numerous Motions in Limine filed by Defendants. Dkts. 799, 807, 808, 812, 813, 814, 815, 818, 821, 822, 823, 893. Additionally, before the Court is the Government's Motion to Admit Intrinsic and Prior Bad Act Evidence. Dkt. 819. For the reasons explained below, the Defendants' Motions are denied at this time. As to many of the Defendants' concerns, the Court prefers to address their objections in the context of trial. The Court will grant in part and

**MEMORANDUM DECISION & ORDER - 1**

deny in part the Government's Motion.

## BACKGROUND

Defendants are charged with three conspiracies: (1) conspiracy to commit wire fraud, (2) conspiracy to traffic in counterfeit goods, and (3) conspiracy to launder money. They are also charged with individual counts of wire fraud, mail fraud, trafficking in counterfeit goods, and money laundering. As alleged, Defendants operated a vast and elaborate scheme in which they trafficked and sold counterfeit electronic devices.

Trial is expected to commence June 21, 2021. The Government intends to introduce numerous items of evidence to prove each charge. Among the anticipated evidence are witnesses, documents, physical evidence, videos, and communications. Defendants seek to exclude various aspects of this anticipated evidence.

## THE GOVERNING LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, though, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered

evidence is clearly inadmissible for any purpose, evidentiary rulings should be

deferred until trial so that questions of foundation, relevancy and potential

prejudice may be resolved in proper context. Further, rulings on motions in limine

are provisional and, therefore, "not binding on the trial judge [who] may always

change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,

758 n.3 (2000). Accordingly, at trial, the court will entertain objections on

individual proffers as they arise at trial, even though the proffer falls within the

scope of a denied motion in limine. *See Luce v. United States*, 469 U.S. 38, 41

(1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is

free, in the exercise of sound judicial discretion, to alter a previous in limine

ruling.").

## DISCUSSION

### 1) Codefendant Statements

Defendants move to exclude codefendant statements pursuant to *Bruton v.*

*United States*, 391 U.S. 123 (1968), Federal Rule of Evidence 801(d)(2)(E), and

the Confrontation Clause of the United States Constitution. Dkt. 813. Anna

Iyerusalimets also renews her motion to exclude post-arrest codefendant statements

as violative of the Confrontation Clause and her motion for a *James*[1] hearing

requiring the Government to make a preliminary showing of foundation for alleged

coconspirator statements. As the Government notes, this Court has previously

denied both requests. *See* Dkt. 676.

In *Bruton*, the Supreme Court held that a defendant's confrontation rights

are violated when a court admits in a joint trial the confession of a non-testifying

codefendant that implicates the defendant. *Bruton*, 391 U.S. at 126. *Bruton*'s scope

is limited to a codefendant's testimonial statements that explicitly implicate the

defendant. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Lucero v. Holland*,

902 F.3d 979, 988 (9th Cir. 2018).

Additionally, Under Federal Rule of Evidence 801(d)(2)(E), a statement

made by a party's coconspirator during and in furtherance of the conspiracy is not

hearsay. The Government must establish by a preponderance of the evidence that

1) a conspiracy or scheme existed at the time the statement was made; 2) the

defendant had knowledge of and participated in the conspiracy or scheme; and 3)

the statement was made in furtherance of the conspiracy or scheme. *See United

States v. Jones*, 587 Fed. Appx. 371, 372-73 (9th Cir. 2014). These are factual

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

determinations that the Court must make under Federal Rule of Evidence 104(b). Furthermore, there must be some additional proof of the conspiracy apart from the statement sought to be introduced. *See United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988).

Without specific statements to consider, the Court will deny the Motions at this time. However, the Court recognizes that some evidence will be conditioned upon the existence of a conspiracy and that a Defendant had knowledge of and participated in the conspiracy. To streamline objection procedures, the Court will allow those statements to admit such evidence conditionally and will allow continuing objections as to whether a conspiracy existed and whether a Defendant had knowledge of and participated in the conspiracy. The Court will make its determination as to those preliminary Rule 801(d)(2)(E) facts at the close of the Government's case-in-chief. But, Defendants will be required to object during trial as to whether a statement was made in furtherance of the alleged conspiracy, where the Court can resolve that issue with the benefit of the statement's context.

To that end, the Court will rule on objections to codefendant statements with the benefit of trial context, keeping in mind the preliminary analysis stated above. The Court will provide appropriate limiting instructions based on its conclusions as to preliminary Rule 801(d)(2)(E) facts.

### 2) Marital Communications

Anna Iyerusalimets moves to exclude confidential marriage communications between her and her husband-codefendant, Mikhail Iyerusalimets. Dkt. 813 at 13. The Government responds that the communications it intends to offer into evidence are not privileged because they were made in furtherance of the alleged criminal activity.

Generally, confidential communications between husband and wife are privileged, and the party seeking to introduce marital communications bears the burden of overcoming the privilege presumption. *See United States v. Weinburg*, 439 F.2d 743, 750 (9th Cir. 1971); *see also* Fed. R. Evid. 501. However, the Ninth Circuit has narrowly construed the privilege in criminal cases, because it "obstructs the truth-seeking process" and society has a "strong interest in the administration of justice." *See United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) (quoting *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990)). Communications made before, or likely to be overheard, by third parties are not protected. *See Marashi*, 913 F.2d at 730. Additionally, the marital communication privilege does not apply to communications "in furtherance of joint criminal activity." *Id*. at 731.

Again, without specific statements to consider, the Court will deny the Motion at this time. A spousal codefendant may object during trial if they believe

the Government has not laid a proper foundation overcoming the presumption of privilege, taking into account the above legal standards.

### 3) Legal Opinion and State of Mind Testimony

Defendants move to generally exclude testimony as to their state of mind and testimony drawing improper legal conclusions.[2] *See* Dkts. 808; 813; 815. The Government responds that they intend to offer expert testimony and may offer lay testimony as to opinions. The Court has previously addressed these issues in the context of anticipated Government witnesses Linda Czemerys and Confidential Human Source. *See* Dkts. 938; 939.

Of course, any solicited opinions must comply with the Federal Rules of Evidence. Under Rule 704(b) an expert in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). The Ninth Circuit has interpreted this provision narrowly, and experts may testify as to an opinion that supports an inference or conclusion of a mental state, "so long as the expert does not draw the ultimate inference or conclusion for the

---

[2] Defendants also seek to prevent the government from collectively referring to them as the "Babichenkos," "the Defendants," "traffickers," or "co-conspirators." Dkt. 815. The Government has indicated that it will specifically identify the individual in question and will not refer to them collectively or use the terms trafficker or co-conspirators. Dkt. 865. Therefore it appears that this portion of the motion is moot.

jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *See United States v. Younger*, 398 F.3d 1179, 1189 (9th Cir. 2005), quoting *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997).

As to lay opinions, a witness may testify to an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Rule 701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). A lay opinion witness may testify based on firsthand knowledge or observation, but cannot testify based on speculation or hearsay, or interpret unambiguous statements. *See United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2014).

In that light, Defendants will be permitted to object at trial and the Motion will be denied at this time. The Court is not persuaded by Defendants' argument that forcing objections at trial would be highly prejudicial because the jury may not understand the context behind the objection. The jury will be instructed that counsel may object upon the belief that solicited testimony is not permitted by the Rules of Evidence.

### 4) Evidence of Loss or Harm or Hazardousness; Amazon Complaints and Policies

Defendants object to the introduction of evidence that products they sold were harmful, dangerous, or otherwise caused safety concerns. *See* Dkt 799. Defendants claim that such evidence is irrelevant to the determination that a product is counterfeit, and even if relevant, the evidence is unfairly prejudicial. The Government contends that evidence of harm and safety concerns is relevant to the Defendants' knowledge and state of mind as to whether a product was counterfeit, as well as to establishing a likelihood of confusion, mistake, or deception under 18 U.S.C. § 2320(f)(1)(A)(iv).

18 U.S.C. § 2320(a) subjects any person who intentionally "traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services" to criminal sanctions. Under § 2320(f)(1)(A)(iv), the term "counterfeit mark" is defined as: "a spurious mark…the use of which is likely to cause confusion, to cause mistake, or to deceive."

As a threshold determination, the Court finds evidence of harm and safety concerns relevant. The Government has established that harm and safety concerns are symptoms of poor product quality, which is relevant to whether a product is counterfeit, including the potential for confusion, mistake, or deception. *See* 18 U.S.C. § 2320(f)(1)(A)(iv). During the April 21, 2021 *Daubert* hearing, the

Government's proffered expert witness Robert Pollock confirmed that the Underwriters Laboratories (UL) protections are twofold – 1) ensuring that products meet technical safety requirements and 2) ensuring no unauthorized persons use the UL mark. Put another way, combatting counterfeit deceptive practices is part of ensuring good quality products. Defendants miss the mark in claiming that because evidence of harm is not an element of "counterfeit" it is therefore irrelevant. Even if evidence of harm or safety concerns alone is not *sufficient* to prove that a product is counterfeit, it tends make it more probable that the product is counterfeit, which meets the low threshold of relevancy under Federal Rule of Evidence 401. *See* 1 McCormick on Evidence § 185 (8th ed. 2020) ("An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered…[i]t is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence.").

Importantly, counterfeit products may mislead the public into believing the proper trademark holder is responsible for the safety concerns caused by the products. Section 2320 encompasses this conduct – counterfeiters taking advantage of a brand's good reputation without bearing the risk and responsibilities. *See United States v. Farmer*, 370 F.3d 435, 441 (4th Cir. 2004) (trademark holders are entitled to control quality of goods manufactured and sold under the trademark), *United States v. Hon*, 904 F.2d 803, 806 (2d Cir. 1990) (explaining that courts have

widely held that § 2320 is not just designed for the protection of consumers, but also for the protection of trademarks themselves); *see generally* 2 Gilson on Trademarks § 5.19 (2021) (discussing counterfeiting and the definition of "counterfeit mark" under § 2320). The fact that non-counterfeit or genuine products may also present safety concerns goes to the weight of the evidence proving that a product is counterfeit, not its admissibility.

Given this relevancy, complaints of harm or safety concerns are also probative in establishing notice to the Defendants and the Defendants' state of mind as to the whether their products were counterfeit.

Next, the Court must determine if evidence of harm or safety concerns is unfairly prejudicial to Defendants. Under Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury…wasting time, or needlessly presenting cumulative evidence." Of course, any relevant evidence favorable to the Government is prejudicial to Defendants. At this time, the Court finds that such evidence is likely not so prejudicial as to substantially outweigh its probative value.[3] However, the Court may determine the admissibility

---

[3] Nor does the Court find that the probative value is substantially outweighed by other concerns delineated in Rule 403 (confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence). *See* Fed. R. Evid. 403.

of the proffered customer reviews on a case-by-case basis. Defendants may object to the substance of a specific complaint on that grounds that it bears a particular risk of inflaming the passions of the jury. The Court may exclude a customer complaint or redact unfairly prejudicial portions of it.

As such, Defendants' motion for a bill of particulars (Dkt. 818) is likewise denied. Defendants have been given ample opportunities to learn about the Government's case against them. Moreover, the April 21 *Daubert* hearing further illuminated the evidence's relevancy to the Government's case, of which the Defendants' had an opportunity to cross-examine the Government's expert witnesses.

Defendants also claim that the customer safety issue complaints should be excluded because they cannot be authenticated and constitute inadmissible hearsay. Dkts. 799, 822. The Government responds that it intends to offer witness testimony and will proffer emails documenting complaints for two purposes, neither of which are hearsay: 1) notice to Defendants' that the products they sold were not genuine or new and 2) provide context to the jury as to the alleged fraudulent invoices Defendants sent when Amazon terminated their seller accounts. According to the Government, the emails and messages responding to customer complaints have similar language and terms, illustrating the Defendants' alleged conspiracy and coordinated efforts to defraud their customers.

The Court will consider authentication and hearsay objections at trial.[4] While Defendants claim that the Government is conflating the mere existence of a complaint with its substance for notice purposes, *see* Dkt. 890 at 3, the Court disagrees and finds that the substance of the complaints is relevant to establishing the context of the alleged notice to the Defendants. At trial, Defendants may object on the grounds that the Government failed to authenticate the complaints under Federal Rule of Evidence 901(a), failed to lay a proper foundation, or failed to make a threshold showing that Defendants were aware of the complaints. *See* Fed. R. Evid. 104(b). Similarly, Defendants may object to relevancy and authentication as to any Amazon reviews or policies the Government intends to admit at trial. Dkt. 822.

### 5) Mikhail Iyerusalimets' Conduct During Sting Operation

Defendant Mikhail Iyerusalimets seeks to exclude evidence of his laughter and reactions during the December 2, 2016 undercover sting. Dkt. 812. He claims that the Government's narrative is misleading and that his reactions are not relevant to proving he knew the products were counterfeit or that the products were

---

[4] Similarly, if the Government intends to introduce a document, including an email or electronic communication, for its truth that includes multiple levels of hearsay, Defendants may object at trial upon the belief that the statements do not comply with the Federal Rules of Evidence. *See* Fed. R. Evid. 805 ("[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

actually counterfeit. Furthermore, he argues that even if his reactions are relevant, such evidence would be inflammatory and highly prejudicial and should be excluded under Federal Rule of Evidence 403. Similarly, he argues Agent Sheehan should be precluded from testifying as to his impressions of Mr. Iyerusalimets' reactions and seeks to preclude the Government from referencing the reactions in its opening statement.

The Government contends that the evidence of product quality is relevant to establishing that the products were counterfeit, and that Defendants knew the products were counterfeit. Furthermore, the Government contends that Agent Sheehan is permitted to testify testimony as to his lay opinion based on his personal knowledge.

As explained, the Court finds the evidence relevant for both the purposes of establishing Mr. Iyerusalimets' state of mind and that the products were counterfeit. The Court further finds that the probative value is not substantially outweighed by prejudice. *See* Fed. Rule Evid. 403. While Mr. Iyerusalimets claims that the Government is mischaracterizing events and that Mikhail's laughter and reaction "is common when one reflects on a potentially frightening incident that worked out without significant harm," *see* Dkt. 812 at 6, that is a factual issue for the jury. The Government is entitled to its narrative of events in presenting its case. *See United States v. Daley*, 974 F.2d 1215, 1217 (9th Cir. 1992) ("A jury is entitled

to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."). However, the Government should take care not to lump all defendants together when referring to Mr. Iyerusalimets reactions during the undercover sting; based on the Court's current understanding of the evidence, Mr. Iyerusalimets' laughter would be relevant only to his own state of mind and knowledge – not the others'.

Furthermore, Agent Sheehan is permitted to testify as to his lay opinion based on his personal knowledge. *See United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005). The Government must follow proper opening statement procedures, taking into account the above. *See United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, J., concurring) (explaining the purpose of an opening statement "is to state what evidence will be presented [] to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole."). Accordingly, Mr. Iyerusalimets' Motion is denied at this time.

### 6) Customs and Border Patrol Reports

### a. Hearsay

Defendants seek to exclude Customs and Border Protection (CBP) reports documenting the seizures of their alleged counterfeit products. They argue that

such documents are inadmissible hearsay and are not subject to the public records exception under Federal Rule of Evidence 803(8)(A)(ii). The Government responds that it intends to introduce the documents through summary exhibits only to establish that defendants had notice that their products were deemed counterfeit. However, the Government contends that the documents would qualify as a public record under Rule 803(8)(A)(ii).

Hearsay is a statement, other than one made by the declarant "while testifying at the current trial or hearing," that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is deemed inadmissible unless it is defined as non-hearsay or falls within a hearsay exception. *See Orr v. Bank of Am.*, 285 F.3d 764, 778 (9th Cir. 2002). Under Rule 803(8)(A)(ii), a record of a public office is excluded from the hearsay rule if it sets out "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii).

The Court has separately addressed Defendants' concerns with respect to the Government's Motion to admit voluminous materials through summary exhibits. *See* Dkt. 935. Because the Government does not intend to offer the CBP documents for their truth, the Motion will be denied at this time. The Court will consider objections at trial should the Government offer the documents for

purposes subject to the hearsay rules.

### b. Authentication and Chain of Custody

On September 14, 2017, CBP allegedly seized thirty detained phones after Apple, Inc. informed them that the phones were counterfeit iPhones. *See* Dkt. 807-1. In April 2018, CBP transferred the box containing the phones to Homeland Security Special Agent Kristina Denning. However, the box only contained fourteen phones. *See* Dkt. 807-2. Apparently, no explanation for the discrepancy exists.

Mikhail Iyerusalimets seeks to exclude evidence relating to the September 14 CBP seizure on the grounds that the Government cannot authenticate the physical evidence because sixteen out of thirty phones remain unaccounted for. The Government responds that they do not intend to introduce any of the fourteen phones into evidence, and therefore the Motion is moot.

In that light, the Court finds the Motion moot. If the Government does intend to introduce the physical evidence, it will be required to lay the proper foundation, taking into account that defects in the chain of custody typically go to the evidence's weight and not its admissibility. *See United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995); *see also United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) ("[m]erely raising the possibility of tampering is not sufficient to render the evidence inadmissible."). Furthermore, the Government

may include this evidence in its summary exhibit to establish notice that the products purchased were examined by CBP and deemed counterfeit. Accordingly, the Motion is denied.

### 7) Uncharged Conduct

Defendants move to exclude 1) alleged evidence of uncharged trademark violations, 2) evidence that the United States Customs and Border Control ("CBP") seized merchandise sent to Defendants and others, and 3) alleged violations of Amazon's online selling policies. *See* Dkt. 823.

Defendants claim that evidence of uncharged trademark violations is not inextricably intertwined with the charges, that "inextricably intertwined" is nevertheless the incorrect standard, that such violations are instead governed by Federal Rule of Evidence 404(b), and the Government's 404(b) notice is insufficient. They further argue that, even if the other alleged trademark violations are admissible, the Court should exclude the evidence as cumulative and unfairly prejudicial. *See* Fed. R. Evid. 403.

As alleged, law enforcement's investigation uncovered various counterfeit products with trademark and certification marks held by companies other than Apple Inc., and Samsung Electronics, Co., the identified trademark holder-victims. *See* Dkt. 210 at 4-5. The Government claims that evidence of other trademark violations is part of the whole criminal enterprise scheme and is inextricably

intertwined with the charged conduct. Furthermore, the Government says the evidence proves Defendants made material misrepresentations that the products they sold were "new." As to Defendants Piotr, Timofey, and Pavel Babichenko, the Government intends to introduce evidence about a company called Sahara Case. The Government says these three defendants represented that Saraha Case was their primary business. The Government will argue that Sahara Case was instead a means of hiding the scheme to sell counterfeit products. As such, the Government claims that this evidence is both relevant and necessary to present to the jury a full picture of events.

Evidence is not treated as "other crimes" under Federal Rule of Evidence 404(b) when "the 'evidence concerning the ['other'] act and the evidence concerning the crime charged are "inextricably intertwined.'" *See United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)). [5] Here, the Court finds the evidence of uncharged trademark violations inextricably intertwined with the charged conduct and therefore admissible. Importantly, the Count One of the Superseding Indictment

---

[5] While Defendants argue that the "inextricably intertwined" standard has been abandoned by other circuits courts, the Ninth Circuit has not done so. *See Soliman*, 813 F.2d at 279. As such, the Court is bound by precedent and may not "decline to apply the 'inextricably intertwined' standard" as requested. *See* Dkt. 823 at 7.

charges the Defendants with engaging "in a scheme to defraud consumers by selling, on online platforms such as Amazon.com and eBay, as well as their own websites, counterfeit electronic devices. . .that the defendants represented to be new and genuine." Dkt. 210 at 5. While Count One also specifically lists Apple and Samsung as examples of counterfeit products sold, the charge also encompasses the broader language "counterfeit electronic devices." In illustrating the broad scheme to the jury, the Government is permitted to present "the circumstances and background of [the] criminal charge. *See Daley*, 974 F.2d at 1217. Furthermore, "policies underlying Rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant is indicted for less than all his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993). In other words, the uncharged trademark violations are inextricably intertwined with the charged conduct by way of the manner and means the Defendants operated their entire alleged scheme. *See id*. Accordingly, even though Government filed a Rule 404(b) notice, it wasn't required to do so. *See* Dkt. 784. Thus, the Court will permit evidence about the other businesses Defendant's operated in furtherance of the alleged scheme, including Sahara Case.

Furthermore, given the span and breadth of the alleged conduct, the Court does not find that the prejudice to Defendants resulting from permitting evidence

of trademark violations substantially outweighs its probative value, or is unnecessarily cumulative.

Next, Defendants move to exclude evidence that CBP seized products sent to Defendants and others and destroyed them. They argue that the definition of "counterfeit" differs between the civil and criminal statutes, rendering CBP's conduct irrelevant. Further, they argue the products' destruction prejudices Defendants because they cannot examine the evidence and the Government did so in bad faith. As explained in response to Mr. Iyerusalimets' motion to exclude the physical CBP seizures on authenticity grounds, *see* Dkt. 807, the Government does not intend to introduce the physical evidence during its case-in-chief. Such evidence is only noted in its summary exhibit for purposes of notice to Defendants that the CBP suspected that the products sent to Defendants were counterfeit. Still, the definitions of "counterfeit" in both the civil and criminal provisions are "identical in substance" for purposes here. *See United States v. Able Time, Inc*., 545 F.3d 824, 834-835 (9th Cir. 2008); *see also* 2 Gilson on Trademarks § 5.19 ("The core of any [civil or criminal] counterfeiting (and infringement) case is whether the defendant's use of the mark will likely confuse consumers."). Furthermore, Defendants have not demonstrated that the destroyed evidence was done in bad faith and not instead pursuant to CBP's statutory duties. *See* 19 U.S.C. § 1526(e).

Similarly, Defendants move to exclude evidence that they allegedly violated Amazon's seller policies. They argue that any alleged violation is not inextricably intertwined with the charged conduct and the Government provided insufficient notice under Rule 404(b). Furthermore, they argue Amazon's policies are irrelevant as they are constantly changing, and what may be considered a violation at one point in time may be permissible conduct at another. Finally, they argue any alleged violation should be excluded under Federal Rule of Evidence 403 as highly prejudicial because an Amazon policy violation does not mean a product was counterfeit under § 2320.

Based on the Government's allegations, the Court finds evidence that Defendants violated Amazon seller policies relevant to why Amazon shut down their seller accounts, as well as evidence of notice to the Defendants that Amazon deemed their products impermissible. Additionally, as alleged, Defendants orchestrated a coordinated effort to circumvent the account shutdowns, including creating new businesses, bank accounts, and hot spots for Internet access and taking other evasive measures. Accordingly, the Government will not proffer such evidence to demonstrate that a violation of Amazon's policies meant the Defendants were selling counterfeit products, but rather as evidence of a coordinated scheme to defraud and notice. If the Government does intend to offer Amazon's policies or alleged violations thereof for another purpose, it will be

required to lay the proper foundation. Defendants may also request a limiting

instruction. As such, the Motion is denied at this time.

### 8) Additional Rule 404(b) Evidence

The Government filed a notice of intent to offer evidence under Rule 404(b).

Dkt. 784. The notice indicates that the Government intends to offer 1) prior civil

suits against the defendants for trademark infringement, 2) Defendants' tax returns,

and 3) products with counterfeit marks seized during the investigation, but that

were not charged in the indictment. The Government argues that the prior lawsuits

are admissible under 404(b) and the other evidence is inextricably intertwined with

the charged crimes and is admissible without operation of Rule 404(b). Dkt. 784;

Dkt. 819. Defendants seek to exclude this evidence arguing it is not inextricably

intertwined and is not admissible under Rule 404(b). Dkt. 813 at 10; Dkt. 814.

The Court will grant the Government's Motion (Dkt. 819) and deny

Defendants' Motions (Dkt. 813, 814) as to the Defendant's tax returns and the

products with allegedly counterfeit marks. The Court will deny the Government's

motion as to the prior civil suits and will grant Defendants' motions as to the

same. To the extent Defendants seek to exclude other evidence not specifically

discussed in the Government's motion, they may raise objections at trial.

Finally, to the extent that this evidence does not relate to a specific

defendant they may seek a limiting instruction.

### a.  Previous Lawsuits

The Government seeks to admit evidence of two prior lawsuits against several of the Defendants under Rule 404(b). Although such evidence is not admissible to show that the defendant has a bad character and is prone to criminal activity, it may be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). To prove that the evidence is offered for one of these reasons, it is the Government's responsibility to show that the evidence (1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time. *United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004).

In 2006 Virgin Mobile USA sued Piotr, Timofey, and Pavel Babichenko and their businesses alleging trademark infringement and trademark dilution related to the Defendants' alleged purchase and resale of Virgin Mobile cell phones. Case No. 1:06-cv-00511-EJL (D. Idaho Dec. 19, 2006). The Defendants eventually settled the lawsuit and were enjoined from purchasing, reselling, reprogramming, or repackaging Virgin Mobile branded cell phones. *Id.* Dkt. 37.

In 2009 TracFone Wireless sued Piotr, Timofey, Pavel, and Natalya Baibichenko and their businesses alleging trademark infringement and

unfair practices related to the Defendants' bulk purchase and resale

of TracFone branded phones. Case No. 1:09-cv-20386-UU (S.D. Fla. Feb. 13,

2009). TracFone and the Defendants eventually settled the lawsuit through

arbitration and the case was dismissed. *Id*. Dkt. 29, 39.

The Court will not allow the Government to admit evidence of these

lawsuits under Rule 404(b). The named Defendants were never found guilty of any

trademark violations and never admitted liability. Thus, there is not sufficient

evidence to find that the named Defendants in those lawsuits committed trademark

violations. The Government has also not met its burden to show that the conduct

underlying the civil lawsuits would prove a material element in this case, nor that it

is sufficiently similar to the conduct alleged in this case.

### b. Tax Returns

The Government seeks to admit tax returns showing that certain defendants

reported annual incomes to the IRS which were lower than the amounts deposited

into and spent through their bank accounts. Dkt. 784 at 4; Dkt. 819 at 7. To prove

the defendants engaged in money laundering the Government must show that the

defendants engaged in monetary transactions involving criminally derived

property.

The Ninth Circuit has upheld the admission of tax returns where the

defendant repeatedly underreports his or her gross income in money laundering

cases. *See United States v. Penn*, 944 F.2d 910 (9th Cir. 1991) (unpublished). "The evidentiary theory is that a person who underreports (or fails to report) a large cash income may be obtaining his money illegally." *Id.* (citing *United States v. Ordonez*, 737 F.2d 793, 811 (9th Cir.1984)). Thus, Defendants' tax returns are relevant to the money laundering charge and are admissible. Whether this evidence is inextricably intertwined or simply admissible because it is relevant, the Government will be allowed to admit the defendants' tax returns where they underreported their income.

### c.  Counterfeit Goods Seized During the Investigation

The Government seeks to admit evidence of various cellphone products, accessories, and packaging bearing allegedly counterfeit trademarks and certification marks. Dkt. 784 at 5-6; Dkt. 819 at 5-7. These items, and the evidence related to them, do not form the basis for one of the charges in the Indictment, but were all seized in the course of the investigation.

This evidence was seized during the investigation and directly relates to the scope of defendants' conspiracy as alleged in the Indictment. Defendants are alleged to have trafficked in counterfeit goods over multiple years. The products bearing counterfeit marks, along with the records and communications regarding multiple types of products "constitute a part of the transaction that serves as the basis for the criminal charge." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir.

2012). This evidence is inextricably intertwined with the charged offenses. *See id.* Accordingly, the Court will allow admission of this evidence.

### 9) Ivan Kalin Seizures

Defendants move to exclude evidence that Customs seized counterfeit Samsung phones from Ivan Kalin and that Samsung sent Mr. Kalin a cease and desist letter, as well as testimony that Pavel Babichenko requested original Samsung watch boxes. Dkt. 821. The Government has agreed not to introduce this evidence or testimony in its case-in-chief. Dkt. 865 at 36. As such, the Motion is moot.

### 10)     Tax Records and Amazon Records

Defendants Mikhail Iyerusalimets and Piotr Babichenko object to the Government's Notice of Intent to Introduce Records under Federal Rule of Evidence 902, in which the Government noticed two sets of records: "Tax Records" and "Amazon Records." (Dkt. 882). *See* Dkt. 893, 897. Defendants argue that the Tax Records documents were produced nearly a month after the discovery deadline and the Amazon Records were never provided at all. The Government responds that the documents were recently obtained and were disclosed to Defendants pursuant to their *Brady* obligations. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Government further notes that Defendants already had the Tax

Records available to them and the Amazon records total 16 pages and one Excel spreadsheet. The Government acknowledges that none of the records at issue are listed on the Government's exhibit list. Rather, the Government claims it noticed the records as self-authenticating to facilitate admission at trial "should they be necessary to use during cross-examination or rebuttal." Dkt. 897.

Given that the Government does not intend to introduce the documents in their case-in-chief, the Court will not address the self-authentication issue at this time. Furthermore, the Court does not find the late disclosure prejudicial to Defendants. According to the Government, the Tax Records are duplicative of records Defendants have already received. Furthermore, the Court does not find the late disclosure of a 16-page document, one that the Government reports that it will not produce in their case-in-chief, overly burdensome to Defendants. The Government has indicated that both sets of documents are available for Defendants to inspect. As such, the Motion is denied.

## ORDER

 **IT IS ORDERED THAT** Defendants' Motions in Limine (Dkts. 799, 807, 808, 812, 813, 814, 815, 818, 821, 822, 823, 893) are **DENIED**.

**IT IS FURTHER ORDERED THAT** the Government's Motion to Admit Intrinsic and Prior Bad Act Evidence (Dkt. 819) is **GRANTED in part and DENIED in part**.

MEMORANDUM DECISION & ORDER - 28



DATED: June 14, 2021

_____

B. Lynn Winmill

U.S. District Court Judge