UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**PRETRIAL ORDER** |

The retrial of this matter is set for May 16, 2022. The Court previously designated this case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) and anticipates a six-week trial.[1] The first trial began on June 21, 2021 and ended on September 2, 2021, when the jury returned a partial verdict and the Court declared a mistrial on the 19 counts detailed below. This pretrial order outlines the procedures that will govern the retrial.

---

[1] In an earlier order, the Court said it anticipated an eight-week trial. Since that time, however, the Court has determined that it will place the government on the clock, which will shorten the length of the trial. This trial clock is discussed below in Paragraph C. Just in case the trial runs long, however, counsel and the parties should still set aside eight weeks for planning purposes.

A.    **The Charges**

The retrial will involve 19 counts, as follows:

(1) Conspiracy Counts – Counts 1 and 20.

All seven remaining defendants are charged in Counts 1 and 20 with conspiring to commit wire fraud and conspiring to sell counterfeit goods over a 10-year period, from 2008 through 2018. Six defendants (all but Peter Babichenko) are charged with having committed discrete acts of wire fraud, mail fraud, and trafficking in counterfeit goods on specific dates in 2016 or 2017, as follows:[2]

(2) Wire Fraud
    a.  Count 2 (Michael Iyerusalimets  – 3/7/16 transaction);
    b.  Count 3 (Michael and Anna Iyerusalimets – 3/14/16 transaction);
    c.  Count 4 (Tim and Kristina Babichenko – 3/17/16 transaction;
    d.  Count 6 (Tim Babichenko – 10/24/17 transaction); and
    e.  Count 9 (David Bibikov – 12/12/17 transaction).

(3) Mail Fraud
    a.  Count 11 (Michael Iyerusalimets  – 3/7/16 transaction);
    b.  Count 12 (Michael and Anna Iyerusalimets  – 3/14/16 transaction);
    c.  Count 13 (Tim and Kristina Babichenko – 3/17/16 transaction);
    d.  Count 15 (Tim Babichenko – 10/24/17 transaction); and
    e.  Count 18 (David Bibikov – 12/12/17 transaction).

---

[2] The parenthetical references detail the defendant charged as well as the date of the transaction at issue. Also, defendants previously indicated a preference for the Americanized version of their names, so the Court will use those spellings, rather than the spellings used in the pleading caption. Finally, the Court expects to issue rulings on the three pending Motions for Judgment of Acquittal (filed by Michael Iyerusalimets, Peter Babichenko, and Tim Babichenko) shortly. *See* Dkts. 1183, 1187, and 1188. If the Court grants these motions, there is a possibility that the trial will be further narrowed. Nevertheless, given the multiple defendants and the multiple counts, there will definitely be a retrial, so it makes sense to put the procedures in place now.

(4) <u>Trafficking in Counterfeit Goods</u>

    a.  Counts 21, 22, and 23 (Paul Babichenko – 10/26/16 and 1/5/2017 transactions);

    b.  Count 25 (Michael and Anna Iyerusalimets – 3/14/16 transaction);

    c.  Count 26 (Michael Iyerusalimets – 3/7/16 transaction);

    d.  Count 28 (David Bibikov – 12/2/16 transaction); and

    e.  Count 30 (Tim and Kristina Babichenko – 3/17/16 transaction).

## B.    **Objections to Trial Procedures**

As with the first trial, the Court is again faced with the logistical challenge of conducting a complex criminal trial during a global pandemic. *See* Dkt. 666. The second trial will largely follow the logistical outline of the first, although the Court will continue to follow the guidance of the CDC and the Court's retained epidemiologist, which may require that the protocols laid out in this order be modified at a later date. At present, however, the Court intends to follow the procedures set forth in this Order.

Before the first trial, defendants lodged various objections to the Court's planned trial procedures – many of which related to their right to a public trial. The Court resolved those objections in a written order. *See Jan. 27, 2021 Mem. Decision & Order,* Dkt. 730. Those rulings continue to apply, so the Court will not reiterate its various findings and rulings here, and the defendants do not need to restate their objections. But to the extent this Order lays out new procedures, and a party has an objection to those procedures, the party should raise that objection in writing within 14 days of this Order.

C.    **The Trial Clock**

The Court will place the government on the clock during the presentation of its case-in-chief.

The Supreme Court has observed that "if truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States*, 425 U.S. 80, 86-87 (1976) (as cited in *United States v. Hildebrand*, 928 F. Supp. 841 (N.D. Iowa 1996)). After having sat through the first trial in this case, the Court is convinced that it must exert more control over the proceedings to guarantee a just and efficient trial. In particular, the Court believes the government could easily present its case-in-chief in at least 75% (and perhaps even 50%) of the time it took during the first trial. If the Court were to allow the government to again present its case without temporal restraints, the Court is concerned that the trial would run a substantial risk of being both confusing to the jury and excessively long.

The Court intends to allow the government 60 hours to present its case-in-chief. The Court anticipates that each trial day will consume five hours of clock time, meaning that the government will be given 12 trial days in which to present its case in-chief. (Note that the 60 hours of clock time will consume more than 12 days trial days, as the clock will not be running while defense attorneys cross-examine government witnesses.) In its discretion, the Court may allow the

government additional time depending on how the evidence unfolds at trial. The government should not plan on additional clock time, however, as it prepares to take the case to trial.

As with any other objections to new procedures laid out in this pretrial order, the parties are free to file a written objection to the Court's planned use of the trial clock. Additionally, the Court intends to discuss the clock with the parties during the next scheduled interim pretrial conference.

These are the more specific rules governing the running of the clock:

(1)   The clock will not run during any part of jury selection.

(2)   Otherwise, the clock will be running while government attorneys are on their feet – that is, during opening statement, during closing argument, and while examining witnesses during the presentation of the case-in-chief. If a defense attorney makes an unsuccessful objection, the government will not be charged for time consumed ruling on that objection. If, on the other hand, a defendant wins an objection, the government will be charged for the time consumed in ruling on the objection.[3]

---

[3] As a general rule, the Court will not bother tracking rulings on brief objections, such as "Objection – Hearsay," etc. Such a level of granularity would not be feasible. But when there is (Continued)

**PRETRIAL ORDER - 5**

(3)   The government will not be charged for time defendants spend cross examining government witnesses, although the same rules outlined above regarding unsuccessful objections will apply. That is, if the government unsuccessfully objects to a defense attorney's line of questioning, the government will be charged with the time it takes to resolve that objection.

(4)   Court staff will keep track of the time the government has used during each trial day and will provide reports to counsel the following morning.

The Court will not place defendants on the clock, as it did not observe serious inefficiencies during the defendants' presentation of their cases during the first trial. Likewise, the Court will not put the government on the clock during any rebuttal case, as the government was efficient during that phase of the first trial. Note, however, that if any party's presentation of evidence (or examination of witnesses) becomes cumulative or inefficient during these phases of the trial, the Court will sustain appropriate objections.

---

an extended discussion on objection (say a discussion that exceeds two or three minutes), the Court will assess who should be charged with the time. The parties are free to keep a shadow time log during the day, and if there are discrepancies between a party's log and the Court's log, the parties are free to raise that point with the Court.

**D.**     **Daily and Weekly Trial Schedule**

Trial will begin at 9:00 a.m. on Monday, May 16, 2022. (As noted earlier, the Court may push the start date back to May 23, 2022, depending on the status of *U.S. v. Ramsey*, Case No. 1:19-cr-158-DCN. *See Sept. 23, 2021 Trial Setting Order,* Dkt. 1201, at 1-2.) For the duration of the trial, proceedings will be conducted Monday through Friday, with the following planned breaks:

> Memorial Day Holiday: There will be no proceedings Monday May 30, 2021 through Friday, June 3, 2021.

> Fourth of July Holiday: If trial is still in session as of the week of June 27, 2022, the Court will recess from Monday, June 27, 2022 through Tuesday, July 5, 2022. Proceedings will resume on Wednesday, July 6, 2022.

**1. Jury Selection Schedule**: During jury selection, which is discussed more thoroughly in Paragraph J below, proceedings will be conducted from 9:00 a.m. through 5:00 p.m., with a 90-minute lunch break. The Court anticipates that jury selection will be completed in the first three days of trial. Opening arguments will begin on the morning after the jury is selected – even if the jury is selected early in the previous day.

**2. Regular Trial Schedule**: After the jury is selected, the Court will shift to conducting proceedings from 9:00 a.m. through 3:15 p.m. The Court will take three 15-minute breaks during each trial day. Counsel will need to arrive each morning in time to ensure that their technology is up and running by the

scheduled 9:00 a.m. start time. The Court's IT staff will be present beginning at 8:30 a.m. every day to provide technical assistance.

### E. Use of Courtroom 3 During the Trial

#### 1. Seating Assignments for Court, Jury and Government

The Court remodeled Courtroom 3 for the first trial, removing the benches in the gallery seating area to make room for defense tables. This layout will remain in place for the retrial. Jurors will again be seated in the jury box and in the well. The government will likewise be seated at the tables on the north wall of the courtroom (*i.e.*, the area where the defense typically sits). Court staff (the judge, courtroom deputy, court reporter, and law clerk) will sit in their usual spots. As detailed further below, the defendants and their attorneys will be seated in the gallery and at the large, existing table in front of the gallery and closest to the jury box.

#### 2. Defense Seating

Defendants will be seated at the large table near the well and in the tables located in the gallery seating area. The gallery seating area contains 10 defense tables, plus two smaller tables. At this stage of the pandemic, it appears likely that each defendant will be allowed to have two attorneys present in the courtroom. Additionally, the defendants will be allowed to have an investigator and a paralegal in the gallery area.

If the Governor of Idaho again restricts public gatherings to 50 or fewer

people, the second-chair attorneys and, potentially, other support staff and investigators, will not be allowed in the Courtroom. Instead, they will be able to watch a livesteam of the proceedings via Zoom, and they will be able to instant message co-counsel and their client, as detailed further below.

### 3.  Rotating Seating Assignments for Defendants and Jurors

The Court will randomly assign seating at the defense tables, and the seating assignments will change every two days throughout the trial so that the jury does not unconsciously focus on a particular defendant simply because of where he or she is seated. The jury will also rotate seating assignments throughout the trial.

The jury will be instructed that the Court is randomly choosing and changing seat assignments, and, further, that they should not attach any particular significance to where a particular defendant is seated at any time during the trial.

### 4.  Technology at Defense Tables

#### a.  *Microphones*

Each defense table will be equipped with a microphone for counsel. The court reporter may not be able to easily see the person objecting, so if any counsel objects to a question or exhibit they must clearly state the objection and then identify themselves, so the court reporter is able to accurately report the

proceedings.[4] When speaking from their table, counsel must remain seated, masked, and speak directly into the microphone.

### b.  *The Evidence Zoom*

As in the first trial, counsel and the defendants seated at the tables in the gallery will be able to access the Court's evidence presentation system via a Zoom conference call (which the Court has sometimes referred to as the "Evidence Zoom"). In particular, the Court will ensure that each defendant and their counsel is able to view exhibits that are being shown on the Court's evidence presentation system but have not yet been admitted into evidence.

### c.  *Defense Messaging*

The Court will provide each defendant with a laptop equipped with an instant messaging platform, such as Skype or Microsoft Teams. With these laptops, defendants should be able to instantly communicate with their attorneys, even if the attorneys are seated a few feet away. For the instant messaging to work, the defendants will be asked to select a computer-based messaging platform, and the Court will install the selected messaging platform on each of the seven defendant's laptops.

Given the socially distanced seating arrangements, the Court is not

---

[4] For example, counsel should object as follows: "Objection, hearsay. John Doe for Defendant Jane Roe"

concerned that anyone other than the attorney and client will be able to view these privileged communications. Nevertheless, the Court will equip the Court-provided laptops with privacy screens. The Court anticipates that defense counsel will use this same messaging platform to communicate with any counsel, staff, or investigators who are not physically present in the courtroom.

### 5.  Government Seating

The government has assigned four prosecutors to this case. At the first trial, the government typically had three prosecutors, a paralegal (who operated the evidence presentation system for government exhibits), and a case agent seated at its table. The Court will again allow five individuals to be seated at the government's table. The government may select who will occupy these seats. If, however, during the trial, gathering sizes are restricted, the Court will reassess how many people will be allowed at the government table. The government should also preselect a messaging platform to ensure it is able to communicate between individuals at counsel table while maintaining social distance and with any supporting attorneys/investigators/staff outside of Courtroom 3.

### 6.  Support Staff

The Court will allow the government, on the one hand, and the entire defense group, on the other, to have one individual in the courtroom to operate the evidence presentation system. (The Court presumes these individuals will be

seated in the same seats they occupied during the first trial, given that they will

need to be near the Court's hard-wired evidence presentation system.)

### 7. Other Participants in Courtroom 3

If any witnesses wish to have an attorney present in the room during

their testimony, the Court will take up those requests as they arise at trial. And,

assuming counsel is permitted to be in the room, the Court will assign seating

for that attorney the day before the witness testifies.

### 8. Physical Exhibits

The Court assumes that the government will again introduce physical

exhibits. The Court will provide space to store these exhibits in a closet or cabinet

in Courtroom 3 during the trial.

### 9. Electronic Exhibits

To streamline evidence presentation, all exhibits that can be converted to

an electronic file must be displayed and submitted in electronic format. The only

exception is for physical exhibits; however, the Court encourages the parties to

utilize electronic exhibits of physical evidence where possible.

### 10. Wireless Internet

The Court's IT staff will ensure that the Court's wireless internet network is

sufficient for use during the trial. If any party has an issue with the network access

while a witness is testifying (or at any other time when trial proceedings are

underway) – and that issue prevents them from effectively representing their client

– they shall immediately alert the Judge so that he will be able to stop the proceedings and resolve the issue. If the issue is one that simply needs to be resolved in due course, counsel are directed to email the Court's IT staff (Blake_Wickham@id.uscourts.gov *or* Doug_Crane@id.uscourts.gov).

## F.   **Defense Workspace**

During the first trial, the Court provided office space on the fifth floor of the courthouse for defense counsel to utilize during trial, including a large "war room." The war room will not be available during the second trial, as another federal agency will have moved into that space. Court staff will work with defense counsel in an effort to provide office space for the second trial. Defense counsel should be aware, however, that the space provided likely will not be as large as the war room provided during the first trial. Regardless, though, a live video feed will again be available in one of the office spaces provided to the defendants. Similarly, the Evidence Zoom will also be made available in this office space. Finally, the Court will again set aside smaller rooms for defense counsel to use for meeting with their clients individually.

## G.   **Government Workspace**

The Court anticipates that the government will utilize its office space on the third floor of the courthouse during the trial. The live video feed and the Evidence Zoom will be available in the office space as well.

**H.**     **Public Viewing of the Trial**

At this time, due to space constraints and to reduce the spread of COVID-19, the Court is not planning to allow the public to watch the proceedings from within Courtroom 3. Rather, the public will be able to watch a live-stream of the proceedings in Courtroom 3 from elsewhere in the Courthouse.

Note, however, that at the first status conference, the Court will discuss the possibility of allowing some members of the public to view the proceedings from Courtroom 3. The Court is willing to rearrange the gallery area again, to include the possibility of bringing at least one bench back into the courtroom for public seating. Because it may limit the opportunity to have all second-chair defense counsel present in the courtroom, the Court does not expect that the defendants will be amenable to this suggestion. At the first trial, defendants objected to the idea of having members of the public in the gallery area. Presumably, defendants were concerned that members of the public would be able to read their computer monitors or overhear conversations. Given these concerns, at this point the Court intends to direct members of the public who show up for the trial to an overflow room, where they will be able to watch a live feed of the trial proceedings.

During the first trial, the Court provided a live-stream of Courtroom 3 to Courtroom 2 for the public's viewing. Typically, though, only a few members of

the public showed up to watch the trial – meaning that Courtroom 2 was nearly empty for much of the trial. For that reason, the Court will make the following adjustments for the retrial:

(1) Public Viewing in Courtroom 2: The Court will livestream the proceedings in Courtroom 3 to Courtroom 2, via video, on days where it is anticipated that several members of the public will show up. At this point, the Court intends to set aside Courtroom 3 as the public viewing room for these days: (1) Opening Statements; (2) Closing Arguments; and (3) the Return of the Verdict.

(2) Smaller Viewing Area: Otherwise, the Court will direct the public to a different room within the Courthouse to view the proceedings. That area has yet to be determined, but it will be clearly marked so that people who show up to watch the trial will easily be able to locate the viewing room.

(3) Remote Viewing via Zoom: The Court will also live-stream the trial on a Zoom conference call. (This will be a second Zoom call – in addition to the Evidence Zoom described above.) Links to the Zoom call will only be made available to trial participants who are not in Courtroom 3 (*i.e.*, Court staff, second- or third-chair attorneys, paralegals, investigators, support staff, etc.). In theory, members of the

public could join the Zoom call and watch the trial proceedings remotely by live video. But Federal Rule of Criminal Procedure prohibits broadcasting of trial proceedings from the courtroom. *See* Fed. R. Crim. P. 53. As with the first trial, however, the Court will make a live feed of the trial proceedings available to members of the public upon a showing of particularized need. *See* Dkt. 724, at 3. This is intended to allow those who are at a significant risk of complications from COVID to still be able to view the trial. Simply being out of town will not constitute a particularized need. Instead, the individual requesting access would have to have an underlying health condition that makes them unable to be vaccinated and puts them at a significant risk of serious symptoms or side effects of contracting COVID. To request access to the live feed, the individual will need to send a letter or email to the Clerk's office at least two business days before the trial proceedings they would like to watch. Shortly before trial, Court will issue a separate notice to the public with instructions for requesting access.

## I.      **Witness Exclusion**

Assuming that either the government or any of the defendants choose to exclude witnesses as provided by Federal Rule of Evidence 615, the parties shall

advise all of their witnesses that they are not to watch any trial proceedings prior to testifying. Because the proceedings will be available to trial participants via live video feed it is critical that all witnesses be so instructed.

## J.      Jury Selection

### 1.  Potential Jurors

Pursuant to the CDC guidelines, the Court will excuse any juror over 65 years old if they request to be excused. Additionally, if a potential juror presents a doctor's note indicating that they have a medical condition that put them at a higher risk of complications from COVID, the Court will excuse that person. Each juror will be required to wear a mask while inside the courthouse. If any juror refuses to wear a mask upon entering the courthouse the Court will advise the juror that they may be held in contempt for refusing to do so and then give them an option of reporting to jury service or filling out a declaration as to why they are refusing to wear a mask and the Court will then issue a show-cause order.

### 2.  Juror Questionnaires

The Court will work with Counsel to develop a questionnaire which will be sent to, and completed by, every prospective juror. The completed questionnaires will be sent to counsel at least one week before trial. Counsel may not copy these questionnaires and must destroy them after jury selection is complete. The Court anticipates holding a conference with counsel to review

these questionnaires prior to trial to determine if any of the prospective jurors

should be excused prior to voir dire. After removing jurors who are clearly

unable to serve, the Court will direct that 72 jurors, in groups of 18, report for

jury selection.

### 3.  Voir Dire

The Court will conduct voir dire with groups of 18 potential jurors in the

courtroom. More specifically, the Court will call 36 jurors per day, 18 in the

morning and 18 in the afternoon until 36 jurors have been passed for cause. Voir

dire will proceed on the following schedule:

Morning Group: 9:00 a.m. – 12:00 p.m.

Lunch Break: 12:00 – 1:30 p.m.

Afternoon Group: 1:30 – 4:30 p.m.

The jurors will be placed under oath. The Court will then conduct voir

dire, providing jurors with an opportunity to explain affirmative answers. While

answering these questions, the Court may direct the potential juror to approach a

microphone in a designated area of the courtroom (most likely in the well). The

Court will give counsel a very limited opportunity to ask follow-up questions.

These questions should be limited to specific answers provided by the jurors.

Counsel are cautioned not to repeat questions already asked by the Court or other

counsel and are advised that the Court will not permit voir dire which appears

intended to influence the jury rather than explore appropriate concerns with a juror's ability to be fair and impartial.

After counsel has had a chance to inquire, the Court will ask counsel if they challenge any jurors for cause. After jurors are challenged for cause, and the Court has excused any jurors, the Court will ask counsel to pass the panel of remaining jurors for cause. The group of jurors will then be excused and allowed to return home. The Court will admonish the jurors not to research the case or discuss it with anyone.

The Court anticipates calling the first group of potential jurors for voir dire the morning of the first day of trial, the second group the afternoon of the first day, the third group the morning of the second day, and so on until 36 potential jurors have been passed for cause.

### 4.  Alternate Jurors

Pursuant to Federal Rule of Criminal Procedure 24(c), the Court will empanel 4 alternate jurors.

### 5.  Peremptory Challenges.

Pursuant to Federal Rule of Criminal Procedure 24, the government has 6 peremptory challenges, and the defendants have 10 peremptory challenges. In addition, the parties will have peremptory challenges to the alternate jurors as follows: 2 additional peremptory challenges for the government and 2

additional peremptory challenges for the defendants.[5]

### 6.  Exercising Peremptory Challenges

The Court will provide counsel with a jury list, including a photograph of each juror and their juror number, passed for cause. The jury list will contain 36 names, comprised of the lowest numbered jurors passed for cause. Counsel will be allowed to confer as they exercise peremptory challenges. The potential jurors will not be present in the courtroom during the exercise of peremptory challenges. Once the jury panel and alternates have been selected, the Court will summon the jurors selected to report the next day to begin the trial.

### 7.  Partial Sequestration

The jury will be partially sequestered during trial and the Court will provide lunch for the jurors on some days – typically aiming for two days per week. During breaks the jurors will be placed in a large room allowing them to adequately social distance and remove their masks.

### K.  General COVID-19 Pandemic Rules

### 1.  Masks

All individuals entering the courthouse will be required to wear masks or

---

[5] *See United States v. McClendon*, 782 F.2d 785, 787 (9th Cir. 1986) ("[T]here is no 'right' to additional peremptory challenges in multiple defendant cases. The award of additional challenges is permissive, not mandatory, Fed. R. Crim. P. 24(b), and rests in the trial court's sound discretion.")

face coverings. For the duration of the trial, the Court will provide a clean, disposable face mask to each trial participant each day. Trial participants must wear these masks, rather than their own, during the trial. Masks or face coverings must be worn at all times in the courthouse and courtroom. The only exceptions are for counsel making arguments from a lectern protected by plexiglass and the witness testifying from the witness stand.

### 2. Public Access

As noted above, to ensure public access to the proceedings, the Court will make a livestream of the trial available. This livestream will be shown a public viewing room in the courthouse and, otherwise, will be made available to additional counsel, investigators, and support staff so that they can view the trial either in their office or at another location in the courthouse.

### 3. Following CDC Guidelines During Trial

The Court will instruct the jury that, for the duration of the trial, they will be required to follow CDC Guidelines to avoid COVID-19 infection even when they are away from the courthouse. The same directions will be given, in the form of an order, to all participants in the trial.

### 4. COVID-19 Testing

All trial participants will need to take a rapid-response COVID-19 test twice a week on Tuesdays and Thursdays. Trial participants will administer this test themselves, at home. To forego this testing, trial participants may sign an affidavit

attesting that they are fully vaccinated for COVID-19. Nobody will be required to sign such an affidavit; it is simply an option provided to avoid the testing requirement.

### 5. Protocol if A Trial Participant Tests Positive for COVID-19

If a trial participant tests positive for COVID-19 the Court will consult with health care professionals, including its retained epidemiologist, and determine whether to proceed with the trial or continue the trial, or take any other action, depending on the potential exposure to other participants and the necessity of the participant to trial.

## L.    Interim Conferences and Deadlines

### 1. Pretrial Conferences

The Court will conduct its first interim Pretrial Conference shortly – likely within the next two weeks. That conference will be set in a separate notice of hearing and a Zoom link will be provided shortly before the hearing. Thereafter, the Court will schedule conferences as necessary and appropriate.

### 1. Jury Questionnaire

Counsel must forward comments and suggested revisions to the Court's case-specific questionnaire for prospective jurors (discussed above in Paragraph J.2) by **February 28, 2022**.

### 2. Motions in Limine

All motions in limine and other pretrial motions must be filed by no later

than **March 28, 2021**. All responsive memoranda must be filed within 14 days of receipt of the moving papers, and the optional reply shall be filed within 7 days of receipt of the response.

### 3. Trial Briefs; Proposed Voir Dire; Proposed Jury Instructions; Proposed Verdict Forms

Trial briefs, proposed voir dire, proposed jury instructions, and proposed verdict forms, must be filed by **April 4, 2022**.

### 4. Exhibits

The parties must (1) *file* final witness and exhibit lists; and (2) *exchange* exhibits by **March 21, 2022**. The parties may stipulate to later dates, so long as final lists are filed with the Court by **April 18, 2022**. The parties do not need to file copies of exhibits with the Court before trial. At the conclusion of the trial, counsel shall provide the Courtroom Deputy with a copy of the exhibits that were admitted during the trial. Admitted exhibits shall be provided on a USB drive.

## M.   <u>Interpreters</u>

The Court does not anticipate having an interpreter present for the defendants during trial, as one was not needed during the first trial. If either side will be requesting an interpreter for witnesses, counsel shall notify the Court by **April 4, 2022.** Counsel shall coordinate with Kelly Montgomery ([kelly_montgomery@id.uscourts.gov](mailto:kelly_montgomery@id.uscourts.gov)) on this issue.

**N.**   **Certified Daily Transcripts**

The Court anticipate that the parties will again wish to order Certified

Daily Transcripts of the trial proceedings. The costs for these transcripts will be

split between the government and the CJA.

**O.**   **Witness Photographs**

To assist the jury in remembering witness testimony, at the conclusion of

any trial day where witnesses testified, the offering party shall supply color

photographs of such witnesses to the Jury Commissioner and to the Law Clerk.

The party shall supply 16 copies to the Jury Commissioner (one for each juror) and

one color copy to the Court's law clerk. The parties may follow the format used

during the last trial, and it would be helpful if the photographs could be supplied

on 3-hole-punched, 8½ x 11" paper, which allows jurors to easily put the sheets

into their trial notebooks.

**P.**   **Trial Record**

To assist the court reporter in making a more accurate record of the trial

the Court will require the parties to follow these requirements:

**1.**   Prior to trial, supply a list of uncommon proper names, places,

companies, and case cites to the reporter.

**2.**   Spell and/or have the witness spell uncommon proper names, places,

companies, and case cites during the trial.

**3.**   When possible, use docket numbers when referring to briefing

and/or documents.

4.  Notify the court reporter by email each evening of the witnesses who will be called the following day.

5.  Provide the court reporter with the names and email addresses of paralegals for inquiries and access to exhibits.

6.  Provide access to electronic copies of exhibits to the court reporter prior to and during trial.

**Q.  General Trial Procedures**

1.  Counsel shall exercise good faith in attempting to reach a stipulation on undisputed facts and admission of exhibits.

2.  The Court will encourage all counsel to structure their trial presentation and generally approach this case so as to "provide for the just determination of every criminal proceeding," "to secure simplicity in procedure," and "to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. To that end, the Court will encourage all counsel to make liberal use of demonstrative exhibits which will avoid delay while providing the jury with a better understanding and comprehension of the evidence.

3.  During trial, the jury will be in the box and in the well, as described above, hearing testimony the entire trial except for any breaks

described above.

4. During the time the jury is present, no argument beyond one-sentence evidentiary objections shall be allowed to interrupt the flow of testimony. Almost all objections should be stated in one to three words ("hearsay", "asked & answered", "irrelevant", etc.).

5. Because of the requirement of social distancing due to the COVID-19 pandemic, sidebars will not be permitted, and the Court typically will not send the jury out of the courtroom to resolve evidentiary disputes. Counsel simply must anticipate evidentiary objections and bring them to the Court's attention so that they can be resolved without sending the jury out of the courtroom. Counsel are to advise the Court and counsel of any such issues before they arise during trial so that it can be heard before or after the jury convenes. To avoid late-night sessions, counsel are encouraged to bring up all anticipated evidentiary questions in their pretrial briefs.

6. Counsel shall have enough witnesses ready to ensure a full day of testimony. If witnesses are unavoidably delayed, counsel shall promptly notify the Court and opposing counsel.

7. When counsel announces the name of a witness called to testify, the Court or the clerk will summon the witness forward to be sworn, the

clerk will administer the oath and, after the witness is seated, ask the

witness to state her or his name and spell her or his last name for the

record. I will then indicate to counsel that she or he may inquire of

the witness.

8.  Please do not address parties or witnesses (including your own) by her or

his first name unless such familiarity is clearly appropriate, and is not

likely to be offensive to the witness or any juror. In case of doubt, don't.

9.  Your clients and your witnesses should be instructed that they

should always refer to you and opposing counsel by last names.

10. You are responsible to advise your clients, your witnesses and everyone

associated with your client to avoid all contact with the jurors. This

prohibition includes seemingly innocuous behavior like riding on an

elevator with a juror, saying hello to a juror, or even acknowledging the

juror's presence.

11.  In instructing the jury, the Court is inclined to use the same instructions

that were given in the first trial.  However, circumstances may require

some changes in those instructions.  If changes are necessary, I will

conduct informal jury instruction conferences off the record to try and

resolve most differences by agreement. Those sessions will be held at the

end of the trial day and may stretch into the evening. At the end of those

sessions, we will have refined the issues of contention so that I can give you a set of my final instructions and you can state your objections on the record.

DATED: December 3, 2021

B. Lynn Winmill
United States District Judge