UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are motions for acquittal under Federal Rule of Criminal Procedure 29 filed by defendants Piotr Babichenko (Dkt. 1183), Timofey Babichenko (Dkt. 1187), and Mikhail Iyerusalimets (Dkt. 1188). For the reasons discussed below, the Court will deny the motions.

## BACKGROUND

This case involves an alleged international counterfeit goods trafficking and smuggling scheme that was being run from the Treasure Valley, primarily by

members of one extended family. Numerous members of that extended family, including defendants Piotr Babichenko, Timofey Babichenko, and Mikhail Iyerusalimets, were ultimately charged with conspiracy to commit wire fraud (Count 1), conspiracy to traffic in counterfeit goods (Count 20), and individual charges of wire fraud, mail fraud, and counterfeit trafficking.[1] The case went to a jury trial, with trial beginning on June 21, 2021, and lasting multiple weeks. Following the close of the Government's case, Piotr, Timofey, and Mikhail, along with other defendants, moved for judgement of acquittal under Federal Rule of Criminal Procedure 29. The Court denied the motions.

The jury ultimately acquitted Piotr on the three individual charges against him (Counts 10, 19, and 27), all of which related to a single undercover online buy by federal law enforcement. However, the jury was unable to reach a verdict as to the charges of conspiracy to commit wire fraud (Count 1) and conspiracy to traffic in counterfeit goods (Count 20) against him.

The jury also acquitted Timofey of a single individual charge of counterfeit trafficking (Count 24) but was unable to reach a verdict on another individual

---

[1] These defendants were also charged with conspiracy to launder money and individual counts of money laundering. However, those money laundering charges were dismissed on motion by the Government.

charge of counterfeit trafficking (Count 30), as well as individual charges of wire fraud (Counts 4 and 6), and mail fraud (Counts 13 and 15); and the charges of conspiracy to commit wire fraud (Count 1) and conspiracy to traffic in counterfeit goods (Count 20).

The jury was also unable to reach a verdict as to any of the charges against Mikhail, which included individual counts of wire fraud (Counts 2 and 3), mail fraud (Counts 11 and 12), and counterfeit trafficking (Counts 25 and 26); and the conspiracy charges—conspiracy to commit wire fraud (Count 1) and conspiracy to traffic in counterfeit goods (Count 20).

The Court declared a mistrial on the charges on which the jury hung, and the case is set for a new trial to begin in May 2022. Piotr, Timofey, and Mikhail have filed renewed Rule 29 motions, which are currently pending before the Court.

## LEGAL STANDARD

Under Rule 29(c), a defendant may move for a judgment of acquittal on the ground that there is insufficient evidence to sustain a conviction, "within 14 days after . . . the court discharges the jury . . . ." Fed. R. Crim. P. 29(c). The Court must deny a defendant's Rule 29 motion if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Nevils*, 598 F.3d 1158, 1164 (9th

Cir. 2010). "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt.' " *Nevils*, 598 F.3d at 1164 (citing *Jackson*, 443 U.S. at 326).

## ANALYSIS

In the pending renewed Rule 29 motions, Piotr Babichenko (Peter) and Mikhail Iyerusalimets (Michael) are seeking dismissal of all remaining charges against them. Timofey Babichenko (Tim) is seeking dismissal only of Counts 6 and 15.

### A.    Conspiracy Charges

Peter and Michael seek dismissal of the charges against them of Conspiracy to Commit Wire Fraud (Count 1) and Conspiracy to Traffic in Counterfeit Goods (Count 20). They contend that the Government's evidence was insufficient for any rational trier of fact to find the essential elements of these crimes beyond a reasonable doubt. The Court disagrees and will deny their motions for judgment of acquittal as to Counts 1 and 20.

The Court will not recite all of the extensive evidence presented at trial showing the existence of the conspiracies charged in Counts 1 and 20, and the involvement of Peter and Michael (as well as Tim) in those conspiracies. However, some of that evidence was discussed by the Court in denying the previous Rule 29

motions:

> [T]he bottom line is that through [the] warehouses, primarily Peter, Paul, and Tim Babichenko, but certainly Michael and Anna were also involved in operating a similar business at a very close – a close site. They were using common suppliers. They imported products which had additional counterfeit marks, such as misspellings, misshapen logos, and some had even the same serial numbers.

> They shared warehouse space, inventory, and employees. Invoices between the companies show that the defendants used Paul and Tim's companies as a way to conceal the true source of their products and as a way of trying to per – and also fabricated authorization letters from Apple and Samsung to sell their products under the guise of authorized resellers.

> In conducting their cell phone businesses, the defendants had the same MO, essentially repackaging – or actually, packaging these products. Advertised them as new online even though they knew they were not. That would occur until it was shut down, and then they created another, either using a new name or a new LLC, using separate laptops for each so as to disguise from Amazon their true identity as the same people who had been terminated as a vendor previously.

> There were 150 different business names used. The names typically were similar but changed enough so that it would not be clear that it was the same company. The defendants, not consistently – some did not – but generally, employed teenagers from their community to test products and to sell phones on their own online accounts. Many of the defendants received CBP seizure notices, which put them on notice that their product was counterfeit. They took measures to evade detection, such as separating backplates from the rest of the cell phones before shipments arrived from overseas.

> When an account was flagged by Amazon, they distributed orchestrated responses among themselves to submit to Amazon as a plea to keep their accounts open.

During the Government's investigation, agents also engaged in undercover purchases, hand-to-hand buys using a confidential human source and seized a large volume of product from both the large and small warehouses, as well as the defendants' residences.

(Dkt. 1113 at 306-07.)

Additional evidence submitted at trial demonstrates the following:

Peter, Tim, and Michael, as well as some of the other members of the

conspiracy, each had their own businesses as well as shared ones, and records

submitted into evidence confirmed the overlapping nature of their businesses.

The 12586 Bridger Street Warehouse was shared by Peter, Tim, and Paul,

and they were considered the "bosses" of this warehouse. They had offices feet

away from each other in that warehouse and they, along with other co-conspirators,

operated their businesses out of the warehouse. A workroom in the 12586 Bridger

Street Warehouse was shared by employees of Tim and Paul, and was used by

these employees to test, repackage, and sell and distribute products online using

the same supply source. Michael and Anna worked out of the smaller 12554

Bridger Street Warehouse, but eventually moved their operation to their Anatole

residence. Employees of Paul and other co-conspirators repackaged cellphones at

the 12586 and 12554 Bridger Street warehouses and sold them online as new and

genuine products through Amazon and other online selling platforms, as they had

been directed to do by their employers.

Peter, Tim, Michael and other co-conspirators solicited young, financially inexperienced, employees to operate their Amazon selling accounts in order to evade detection. One of the co-conspirators even instructed employees how to open a new business to ensure Amazon would not detect the true operator of the selling account. This approach included getting a new address and phone number, getting a gift card at a gas station, registering the new business with the Internal Revenue Service to get an employer identification number, getting a new email address, new phone number, and then, finally, opening the Amazon account. This same approach was used by other co-conspirators, including Peter, Tim, and Michael.

Peter, Tim, Michael, and other co-conspirators instructed their employees to lie to customers about their products. Some of these employees believed that the businesses, and what they were selling and doing, was legitimate. However, when these employees realized it was not "legit" and confronted their employers, some of the co-conspirators, including Peter, Tim, and Paul, dismissed their concerns. Peter also justified the lies to customers by asserting that everyone did it and by relying on a Biblical verse where Abraham lies to the king and is rewarded with material wealth.

Undercover purchases of products from the co-conspirators were made—both online and in person—and the products purchased were deemed to be counterfeit by Apple, Qualcomm, and Samsung representatives. Also deemed counterfeit were outbound packages collected from the 12586 Bridger Street Warehouse, and thousands of phones, packages, and accessories seized in August 2018 from the 12586 Bridger Street Warehouse, the 12554 Bridger Street Warehouse, and the Anatole residence. There were also undercover hand-to-hand purchases made from Peter and Michael.

Peter, Tim, Michael, and other co-conspirators submitted fraudulent invoices to online selling platforms, listing each other's businesses as the suppliers, in an attempt to prevent their online businesses from being closed. On some of the fraudulent invoices, Tim, Peter, Michael, and other co-conspirators used their various addresses and shell companies to hide the true suppliers, including addresses that had been abandoned years prior. These fraudulent invoices indicated purchases of "brand new" Apple and Samsung cellular products, when in reality the products were counterfeits smuggled into the United States by Peter, Paul, Michael, and other co-conspirators.

Peter, Tim, Michael, and other co-conspirators also shared common sources of supply in China. One of those suppliers was Min Song (Wallace) of United

Inform International (United Inform), which has itself had different variations of the same name during the life of the conspiracy. Peter, and other co-conspirators received notices from CBP while attempting to import, or importing, from United Inform. These CBP notices warned against importing trademarked items like the cellular phones and accessories at issue in this case. Specifically, the notices warned: "The property contains markings which are substantially indistinguishable from and, therefore, bears a counterfeit design/word/mark." Six of the co-conspirators, including Peter, Tim, and Michael, paid wire transfers totaling millions of dollars to United Inform and its related entities over the course of the conspiracy. Tim had been purchasing electronics from United Import since at least 2012 and continued to do business with United Inform through at least July 2018. Over the life of the conspiracy, Tim and Kristina Babichenko purchased large volumes of cellphones and cellphone accessories from United Inform. Over a one-month period in 2017, they made wire transfers to United Inform totaling approximately $240,000. Further, they made these purchases despite multiple indicators that United Inform's products were questionable, including repeated reports that products they purchased from United Inform were stolen or dysfunctional.

Peter, using an alias, conducted business with United Inform since at least

2014, including purchases of iPhones, iPhone kits, and other cell phone devices or accessories.

Michael and Anna Iyerusalimets also conducted business with Wallace and United Inform, since at least 2015, making payments via multiple large wire transfers to United Inform through 2018.

Tim, Peter, and Michael, along with other co-conspirators, also communicated about the schemes via email and chat communications. They discussed the sources of their products, how to circumvent Amazon's anti-counterfeiting protocols, and various measures taken by Apple, Samsung, and Amazon to stem the flow of counterfeit goods on the market. These communications also concerned purchase invoices; involved the forwarding of cease-and-desist letters received from rights holders such as Apple; and involved sending labels to be used for purchases, including a label affixed to an undercover purchase made in this case.

Viewing this, and the other extensive evidence presented at trial, in the light most favorable to the Government, a rational juror could have found the essential elements of the crimes of conspiracy to commit wire fraud (Count 1) and conspiracy to traffic in counterfeit goods (Count 20) beyond a reasonable doubt, and further that Peter, Tim, and Michael were members of those conspiracies.

Despite this extensive evidence, Peter argues that the jury's acquittal of him on the individual counts demonstrates that the Government's evidence against him on the conspiracy counts was insufficient. The Court disagrees. The individual counts against Peter—Counts 10, 19, and 27—all relate to a single undercover online buy made by federal law enforcement on December 12, 2017, from Remobile. There was evidence introduced at trial indicating that although Peter originally operated Remobile, he "gave" the Remobile business to Tim prior to the December 12, 2017, undercover buy. This evidence indicates that the undercover buy at issue in Counts 10, 19, and 27, was not from Peter but was, instead, from Tim. Thus, that the jury acquitted Peter of the charges related to this December 12, 2017, buy does not demonstrate that no rational trier of fact could have found the essential elements of conspiracy to commit wire fraud (Count 1) and conspiracy to traffic in counterfeit goods (Count 20) beyond a reasonable doubt. Accordingly, Peter's Rule 29 motion must be denied.

Michael's arguments in support of dismissal of the conspiracy charges are equally unavailing. He argues that dismissal is appropriate because "[d]oing business with others is not a conspiracy," the "conspiracy charges are confusing to the Jury," and "there was simply no evidence of any conspiracy." The Court disagrees and finds, as discussed above, that there is extensive evidence that

Michael and others engaged in a conspiracy as charged in Counts 1 and 20.

Michael also points out that the jury acquitted one defendant completely and did not find any other defendant guilty of any charge. He further contends that this case presents "an investigation with ample evidence of lost evidence, racial bias, and the standard boundaries ignored"; that these "topics will come up again if this case is retried"; that "[t]he Government's aggressive overreach in this matter is costing the taxpayers way too much"; and "[t]his should not happen again." Even assuming, without deciding, that there is some merit to some of these contentions, the Court does not find dismissal under Rule 29 to be appropriate. The Court will accordingly deny Michael's Rule 29 motion for judgment of acquittal on the conspiracy charges.

### B.      Mikhail Iyersalimet's Individual Counts

Michael also moves for judgment of acquittal on the individual charges against him. He has not, however, presented any additional argument beyond that already discussed above in relation to the conspiracy charges. The Court finds his arguments to be unavailing and will accordingly deny his Rule 29 motion to dismiss the individual charges against him.

### C.      Timofey Babichenko's Individual Counts

Tim moves for judgment of acquittal only as to Counts 6 and 15. He notes that the jury acquitted him of Count 24, which charged him with trafficking in an

Apple iPhone 5S on or about October 24, 2017. He argues that it would be "inconceivable" and "inconsistent" for him to be found not guilty of trafficking the counterfeit iPhone 5Ss on October 24, 2017, but then to be subject to further jeopardy for advertising and mailing counterfeit iPhones on October 24, 2017. The Court disagrees.

As the Government points out, during closing argument, Timofey's counsel asserted that Timofey must be acquitted of Count 24 because he sold two iPhone 5Cs, and not two iPhone 5Ss as charged in the indictment and as specified in the special verdict form. That the jury ended up acquitting him on Count 24 thus merely indicates that the jury agreed that the two phones he sold were iPhone 5Cs and not iPhone 5Ss as charged in Count 24.

In contrast to Count 24, Count 6 and Count 15 do not specify the specific model of iPhone, and instead charge that Timofey Babichenko "[a]dvertised, sold, and caused purchase of counterfeit Apple iPhones listed as 'new' on Amazon.com" (Count 6); and "knowingly caused to be sent and delivered by the United States Postal Service and interstate commercial carrier" a "counterfeit Apple iPhone" (Count 15). (Dkt. 210.) Similarly, the special verdict form did not specify the specific model of iPhone for Counts 6 and 15, and instead, consistent with the indictment, stated only "counterfeit Apple iPhone." (Dkt. 1152.) Thus, it is neither

inconsistent nor inconceivable for a jury to find Timofey Babichenko not guilty as to Count 24 in relation to iPhone 5Ss, and yet be unable to reach a verdict as to Counts 6 and 15, in relation to unspecified models of iPhones. The Court will therefore deny Tim's motion for judgment of acquittal.

## ORDER

**IT IS ORDERED that:**

1.      Piotr Babichenko's post-verdict motion for judgment of acquittal under Rule 29 (Dkt. 1183) is DENIED.

2.      Timofey Babichenko's post-verdict motion for judgment of acquittal under Rule 29 (Dkt. 1187) is DENIED.

3.      Mikhail Iyerusalimets' motion for judgment of acquittal (Dkt. 1188) is DENIED.

DATED: January 4, 2022

B. Lynn Winmill
U.S. District Court Judge