UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>　　Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION & ORDER RE EVIDENCE RELATING TO SAFETY ISSUES, DANGEROUSNESS, AND ALLEGED HARM TO CONSUMERS** |

## INTRODUCTION

Before the Court is Defendants' Renewed Joint Motion in Limine to Exclude Evidence Relating to Safety Issues, Dangerousness, and Alleged Harm to Consumers. *See* Dkt. 1316. For the reasons explained below, the Court will partially grant and partially deny the motion.

## BACKGROUND

The parties are familiar with the background of this case, and the Court will not restate it here, other than to briefly note that retrial of this matter is scheduled to begin on May 18, 2022. The seven defendants named above are charged with

conspiring to traffic in counterfeit goods and conspiring to commit wire fraud. Additionally, individual defendants are charged with discrete acts of wire fraud, mail fraud, and trafficking in counterfeit goods.

Before the first trial, defendants asked the Court to exclude evidence relating to safety issues, dangerousness, or harms allegedly caused by the products at issue in this case or by purported counterfeit products more generally. Defendants acknowledge that they received an adverse ruling on this motion, but they ask the Court to reconsider – again urging the Court to exclude such evidence under Federal Rules of Criminal Procedure 401, 402, and 403. *See Motion,* Dkt. 1316, at 1-2; *see also 2021 Motion,* Dkt. 799. And if the Court is not inclined to enter such an order, the defendants ask for a narrower ruling – prohibiting the government from "eliciting any evidence about the safety risks, harms, hazards, or injuries from 'counterfeit' products that are not tied directly to the devices or good at issue in this case." *Id.* at 9. Also within this renewed motion, the parties discuss the admissibility of the so-called "White Paper." (That paper will be discussed in more detail below). The government says testimony regarding the White Paper should be allowed in this trial, now that its expert has conducted the same sort of testing described in the White Paper on 117 power adapters at issue in this case. Defendants disagree; they continue to argue that testimony regarding the White Paper is inadmissible.

**MEMORANDUM DECISION & ORDER - 2**

## GOVERNING LEGAL STANDARDS

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. 38 at 41 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

More generally, only relevant evidence is admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action more or less probable. Fed. R. Evid. 401. The Court the discretion to exclude relevant evidence "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## DISCUSSION

In bringing this renewed motion in limine, defendants mainly focus on a "few specific modifications" to their earlier motion. Dkt. 1316, at 6. They remind the Court of testimony received during the first trial – specifically including testimony from Steven Kroll and Erik and Kari Krause. Each of these witnesses testified that they had purchased chargers from a company operated by a defendant. Mr. and Ms. Krause testified that when Kari plugged one of the chargers into an outlet, it "popped" and left black marks on her hands. Mr. Kroll testified that when one of his employees plugged a charger into a wall outlet, it became hot and made a hissing sound. *See Day 5 Trial Tr.*, at 164-68, 178-81, 212-15.

**1. Speculative Testimony; Testimony Related to Specific Instances of Harm Not Caused by Defendants' Products**

Defendants say they are particularly concerned with the fact that after Kari Krause recalled the simple facts of the incident, the government went on to ask Kari Krause if she has been 'unsettled' by it, to which she responded that she had been because "she had three children" and "could have lost a lot more than a few dollars." *Motion,* Dkt. 1316 (*citing Day 5 Trial Tr.*, at 216-17). Kari then went on

to testify that she had since learned "how many other people have either, A, suffered injuries or have lost important things to them --" *Day 5 Trial Tr.*, at 217. She told the jury to "Just be careful what you buy online." *Id.* at 219. Additionally, Leah Caras, the government's Apple trademark expert, testified that if an adapter is "too light" then there would be a "huge danger if you plug it into the wall, obviously." *Day 16 Trial Tr.*, at 2549. Caras also testified that she knew a defective adapter has caused a fire in England that killed multiple people. The Court struck Cara's testimony about the fire, but otherwise, the witnesses were permitted to testify as just outlined. Defendants want to avoid a repeat of this sort of testimony during the second trial.

The government has simplified matters by saying it will not elicit testimony falling into these two categories:

(1) Speculative testimony from the victims and testimony that they were "unsettled" by the hissing and popping of chargers purchased from the Defendants; and

(2) Testimony from brands regarding specific instances of people being harmed by counterfeit products that were not the Defendants' products.

*Response,* Dkt. 1349, at 4. Given this concession, the Court will enter an order precluding the government from offering testimony on those two topics.

## 2. The Renewed, General Motion

This leaves defendants' broader request that the Court reconsider its earlier

MEMORANDUM DECISION & ORDER - 5

order and exclude *all* evidence and argument regarding safety issues, dangerousness, and harms caused by defendants' products or by purported counterfeit products more generally. In that regard, defendants continue to argue that consumers who purchased malfunctioning products from the defendants (including Kroll, the Krauses, and potentially others) should not be allowed to testify. They say such testimony is irrelevant to the issues at hand and, further, that any probative value is substantially outweighed by a risk that the jury will decide the case based on sympathy or fear. *Reply,* Dkt. 1374, at 2. They also generally incorporate by reference the entirety of the arguments they made in their earlier, 2021 motion in limine. *See Motion,* Dkt. 9, at 9.

  The Court will deny this aspect of the motion for all the reasons explained in its earlier order on the subject. *See* Dkt. 945, at 9-13; *see generally United States v. Yi,* 460 F.3d 623 (5th Cir. 2006) ("…the obviously poor quality of some of the goods tends to show that [defendant] knew those goods were counterfeit"). For ease of reference, the Court will reproduce the relevant sections of that order below. *See* Dkt. 945, at 9-13. Then, in the following section, the Court will resolve the parties' disputes regarding the White Paper.

***Evidence of Loss or Harm or Hazardousness; Amazon Complaints and Policies***

  18 U.S.C. § 2320(a) subjects any person who intentionally "traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such

goods or services" to criminal sanctions. Under § 2320(f)(1)(A)(iv), the term "counterfeit mark" is defined as: "a spurious mark…the use of which is likely to cause confusion, to cause mistake, or to deceive."

As a threshold determination, the Court finds evidence of harm and safety concerns relevant. The Government has established that harm and safety concerns are symptoms of poor product quality, which is relevant to whether a product is counterfeit, including the potential for confusion, mistake, or deception. *See* 18 U.S.C. § 2320(f)(1)(A)(iv). During the April 21, 2021 Daubert hearing, the Government's proffered expert witness Robert Pollock confirmed that the Underwriters Laboratories (UL) protections are twofold – 1) ensuring that products meet technical safety requirements and 2) ensuring no unauthorized persons use the UL mark. Put another way, combatting counterfeit deceptive practices is part of ensuring good quality products.

Defendants miss the mark in claiming that because evidence of harm is not an element of "counterfeit" it is therefore irrelevant. Even if evidence of harm or safety concerns alone is not sufficient to prove that a product is counterfeit, it tends make it more probable that the product is counterfeit, which meets the low threshold of relevancy under Federal Rule of Evidence 401. *See 1 McCormick on Evidence* § 185 (8th ed. 2020) ("An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is

offered…[i]t is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence.").

Importantly, counterfeit products may mislead the public into believing the proper trademark holder is responsible for the safety concerns caused by the products. Section 2320 encompasses this conduct – counterfeiters taking advantage of a brand's good reputation without bearing the risk and responsibilities. *See United States v. Farmer*, 370 F.3d 435, 441 (4th Cir. 2004) (trademark holders are entitled to control quality of goods manufactured and sold under the trademark); *United States v. Hon*, 904 F.2d 803, 806 (2d Cir. 1990) (explaining that courts have widely held that § 2320 is not just designed for the protection of consumers, but also for the protection of trademarks themselves); *see generally* 2 Gilson on Trademarks § 5.19 (2021) (discussing counterfeiting and the definition of "counterfeit mark" under § 2320). The fact that non-counterfeit or genuine products may also present safety concerns goes to the weight of the evidence proving that a product is counterfeit, not its admissibility.

Given this relevancy, complaints of harm or safety concerns are also probative in establishing notice to the Defendants and the Defendants' state of mind as to the whether their products were counterfeit.

Next, the Court must determine if evidence of harm or safety concerns is unfairly prejudicial to Defendants. Under Federal Rule of Evidence 403, "the court

may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury…wasting time, or needlessly presenting cumulative evidence." Of course, any relevant evidence favorable to the Government is prejudicial to Defendants. At this time, the Court finds that such evidence is likely not so prejudicial as to substantially outweigh its probative value.[1] However, the Court may determine the admissibility of the proffered customer reviews on a case-by-case basis. Defendants may object to the substance of a specific complaint on that grounds that it bears a particular risk of inflaming the passions of the jury. The Court may exclude a customer complaint or redact unfairly prejudicial portions of it.

. . .

Defendants also claim that the customer safety issue complaints should be excluded because they cannot be authenticated and constitute inadmissible hearsay. Dkts. 799, 822. The Government responds that it intends to offer witness testimony and will proffer emails documenting complaints for two purposes, neither of which are hearsay: 1) notice to Defendants' that the products they sold were not genuine or new and 2) provide context to the jury as to the alleged fraudulent invoices

---

[1] Nor does the Court find that the probative value is substantially outweighed by other concerns delineated in Rule 403 (confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence). *See* Fed. R. Evid. 403.

**MEMORANDUM DECISION & ORDER - 9**

Defendants sent when Amazon terminated their seller accounts. According to the Government, the emails and messages responding to customer complaints have similar language and terms, illustrating the Defendants' alleged conspiracy and coordinated efforts to defraud their customers.

The Court will consider authentication and hearsay objections at trial.[2] While Defendants claim that the Government is conflating the mere existence of a complaint with its substance for notice purposes, see Dkt. 890 at 3, the Court disagrees and finds that the substance of the complaints is relevant to establishing the context of the alleged notice to the Defendants. At trial, Defendants may object on the grounds that the Government failed to authenticate the complaints under Federal Rule of Evidence 901(a), failed to lay a proper foundation, or failed to make a threshold showing that Defendants were aware of the complaints. See Fed. R. Evid. 104(b). Similarly, Defendants may object to relevancy and authentication as to any Amazon reviews or policies the Government intends to admit at trial. Dkt. 822.

---

[2] Similarly, if the Government intends to introduce a document, including an email or electronic communication, for its truth that includes multiple levels of hearsay, Defendants may object at trial upon the belief that the statements do not comply with the Federal Rules of Evidence. *See* Fed. R. Evid. 805 ("[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

**MEMORANDUM DECISION & ORDER - 10**

3. **The White Paper**

The Court will grant the defendants' motion to the extent they seek to exclude evidence regarding the White Paper. By way of background, during the first trial, the Court did not allow a government expert, UL employee Robert Pollock, to testify regarding the "White Paper." UL created the White Paper, which is titled "Counterfeit Phone Adapters – A UL Technical Investigation Shows a 99 Percent Failure Rate." *See* Dkt. 340-5; *see generally Pollock Dec.*, Dkt. 836-3, ¶ 27. The government had intended to question Mr. Pollock about the investigation documented in the White Paper, but the Court explained that there was no evidence that the testing described in the White Paper had been performed on any of the chargers involved in this case and that testimony regarding the White Paper would prejudice the defendants under Federal Rule of Evidence 403. *See Day 19 Trial Tr.*, at 3105:22 to 3106:21.

In anticipation of the second trial, the government has provided a supplemental expert declaration from Mr. Pollock. *See* Dkt. 1288. Mr. Pollock reports that in January 2022 – after the first trial and in the months leading up to the second trial – he oversaw "oversaw and observed" another UL employee conduct testing on 117 power adapters involved in this case. The government says that testing performed on the 117 power adapters "directly parallels the study in the White Paper." *Response,* Dkt. 1349, at 4. Thus, the government argues that

MEMORANDUM DECISION & ORDER - 11

testimony regarding the White Paper should be admitted during the second trial.

The defendants have filed a separate motion to exclude any evidence regarding the testing of the 117 power adapters. The Court will resolve that motion in a separate decision. Regardless of how that motion is decided, however, the Court is not persuaded that the White Paper is now relevant. Rather, the White Paper will be excluded for the same reasons the Court excluded it from the first trial. The study detailed there is not relevant here and, further, it would be prejudicial to the defendants to allow that evidence at trial.

## ORDER

**IT IS ORDERED that** Defendants' Renewed Joint Motion in Limine to Exclude Evidence Relating to Safety Issues, Dangerousness, and Alleged Harm to Consumers (Dkt. 1316) is GRANTED IN PART and DENIED IN PART as described above.



DATED: May 3, 2022

_____
B. Lynn Winmill
U.S. District Court Judge