UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>KRISTINA BABICHENKO,<br>DAVID BIBIKOV,<br>ANNA IYERUSALIMETS, and<br>MIKHAIL IYERUSALIMETS,<br><br>　　Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

At the close of evidence, the Court granted motions for acquittal as to counts 21 and 23, and, in part, counts 28 and 30. This memorandum further explains the Court's ruling.

### BACKGROUND

In counts 21, 23, 28, and 30, the superseding indictment charges Defendants Paul Babichenko, Tim Babichenko, Kristina Babichenko, and David Bibikov with trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a), (b)(l). In each

of these counts, the government alleges that the defendants trafficked specific models of cell phones bearing counterfeit marks. The government introduced evidence that each of the defendants trafficked phones on the alleged dates that bore counterfeit marks. But the government failed to offer any evidence that the trafficked phones were of the models specified in the indictment.

### A.  Count 21

Count 21 alleges that on or about October 26, 2016, Paul Babichenko "did intentionally traffic in goods, specifically Apple iPhone 4S and Apple iPhone 6S, knowingly using a counterfeit mark . . . ." *Superseding Indictment*, Dkt. 210 at 11. The government offered evidence that, as part of an undercover buy, Vadim Dmitruk bought phones from Paul on October 26, 2016.

The government admitted three phones—Exhibits 5008A.1, 5008.A.2, and 5008.A.3—to support this count. Apple representative Leah Caras testified that 5008.A.2. "is an iPhone 4." *Trial Tr.* 3000:20. Neither Ms. Caras nor any other witness identified the model of the other phones.

The government further admitted text messages between Vadim Dmitruk and Paul regarding the purchase of the phones. In those text messages, they specifically discuss the sale of iPhone models 4 and 6, but never iPhone models 4S or 6S. Exhibit 2008A. In addition, the government admitted photographs of all the items purchased as part of the undercover buy. Exhibit 2008C. To the extent that

the photographs identify model numbers, they are iPhone models 4 and 6, not 4S and 6S.

### B. Count 23

Count 23 alleges that on or about January 5, 2017, Paul Babichenko "did intentionally traffic in goods, specifically Apple iPhone 5S, knowingly using a counterfeit mark . . . ." *Superseding Indictment*, Dkt. 210 at 12. The government offered evidence that, as part of a second undercover buy, Vadim Dmitruk bought phones from Paul on January 5, 2017.

The government admitted five phones to support this count—Exhibits 5009.A.1, 5009.A.2, 5009.A.3, 5009.A.4, and 5009.A.5—but no testimony identifying the model of phones. The Government also admitted photographs of all the items purchased during the undercover buy. Exhibit 2009B. Again, to the extent that the photographs do identify model numbers, they are all iPhone model 5, not 5S.

### C. Count 28

Count 28 alleges that on December 2, 2016, David Bibikov trafficked "in goods, specifically Apple iPhone 5S and Apple cellular telephone chargers . . . .". *Superseding Indictment*, Dkt. 210 at 14. The government offered evidence that, in a third undercover buy, Vadim Dmitruk bought phones from David on December 2, 2016.

The government admitted four phones—Exhibits 5010A.1, 5010A.2, 5010A.3, and 5010A.4—to support this count. No witness identified the model of the phones. To the extent the government's other admitted exhibits, such as the packaging and photographs of the items purchased, do identify the phones' models, the goods are iPhone 5 not iPhone 5S.

### D.     Count 30

Count 30 alleges that on or about March 17, 2016, Tim and Kristina Babichenko "did intentionally traffic in goods, specifically Samsung battery and Samsung Galaxy S4 cellular phone, knowingly using a counterfeit mark . . . ." *Superseding Indictment*, Dkt. 210 at 15. The government's evidence showed that Tim and Kristina sold this phone through eBay to a law enforcement agent as part of an undercover buy on the alleged date.

The government admitted Exhibit 5004A to support this count. Samsung representative Jim Hogg identified that exhibit as a Samsung Galaxy S5 "or what appears to be a Samsung Galaxy S5." *Trial Tr.* 2727:18; 2728:23-25. The government also admitted photographs of both the eBay listing and the product sold. Exhibit 2004. To the extent that the photographs identify a model number, it is always an S5, not an S4.

In sum, as to counts 21, 23, 28, and 30, the government did not present any evidence from which a rational trier of fact could conclude that the defendants

trafficked the models of phones charged in the indictment. On these four counts, therefore, the government's case created a clear divergence between the indictment and the evidence presented.

## LEGAL STANDARD

"In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

"[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960); U.S. CONST. amend V. The Fifth Amendment's grand jury clause "serves the notice-related functions of protecting against unfair surprise, enabling the defendant to prepare for trial and permitting the defendant to plead the indictment as a bar to later prosecutions." *United States v. Olson*, 925 F.2d 1170, 1175 (9th Cir. 1991). Discrepancies between an indictment and evidence presented at trial violate a defendant's Fifth Amendment rights when they amount to either a constructive amendment or a fatal variance. *Id; see also United States v. Jingles*, 702 F.3d 494, 500 (9th Cir. 2012) ("[A]ccording to our definitions of the two terms, 'variance' and 'amendment' can, and often do, mean the same thing.").

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002). Constructive amendment occurs "when there is a complex set of facts distinctly different from those set forth in the charging instrument such that the defendant lacked notice." *United States v. Lopez*, 4 F.4th 706, 727-28 (9th Cir. 2021) (internal citation and quotation omitted). A constructive amendment can also occur "when the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *Id.* But a constructive amendment has not occurred when "'the indictment simply contains superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute.'" *Id.* (quoting *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014)).

In contrast, "[a] variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984). The Ninth Circuit has "generally found a variance where the indictment and the proof involve only a single, though materially different, set of

facts." *Adamson*, 291 F.3d at 615. A variance is fatal "only if it prejudices a defendant's substantial rights." *Olson*, 925 F.2d at 1175. Harmless variance includes "correcting an obvious clerical error or eliminating surplusage from the text of the indictment." *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983).

## ANALYSIS

The government must prove only "the essential elements of the crime." *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986). Here, to convict the defendants under 18 U.S.C. § 2320(a), the government must prove that they (1) trafficked in goods or services, (2) did so intentionally, (3) used counterfeit mark on or in connection with such goods and services, and (4) knew mark was counterfeit. *Lifeng Wang v. Rodriguez*, 830 F.3d 958, 961 (9th Cir. 2016).

The first element that the government must prove is trafficking in goods or services. In the context of § 2320(a), the specific identification of the product is critical to determining the third element—whether the mark used on in connection with the good is counterfeit. A mark is counterfeit if a reasonably prudent consumer would likely be confused about the origin of a particular good because the mark is attached to it. *See* 18 U.S.C. § 2320(f)(1)(A)(iv) (defining counterfeit mark as "a spurious mark . . . the use of which is likely to cause confusion, to cause mistake, or to deceive"); *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) ("The test for likelihood of confusion is whether a

'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.").

Therefore, when an indictment charges a defendant with violating § 2320(a), the good trafficked is an essential element of the crime, because it is inextricably woven into the factfinder's determination of counterfeit. In this case, the government charged the first element in a very specific way—that the defendants trafficked not just phones, or even Apple and Samsung phones, but an iPhone 4S, iPhone 6S, iPhone 5S, and a Samsung Galaxy S4.

The government has offered significant proof of uncharged conduct, namely that on the alleged dates the defendants trafficked in other models of phones. But because the government has not offered *any* proof of the element as charged, any jury conviction could not be based on the conduct actually charged in the indictment. The Court therefore must grant the Rule 29 motions.

Ninth Circuit caselaw bears this conclusion out. In *Ward*, the indictment charged the defendant with aggravated identity theft as to two named victims, but the evidence showed that he had also targeted four other victims. *Ward*, 747 F.3d at 1192. Although "the identity of the victims was necessary to satisfy an element of the offence"—namely that the victim was a real person—the jury instructions required only proof that the defendant stole the identity of "a real person." *Id.*

Because the convictions could have been based on the uncharged conduct involving the four other victims, Ward "may have been convicted on a charge the grand jury never made against him so a constructive amendment necessarily occurred." *Id.* Similarly, in *Howard*, the Ninth Circuit found a constructive amendment where the indictment charged the defendant with inducing two named women to engage in prostitution, but evidence and instructions allowed jury to convict defendant of inducing women neither named nor mentioned in indictment. *Howard v. Daggett*, 526 F.2d 1388 (9th Cir. 1975).

Here, the goods trafficked are akin to the victims of identity theft in *Ward* and the women induced into prostitution in *Howard.* That is, the goods trafficked are an essential component of defining the behavior for which the defendant can be convicted.

In that regard, this case is unlike *United States v. Hartz*, 458 F.3d 1011 (9th Cir. 2006). In *Hartz*, the indictment charged the defendant with bank robbery, being a felon in possession of a firearm and brandishing a firearm during and in relation to a crime of violence. With regard to the firearm charges, the indictment specifically referenced that a Smith & Wesson .357 revolver, and a Chinese 9mm semiautomatic pistol were the firearms involved in the offenses. During the trial, however, the government presented only evidence that the defendant robbed the

store with one of those weapons, and the jury instructions referred only to the use and possession of "a firearm." *Id*. at 1021. The Ninth Circuit found that because there was no risk of conviction for uncharged conduct—"[t]he testimony and exhibits offered by the government suggested that" defendant had robbed the store "using one of the weapons described in the indictment"—*Howard* was inapposite. *Id.* Here, by comparison, there was extensive evidence of uncharged conduct, namely trafficking in goods other than the ones charged. *See also United States v. Olson* 925 F.2d 1170, 1175 (9th Cir. 1991) (finding that there was no constructive amendment where the indictment charged the defendant with a scheme to defraud and "to obtain money," but the jury instructions stated the element as a scheme to defraud with the intent "to obtain money or property" because "[t]he government . . . did not try to prove that he obtained anything but money.").

In addition, the defendants were not charged with simply possessing or using a cellphone. If that were a crime, then, as in *Hartz*, the precise model of the cellphone would be immaterial.  Rather, the indictment here charged them with trafficking in a very specific product, i.e., one containing counterfeit trademarks. In that case, the precise identity of the cellphone does matter and must be proven at trial. *See also Soper v. United States*, 220 F.2d 158, 161 (9th Cir. 1955) (finding that where the indictment charged the defendant with committing assault "with a

dangerous weapon, to wit, a loaded automatic M-1 rifle" the government's failure to present evidence of rifle type was "immaterial" because "[a] loaded automatic rifle is a dangerous weapon, regardless of whether it is or is not an 'M-1' rifle").

In sum, here the government elected to charge the defendants with trafficking particular models of phones and then neglected to offer any proof of the phones' models at trial. Because, in the trademark context, the specific identification of the product is critical to determining whether the marks on that product are counterfeit, this absolute failure of proof demands the Court acquit the defendants as to the relevant counts.

## ORDER

The defendants' motions for acquittal, as described above, are GRANTED for the reasons stated on the record during trial, as further supplemented by this memorandum.

DATED: August 2, 2022

B. Lynn Winmill
U.S. District Court Judge