JOSHUA D. HURWIT
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE** |

Pursuant to 18 U.S.C. § 2323(a) and (b), 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and Federal Rule of Criminal Procedure 32.2, the Government moves the Court for a Preliminary Order of Forfeiture for the assets listed herein, which were used or intended to be used to commit or facilitate the crime or were derived from proceeds of the crime. In addition, pursuant to 21 U.S.C. § 853, the Government moves for a money judgment against each defendant as set forth herein and moves for a preliminary order of forfeiture for the substitute assets specified herein as partial satisfaction of the money judgments.

# I.    Legal Framework

Forfeiture is mandatory.  28 U.S.C. § 2461(c).  The purpose of forfeiture is to "eliminate the gains realized from criminal activity."  *United States v. Casey*, 444 F.3d 1071, 1074 (9th Cir. 2006).  Thus, "[t]he court, in imposing sentence on a person convicted of an offense [such trafficking in counterfeit goods] . . . , shall order, in addition to any other sentence imposed, that the person forfeit to the United States Government any property subject to forfeiture."  18 U.S.C. § 2323(b)(1).  In addition, when fraud is involved, forfeiture is required of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the fraud.  *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c).

The Government must prove by a preponderance of the evidence that property is subject to forfeiture.  *See United States v. Garcia–Guizar*, 160 F.3d 511, 517 (9th Cir. 1998).  The forfeiture process is governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853.  18 U.S.C. § 2323(b)(2)(A); 28 U.S.C. § 2461(c); *United States  v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007).  "Criminal forfeiture provisions operate *in personam* against the assets of the defendant and serve as part of the penalty for the defendant's conviction."  *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2004).

Forfeiture in a criminal counterfeit goods, labels, and packaging trafficking case reaches "[a]ny property used, or intended to be used, in any manner or part to commit or facilitate the commission of" the offense and "[a]ny property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" the offense.  18 U.S.C. § 2323(a)(1)(B) and (C), (b)(1).  When convicted of wire fraud, forfeiture reaches "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to

a violation of" the fraud.  *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c).  Section 853 of

Title 21 of the United States Code applies (18 U.S.C. § 2323(b)(2)(A) and 28 U.S.C.

§ 2461(c)); thus, as to the amount of the money judgment, "[t]he statute mandates that a

defendant forfeit a very specific amount—the proceeds of his criminal activity," or in other

words, the amount "he received in connection with the commission of the crime."  *Casey*,

444 F.3d at 1076.

## A.      Forfeiture Procedure—Property Connected to the Crime

Defendants have a limited rule-based right to a jury determination of the nexus

between the crime of conviction and property subject to forfeiture.  Fed. R. Crim. P.

32.2(b)(5).  The jury determination of forfeiture is bifurcated from the guilt determination.

"Criminal forfeiture is a sentencing matter and . . . bifurcated so that the jury first returns a

verdict on guilt or innocence and then returns to hear evidence regarding the forfeiture."

Fed. R. Crim. P. 32.2 (2000 advisory committee notes).  Because the forfeiture trial should

take place as soon as practicable after the guilt-phase trial, Rule 32.2(b)(1)(A), and be

decided by the same jury empaneled to deliberate on guilt, Rule 32.2(b)(5)(A), the

determination of whether a jury will be waived should be made before empanelment for the

guilt-phase trial.  *See id.* 2009 advisory committee notes ("Although the rule permits a party

to make this request just before the jury retires, it is desirable, when possible, to make the

request earlier, at the time when the jury is empaneled. This allows the court to plan, and

also allows the court to tell potential jurors what to expect in terms of their service.").

If a jury verdict is requested by either party, it is the jury's function to decide whether

the government has established the requisite nexus between the property alleged to be

subject to forfeiture and the offense for which the defendant was found guilty.  Rule 32.2

advisory committee notes.  When, as here, all parties waive the jury's determination of forfeiture, the Court becomes the fact finder.

Regardless of whether the Court or the jury is the finder of fact, "to achieve criminal forfeiture, the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crime. The government then must prove, by a preponderance of the evidence, a nexus between the property and the crime." *United States v. Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013).  To determine the nexus of certain property to the crime, the Court may rely on evidence from the "guilt phase" of the trial, supplemented by additional evidence.  *United States v. Merold*, 46 F. App'x 957 (11th Cir. 2002); *see also* Rule 32.2(b)(1)(B) (determination of nexus for forfeiture "may be based on evidence already in the record, including any written plea agreement, and any additional evidence accepted by the Court as relevant and reliable").  Because forfeiture is part of sentencing, this evidence may include hearsay, which is admissible. *United States v. Haleamau*, 887 F. Supp. 2d 1051 at 1054–55 (D. Haw. 2012); *United States v. Creighton*, 52 F. App'x 31, 35–36 (9th Cir. 2002) (hearsay is admissible at sentencing and therefore may be considered in the forfeiture phase).

### B.    Forfeitable Property

Applying these standards and burden of proof, the Government herein seeks:  (1) directly forfeitable property that was used or was intended to be used to commit or facilitate the commission of the offenses of conviction or was, or was derived from, proceeds of the crime; and (2) money judgments as to each defendant.  The Government will also seek to partially satisfy the money judgments through substitute assets not directly forfeitable.

Not every criminal offense employs the same definition of forfeitable property.  For instance, as is applicable here, the statute governing crimes of trafficking in counterfeit

goods applies a broader definition of forfeitable property than wire fraud because Congress extended the scope of the reach of the forfeiture provision in that section.

**1.      Trafficking in Counterfeit Goods, Packaging, and Labels Forfeiture**

In 2008, Congress passed the Enforcement of Intellectual Property Rights Act to "bolster the Federal effort to protect [the] most valuable and vulnerable property" underpinning intellectual property rights.  *See* 154 Cong. Rec. S7280-01, at 281 (recognizing that "Americans suffer when their intellectual property is stolen, they suffer when those counterfeit goods displace sales of legitimate products, and they suffer when counterfeit products actually harm them, as is sometimes the case with fake pharmaceuticals and faulty electrical products").   In accordance with this heightened protection effort, Congress broadened the forfeiture language governing intellectual property cases.

Section 2323 employs this broadened definition of forfeitable property and requires the forfeiture of the following:

(A)      Any article, the making or trafficking of which is, prohibited under section 506 of title 17, or section 2318, 2319A, 2319B, or 2320, or chapter 90, of this title.

(B)      Any property used, or intended to be used, in any manner or part to commit or facilitate the commission of an offense referred to in subparagraph (A).

(C)      Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense referred to in subparagraph (A).

18 U.S.C. § 2323(a)(1), (b)(1).  Moreover, "[t]he forfeiture of property . . . shall be governed by the procedures set forth in . . . 21 U.S.C. 853[], other than subsection (d) of that section."  18 U.S.C. § 2323(b)(2)(A).

### 2. Mail and Wire Fraud Forfeiture

In sentencing a person convicted of a wire fraud or mail fraud, or conspiracy to commit the same, the Court's authority to enter a forfeiture money judgment against the defendants and to forfeit specific assets is found in 18 U.S.C. § 981(a)(1)(C) and Federal Rule of Criminal Procedure 32.2. The Government may civilly forfeit pursuant to, 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds of any "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). A "specified unlawful activity" includes any offense listed in § 1961(1), which, in turn, includes any violation of § 1343 (wire fraud) and § 1341 (mail fraud), including conspiracies to commit those offenses. Because the Government may civilly forfeit proceeds of the offenses which constitute or were derived from proceeds of such offenses, it may criminally forfeit the proceeds, pursuant to 28 U.S.C. § 2461(c), which authorizes the criminal forfeiture of any property that can be forfeited civilly, using the procedures set forth in 21 U.S.C. § 853.

### 3. Facilitating Property

Statutes mandate the forfeiture of property—personal or real—that "facilitated" the commission of a criminal offense. *See, e.g.*, 18 U.S.C. § 2323(a)(1). Such "facilitating" property extends beyond tools used to commit the actual offense; it includes any property that "ma[de] the crime easier to commit or harder to detect." *See* Stefan D. Cassella, Asset Forfeiture Law in the United States, § 26-2, at 1138 (3d ed. 2022). Thus, houses, horses, vehicles, money, and professional licenses have all been held to be property facilitating various criminal offenses. *See id.* § 26-2, at 1140–48. The key to determining whether a

particular item facilitated the criminal offense is whether it made the crime easier to commit.

### 4. Proceeds

"Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" an intellectual property crime shall be forfeited to the Government. 18 U.S.C. § 2323(a)(1)(C), (b)(1). In fraud cases, the Ninth Circuit has described the "broad definition of proceeds" as "the amount that the defendant stole" or derived from his crimes. *See United States v. Phillips*, 704 F.3d 754, 770–71 (9th Cir. 2012). The breadth of this definition was recently reaffirmed when the Ninth Circuit clarified that proceeds in the forfeiture context includes receipts and is not limited to profit. *See United States v. Prasad*, 18 F.4th 313, 320 (9th Cir. 2021) ("Considering the term 'proceeds' in the context of the forfeiture statute, the statute's punitive purpose, and our prior construction of virtually identical criminal forfeiture provisions, we conclude that the term 'proceeds' extends to receipts and is not limited to profit.").

"Proceeds," as defined in the forfeiture statutes related to wire and mail fraud, consist of "property of any kind obtained directly or indirectly as a result of the commission of the offense giving rise to the forfeiture, and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A). Because a fraud scheme conviction "necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted." *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) (citations to the Second and Eleventh Circuits omitted). Proceeds include funds directed through business entities.

"Proceeds are not limited to the funds the defendant personally received, but include all of the funds he obtained indirectly through business entities he controlled or that served as his "alter ego."  A corporation is an alter ego if the defendant (1) exercised such complete control that the corporation had no separate will of its own; and (2) this control was used to commit a wrong; [further,] [c]ontrol over the entirety of the corporation's business need not be proven, rather, domination over the transaction attacked [is] sufficient." *United States v. Swenson,* 2014 WL 3748301, at *3 N. 24-26 (D. Idaho, July 29, 2014, No. 1:13-CR-91-BLW), *citing United States v. Contorinis*, 692 F .3d 136, 147 (2d Cir. 2012); *United States v. Peters*, 257 F.R.D. 377, 381, 384-85 (W.D.N.Y. 2009).

5.    **Money Judgment**

Money-judgment awards are property forfeitable as a result of a criminal conviction. *See United States v. Nejad*, 933 F.3d 1162, 1164–65 (9th Cir. 2019); 21 U.S.C. § 853(p)(2). "Section 853(p) states that if the tainted property subject to forfeiture is unavailable due to certain acts or omissions of the defendant, the court must order the forfeiture of 'any other property of the defendant'—including untainted assets—up to the value of the directly forfeitable property." *Nejad*, 933 F.3d at 1165 (citing 21 U.S.C. § 853(p)(2)). "Section 853(p) does not limit the substitute property eligible for forfeiture to property that the defendant owns at the time of sentencing. We have accordingly held that a court may order forfeiture in the form of a personal money judgment against the defendant, and that the government may attempt to satisfy the judgment with any substitute property it locates in the future." *Id.* These awards are mandatory, regardless of whether the defendant has dissipated the actual money derived from his criminal scheme. *See United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011). As an *in personam* judgment and sanction for criminal

conduct, mandatory forfeiture "is concerned not with how much an individual has but with how much he received in connection with the commission of the crime." 451 F.3d at 202; *see also United States v. Obaid*, 971 F.3d 1095, 1098–99 (9th Cir. 2020) (distinguishing between in rem and *in personam* forfeiture proceedings); *Casey*, 444 F.3d at 1073. Money judgments must therefore be based on property acquired from or used by the defendant as to the criminal offense, *Nejad*, 933 F.3d 1162; they are not joint-and-several liabilities shared among co-defendants, *see United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021) (discussing *Honeycutt v. United States*, 137 S. Ct. 1626 (2017)).

"Criminal forfeiture under § 853, by definition, bears a direct relation to the proceeds of the crime. [It] is concerned not with how much an individual has but with how much he received in connection with the commission of the crime." *Casey*, 444 F.3d at 1077; *see also* 21 U.S.C. § 853(*o*) (instructing that the forfeiture provisions "shall be liberally construed to effectuate its remedial purposes"). Moreover, the judgment must be based on the entire scheme to defraud, "including additional executions of the scheme [to defraud] that were not specifically charged or on which the defendant was acquitted." *See United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016). "Proceeds are not limited to the funds the defendant personally received, but include all of the funds he obtained indirectly through business entities he controlled or that served as his 'alter ego.' A corporation is an alter ego if the defendant (1) exercised such complete control that the corporation had no separate will of its own; and (2) this control was used to commit a wrong; [further,] [c]ontrol over the entirety of the corporation's business need not be proven, rather, domination over the transaction attacked [is] sufficient." *United States v. Swenson*, 2014 WL 3748301, at *3 N. 24–26 (D. Idaho, July 29, 2014, No. 1:13-CR-91-BLW), *citing United States v. Contorinis*, 692

F.3d 136, 147 (2d Cir. 2012); *United States v. Peters*, 257 F.R.D. 377, 381, 384-85 (W.D.N.Y. 2009).

### 6. Substitute Assets

When directly-forfeitable property is unavailable or diminished in value because of the defendant's actions or failure to act, the Government may seek forfeiture of substitute assets. *See* 21 U.S.C. § 853(p); *see also* 18 U.S.C. § 2323(b)(2) (incorporating § 853 procedure). Section 853(p) provides that property may be forfeited in lieu of directly-forfeitable property when the Government shows that, as a result of the defendant's actions or failure to act, directly-forfeitable property: (1) cannot be located upon the exercise of due diligence; (2) has been transferred to a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been "substantially diminished in value"; or (5) has been commingled with other property which "cannot be divided without difficulty." § 853(p)(A)–(E); *see generally United States v. Valdez*, 911 F.3d 960, 966–67 (9th Cir. 2018) (recognizing that when reading § 853(p) as an incorporated procedure, "courts must read the references in § 853's procedural provisions to 'property described in subsection (a)' as referring to the forfeitable property as defined elsewhere"); *Nejad*, 933 F.3d at 1165 (money judgment may be part of the substitute property ordered; "Section 853(p) does not limit the substitute property eligible for forfeiture to property that the defendant owns at the time of sentencing. We have accordingly held that a court may order forfeiture in the form of a personal money judgment against the defendant, and that the government may attempt to satisfy the judgment with any substitute property it locates in the future."). "The preliminary order may include substitute assets if the government has met the statutory criteria." Fed. R. Crim. P. 32.2 (2009 Committee Notes).

## II. Argument

In addition to seized contraband, which must be forfeited and ultimately destroyed, the Government moves herein for the preliminary order of forfeiture of property that facilitated the crime, proceeds of the crime, property that was purchased with proceeds of the crime, money judgments, and substitute assets for each Defendant.

### A. Contraband

From the Small Warehouse, agents seized nine pallets of counterfeit goods, which totaled to 13,416 separate items. *See* Trial Tr. at 2021; Ex. 2501. In the Large Warehouse, agents seized fifty-one pallets, totaling 90,357 separate items, which included 8,399 empty Apple iPhone packages and 18,768 empty Samsung packages. *See, e.g.*, Exs. 2401, 2402. Pursuant to the expanded provisions of the intellectual property provisions, these 103,773 items seized and packaged onto sixty pallets are forfeitable contraband. *See* Trial Tr. at 645–46; *see also* 18 U.S.C. § 2323(a)(1)(A) ("Any article, the making or trafficking of which is, prohibited under section 506 of title 17, or section 2318, 2319A, 2319B, or 2320, or chapter 90, of this title").

### B. Paul Babichenko

#### 1. Proceeds and Facilitating Property

During trial, the evidence established that Paul Babichenko's entire business perpetuated the fraud on which he was convicted. Brand representatives from Apple and Samsung testified that more than 90% of the items reviewed over the course of years bore counterfeit marks. *See, e.g.*, Trial Tr. at 2787, 2803–04, 2999, 3003, 3007. Thousands of items seized from the Large Warehouse, chats, emails, employee testimony, and financial records likewise confirmed the counterfeit nature of the vast majority of these goods, labels,

and packaging. *See* Trial Tr. at 3145 (Pupko testifying that 90–95% of products came from Chinese suppliers, not auctions); *compare* Ex. 1263 (suppliers), *with* Ex. 1300 (Customs and Border Protection chart), *and* Ex. 3005-60 (Wallace United informing Paul Babichenko that "[A]uction is not suitable for us"). The chats between Paul Babichenko, his coconspirators, employees, and his suppliers likewise underscored the permeation of the fraud throughout his business during the course of the proven conspiracy. These items were then fraudulently sold as "new" online. *See, e.g.*, Trial Tr. at 3128. Even the sales of genuine and unbranded items (or those not bearing a trademark) perpetuated the scheme, as Defendants Mikhail Iyerusalimets and David Bibikov discussed during one of the undercover purchases at the Small Warehouse. *See, e.g.*, Ex. 2010A at 21:45–23:15 (discussing selling generic items and "whatever crap" they could that was "not branded" to build up selling account to submit for branded items sold as new, as well as selling genuine chargers to avoid detection by Amazon). Multiple employees described selling such items to build, maintain, and resuscitate their Amazon selling accounts—a key component to the perpetuation of the fraud. *See, e.g.*, Trial Tr. 3147, 3158–59 (discussing building an account to sell phones on it); Trial Tr. at 4304.

Based on this evidence, therefore, all of the Amazon deposits represent proceeds of the crime proven at trial, rendering all the Amazon deposits Paul Babichenko received forfeitable. *See Prasad*, 18 F.4th at 319–20. Defendant Paul Babichenko likewise directed his employees to transfer proceeds of the sales of his products to his work and personal accounts. *See* D-2002, at 27 (showing summary of Amazon proceed transfers from employees' accounts to Midstar LLC bank account 6620 and Natalie Babichenko's 9602 account). In addition to purchasing property with these proceeds, as outlined below,

Defendant Paul Babichenko used real property and business bank accounts to perpetuate his fraudulent businesses.

To facilitate his crime, Defendant Paul Babichenko used a commercial building located at 909 N. Cole Road, in Boise, Idaho (Property No. 1.A)[1] purchased through his construction partnership, Babichenko LLC. *See* Trial Tr. at 5131–32 (testifying that the 909 Cole property was his business address during the conspiracy). Paul Babichenko listed the 909 Cole property for his Pacific Cellular business, Ex. 1607, at 21, and he used this address to obfuscate his true location in fraudulent invoices, *see, e.g.*, Ex. 4054 (June 29, 2018 email listing real property as location for source of "Brand New Sealed Samsung" cellphones sold to Cell2U4Less).

Paul Babichenko also used the 909 Cole address for a business jointly operated by David Bibikov and Paul Babichenko, Pacific Cellular. Between 2013 and 2014, Pacific Cellular Distributor JP Morgan Chase Account 0250 received $915,234.59 in Amazon direct deposits. *See* Ex. 1256, at 7. From this Pacific Cellular Account, funds were then distributed to David Bibikov, *see* Ex. 1254, at 4, as well as Paul Babichenko's personal bank accounts, *see* Ex. 1256, at 2, 7. Pacific Cellular Distributor LLC was an account initially shared by David Bibikov and Paul Babichenko. *See* Ex. 3221-31 (sharing Pacific account information); *see also* Def. Ex. 13092, at 2 (showing Paul Babichenko as "Manager" and David Bibikov as "signer" of account as of 2013). The 909 Cole property served as a means of obscuring the real location of Paul Babichenko's business.

---

[1]     For clarity's sake during the forfeiture litigation, the Government has assigned each property a separate identification number.

Like the many addresses, Defendant Paul Babichenko operated numerous cellphone and cellphone accessories business bank accounts as another means of obscuring his fraudulent conduct, including Sahara Case. *See, e.g.*, Ex. 2100 (undercover purchase of counterfeit "Quallcomm" quick charger from Sahara Case); *see also* Ex. 1256, at 6 (Property No. 1.C); *see also* Ex. 1257, at 3–4, 6 (showing deposits into Property No. 1.B). As such, all of the funds in the accounts at the time of forfeiture facilitated or were intended to facilitate the crimes. *See United States v. Certain Funds on Deposit in Account No. 01-071417, Located at the Bank of N.Y.*, 769 F. Supp. 80, 84–85 (E.D.N.Y.); *see also* 18 U.S.C. § 2323 (extending the definition of facilitating property to any property "intended to be used" to commit the trafficking offense). Like the other businesses, Power Moxie (No. 1.C) sold counterfeit Samsung batteries, which were additionally marked with Defendant Paul, Piotr, and Tim Babichenko's mark for "Power Moxie." *See, e.g.*, Trial 1, Gov. Ex. 2435, at 1.[2]

| FACILITATING PROPERTY | | | | |
|---|---|---|---|---|
| Number | Asset Description | Asset Type | Asset Value | Seized From |
| 1.A | Real Property located at 909 North Cole Rd., Boise, Idaho | Real Property | $407,700.00 | Babichenko LLC |
| 1.B | Acct No. 6620-Mtn West | Bank Account | $396,321.39 | Babichenko, Pavel and Natalya (MidStar) |
| 1.C | Acct No. 8410-Mtn West | Bank Account | $9,501.03 | Babichenko, Timofey and Pavel (Power Moxie LLC) |
| 1.D | Acct No. 8429-Mtn West | Bank Account | $59,741.95 | Babichenko, Timofey, Natalya |

[2] All citations to exhibits admitted during the first trial conducted in 2021 will be indicated as such with the notification "Trial 1"; unless otherwise noted, the cited exhibit refers to those admitted during the second, June 2022 trial.

| | | | | and Pavel (Sahara Case) |
|---|---|---|---|---|
| **1.E** | Acct No. X8429-Mtn West | Bank Account | $7,766.92 | Babichenko, Timofey, Natalya and Pavel (Sahara Case) |

In addition to using facilitating property, Defendant Paul Babichenko used his criminal proceeds to pay for two vehicles (Nos. 1.F and 1.G), as well as jewelry seized from his business (Nos. 1.H and 1.*I*). As to Property Number 1.G, Defendant Paul Babichenko used $20,000 from his wife's account 9602 to purchase this vehicle. Paul Babichenko used this same 9602 bank account to make monthly payments for the Jeep Wrangler in Number 1.G and used $15,000 cash to make the down payment for this vehicle on November 2, 2015. Employees testified and the financial records proved at trial that this same account (ending in 9602) was one Defendant Paul Babichenko instructed his sellers to deposit cash from their sales of his cellphones, as well as write checks. *See* D-2002, at 27 (showing $545,392.25 in Amazon proceeds transferred from Edgard Bobarykin, Andrey Lazukin, Nik. P. Bukhantsov, Igor Bukhantsov, Nik N. Bukhantsov, and Ivan Bukhantsov to Natalie Babichenko's 9602 bank account at Paul Babichenko's direction); *see also* Trial 1, Gov. Ex. 1225-3 (showing Amazon deposits into Account 9602). During the first trial, the Government admitted financial summaries detailing the deposits into Account 9602 as follows:

| Depositor | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Cash | | $7,600.00 | | |
| Andrey & Vera Lazukina | $82,312.16 | | | |
| Edgard Bobarykin | | $64,435.40 | $127,920.16 | $63,545.69 |
| Eric Bobarykin | | | | $50,870.44 |
| William Babichenko | | $84,572.35 | | |
| Bank of America Check | $5,510.00 | | | |
| Cell Zone LLC | | $2,162.75 | | |

| | | | | |
|---|---|---|---|---|
| Cell-Etc LLC | $12,549.23 | $16,734.50 | | |
| Anna Babichenko | | $30,000.00 | | |
| David Lazukin | $6,828.84 | | | |
| Diana Pop | $4,533.00 | $4,485.00 | | |
| European Denture | | $4,066.92 | | $3,329.00 |
| Global Distributors | | $30,000.00 | | |
| GoCell LLC | | $15,000.00 | | |
| Ivan Bukhantsov | $10,476.58 | | | |
| Igor Bukhantsov | $118,825.88 | | | |
| Imobile Express - Dmitriy Shelubay | $50,640.92 | | | |
| Inna & Peter Bibikov | | $5,140.00 | | |
| Idaho Furniture Partners LLC | | $5,566.26 | | |
| Julia Lazukin | | $4,049.00 | | |
| Midstar LLC | $29,390.45 | $51,135.08 | $28,896.63 | $17,371.99 |
| Midstar LLC - Transfers from | | $11,000.00 | $8,900.00 | |
| Morning Star Christian Church | $1,200.00 | $1,200.00 | $2,000.00 | |
| Mountain Wireless Distributing | | | | |
| Nikolay Bukhantsov | $104,166.30 | | | |
| Sahara Case | $10,341.00 | $2,045.97 | $2,386.96 | |
| USA Wireless | $7,700.00 | | | |
| White Label Electronics | $8,259.36 | | | |
| Extreme Mobile LLC - David Bibikov | $7,625.00 | | | |
| US Tech Distributors | | | $3,939.02 | $13,130.72 |
| Wireless Distributors LLC | | | $1,078.50 | |

*See* Trial 1, Ex. 1234-3 (financial summary exhibits showing deposits into 9602 account).

Finally, Paul Babichenko used his Midstar card to purchase Number 1.*I*, jewelry that was seized from the Large Warehouse.

| Number | Asset Description | Asset Value | Seized From |
|---|---|---|---|
| 1.F | 2016 Lexus LX570 | $61,425.00 | Babichenko, Natalia |
| 1.G | 2012 Jeep Wrangler Rubicon | $22,675.00 | Babichenko, Pavel |
| 1.H | One Men's Rolex Watch, Model #16013 | $3,600.00 | Babichenko, Pavel/12586 W. Bridger Drive |

| 1.I | 30 Assorted Diamond Rings | $2,297.00 | Babichenko, Pavel/12586 W. Bridger Drive |
|---|---|---|---|

## 2. Money Judgment

Based on the financial records, Paul Babichenko received $36,206,982.10 in Amazon deposits during the scope of the fraud proven at trial. *See* Ex. 1250, at 5. During trial, the Court heard testimony from the employees who described operating selling accounts for Paul Babichenko. The Court also heard employees describe Paul Babichenko's direction to transfer proceeds via cash, money orders, and checks to him, his business, and his wife's personal bank account. *See, e.g.*, Trial Tr. at 4288, 4307–08. Text messages and bank records admitted at trial likewise demonstrated this pattern. *See, e.g.*, Ex. 3221-12 (Paul Babichenko directing David Bibikov to "get[ ] money from amazon" and "count it up and bring cash"). All of these Amazon deposits represent proceeds of the crime that Defendant Paul Babichenko personally received and, thus, are forfeitable as a money judgment order. *See Prasad*, 18 F.4th at 319–20.

## 3. Substitute Assets

Defendant Paul Babichenko operated a number of construction businesses, including some abroad in Brazil. *See* Trial 1, Gov. Ex. 1023, at 7–8. Employing these international businesses, Pavel Babichenko built a number of residential apartment buildings alongside his brothers, Gennady Babitchenko, Piotr Babichenko, and Tim Babichenko. *See id.* at 21–24. Defendant Paul Babichenko, from his own accounts, wired $1,423,414.55 overseas to build these properties.

| Date | Wire From Entity | Account # | Wire To | Amount |
|---|---|---|---|---|
| 8/18/2010 | Pavel & Natalia Babichenko/Cabin Acct | 9137 | Peixoto Advocacia & Consultoria | $9,931.59 |

| | | | | |
|---|---|---|---|---|
| 8/27/2010 | Pavel & Natalia Babichenko/Cabin Acct | 9137 | Esther Lydia Dyer | $3,100.00 |
| 1/6/2011 | Pavel & Natalia Babichenko/Cabin Acct | 9137 | Arthur Augusto Barbosa Luna | $4,157.86 |
| 1/18/2011 | Midstar LLC | 7407 | Esther Lydia Dyer, San Paulo, Brazil | $2,500.00 |
| 3/14/2012 | Pavel & Natalia Babichenko | 1644 | Midstar Construcoes LTDA | $88,000.00 |
| 1/7/2014 | Pavel & Natalie Babichenko | 3631 | Midstar Construcoes | $24,000.00 |
| 3/6/2014 | Pavel & Natalie Babichenko | 3631 | Custom Homes Construcoes | $4,000.00 |
| 3/6/2014 | Pavel & Natalie Babichenko | 3631 | Midstar Construcoes | $20,000.00 |
| 5/9/2014 | Pavel & Natalie Babichenko | 3631 | Midstar Construcoes | $20,000.00 |
| 6/23/2014 | Pavel & Natalie Babichenko | 3631 | Midstar Construcoes | $23,000.00 |
| 8/6/2014 | Pavel Babichenko & Timofey Babichenko | 0387 | Western Union to Brazil | $7,000.00 |
| 8/7/2014 | Pavel Babichenko & Timofey Babichenko | 0387 | Western Union to Brazil | $2,900.00 |
| 8/29/2014 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $22,000.00 |
| 9/23/2014 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $21,000.00 |
| 11/3/2014 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 12/26/2014 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $25,000.00 |
| 1/15/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $18,000.00 |
| 1/23/2015 | Pavel Babichenko & Timofey Babichenko | 0387 | Western Union to Brazil | $4,000.00 |
| 1/26/2015 | Pavel Babichenko & Timofey Babichenko | 0387 | Western Union to Brazil | $5,825.10 |
| 1/26/2015 | Pavel Babichenko & Timofey Babichenko | 0387 | Western Union to Brazil | $7,000.00 |
| 1/30/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 2/24/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |

| | | | | |
|---|---|---|---|---|
| 3/12/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 4/1/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 4/23/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 5/5/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 5/21/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $22,000.00 |
| 6/3/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $10,000.00 |
| 6/12/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 7/1/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 7/31/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $20,000.00 |
| 9/10/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $50,000.00 |
| 9/22/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $50,000.00 |
| 10/28/2015 | Pavel & Natalia Babichenko | 5276 | Midstar Construcoes LTD | $50,000.00 |
| 4/22/2016 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTD | $25,000.00 |
| 5/20/2016 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTD | $25,000.00 |
| 6/23/2016 | Natalya & Pavel Babichenko | 9602 | Midstar Construcoes LTD | $85,000.00 |
| 8/10/2016 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTD | $100,000.00 |
| 8/10/2016 | Natalya & Pavel Babichenko | 9602 | Midstar Construcoes LTD | $40,000.00 |
| 12/12/2016 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTD | $50,000.00 |
| 1/3/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTD | $50,000.00 |
| 5/25/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $30,000.00 |
| 6/20/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $40,000.00 |
| 6/30/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $100,000.00 |

| | | | | |
|---|---|---|---|---|
| 7/31/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $35,000.00 |
| 9/1/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $20,000.00 |
| 9/22/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $20,000.00 |
| 10/24/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $25,000.00 |
| 12/8/2017 | Midstar Distributor LLC | 6620 | Midstar Construcoes LTDA | $25,000.00 |
| 2/12/2018 | Midstar Distributor LLC | 6620 | Midstar Construcoes LDTA | $20,000.00 |
| 3/16/2018 | Midstar Distributor LLC | 6620 | Midstar Construcoes LDTA | $20,000.00 |
| 4/13/2018 | Midstar Distributor LLC | 6620 | Midstar Construcoes LDTA | $20,000.00 |

*See* Trial 1, Gov. Ex. 1244-3 (financial summary exhibit showing funds diverted to Brazil by Paul Babichenko).

In addition to using his own bank accounts to divert funds to Brazil, Defendant Paul Babichenko also used his brother's accounts to transfer money to Brazil—even though he was not a signer. *See* Trial 1, Gov. Ex. 4233 (arranging for wire of funds from account that Paul Babichenko deposited into Gennady and Igor Babichenko's bank account, asking to be wired to Brazil). Given the diversion of these funds to Brazil, Defendant Paul Babichenko's interest in Property Numbers 1.P through 1.V is forfeitable as a substitute asset. *See* 21 U.S.C. § 853(p); *Valdez*, 911 F.3d at 966–67.

| Number | Asset Description | Asset Value | Seized From |
|---|---|---|---|
| **1.K** | Real Property located at 0 West Chinden Blvd, Meridian, Idaho | $615,725.00 | Babichenko LLC |
| **1.L** | Acct No. 3168-Mtn West | $719.69 | Babichenko, Gennady and Pavel (Babichenko LLC) |
| **1.M** | Approximately $4,982.00 in U.S. Currency | $4,982.00 | Babichenko, Pavel/2980 S. Pasa Tiempo Way |
| **1.N** | Acct No. 7819-Mtn West | $3,403.46 | Paul Babichenko |
| **1.O** | One Silver bar and 103 seized Silver Coins | $3,091.00 | Babichenko, Pavel/2980 S. Pasa Tiempo Way |

| | | | |
|---|---|---|---|
| **1.P** | Foreign real property located at Babichencko 171-Rua Julieta Cordeiro de Medeiros, S/N Paratibe, Joao Pessoa/PB | —[3] | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.Q** | Foreign real property located at Babichencko II-Rua Julieta Cordeiro de Medeiros, S/N Paratibe, Joao Pessoa/PB | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.R** | Foreign real property located at Babichenko III-Rua Julieta Cordeiro de Medeiros, S/N Paratibe, Joao Pessoa/PB | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.S** | Foreign real property located at Babichenko IV-Rua Julieta Cordeiro de Medeiros, S/N Paratibe Joao Pessoa/PB | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.T** | Foreign real property located at Babichenko V-containing 9 apartments, more or less, at the intersection of Oscar Lopes and Manoel Vieira Gomes street in the Paratibe district | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.U** | Foreign real property located at Babichenko VI-facing Rua Janete Belo do Silva in the neighborhood of Magabeira | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |
| **1.V** | Foreign real property located at Babichenko VII-facing Rua Joao Robert de Lima in the neighborhood of Mangabeira | — | This property has been encumbered pursuant to a treaty between the United States and Brazil |

## C. Piotr Babichenko

### 1. Proceeds and Facilitating Property

During trial, the evidence established that Piotr Babichenko's entire business perpetuated the fraud on which he was convicted. The chats between Piotr, his coconspirators and his suppliers likewise underscored the permeation of the fraud

---

[3]     The United States is working with Brazilian contacts to obtain an updated valuation of this property and anticipates having this valuation by December.

throughout his business during the course of the proven conspiracy. *See, e.g.*, Ex. 3671-02. Like the many addresses used to hide the fraud, Defendant Piotr Babichenko operated numerous cellphone and cellphone accessories business bank accounts as another means of obscuring his fraudulent conduct. *See, e.g.*, Ex. 1255, at 2 (including property numbers 2.A, 2.B, 2.C, 2.D). Between these various accounts, Defendant Piotr Babichenko transferred proceeds of the fraud, *see id.* at 6–9, and received $4,361,502.34 in Amazon deposits, *see id.* at 5.

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| 2.A | Acct No. X4046-Mtn West | $100.00 | Babichenko, Piotr (Blue Ocean Distributing LLC) |
| 2.B | Acct No. X0679-Mtn West | $1,565.21 | Babichenko, Piotr (Go Cell LLC) |
| 2.C | Acct No. X0660-Mtn West | $5.00 | Babichenko, Piotr (TrustTell LLC) |
| 2.D | Acct No. X3600-Mtn West | $302.37 | Babichenko, Piotr and Iyerusalimets, Mikhail (Rubiks Cube LLC) |

## 2. Money Judgment

Based on the financial records, Piotr Babichenko received $4,361,502.34 in Amazon deposits during the scope of the fraud proven at trial. *See* Ex. 1250, at 5. All of these Amazon deposits represent proceeds of the crime that Defendant Piotr Babichenko personally received and, thus, are forfeitable as a money judgment order. *See Prasad*, 18 F.4th at 319–20.

## D. Tim Babichenko

### 1. Proceeds and Facilitating Property

During trial, the evidence established that Tim Babichenko's entire business perpetuated the fraud and trafficking schemes for which he was convicted. The chats and emails between Tim Babichenko, his coconspirators, employees, and his suppliers likewise

underscored the permeation of the fraud throughout his business during the course of the proven conspiracy. *See, e.g.*, Ex. 2460 (fraudulent invoices); Ex. 3138 (email with supplier); Ex. 4143A (infringement letter); Ex. 4442 (customer complaint email). Based on this evidence, therefore, all of the Amazon deposits represent proceeds of the crime proven at trial, rendering all the Amazon deposits Tim Babichenko received forfeitable. *See Prasad*, 18 F.4th at 319–20. In addition to purchasing property with these proceeds, as outlined below, Defendant Tim Babichenko used business bank accounts to perpetuate his fraudulent businesses.

To facilitate his crime, Defendant Tim Babichenko operated numerous cellphone and cellphone accessories business bank accounts as another means of obscuring his fraudulent conduct, including Sahara Case. *See, e.g.*, Ex. 1250, at 2 (showing Amazon deposits into business Account Nos. 3.B, 3.D–3.I held by Defendant Tim Babichenko); Trial 1, Ex. 1291-3 (summary showing Amazon deposits by account). He likewise transferred money among his many business and personal accounts, *see* Ex. 1252, at 8, and received proceeds from his employees' sales, *see id.* at 6. *Compare* Trial 1, Ex. 1220-2 (showing major depositors into various business and personal accounts as Alex Trofimuk, Denis Popudnik, Innessa Babichenko, Nikolay Bukhantsov, Vadim Galushkin, and Sahara Case) *and* Ex. 1253, at 4, *with* Ex. 2466, at 2–3; Ex. 4122 (Amazon shutdown email from Tim Babichenko to Innessa Babichenko); Ex. 4501 (email listing Vahdim Galushkin as tester of phones employed by Tim Babichenko); *see also* Ex. 2457, at 21–30 (checks from employees for phone sales proceeds).

| | FACILITATING PROPERTY | | |
|---|---|---|---|
| **Number** | **Asset Description** | **Asset Value** | **Seized From** |
| **3.A** | Acct No. 1190-Amazon | $23.16 | Babichenko, Kristina and Tim (Timbo/Silverback Cellular) |
| **3.B** | Acct No. 5152-Wells Fargo | $120,765.33 | Babichenko, Kristina and Timofey |
| **3.C** | Acct No. 2293-Wells Fargo | $77,618.30 | Babichenko, Kristina and Timofey |
| **3.D** | Acct No. 4252-WA Fed | $980.73 | Babichenko, Tim (Ariginall LLC) |
| **3.E** | Acct No. 7081-Mtn West | $6,799.44 | Babichenko, Timofey (Boss Electronics LLC) |
| **3.F** | Acct No. 4260-WA Fed | $2,126.33 | Babichenko, Timofey (Itab LLC) |
| **3.G** | Acct No. 8347-Mtn West | $149,108.49 | Babichenko, Timofey (Smart Purchase LLC) |
| **3.H** | Acct No. 4112-WA Fed | $82,704.31 | Babichenko, Timofey and Kristina (Global Distributors LLC) |
| **3.I** | Acct No. 8410-Mtn West | $9,501.03 | Babichenko, Timofey and Pavel (Power Moxie LLC) |
| **3.J** | Acct No. 8429-Mtn West | $67,508.87 | Babichenko, Timofey, Natalya and Pavel (Sahara Case) |

In addition to forfeiting the facilitating property, Defendant Tim Babichenko used his criminal proceeds to pay for real property at 2051 Three Lakes (No. 3.K), as well as two vehicles (Nos. 3.L and 3.M). As to Property Number 3.K, Defendant Tim Babichenko used $250,000 from Global Distributors Washington Federal bank account 4112 to purchase this land in May of 2018. *See* Ex. 2719, at 7. Both vehicles in Numbers 3.L and 3.M were purchased with the same Global Distributors Washington Federal account 4112, which received $2,444,529.08 in Amazon deposits. *See* Ex. 1253, at 6.

| | PROPERTY PURCHASED WITH PROCEEDS | | |
|---|---|---|---|
| **Number** | **Asset Description** | **Asset Value** | **Seized From** |
| **3.K** | Real Property located at 2051 West Three Lakes Court, Meridian, Idaho | $295,700.00 | Timofey and Kristina Babichenko |
| **3.L** | 2015 Ford F-150 VIN: 1FTFW1EF0FFB06787 | $20,000.00 | Timofey Babichenko |
| **3.M** | 2016 Harley Davidson XL 1200V | $6,985.00 | Timofey Babichenko |

### 2. Money Judgment

Based on the financial records, Tim Babichenko received $11,004,926.31 in Amazon deposits during the scope of the fraud and trafficking schemes proven at trial. *See* Ex. 1250, at 5; *see also* Exs. 1503 and 1504 (showing sales for a handful of Tim Babichenko's businesses). All of these Amazon deposits represent proceeds of the crime that Defendant Tim Babichenko received and, thus, are forfeitable as a money judgment order. *See Prasad*, 18 F.4th at 319–20.

### 3. Substitute Assets

Like his brothers, Defendant Tim Babichenko transferred a substantial amount of his proceeds from his criminal schemes overseas to purchase a luxury Brazilian condominium in the Greenmare Residence.

| Date | Wire From Entity | Account # | Wire To | Amount |
|---|---|---|---|---|
| 6/11/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $34,000.00 |
| 6/20/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $12,000.00 |
| 8/13/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $11,000.00 |
| 9/17/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $17,000.00 |
| 10/30/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $17,000.00 |

| | | | | |
|---|---|---|---|---|
| 11/20/2014 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $12,000.00 |
| 1/6/2015 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $11,500.00 |
| 1/15/2015 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $12,000.00 |
| 2/12/2015 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $32,000.00 |
| 3/13/2015 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $26,000.00 |
| 3/26/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $14,500.00 |
| 4/23/2015 | Timofey & Kristina Babichenko | 7046 | Alliance Greenmar Construcoes | $38,600.00 |
| 5/29/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $12,000.00 |
| 7/13/2015 | Global Distributors LLC | 1299 | Cyro Visalli Terceiro | $20,000.00 |
| 7/27/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $30,000.00 |
| 8/27/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $15,100.00 |
| 9/16/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $12,000.00 |
| 9/28/2015 | Timofey & Kristina Babichenko | 7046 | Banco Do Brasil SA | $6,500.00 |
| 4/26/2017 | Timofey & Kristina Babichenko | 2293 | Banco Do Brasil SA/Cyro Visalli Terceiro | $7,600.00 |
| 6/28/2017 | Timofey & Kristina Babichenko | 5152 | Banco Do Brasil SA/Cyro Visalli Terceiro | $6,000.00 |
| 3/1/2018 | Timofey & Kristina Babichenko | 2293 | Banco Do Brasil SA | $6,200.00 |
| 4/13/2018 | Timofey & Kristina Babichenko | 5152 | Banco Do Brasil SA | $6,200.00 |

*See* Trial 1, Gov. Ex. 1244-4 (financial summary exhibit showing funds diverted to Brazil by

Tim Babichenko).

Defendant Tim Babichenko even had his wife arrange for payment of this property

from "business money." *See, e.g.*, Trial 1, Ex. 4505, at 1 ("[W]e have a condo in Brazil and

Tim was wondering if we could pay with the business money."). And he transferred money

he received from Midstar through his Global Distributing account 3706 to Gennady

Babichenko and, ultimately, Brazil. *See* Trial 1, Gov. Ex. 1101. Accordingly, Defendant

Tim Babichenko dissipated the proceeds of his criminal activity both locally and

internationally, rendering the following seized funds forfeitable as substitute assets. *See* 21

U.S.C. § 853(p); *Valdez*, 911 F.3d at 966–67.

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| **3.N** | Approximately $3,785.00 in U.S. Currency | $3,785.00 | Babichenko, Timofey 7972 W. Orbit Dr. |

### E. David Bibikov

#### 1. Facilitating Property and Proceeds

During trial, the evidence established that David Bibikov's business perpetuated the

fraud and trafficking schemes for which he was convicted. The chats and emails between

David Bibikov and his coconspirators demonstrate that the fraud permeated throughout his

business during the course of the proven conspiracy. *See, e.g.*, Ex. 3216 (a discussion

between Tim Babichenko, David Bibikov, Michael Iyerusalimets, and Anna Iyerusalimets);

*see* Ex. 2300 (documenting 14 BuyNowCell packages containing Apple and Samsung

cellphones shipped from the Large Warehouse on August 21 and 22, 2018); *see also* Ex.

2304, at 8–11 (photographs of BuyNowCell packages collected during Package Warrant); *see*

*also* Ex. 3216.26 (chat between Tim Babichenko and David Bibikov wherein the password

and account for BuyNowCell is shared); Ex. 2505, 2505A (fake authorization from Apple

for "BuyNowCell" collected from Small Warehouse on August 22, 2018). Artur Pupko

testified that David Bibikov recruited him into the scheme and began working for David

Bibikov, selling "refurbished" phones as new. Trial Tr. at 3124–26. Based on this evidence,

therefore, all of the Amazon deposits represent proceeds of the crime proven at trial,

rendering all the Amazon deposits David Bibikov received forfeitable. *See Prasad*, 18 F.4th

at 319–20.  Defendant David Bibikov used business bank accounts to perpetuate his
fraudulent businesses, including the bank accounts in Numbers 4.A and 4.B.  *See* Ex. 1250,
at 3; Ex. 1254, at 2, 4.

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| **4.A** | Acct No. 7324-ICON | $259,911.65 | Bibikov, David (Speedy Wireless LLC) |
| **4.B** | Acct No. 5573-ICON | $122,611.65 | Bibikov, David (Xtrememobile LLC) |

## 2.  Money Judgment

Based on the financial records, David Bibikov received $5,419,969.19 in Amazon
deposits during the scope of the fraud proven at trial.  *See* Ex. 1505, at 3.  All of these
Amazon deposits represent proceeds of the crime that David Bibikov received during the
scope of the criminal scheme and, thus, are forfeitable as a money judgment order.  *See*
*Prasad*, 18 F.4th at 319–20.

## 3.  Substitute Assets

Defendant David Bibikov dissipated the proceeds of his criminal activity.  *See, e.g.*,
Ex. 1250, at 3.  Accordingly, the following property may be forfeited as substitute assets. *See*
21 U.S.C. § 853(p); *Valdez*, 911 F.3d at 966–67.

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| 4.C | Acct No. 4511-ICON | $15,989.26 | Bibikov, David |

## F.  Mikhail Iyerusalimets

### 1.  Facilitating Property and Proceeds

During trial, the evidence established that Mikhail Iyerusalimets' businesses were
fraudulent.  During the video of the undercover purchase by Vadim Dmitruk from David
Bibikov, Mikhail Iyerusalimets detailed that in order to sell branded counterfeit items
fraudulently sold as "new" online, he had to build up his Amazon selling accounts with

generic and genuine used items.  *See, e.g.*, Ex. 2010A at 19:00–20:00 (discussing selling older

items to become "Power Seller").  Based on this evidence, therefore, all of the Amazon

deposits represent proceeds of the crime proven at trial, rendering all the Amazon deposits

Paul Babichenko received forfeitable.  *See Prasad*, 18 F.4th at 319–20.

To facilitate his crime, Defendant Mikhail Iyerusalimets operated numerous

cellphone and cellphone accessories business bank accounts as another means of obscuring

his fraudulent conduct.  *See* Ex. 1251, at 3 (including Accounts 5.B, 5.C, and 5.D).

Additionally, Mikhail Iyerusalimets used his wife's 2010 Land Rover (Property 5.A) to

facilitate the crimes by delivering packages containing counterfeit goods, packaging, and

labels with this vehicle.  *See* Ex. 2002B (surveillance photographs of Defendant dropping off

counterfeit products purchased undercover by agents).

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| **5.A** | 2010 Land Rover | $10,125.00 | Iyerusalimets, Anna |
| **5.B** | Acct No. 2418-Mtn West | $38.52 | Iyerusalimets, Mikhail (Advantage Wireless LLC) |
| **5.C** | Acct No. 7900-WA Fed | $27,237.76 | Iyerusalimets, Mikhail (Mountain Wireless Distributing LLC) |
| **5.D** | Acct No. 6274-Mtn West | $43,985.55 | Iyerusalimets, Mikhail (Simplified Selling LLC) |

### 2.   Money Judgment

Based on the financial records, Mikhail Iyerusalimets received $4,183,572.55 in

Amazon deposits during the scope of the fraud proven at trial.  *See* Ex. 1250, at 1.  All of

these Amazon deposits represent proceeds of the crime Defendant Mikhail Iyerusalimets

received and, thus, are forfeitable as a money judgment order.  *See Prasad*, 18 F.4th at 319–

20.

### 3. Substitute Assets

Defendant Mikhail Iyerusalimets dissipated the proceeds of his criminal activity. *See, e.g.*, Ex. 1250, at 1. Accordingly, the following property may be forfeited as substitute assets. *See* 21 U.S.C. § 853(p); *Valdez*, 911 F.3d at 966–67.

| Number | Asset Description | Asset Value | Seized From |
|--------|-------------------|-------------|-------------|
| **5.E** | Acct No. 7687-ICON | $88.34 | Iyerusalimets, Mikhail (Electro Metro LLC) |
| **5.F** | Acct No. 7872-Mtn West | $8,255.79 | Iyerusalimets, Mikhail (Metropolitan Brothers LLC) |
| **5.G** | Acct No. 2636-Mtn West | $6,969.54 | Iyerusalimets, Mikhail (Metropolitan Brothers) |

### Conclusion

For the reasons stated herein, the Government requests that the Court:

1. Enter a preliminary order of forfeiture for property identified herein;

2. Enter a Forfeiture Money Judgment against each Defendant, as follows:

   a. Paul Babichenko: $36,206,982.10;

   b. Piotr Babichenko: $4,361,502.34;

   c. Tim Babichenko: $11,004,926.31;

   d. David Bibikov: $5,419,969.19;

   e. Mikhail Iyerusalimets: $4,183,572.55; and

3. Enter a preliminary order of forfeiture for substitute property identified herein.

The net proceeds from the sale of all the assets, including any directly forfeitable assets, shall be credited toward the Defendants' money judgments. Specifically, the net proceeds from the sale of each Defendant's assets, including any directly forfeitable assets, shall be credited toward that Defendants' money judgments. The Government further

requests that the order of forfeiture become final as to each Defendant at the time it is entered. Upon issuance of the Preliminary Order of Forfeiture, the Government will provide written notice to all third parties known to have an alleged legal interest in the property and will publish notice on the Internet at www.forfeiture.gov of its intent to forfeit the property. Determining whether a third party has any interest in the property must be deferred until a third party files a claim in an ancillary proceeding under Rule 32.2(c) and 21 U.S.C. § 853(n).

As required under the procedural rules, the Government requests that the Court include the forfeiture when orally pronouncing the sentence and in the judgment. *See* Fed. R. Crim. P. 32.2(b)(4)(B). The Government further requests that the Court retain jurisdiction to address any third party claim that may asserted in these proceedings, to enter any further order necessary for the forfeiture and disposition of such property, and to order any other substitute assets forfeited to the United States up to the amount of the forfeiture money judgments.

Respectfully submitted this 17th day of October, 2022.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

/s/ Katherine L. Horwitz
KATHERINE L. HORWITZ
Assistant United States Attorney

/s/ Christian Nafzger
CHRISTIAN NAFZGER
Assistant United States Attorney

/s/ Justin Whatcott
JUSTIN WHATCOTT
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2022, the foregoing GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

JOHN DEFRANCO
1031 E. Park Blvd.
Boise, ID 83712
jcd@greyhawklaw.com
*Attorney for Pavel Babichenko*

PAUL E. RIGGINS
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com
*Attorney for Piotr Babichenko*

ROBYN A. FYFFE
P.O. Box 5681
Boise, ID 83705
robyn@fyffelaw.com
*Attorney for David Bibikov*

ELLEN NICHOLE SMITH
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com
*Attorney for Mikhail Iyerusalimets*

ROB S. LEWIS
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com
*Attorney for Timofey Babichenko*

/s/ Katherine Horwitz
Assistant United States Attorney