UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV, and<br>MIKHAIL IYERUSALIMETS,<br><br>Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

A jury convicted Defendants Paul Babichenko, Peter Babichenko, Tim Babichenko, David Bibikov, and Mike Iyerusalimets of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, conspiracy to traffic in counterfeit goods, labels, or packaging in violation of 18 U.S.C. § 2320, and individual substantive counts of wire and mail fraud and trafficking in counterfeit goods. Dkt. 1594, 1595, 1596, 1598, 1600. Based on those convictions, the Government has moved for a preliminary order of forfeiture for assets that it claims the defendants used or intended to use to commit or facilitate the crime or

that were derived from proceeds of the crime. Dkt. 1644. The Government seeks millions of dollars of property and substitute assets from each defendant. The issue now before the Court is narrow—whether the forfeitable proceeds should be assessed as gross proceeds or net proceeds.

## DISCUSSION

Federal law provides for the forfeiture of proceeds of both wire or mail fraud and trafficking in counterfeit goods, but does so under two separate statutes with different proceeds definitions of what constitutes proceeds. The Court will begin with the applicable meaning of proceeds under the mail and wire fraud statute and then turn to the term's definition under counterfeiting law.

### A.     Mail and Wire Fraud — 18 U.S.C. § 981(a)(2)

In cases of wire and mail fraud "involving illegal goods, illegal services, [or] unlawful activities . . . the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A). That is, where the wire and mail fraud involved illegal goods and services, gross proceeds "not limited to the net gain or profit realized from the offense" are forfeitable. *Id.* In contrast, "[i]n cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct

costs incurred in providing the goods or services." *Id.* § 981(a)(2)(B). "[T]o fall under § 981(a)(2)(B), the crime must involve a good or service that could, hypothetically, be provided in a lawful manner, while activities falling under § 981(a)(2)(A) are inherently unlawful." *United States v. Carpenter*, 941 F.3d 1, 7 (1st Cir. 2019) (quotation and citation omitted).

### 1. Unlawful Activities

If the defendants' activities were inherently unlawful, then § 981(a)(2)(A) applies. In defining the defendants' activities, the Court turns to the jury's verdict. In this case, the jury determined that the defendants were part of an agreement "to commit wire fraud *by selling counterfeit goods* that the defendants represented to be new and genuine." *Jury Instructions*, Dkt. 1602 at 28 (emphasis added). Moreover, the jury concluded that the defendants "knew the mark [used with the goods] was counterfeit." *Id.* at 42. Conspiring to commit wire fraud is obviously inherently unlawful, but it is not the activity at issue here. Rather, the question is whether knowingly selling counterfeit goods is an unlawful activity.

It is. Federal law criminalizes knowingly selling counterfeit goods. 18 U.S.C. § 2320(a)(1). Full stop. Because knowingly selling counterfeit goods can never be done lawfully, it is like other inherently unlawful activities the circuit

courts have identified—such as embezzlement[1], the sale of food stamps[2], and selling or possessing contraband cigarettes[3]. Selling counterfeit goods is distinct from the activities that the circuit courts have concluded are not inherently unlawful, such as advertising and running a business[4], trading stocks[5], operating an HVAC school[6], and redeeming retail coupons.[7] Therefore, defendants' gross proceeds from conspiring to commit wire fraud to knowingly sell counterfeit goods are forfeitable.

Defendants' argument to the contrary lacks merit. They contend that "selling counterfeit goods is not inherently unlawful because counterfeit goods can, hypothetically, be sold in a lawful manner; for example, if the seller believes the goods are genuine." *Def. Brief,* Dkt. 1668 at 5. This argument is not supported by case law. In other cases, courts of appeal have determined that conduct that includes a similar mens rea requirement is inherently unlawful. For instance, the Fourth Circuit determined that "contraband cigarettes are inherently unlawful" because "when the cigarettes are possessed without evidence of payment of taxes,

---

[1] *United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018); *United States v. Bodouva*, 853 F.3d 76, 79-80 (2d. Cir. 2017) (per curiam).
[2] *United States v. Uddin*, 551 F.3d 176 (2d Cir. 2009)
[3] *United States v. Hasan*, 718 F.3d 338, 347 (4th Cir. 2013).
[4] *United States v. Carpenter*, 941 F.3d 1, 7 (1st Cir. 2019).
[5] *United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009).
[6] *United States v. Davis*, 53 F.4th 833, 853 (5th Cir. 2022).
[7] *United States v. Balsiger*, 910 F.3d 942, 957 (7th Cir. 2018).

they are contraband <u>per se</u>." *United States v. Hasan*, 718 F.3d 338, 347 (4th Cir. 2013) (emphasis in original). However, the applicable federal law only criminalizes "knowingly" possessing or selling contraband cigarettes. *Id.* at 340. It follows that the court implicitly included the mens rea element when determining that possessing contraband cigarettes was inherently unlawful. The same result follows here.

This outcome makes sense. Defendants do not offer—and the Court cannot identify—any reason to separate the mens rea aspect of the activity from the rest of the conduct. In other words, there is no reason to define the defendants' activity as merely "selling counterfeit goods" rather than "knowingly selling counterfeit goods." Moreover, nearly all criminal statutes have a mens rea component. If that were enough to establish an activity was inherently lawful, § 981(a)(2)(A) would become obsolete, which is clearly contrary to Congress's intent in crafting the statute.

### 2. Illegal Goods

Next, the Court considers whether counterfeit goods are necessarily illegal goods. This inquiry hinges on whether the goods "could, hypothetically, be provided in a lawful manner." *Carpenter*, 941 F.3d at 7. For the reasons explained above, the answer is no. In short, Congress has made it a federal crime to sell counterfeit goods. Moreover, Congress prescribes the destruction of counterfeit

goods at the conclusion of forfeiture proceedings. 18 U.S.C. § 2323(b)(2)(B)(i). These two statutory provisions indicate that Congress intended to classify counterfeit goods as illegal goods. This is consistent with the supporting caselaw. Courts have found that stocks[8], retail coupons,[9] and road guardrails[10] are lawful. Federal law neither criminalizes the sale of such items, nor directs their destruction in criminal cases.

In short, because counterfeit goods are illegal goods and because selling counterfeit goods is an unlawful activity, § 981(a)(2) applies to the proceeds of defendants' wire and mail fraud convictions.

### B.   Trafficking in Counterfeit Materials — 18 U.S.C. § 2323

In cases that involve the trafficking of counterfeit materials, federal law permits forfeiture of "[a]ny property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" the crime. 18 U.S.C. § 2323(a)(1)(C). The government argues that "proceeds" here refers to gross proceeds, but defendants argue that the definitions in § 981(a)(2) should control. In essence, the defendants suggest that we should borrow the § 981(a)(2)

---

[8] *United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009).
[9] *United States v. Balsiger*, 910 F.3d 942, 957 (7th Cir. 2018).
[10] *United States v. Martin*, No. 1:13-cr-0065-BLW, 2014 WL 221956, at *1, 5 (D. Idaho Jan. 21, 2014).

definition and graft it to the forfeiture provisions of § 2323(a)(1)(C). To some extent, the question is merely academic—given the ruling above, gross proceeds are recoverable even under the § 921(a)(2) definition. However, the Court has a duty to apply the appropriate legal standard, even if it does not change the results, and so will consider the arguments.

When interpreting a statute, the Court aims to ascertain Congress's intent and give effect to legislative will. *Moorhead v. United States*, 774 F.2d 936, 940 (9th Cir. 1985). The Court begins with the statute's plain language. *Id.* at 941. Here, Congress provided for the forfeiture of proceeds "obtained directly or indirectly" from the crime. That clearly indicates congressional intent to broadly define proceeds, which would allow the forfeiture of gross proceeds. In the context of a different statute—which also allowed the forfeiture of proceeds "obtained directly or indirectly" from the crime—the Ninth Circuit found gross proceeds were forfeitable. *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021). The Ninth Circuit's analysis is directly applicable here and supports the Court's reading of § 2323.

The defendants' arguments distinguishing *Prasad* are not persuasive. First, they argue that *Prasad* focused on criminal forfeiture provisions whereas here, the civil provision, § 2323(a), defines proceeds and then is incorporated into the

**MEMORANDUM & DECISION - 7**

criminal proceeds provision, § 2323(b). The problem is that, ultimately, § 2323(b) is a criminal forfeiture provision on par with the criminal proceeds provision in *Prasad*. Congress's decision to define proceeds by reference rather than repetition does not change that. Second, defendants argue that because, according to *Prasad*, "proceeds" is an inherently ambiguous word, the Court should look to the definition Congress provided in § 981. But Congress did define proceeds somewhat in § 2323, through the "directly or indirectly" language. Moreover, *Prasad* thoroughly analyzed the ambiguity and concluded that gross proceeds applied. The Court agrees with that reasoning. Finally, Congress's choice not to expressly incorporate the definitions of § 981, which were already part of federal law, weighs against finding intent to rely on that statute.

## CONCLUSION

Based on defendants' convictions for conspiracy to commit wire fraud, forfeitable proceeds include "property of any kind obtained directly or indirectly, as the result of" to commit wire fraud by selling counterfeit goods that the defendants represented to be new and genuine "and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A). Based on their conviction for conspiracy to traffic in counterfeit materials, forfeiture is allowed for "[a]ny property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of" the crime without further limitation. 18 U.S.C. § 2323(a)(1)(C).

In so ruling, the Court is determining the applicable legal standard, *not* determining that any particular property is or is not forfeitable. Gross proceeds will be forfeitable, but the government will still need to prove a nexus between the property sought and the crime. That is, the government still bears the burden to show by a preponderance of the evidence that the assets it seeks are, in fact, the proceeds of defendants' crimes.

DATED: January 19, 2023

B. Lynn Winmill
U.S. District Court Judge