UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAVEL BABICHENKO,<br>PIOTR BABICHENKO,<br>TIMOFEY BABICHENKO,<br>DAVID BIBIKOV,<br>MIKHAIL IYERUSALIMETS, and<br>ARTUR PUPKO,<br><br>    Defendants. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION &<br>ORDER RE RESTITUTION** |

**INTRODUCTION**

In an earlier order, the Court indicated it would award restitution to Samsung and UL, but it reserved ruling on the amount of those awards. Thereafter, Samsung and UL supplemented the record, and the Court is now prepared to issue its ruling. Samsung is seeking $237,200.13 in restitution, and UL is seeking $160,741.10. For the reasons explained below, the Court will order $182,627.28, in restitution for Samsung and $117,518.63 for UL. The Court will apportion these restitution awards by ordering that Defendant Artur Pupko pay $500 in restitution to UL and $1,000 to Samsung. Beyond that, the remaining amounts will be apportioned

among the other defendants as follows:

| Defendant | %[1] | Samsung | UL |
|---|---|---|---|
| Pavel Babichenko | 40 | $ 72,650.92 | $ 46,807.45 |
| Piotr Babichenko | 25 | $ 45,406.82 | $ 29,254.66 |
| Timofey Babichenko | 25 | $ 45,406.82 | $ 29,254.66 |
| David Bibikov | 5 | $ 9,081.36 | $ 5,850.93 |
| Mikhail Iyerusalimets | 5 | $ 9,081.36 | $ 5,850.93 |
| Total | 100 | $181,627.28 | $117,018.63 |

## BACKGROUND

This order is intended to be read in conjunction with the Court's August 30, 2023 Order. *See Order,* Dkt. 1876. For that reason, Court will not repeat the background and procedural history of the litigation here and will instead highlight only the following:

1. **Lost Profits & Testing Fees.** The Court has already denied the bulk of the government's restitution request for Samsung, Apple, and UL, after finding that these entities failed to show that defendants' conduct caused them to lose profits or fees.

2. **"Other Expenses."** The Court also denied Samsung's and UL's requests for reimbursement of expenses associated with their participation in the government's investigation and prosecution of this matter, but that aspect of the

---

[1] The Court made a slight adjustment – of a penny – in one of these numbers to ensure that the individual awards added up to the total restitution award.

request was denied without prejudice. (The government is not asking for an award of "other expenses" for Apple.) The Court allowed Samsung and UL an opportunity to supplement the record so that the Court could determine whether the claimed expenses were both reasonable and incurred in connection with attendance at the proceedings in this matter or in connection with their participation in the government's investigation or prosecution. *See generally Lagos v. United States*, 584 U.S. 577, 579 (2018).

## GOVERNING LEGAL STANDARD

If a defendant is convicted of certain "offenses against property," including trafficking in counterfeit goods, the Mandatory Victims Restitution Act (MVRA), U.S.C. §§ 3663A–3664, applies and the Court is required to order the defendant to pay restitution to the victims. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii); *see also* 18 U.S.C. §§ 2320(c), 2323. The basic goal under the MVRA is to make victims whole. *See United States v. Anderson,* 741 F.3d 938, 951 (9th Cir. 2013). As such, a restitution award is limited to the victim's "actual losses" that were the direct and proximate result of the defendant's offense. *See id.* The government has the burden of establishing, by a preponderance of the evidence, that the victim's damages were caused by the defendant's conduct. *United States v. Rice,* 38 F.3d 1536, 1540 (9th Cir. 1994); 18 U.S.C. § 3664(a),(e). Although the Court has wide discretion and "flexibility" in fashioning restitution orders, "any award is limited to the

victim's actual losses" as demonstrated by reliable evidence. *Anderson*, 741 F.3d at 951.

## DISCUSSION

Defendants oppose the government's effort to recover restitution awards for Samsung and UL. Their primary argument is that Samsung and UL don't qualify for restitution because they did not suffer any pecuniary loss aside from attorneys' fees and other costs. Alternatively, defendants argue that if the Court is inclined to award restitution for Samsung and UL, it should reduce the awards to the extent the requests are based on the fees spent in connection with Samsung and UL's unsuccessful effort to obtain restitution for lost profits and fees.

### 1.  The Propriety of a Restitution Award Comprised Solely of "Other Expenses"

The Court considered and rejected defendants' primary argument in its earlier order. *See Aug. 30, 2023 Order,* Dkt. 1876, at 25-26. In their supplemental briefing, however, defendants renew their argument that Samsung and UL must first show a "pecuniary" loss, and then—and only then—be allowed to seek reimbursement for "other expenses" such as attorneys' fees and costs.

The best way to understand defendants' argument is to walk through the governing statute, which contains four sub-sections: (a), (b), (c), and (d). *See* 18 U.S.C. § 3663A. Subsection (a) does two things: First, it says that if a defendant is

convicted of certain offenses, the Court must order restitution to the victim. Second, it defines a victim as "a person directly and proximately harmed as a result of the commission of an offense . . . ." 18 U.S.C. § 3663A(a)(2).

Subsection (b) drills down to the specific types of restitution that will be ordered for particular types of losses victims have suffered. Subsection (b)(1) deals with offenses involving a loss of or damage to property; subsection (b)(2) deals with offenses involving bodily injury; and subsection (b)(3) deals with victims who died. Each subsection explains what types of restitution these victims are entitled to receive. For example, sub-section (b)(1) says that if the victim lost property, then the victim will get the property back, unless that's not possible, practicable or adequate, in which case the victim will receive payment. Next up is subsection (b)(4), which is the subsection at issue here. Subsection (b)(4) pulls in all types of victims, providing that "in any case," a victim is entitled to reimbursement for "lost income and necessary child care, transportation, *and other expenses* incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4) (emphasis added).

Moving on, subsection (c) picks up where subsection (a) left off by listing the "certain offenses" that are covered by the statute. The verbiage of subsection (c) is shown here:

(c)

    (1)  This section shall apply in all sentencing proceedings for convictions of . . . any offense—

    …

    (A)  [list of offenses, which include the offenses of conviction here]; *and*

    (B)  *in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.*

18 U.S.C. § 3663A(c) (emphasis added).

Focusing on the emphasized language, defendants argue that if a person hasn't suffered a physical injury or pecuniary loss in the first place, you don't get to subsection (b)(4), which, as a reminder, says that, "in any case," victims are entitled to reimbursement for various "other expenses." The Court is not persuaded because, as a factual matter, Samsung and UL did suffer "pecuniary" losses that were directly and proximately caused by defendants' conduct—namely, the monies they spent participating in the government's investigation or prosecution of the matter and attending the proceedings. The premise of defendants' argument is that these types of pecuniary harms cannot pull double duty. In other words, defendants say that the "other expenses" recoverable under subsection (b)(4) cannot serve as a pecuniary loss in the first place and then show up again as an "other expense" under (b)(4). But that premise is at odds with the statutory definition of a "victim." As noted earlier, the statute says if a defendant commits an offense that directly

and proximately causes harm to a person, that person is a "victim," eligible for mandatory restitution. *See* 18 U.S.C. § 3663A(a)(2). And when asking whether a person is a "victim," the Court is not called upon to determine if the pecuniary harm at issue happens to include monies spent participating in a government investigation or attending proceedings. Rather, the question is simply one of causation: Did defendants' conduct directly and proximately cause harm to UL and Samsung?

The short answer is yes. Defendants' criminal conduct caused UL and Samsung to expend large sums of money participating in the government's investigation and prosecution and attending pretrial and trial proceedings. (Additionally, as explained below, the evidence shows that Samsung incurred fees conducting a private investigation of defendants' conduct.) More to the point, these costs were a direct and foreseeable result of defendant's criminal conduct. *See generally United States v. Gordon*, 393 F.3d 1044, 1057 (9th Cir. 2004); *cf. United States v. Amato*, 540 F.3d 153, 162 (2d Cir. 2008) ("That [defendants'] fraud would force the corporation to expend large sums of money on its own internal investigation as well as its participation in the government's investigation and prosecution of defendants' offenses is not surprising."). Granted, after the Supreme Court's 2018 decision in *Lagos v. United States*, 584 U.S. 577, 579 (2018), the monies a victim spends privately investigating a defendants' fraud will not be

recoverable under 18 U.S.C. § 3663A(b)(4). But the key takeaway from *Lagos* for

our purposes is simply that the "other expenses" under (b)(4) are narrowly

viewed—meaning, for example, that victims can no longer recover the costs they

incurred in a *private* investigation. But that doesn't mean that the victim failed to

suffer a pecuniary loss as a result of defendant's conduct in the first place—even if

the only losses were incurred in investigating defendants' conduct. *Lagos*

recognized as much when it rejected the government's argument in favor of a

broad interpretation of (b)(4). The Court stated:

> There are, of course, contrary arguments—arguments favoring a
> broad interpretation. The Government points out, in particular, that
> our narrow interpretation will sometimes leave a victim without a
> restitution remedy sufficient to cover some expenses (say, those
> related to his private investigation) *which he undoubtedly incurred
> as a result of the offense.*

*Lagos*, 584 U.S. at 583 (emphasis added). And while the Ninth Circuit's decision

in *United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004) is overruled to the extent

that it held that the costs of a private investigation are recoverable as "other

expenses," the case remains instructive to the extent it stated that the costs of the

private investigation at issue were a direct and foreseeable result of the defendant's

conduct. *See id.* at 1057 ("Cisco's investigation costs were a direct and foreseeable

result of Gordon's actions.").

Defendants do not grapple with these aspects of *Lagos* and *Gordon*, which

focus on causation. Nor do they point to any Ninth Circuit or Supreme Court authority supporting their argument. Instead, they rely on an unpublished opinion from outside this district and circuit: *United States v. Yu Xue*, No. 16-cr-22, 2021 WL 2433857 (E.D. Pa. June 15, 2021). In *Yu Xue,* the court sentenced a defendant convicted of conspiring to steal trade secrets, but the owner of the trade secrets sustained "$0 of fraud loss under the Sentencing Guidelines." *Id.* at *2 n.4. Given that finding, the district court declined to award restitution comprised of attorneys' fees incurred by the owner during the investigation and prosecution of the offense, having concluded that the MVRA did not apply "because there was no pecuniary loss" to the alleged victim. *Id.* at *3. At least two other courts, including the Second Circuit, have declined to adopt *Yu Xue's* reasoning. *See United States v. Avenatti,* 81 F.4th 171, 209 (2d Cir. 2023); *United States v. Kuruzovich,* No. 09-cr-824, 2012 WL 1319805 (S.D.N.Y. Apr. 13, 2012), abated, 541 F. App'x 124 (2d Cir. 2013) (abating restitution order in light of defendant's death and insolvency of estate).[2] Likewise, and for the reasons explained above, this Court does not find *Yu Xue* persuasive.

---

[2] *Kuruzovich* was decided before *Yu Xue*, but it rejected an argument substantially similar to the one advanced in *Yu Xue. See Kuruzovich*, 2012 WL 1319805, at *4 ("the Company suffered direct pecuniary loss in the form of legal expenses incurred in connection with Kuruzovich's conduct").

The Court will therefore reiterate its earlier conclusion: Samsung and UL qualify as victims under 18 U.S.C. § 3663A. Accordingly, the only remaining question at this point is which expenses are recoverable under subsection (b)(4), in the wake of *Lagos*. At this juncture, then, the Court's task is theoretically simple: it just has to review the voluminous records submitted (which consist mainly of attorney timesheets) to ensure that any given expense was reasonably and necessarily incurred either (1) attending the proceedings or (2) participating in the government's investigation or prosecution of this matter.

## 2. Samsung's "Other Expenses"

The Court will begin with Samsung's claimed "other expenses." In the first round of briefing, Samsung reported that it had incurred $281,322.37[3] in attorney fees and costs, paid to outside counsel, Sideman & Bancroft, LLP. *See* Dkt. 1834-2. In the supplemental briefing, Samsung reduced that number to $237,200.13, explaining that the earlier request was revised "to exclude entries that were inadvertently included by Sideman & Bancroft or, out of an abundance of caution, may not adequately explain work that was performed." *Rinkoff Dec.*, Dkt. 1883, at

---

[3] For the sake of completeness, the Court notes that there is a very small discrepancy—$10.00—between the amounts Samsung initially requested and the amount shown in Samsung's supporting materials. *Compare Gvt. Br.* Dkt. 1834, at 7 (arguing that Samsung is entitled to $281,3<u>32</u>.37 in fees and costs) *with Exhibit A to Rinkoff Dec.,* Dkt. 1834-2 (tallying up the fees and costs as $281,3<u>22</u>.37).

3. The government has submitted several hundred pages worth of Sideman invoices supporting the restitution request, and it argues that each expense shown was incurred as a result of Samsung's participation in the investigation and prosecution of the defendants. *See Gvt. Br.*, Dkt. 1882, at 2; *see also Rinkoff Dec.* ¶¶ 4, 6. With one minor exception—related to attorney fees Samsung incurred in 2014—defendants do not challenge that assertion. In other words, aside from their argument regarding 2014 fees, defendants have implicitly conceded that Samsung incurred the claimed expenses either attending the proceedings or participating in the government's investigation or prosecution of this matter. Given that concession, the Court will first resolve the arguments related to the 2014 fees and then turn to defendants' argument that the Court should reduce the fees associated with the failed effort to obtain restitution for lost profits.

### A.  2014 Attorney Fees – $3,714 Reduction

According to the invoices submitted to the Court, Samsung incurred $3,714 in fees between April and August 2014. *See Invoices,* Dkt. 1883-1, at 3, 8-9, 12, 15, 18.[4]  The problem with seeking reimbursement for those fees is that government didn't reach out to Samsung—to involve Samsung in a *government*

---

[4] The pinpoint cites here are to the pages contained on this Court's docket, rather than to the individually paginated invoices.

investigation of the defendants—until later. At trial, HSI Agent Kristina Denning testified although she began investigating the defendants in 2013, she didn't talk to anyone at Samsung until after July 2014, and only after she learned that Samsung had independently reached out to the Ada County prosecutor. *See Trial 1, Day 7, June 29, 2021, Tr.* at 668:20–669:16, Dkt. 1023. Thus, it appears that for a time Samsung and the government were simultaneously, but independently, investigating the defendants. Samsung's attorney bills track with this explanation. The description of the work performed shows that the attorneys were reviewing seizure notices and pulling together information for a referral to law enforcement. Under *Lagos*, Samsung cannot be reimbursed for these fees. Accordingly, the Court will deny the request for reimbursement of the fees incurred between April 24, 2014 and August 1, 2014, which amounts to a total reduction of $3,714. The specific time entries at issue are contained in Sideman's May, August, and September 2014 invoices, *see* Dkt. 1883-1, and are reproduced in Table One of Attachment A to this Order. (Attachment A is filed under seal because it reproduced the attorneys' time entries, which were filed under seal.)

### B.  Post-Verdict Attorney Fees – $49,051.35 Reduction

Turning to the subset of fees and costs that Samsung incurred in connection with seeking a restitution award, the Court largely agrees with defendants: The vast majority of these fees are not reasonable or necessary. But rather than denying this

portion of the request outright, the Court will award Samsung 10% of all fees incurred after the August 2, 2022 verdicts were rendered. The Court has reviewed all entries after this date, and the vast majority of the fees incurred during this time period related to Samsung's unsuccessful efforts to claim restitution for lost profits of roughly $8.9 million. As explained in the Court's earlier order, however, Samsung failed to show it lost *any* profits as a result of defendants' criminal conduct. Given this failure, the Court finds that the great bulk of the attorney fees incurred during this time period were not reasonable or necessary. The Court also notes that the government has the burden of seeking and establishing a claim for restitution. Although the government will reasonably work with victims to establish that claim, the time claims submitted by Samsung's counsel on this front was excessive. Accordingly, the Court finds it appropriate to reduce post-verdict attorneys' fees by 90%, which amounts to a $49,051.35 reduction. *See generally United States v. Chan,* No. 16-cr-10268-IT, 2019 WL 3975579, at *8 (D. Mass. Aug. 22, 2019) (finding that certain attorneys' fees incurred while seeking restitution were excessive); *United States v. Napout,* 15-CR-252 (PKC), 2018 WL 6106702, at *9 (E.D.N.Y. Nov. 20, 2018) (same). The details underlying this reduction are set forth in Table Two of Attachment A to this Order.

### C.  Miscellaneous Reductions

Finally, the Court will deny fees charged for a handful of additional attorney

time entries, either because the description was insufficient, or because the
attorneys billed time to tasks that were not necessary to Samsung's participation in
the government's investigation or prosecution of this case. For example, the Court
has eliminated entries where attorneys billed time to reviewing press releases,[5]
checking in on the detention status of the defendants, and generally checking in on
the docket at around the time when the main activity related to the detention of the
defendants. *See Attachment A to this Order, Table 3.* Performing these sorts of
tasks was not necessary to Samsung's participation in the government's
investigation or prosecution of the defendants. The total reduction for these entries
is $1,807.50. As with the other reductions, the details regarding this reduction are
set forth in Attachment A, this time in Table 3.

### D.  Final Calculation – Samsung

Summing up, the Court will order restitution for Samsung in the amount of
$182,627.28, calculated as follows:

| | |
|---|---|
| **Samsung's Claimed Fees and Costs** | **$237,200.13** |
| April-August 2014 Fees | -$  3,714.00 |
| Post-Verdict Fees | -$ 49,051.35 |
| Miscellaneous Reductions | -$  1,807.50 |
| **Total** | **$182,627.28** |

---

[5] Note that if an attorney blocked billed time that included non-reimbursable items
alongside reimbursable items, the Court disallowed the entire block of time, rather than trying to
guess at how much time was spent on each individual item.

## 2.  UL's Other Expenses

Turning to UL, UL says it incurred "other expenses" in the amount of $160,741.10.[6] In the first round of briefing, UL said it incurred two categories of "other expenses:" (1) attorney's fees; and (2) monies paid to salaried employees while those employees participated in the investigation or attended court proceedings.

### A.  UL Employees

Beginning with monies paid to UL's salaried employees, the Court previously determined that the hours spent by UL employees Robert Pollock, Kevin Olive, and Randy Johnson were reasonable and spent participating in the government's investigation or prosecution or attending the proceedings. As a reminder, Pollock spent 250 hours, Olive spent 50, and Johnson spent 40. For these three employees, then, the only remaining task is for the Court to ascertain the amount UL paid these employees. As for a fourth UL employee—in-house counsel Sanjana Sharma—the Court requested additional detail regarding her billing rate along with additional detail regarding the nature of the work she performed.

_____

[6] Initially, UL claimed that it incurred $154,188.91 in "other expenses," but that number climbed to $160,741.10 when UL submitted its supplemental materials. *Compare* Dkt. 1834, at 8 *with* Dkt. 1889, at 3.

In the first round of briefing, Ms. Sharma indicated that she had "assigned" billing rates to the employees. The Court asked for actual numbers. In response, UL has now provided what it describes as "fully loaded" labor costs, which, according to UL's outside attorney, reflect the "total cost of employment of these individuals." *Nelson Dec.*, Dkt. 1890, ¶ 3. As such, the hourly labor rate includes "salary and bonus costs, incentives, employer taxes, insurance and other benefits." *Id.* The upshot is that the total cost for these employees' time amounts to $100,028.40. (The breakdown for the reported costs of these four employees' time is set forth in Mr. Nelson's declaration, which was filed under seal. *See Nelson Dec.* ¶ 4. For ease of reference, the breakdown is also shown in Table Four of Attachment A to this Order.)

Defendants say that because UL did not "show its math" regarding the details of the fully loaded rates, the government failed to carry its burden of showing UL's losses with respect to these employees. To be sure, the Court would have preferred more detail regarding the composition of the fully loaded rates. But, still, UL's attorney has indicated that the rates provided to the Court are "the same costs that UL Solutions uses in its daily operations and reporting." *Nelson Dec.*, Dkt. 1890, ¶ 3. The Court finds this sufficient and, aside from that, the Court is not persuaded by Defendants' argument that their quick internet search "raises more questions than answers regarding these rates . . . ." *Response,* Dkt. 1898, at 8. First,

the comparisons defendants offer are not apples-to-apples comparisons because the internet search results don't show the "fully loaded" rates. Second, the Court finds that the "fully loaded" rates shown are reasonable and that it is appropriate to use these rates where the victim is an employer, rather than an employee. Accordingly, the Court will accept these rates.

But there is still a problem with the restitution request related to the 100 hours requested for Ms. Sharma's time. As noted above, the Court requested additional detail regarding the time spent by Ms. Sharma. In the supplemental briefing, Ms. Sharma did not follow up with a declaration detailing how she spent the 100 hours at issue. Instead, the government points to a paragraph contained in outside counsel's declaration, which, in turn, generally states that Ms. Sharma attended witness prep sessions and court proceedings. *See Nelson Dec.*, Dkt. 1890, ¶ 5. The Court finds this insufficient because the description of time is too general. Accordingly, the Court will not require defendants to reimburse UL for time spent by Ms. Sharma. In keeping with these findings and conclusions, the Court will order restitution in the amount of $78,016.40 for these employees' time. The specific breakdown is shown in Attachment A, in Table 5.

## B.  Outside Counsel

As for the fees UL paid to its outside counsel, the Court will reduce the post-verdict fees in the same manner, and for the same reasons, that the Court

reduced Samsung's post-verdict fees. In short, the $26,500.50 in fees incurred

during that period were not reasonably or necessarily incurred given the failed

effort to demonstrate that UL lost certification fees because of defendants'

conduct. The Court will allow 10% of those fees, as shown in lines 4 through 7 of

the following table:

|    | Dates | Description of Work | Time | Rate | Requested | Allowed |
|----|-------|---------------------|------|------|-----------|---------|
| 1. | 11/22/21–2/07/22 | *See* Dkt. 1890, at 7 of 39 | 22.50 | Various | 16,245.00 | 16,245.00 |
| 2. | 3/25/22–5/26/22 | *See* Dkt. 1890, at 11 of 39 | 17.60 | 745.00 | 13,112.00 | 13,112.00 |
| 3. | 6/01/22–7/16/22 | *See* Dkt. 1890, at 16 of 39 | 4.70 | 745.00 | 3,501.50 | 3,501.50 |
| 4. | 1/20/23–1/27/23 | *See* Dkt. 1890, at 20 of 39 | 1.10 | 745.00 | 819.50 | 81.95 |
| 5. | 2/02/13–3/28/03 | *See* Dkt. 1890, at 24 of 39 | 16.30 | 745.00 | 12,143.50 | 1,214.35 |
| 6. | 5/01/23–5/31/23 | *See* Dkt. 189, at 28 of 39 | 9.60 | 745.00 | 7,152.00 | 715.20 |
| 7. | 6/06/23–6/23/23 | *See* Dkt. 1890, at 33 of 39 | 7.9 | 745.00 | 5,885.50 | 588.55 |
| 8. | | **Total** | **79.7** | | **$58,859.00** | **$35,458.55** |

Aside from those reductions, the defendants have not challenged the

government's assertion that UL incurred these fees in connection with its

participation in the government's investigation or prosecution of this matter or in

connection with UL's attendance at the proceedings. Those fees, accordingly, will

be allowed. Likewise, the Court will allow $4,043.68 in costs incurred.

## C.  Final Restitution Calculation – UL

Summing up, the Court will order $117,518.63 in restitution for UL,

calculated as follows:

| | |
|---|---|
| **Outside Attorney Fees** | $ 35,458.55 |
| **UL Employee Time** | $ 78,016.40 |
| **Costs** | $   4,043.68 |
| **Total** | **$117,518.63** |

## 3.  Apportionment

The final question is to determine whether to hold defendants jointly and severally liable for these restitution awards or to apportion liability based on relative culpability. When, as here, co-conspirators face restitution for jointly executed criminal conspiracies, the court may fashion either type of order. *See* 18 U.S.C. § 3664(h). The government asks the Court to impose joint and several liability. Alternatively, if the Court chooses to apportion liability, the government suggests that the Court apportion liability in line with the total Amazon deposits personally received by each defendant, which would yield the following percentages: (1) Pavel Babichenko—64%; (2) Piotr Babichenko—7%; (3) Tim Babichenko—18%; (4) Mikhail Iyerusalimets—2%; and (5) David Bibikov—9%. *See Gvt. Br.*, Dkt. 1882, at 3 n.2.

The Court will not order joint and several liability, given the differing levels of culpability. Instead, the Court will apportion liability. And rather than hewing precisely to the percentages suggested by the Amazon deposits, the Court will view those deposits only as a starting point because they do not accurately measure the relative culpability of each defendant. In terms of relatively culpability, the Court

will also look to the length of prison sentences it imposed on each defendant: Paul

Babichenko was sentenced to six years' incarceration; Piotr and Tim Babichenko

were each sentenced to four years; Mikhail Iyerusalimets received a two-month

sentence; and David Bibikov received a one-month sentence. Mr. Pupko was

sentenced to five years' probation. Having considered these prison sentences, the

Amazon deposits, and all other evidence before the Court, the Court finds that for

purposes of determining this restitution award, the most logical approach is to first

resolve how to treat Mr. Pupko, and then turn to the remaining defendants. Mr.

Pupko is in a different position because he pleaded guilty roughly one year after

being indicted, on September 25, 2019. The remaining defendants were not

convicted until nearly three years later, in August of 2022, and the majority of the

fees and expenses under consideration in this Order were incurred after Mr.

Pupko's guilty plea. Under these circumstances, only a small portion of the

restitution amount should be paid by Mr. Pupko. The Court finds that it is

appropriate to order Mr. Pupko to pay $500 in restitution to UL and $1,000 to

Samsung. Beyond that, for all remaining amounts, the Court will apply the

following percentages in apportioning restitution:

| | |
|---|---|
| Pavel Babichenko: | 40% |
| Piotr Babichenko: | 25% |
| Timofey Babichenko: | 25% |
| Mikhail Iyerusalimets: | 5% |
| David Bibikov: | 5% |

These percentages reflect the relative degrees of culpability in the underlying scheme, and the lower overall restitution order as to Mr. Pupko also takes into account his early guilty plea. Mr. Pupko advocated for an approach that would call upon the Court to go through each line item of the billing records, and determine whether he should be charged for a percentage of that particular item. The Court finds that such an approach would add unnecessary complexity to the overall calculation for all defendants and, more importantly, that the approach the Court has settled on will result in a fair and equitable allocation amongst the defendants.

## ORDER

**IT IS ORDERED that** the government's renewed Request for Restitution (Dkt. 1882) as it relates to Samsung, and UL is **GRANTED, in part,** as follows:

1. The Court will order $182,627.28 in restitution for Samsung and $117,518.63 for UL. These awards will be apportioned among the defendants as follows:

| Defendant | Samsung | UL |
|---|---|---|
| Pavel Babichenko | $ 72,650.92 | $ 46,807.45 |
| Piotr Babichenko | $ 45,406.82 | $ 29,254.66 |
| Timofey Babichenko | $ 45,406.82 | $ 29,254.66 |
| David Bibikov | $  9,081.36 | $  5,850.93 |
| Mikhail Iyerusalimets | $  9,081.36 | $  5,850.93 |
| Artur Pupko | $  1,000.00 | $     500.00 |
| **Total** | **$182,627.28** | **$117,518.63** |

2. The Court will prepare and file amended judgments consistent with this

Order.

DATED: June 21, 2024

B. Lynn Winmill
U.S. District Court Judge